Glen L. Nuttall, Bar No. 198230
KLEIN, O'NEILL & SINGH, LLP
16755 Von Karman Avenue, Suite 275
Irvine, California 92606
(949) 955-1920; Fax (949) 955-1921
e-mail: gnuttall@koslaw.com

Jeffrey W. Shields, Bar No. 109920
SHIELDS LAW OFFICES
1920 Main Street, Suite 1080
Irvine, California 92614
(949) 724-7900; Fax (949) 724-7905
e-mail: jeff@shieldslawoffices.com

Attorneys for Defendant And Counterclaimants
One Hit Wonder, Inc. And Anthony Tellez, III
And Defendants Steam Distribution, LLC and
Havz, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| AOP VENTURES, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> STEAM DISTRIBUTION, LLC, a California limited liability company; ONE HIT WONDER, INC., a California corporation; ANTHONY TELLEZ III, an individual; Havz, LLC, a California limited liability company; and DOES 1-10, <br><br> Defendants. <br> _____ <br> ONE HIT WONDER, INC., a California corporation, and ANTHONY TELLEZ III, an individual, <br><br> Counterclaimants, <br><br> v. <br><br> AOP VENTURES, INC., a Delaware corporation | Case No. 5:15-cv-01586 VAP(KKx) <br><br> **DEFENDANTS' SEPARATE STATEMENT OF GENUINE ISSUES OF MATERIAL FACT IN SUPPORT OF OPPOSITION TO PLANTIFF'S MOTION FOR SUMMARY JUDGMENT** |

KLEIN, O'NEILL & SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

1    Counter-Defendant.

2

3    Defendants and Counterclaimants One Hit Wonder, Inc. And Anthony Tellez, III and

4    Defendants Steam Distribution, LLC and Havz, LLC (collectively, "Defendants") hereby submits

5    their "Separate Statement of Genuine Issues of Material Fact" in support of it Opposition to the

6    Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment (the "Motion")

7    brought by Plaintiff AOP Ventures, Inc. ("AOP" or "Plaintiff").

8    Set forth in Section I is a list of supporting evidence submitted with the Opposition and the

9    Motion.  In Section II is a list of certain of the genuine issues of material fact in dispute.  In Section

10   II are Defendants' responses to each of the allegedly "uncontroverted facts" submitted by Plaintiff

11   with the Motion.

12   I.    SUPPORTING EVIDENCE

13   The material facts are supported by the following evidence, some of which were submitted

14   with the Opposition, and some of which were submitted with the Motion

15       A.  Exhibits 1-67 and the Declarations of Barbara Villegas, Michael Zhang, Konrad K

16           Gatien and Barak J Kamelgard as submitted with the Motion

17       B.  The "Declaration of Anthony Tellez III" ("Tellez Dec").

18       C.  The "Declaration of Robert Hackett" ("Hackett Dec").

19       D.  The "Declaration of Glen L Nuttall" ("Nuttall Dec").

20       E.  The document Bates Numbered AOP 001516 depicting the packaging of Plaintiff's

21           THE MILKMAN e-liquid as "Exhibit A".

22       F.  The document Bates Numbered Steam 00366 depicting the packaging of

23           Defendants' ONE HIT WONDER-MILK MAN e-liquid as "Exhibit B".

24       G.  The documents Bates Numbered Steam 11357-Steam 11360 depicting a typical

25           presentation of e-liquids in commerce online at the website

26           www.premiumvapesupply.com, as "Exhibit C".

27       H.  The document bates numbered Steam 11361-Steam11370 including an online

28           magazine article from premiumeliquids.com entitled "Tokenvape Premium eJuices

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

a Premium e Liquids Interview with Ross Eveleigh", as "Exhibit D".

I.   The document Bates Numbered Steam 11374 depicting each of the ONE HIT WONDER-POLICE MAN, MY MAN, ROCKET MAN, MILK MAN AND MUFFIN MAN e-liquids for sale online at beyond vape.com, as "Exhibit E".

J.   Plaintiff's Expert Report of Anson Weston, as "Exhibit F".

## II.   SELECTED GENUINE ISSUES OF MATERIAL FACT

As set forth in Defendants' Opposition, there are numerous genuine issues of disputed material fact regarding Plaintiff's various causes of action against Defendants.  In this regard, as set forth in the Declarations and Exhibits, substantial evidence supports Defendants positions and, at a minimum raises genuine issues of material fact.  Defendants submit that at least each of the following are genuine issues of material fact in dispute in this case which cannot properly be resolved by Plaintiff's Motion.

### A. Disputed Fact No. 1:   Whether Plaintiff's THE MILKMAN e-liquid and Defendants' MILK MAN e-liquid have confusingly similar packaging

The evidence raises a genuine issue of material fact whether Plaintiff's THE MILKMAN e-liquid and Defendant's MILK MAN e-liquid are packaged so that a consumer could be confused between the two.

AOP's THE MILKMAN e-liquid is always sold in distinctive packaging comprising a carton that is shaped to resemble a milk carton. Further, Plaintiff's CEO Michael Zhang testified that on AOP's bottles, the text THE MILKMAN is **always** accompanied by a graphical depiction of a milk carton. (Ex. 57 at 81:15-21; 91:16-21).

Still further, packaging for THE MILKMAN explicitly states that the e-liquid is "from the creators of the Vaping Rabbit." (Ex. 57 at 86:18-21).  This was done to purposely associate THE MILKMAN e-liquid with Barbara Villegas's Vaping Rabbit line of e-liquids.  (Ex. 58 at 48:3-9).

Barbara Villegas believed this unique packaging would drive interest in the product and would in turn drive sales, and thus the added packaging expense of the milk carton would be well worth it. (Ex. 58 at 49:16-50:3).

Defendant's MILK MAN flavor is one of several ONE HIT WONDER-branded flavors that

KLEIN, O'NEILL & SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

1  are sold in 180 mL bottles – six times larger than typical premium e-liquid bottles, and at a

2  suggested retail price of $60, which is about three times the typical price for a 30 mL bottle of

3  premium e-liquid. Also, each of the ONE HIT WONDER-branded e-liquids, including the MILK

4  MAN flavor, is sold in a unique package comprising a clear tube, the 180 mL bottle of e-liquid,

5  and two empty 15 mL "unicorn" bottles that the purchaser could fill from the large bottle. (Hackett

6  Dec at 12).

7       Plaintiff's THE MILKMAN e-liquid and Defendant's ONE HIT WONDER-MILK MAN

8  e-liquid products, including their packaging as used in

9  the marketplace, are depicted below. (Ex. A & B).





25       B.  Disputed Fact No. 2: Whether Consumers See Plaintiff's and Defendants'

26            Distinctive Packaging in Typical Marketing Channels.

27       The evidence raises a genuine issue of material fact whether Plaintiff's and Defendants'

28  distinctive packaging is visible during typical instances of marketing.

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

E-liquids are commonly marketed through social media channels, particularly Facebook and Instagram. (Hackett Dec at 19). In these channels, a photograph of the product can be posted, and interested users often post comments. (Hackett Dec at 20). Thus, in typical marketing channels, e-liquids are marketed photographically showing their unique packaging and graphics.

Michael Zhang has testified that AOP markets its THE MILKMAN e-liquid using Instagram and Facebook. (Ex. 57 at 96: 8-16).

Exhibit C shows an example of online marketing of e-liquids, and shows photographs of bottles of e-liquids, the source or brand, and the particular flavor.

Exhibit E shows an example of online marketing of the ONE HIT WONDER line of e-liquids, showing photographs of a bottle of each flavor, the source or brand (ONE HIT WONDER), and the particular flavor (POLICE MAN, MY MAN, ROCKET MAN, MILK MAN, or MUFFIN MAN).

    C.  Disputed Fact No. 3: Whether the ONE HIT WONDER brand is consistently and prominently displayed alongside the MILK MAN brand in the marketing for Defendants' e-liquid products.

The evidence raises a genuine issue of material fact whether Defendants' ONE HIT WONDER brand is consistently and prominently displayed alongside its MILK MAN flavor name in marketing.

E-liquids are typically marketed as a single source or brand having multiple flavors. E-liquid marketing materials typically list both the source or brand and the particular flavor. (Hackett Dec at 21). Thus, Defendant's MILK MAN flavor is substantially always marketed in connection with the ONE HIT WONDER brand name. (Hackett Dec at 22).

Exhibit C shows an example of online marketing of e-liquids, and shows photographs of bottles of e-liquids, the source or brand, and the particular flavor within that particular brand.

Exhibit E shows an example of online marketing of the ONE HIT WONDER line of e-liquids, showing photographs of a bottle of each flavor, the source or brand (ONE HIT WONDER), and the particular flavor (POLICE MAN, MY MAN, ROCKET MAN, MILK MAN, or MUFFIN MAN).

DEFENDANTS' STATEMENT OF ISSUES OF MATERIAL FACT         CASE NO. 5:15-cv-01586 VAP(KKx)

KLEIN, O'NEILL & SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA, 92606

Exhibit D is a magazine article that demonstrates a practice in the industry of referring to an e-liquid by both its source or brand and by the flavor within the brand.  In the article, the individual being interviewed is asked about his "go to" e-liquid and refers to Defendants e-liquid as "one hit wonder: milkman". (see page STEAM 11364).

Packaging for THE MILKMAN explicitly states that the e-liquid is "from the creators of the Vaping Rabbit." (Ex. 57 at 86:18-21).  Barbara Villegas testified that this was done to purposely associate THE MILKMAN e-liquid with her Vaping Rabbit line of e-liquids.  (Ex. 58 at 48:3-9).

> D. Disputed Fact No. 4: Whether Vaping consumers educate themselves about e-liquid products and are careful making e-liquid purchases

The evidence raises a genuine issue of material fact whether vaping consumers tend to do research to educate themselves about e-liquids, and tend to exercise care when purchasing e-liquids, and thus are generally fairly sophisticated.

Barbara Villegas testified that vaping consumers tend to ask each other about flavors and try to do research on e-liquids before making a purchase. (Ex. 58 at 81:2-8; 82:21-83:4; 85:9-17).

Barbara Villegas also acknowledged that, in comments posted on social media, vaping consumers demonstrated knowledge that Vaping Rabbit's THE MILKMAN is different than One Hit Wonder's MILK MAN. (Ex. 58 at 82:1-16; 83:5-8).

Defendants sell their e-liquids both at retail and to distributors.  (Ex. 34-37).

> E. Disputed Fact No. 5: Whether the volume of sales and marketing create such a huge number of opportunities for confusion that a handful of instances of confusion are de minimis.

The evidence raises a genuine issue of material fact whether the volume of sales, as well as the volume of consumer involvement in marketing efforts (i.e., via social media) create such a huge number of opportunities for confusion that a handful of instances of confusion are de minimis.

Plaintiff and Defendants each enjoy substantial sales that reach well into the millions of dollars.  (Ex. 60 (exhibits 6 and 8)).

Plaintiff and Defendants both market using social media, in which users comment on the products (Ex. 58 at 81:1-86:15; Hackett Dec at 19 & 20; Ex. 57 at 96: 8-16).

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

F.   Disputed Fact No. 6: Whether The Indication of Nicotine Levels on the Labels of the MILK MAN-branded e-liquid sold by Tellez in November 2014 was Sufficient to Make Such Sales Lawful.

The evidence raises a genuine issue of material fact whether the labels on the MILK MAN-branded e-liquid Tony Tellez sold in November 2014 violated California's Prop. 65 and, if so, whether such a violation was be material.

AOP has admitted that Tellez's labels included 1) the mark MILK MAN; 2) the batch number; and 3) an indication of nicotine level. (Motion at 3).

AOP hasn't contended or advanced any evidence to indicate that the nicotine level on Tellez's labels was incorrect, or that anything at all about Tellez's labels was misleading, inaccurate or fraudulent.

AOP relies on two reports to establish that "California has recognized that e-liquids contain as many as ten ingredients on [the Prop 65 list of 'chemicals known to the state to cause cancer or reproductive toxicity']" (SUF ¶¶ 148-49).  However, these two reports are dated January 2015 (See Exhibits A and B associated with Plaintiff's Request for Judicial Notice), which is AFTER Tellez's November 2014 sales.  Thus, the two reports did not exist at the time of Tellez's November 2014 sales.

Early depictions of packaging associated with THE MILKMAN e-liquid show a "warning", in which only the presence of nicotine is indicated.  (Ex. 5).

G.   Disputed Fact No. 7:   Whether the November 2014 Sales of MILK MAN-branded e-liquid  by Tellez did, in fact, take place.

The evidence supports, or at least raises a genuine issue of material fact, that Tony Tellez indeed sold bottles of e-liquid bearing the MILK MAN mark in November 2014.

Defendants have propounded receipts documenting the November 2014 sales (Ex. 32, 33), which receipts are signed by the parties involved in the transaction.

The testimony of Tony Tellez, Berj Aliksanian, and Bill Iskander support the fact that the November 2014 sales did, in fact, take place, the quantity of bottles that were sold, the content of the labels, and even the subsequent retail sale and use of the e-liquids to and by customers.  (Ex.

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92806

- 7 -

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

32, 33, 51, 52).

The testimony of Robb Hackett corroborates that Tony Tellez set out to make, and made, sales of his MUFFIN MAN and MILK MAN-branded e-liquids in November 2014. (Hackett Dec at 8).

### H. Disputed Fact No. 8: Whether Tellez's Actions Including His 2014 Sales Created an Association of the MILK MAN mark with the product

The evidence supports, or at least raises a genuine issue of material fact, that by the time of the 2014 sales Tony Tellez's actions had developed trademark rights in the MILK MAN mark.

Tellez has testified that he gave samples of his MUFFIN MAN and MILK MAN e-liquids to several friends and family members, and also told several friends and family members the names he had coined for these flavors. (Tellez Dec at 5; Ex. 28 at 10).

The testimony of Tony Tellez, Berj Aliksanian, and Bill Iskander support the fact that Tony indeed sold bottles of e-liquid bearing the MILK MAN mark in November 2014.

Berj Aliksanian testified that, while Tony was in the store, he tried Tellez's MILK MAN e-liquid and "it was probably the best strawberry and cream we had.  And I tried it, my business partner tried it, employee tried it, had a couple customers try it.  And everybody seemed the [sic] like it, very basic flavor, he did it well.  So we decided to purchase it." (Ex. 51 at 54:12-16.)

Berj Aliksanian further testified that he sold at retail all of the bottles that he purchased from Tellez. (Ex. 51 at 66:8-13).

Bill Iskander testified that some people liked the e-liquid he purchased from Tellez in November 2014, and one of Iskander's employees purchased a bottle. (Ex. 52 at 49:1-11.)

### I. Disputed Fact No. 9: Whether Tony Tellez had adopted the MILK MAN mark at the time of the November 2014 sales, and whether such sales were part of a plan for commercial utilization of the MILK MAN mark.

The evidence supports, or at least raises a genuine issue of material fact, that Tellez had adopted the MILK MAN mark and his November 2014 sales were part of a plan for commercializing the MILK MAN mark.

Tellez has testified that prior to the November 2014 sales, he gave samples of MUFFIN

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

1   MAN and MILK MAN e-liquids to several friends and family members, and also told several

2   friends and family members the names that he had coined for these flavors. (Tellez Dec. at 4; Ex.

3   28 at 10).

4   Robert Hackett and Tony Tellez both have testified that Robert had told Tellez that he was

5   willing to broadly market and distribute the MUFFIN MAN and MILK MAN flavors using his

6   distribution company. (Tellez Dec at 7; Hackett Dec at 7).

7   Tellez has testified that he expected that, after he made the November 2014 sales, future

8   sales would have the backing of Robb Hackett's company. (Tellez Dec at 8).

9   In fact, immediately after the November 2014 sales, preparations were begun to broadly

10   market and distribute both MUFFIN MAN and MILK MAN-branded e-liquids. (Tellez Dec at 11;

11   Hackett Dec at 10).

12           J.  Disputed Fact No. 10: Whether AOP has shown that Statements of Defendants'

13              Personnel to particular consumers harmed AOP and Disrupted business

14              relationships of AOP.

15   The evidence supports, or at least raises a genuine issue of material fact, that any statements

16   made by Defendants' to particular consumers did nothing to harm AOP or disrupt any of AOP's

17   business relationship.

18   As part of its Statement of Undisputed Facts, AOP points to One Hit as "telling a customer

19   to 'please let everyone know that [an alleged injury] was caused by MilkMan by Vaping Rabbit.'"

20   SUF ¶164. However, in that instance, the customer's injury was caused by an apparently-defective

21   broken bottle of AOP's THE MILKMAN e-liquid (Ex. 38).

22   AOP's Statement of Undisputed Facts refers to incorrect assertions made by Defendants

23   (SUF 159-161, 163). However, AOP has not proffered evidence that it was harmed by such

24   assertions, or that it lost any sales or had any business relationships disrupted as a result of such

25   assertions.

26           K.  Disputed Fact No. 11: Assuming *arguendo* that there is infringement, whether

27              Defendants' sales are solely attributable to Plaintiff's THE MILKMAN Mark.

28   The evidence strongly supports, or at least raises a genuine issue of material fact, that

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

1  Defendants' sales of its ONE HIT WONDER – MILK MAN e-liquid are driven by significant

2  factors other than the MILK MAN mark, and that awarding Defendants' gross profits to Plaintiff

3  would be manifestly unjust.

4  Several flavors are marketed associated with the ONE HIT WONDER brand, including

5  MUFFIN MAN, MILK MAN, MY MAN, ROCKET MAN and POLICE MAN.  (Hackett Dec at

6  14-16).

7  Barbara Villegas has admitted that a customer's pleasant experience with ONE HIT

8  WONDER's MUFFIN MAN e-liquid motivated in the customer a demand for ONE HIT

9  WONDER's MILK MAN e-liquid. (Ex. 58 at 86:10-15).

10  Customers embrace value pricing of Defendants' premium e-liquids. (Hackett Dec at 5; Ex.

11  60 at 12).

12  Defendants market the ONE HIT WONDER-MILK MAN e-liquid using a robust social

13  media marketing strategy that encourages word-of-mouth advertising between customers.  (Ex. 60

14  at 13).

15  Ms. Villegas testified that even before purchasing the product, AOP believed that the

16  packaging itself may be a big draw to drive sales. (Ex. 58 at 101:23-102:2).

17  Ms. Villegas testified that she attributes most of the sales success of her THE MILKMAN

18  e-liquid to the packaging.   (Ex. 58 at 112:10-13).   Thus, the importance of the mark THE

19  MILKMAN is overshadowed by the clever packaging.

20  Daryl Martin, Defendants' damages expert, has testified, "Mr. Anson's [Plaintiff's damages

21  expert] calculation of profit disgorgement damages . . . contains numerous errors, omissions and

22  improper assumptions that serve to collectively grossly overstate the potential damages in this

23  case." (Ex. 60 at 4).

24  Defendants have produced data regarding cost of goods sold and operating expenses, which

25  data must be considered when calculating damages (Ex. 60 at 9-10).

26  Defendants' damages expert has identified at least the following flaws in Plaintiff's

27  damages assessment by their expert

28  • Grossly overstated due to inflated projections of alleged infringing revenue (Ex.

KLEIN, O'NEILL & SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA, 92606

60 at 6).

- Grossly overstated due to reduced and improper expense profile. (Ex. 60 at 7).

- Grossly overstated due to no attribution of profits to Defendants' core value drivers. (Ex. 60 at 7).

- Grossly overstated due to an exceedingly low discout rate which results in a largely inflated present value determination. (Ex. 60 at 17).

- Grossly overstated due to improper use of pre-tax royalty savings to quantify value under Releif from Royalty method.  (Ex. 60 at 18).

- Grossly overstated due to improper use of a termanl value calculation based on a faulty assumption of an indefinite life for THE MILKMAN mark. (Ex. 60 at 18).

- Grossly overstated as the value of THE MILKMAN Mark (nearly 2 months after launch) would certainly be significantly less than the value of the mark once established in the open market. (Ex. 60 at 19)

Defendants' expert's factual analysis reaches a proposed damages value about $1/25^{th}$ that demanded by AOP in its Motion.  (See Ex. 60 at 25).

L. Disputed Fact No. 12: Whether Defendants' Have Shown Intent to Fraudulently Pass Off Their MILK MAN-branded e-liquid as Plaintiff's THE MILKMAN-branded e-liquid.

The evidence strongly supports, or at least raises a genuine issue of material fact, that Defendants have shown no malice, fraud, copying or will to benefit from Plaintiff's goodwill in it's THE MILKMAN mark.

On or around October 2014, Tony Tellez gave samples of his MUFFIN MAN and MILK MAN e-liquids to several friends and family members, and also told several friends and family members the names he had coined for these flavors. (Tellez Dec at 4; Ex. 28 at 10).

Defendants' ONE HIT WONDER-MILK MAN e-liquid always prominently shows the brand ONE HIT WONDER both in the packaging and advertisements. (Hackett Dec at 22).

Defendants' ONE HIT WONDER-MILK MAN e-liquid is sold in distinctive packaging, in

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT                                          CASE NO. 5:15-cv-01586 VAP(KKx)

1  a unique bottle size, and at a high per-bottle price that clearly distinguishes it from Plaintiff's small

2  bottles and different pricing.  (Hackett Dec at 12).

3      Robert Hackett was not aware of AOP and its THE MILKMAN brand before the launch of

4  Defendants' MILK MAN e-liquid.  (Ex. 48 at 155:3-7).

5      III.    RESPONSES TO PLAINTIFF'S ALLEGEDLY "UNCONTROVERTED FACTS"

6      Defendants hereby respond to each of the allegedly "uncontroverted facts" submitted by

7  Defendants in conjunction with their Motion.  In the left-hand column, Defendants quote verbative

8  each of Plaintiff's allegedly "uncontroverted facts" and the purported supportive evidence

9  advanced by Plaintiff.  In the right-hand column, Defendants provide their responses thereto,

10  together with reference to evidence in support of Defendants' dispute.

11

| Plaintiff's Allegedly Uncontroverted Facts and Purported Support. | Defendants' Responses |
|---|---|
| 1.     In June 2014, Barbara Villegas, AOP's predecessor-in-interest, developed THE MILKMAN e-liquid. Villegas Decl. ¶ 1; Ex. 58 at 39:7-9 | Disputed. Ms. Villegas's deposition testimony states that she developed the packaging and name in June 2014.  Ex. 58 at 39:7-24. |
| 2.     Ms. Villegas conducts an e-liquid business under the name The Vaping Rabbit. Villegas Decl. ¶ 10; Ex. 58 at 12:24-13:5 | Undisputed. |
| 3.     Ms. Villegas chose the brand name, THE MILKMAN, for her new e-liquid, because she believed in the potential of the brand name and flavor profile of milk, ice cream, and fruit tarts. Villegas Decl. ¶ 2; Ex. 58 at 39:10-40:1, 72:6-9 | Disputed. Ms. Villegas main inspiration was that the unique milk carton packaging combined with the name THE MILKMAN had great potential. However, she understood, and understands, that her unique milk-carton packaging was a stronger driver of sales than any flavor. |

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT                                    CASE NO. 5:15-cv-01586 VAP(KKx)

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| | Ex. 58 at 39:7-24; 111:13-21 |
| 4.     In July 2014, Ms. Villegas proceeded with plans to manufacture and distribute THE MILKMAN e-liquid. Villegas Decl. ¶ 4; Ex. 58 at 41:16-42:20 | Disputed. This is a misleading statement.  In July 2014 Ms. Villegas set up, for example, a gmail account, but there is no evidence that she was arranging manufacturing at that time. Ex. 58 at 41:16-42:20. |
| 5.     In July 2014, Ms. Villegas contacted packaging manufacturers to produce packaging for THE MILKMAN e-liquid. Villegas Decl. ¶ 6; Ex. 4 | Disputed. This is a misleading statement, as the record only supports that Ms. Villegas obtained a quote for producing the packaging.  There is no evidence that any packaging manufacturers were instructed to produce any packaging. Ex. 4. |
| 6.     In July 2014, Ms. Villegas established Instagram and Google social media accounts under THE MILKMAN name. Villegas Decl. ¶ 5; Ex. 3 | Disputed. This is misleading to the extent that "established" could be interpreted as operating such social media accounts.  While the record supports that she obtained the accounts in July 2014, there appears to be no evidence that the accounts were openly used. Ex. 58 at 41:16-42:20. |
| 7.     Ms. Villegas established the Instagram account on July 7, 2014, under the social media handle @themilkmaneliquid. Villegas Decl. ¶ 5; Ex. 3 | Disputed. This is misleading to the extent that "established" could be interpreted as operating such social media account.  While the record supports that she obtained the accounts in July 2014, there appears to be no evidence that the |

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

- 13 -

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

KLEIN, O'NEILL & SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| | account was openly used. |
| | Ex. 58 at 41:16-42:20. |
| 8.    Ms. Villegas established the Gmail account on July 7, 2014, under the email address themilkmaneliquid@gmail.com. Villegas Decl. ¶ 5; Ex. 3 | Disputed. This is misleading to the extent that "established" could be interpreted as operating such social media account.   While the record supports that she obtained the account in July 2014, there appears to be no evidence that the account was openly used. Ex. 58 at 41:16-42:20. |
| 9.    By November 2014, Ms. Villegas had purchased a large order of packaging, labels, and promotional materials bearing THE MILKMAN mark. Villegas Decl. ¶¶ 7-8; Ex. 5; Ex. 6 | Undisputed. |
| 10.    Ms. Villegas was so excited about the potential for the brand that she announced it to the vaping community in a series of posts on Instagram on December 3 and 4, 2014. Villegas Decl. ¶¶ 11-13 | Undisputed. |
| 11.    On December 3, 2014, Ms. Villegas placed two posts on Instagram directing viewers to a "sneak peek" video for THE MILKMAN, which she had uploaded to thevapingrabbit.com. Villegas Decl. ¶ 12; Ex. 8; Ex. 9 | Undisputed. |
| 12.    Ms. Villegas included the hashtag "#themilkman" in the comments for the posts. | Undisputed. |

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

| | |
|---|---|
| Villegas Decl. ¶ 12; Ex. 8; Ex. 9 | |
| 13.     The December 4, 2014, post announced the imminent launch of the brand, and included promotional postcards featuring THE MILKMAN name and the milk carton Ms. Villegas had manufactured in November. Villegas Decl. ¶ 13; Ex. 10 | Undisputed. |
| 14.     The buzz from the posts was so significant that Ms. Villegas met with AOP (her distributor) in December 2014 to discuss the possibility of AOP becoming the exclusive distributor for THE MILKMAN. Villegas Decl. ¶¶ 14-16; Ex. 58 at 58:2-13; Zhang Decl. ¶¶ 3-4; Ex. 57 at 27:25-28:8 | Disputed. Ms. Villegas's deposition testimony is that she was looking for a distributor as early as September 2014.   As AOP was already a customer (not yet her distributor), she approached AOP to become her distributor for both her existing Vaping Rabbit line of E-liquid and her new flavor. Ex. 58 at 86:19-88:3; 100:8-15; 100:21-102:7. |
| 15.     AOP immediately saw the potential in the brand. Zhang Decl. ¶ 5; Ex. 57 at 115:9-116:2 | Disputed. This statement is misleading. Ms. Villegas's testimony is that AOP immediately agreed that the *packaging* for her THE MILKMAN product would be a big draw to drive sales. Interestingly, AOP personnel didn't even vape the e-liquid at the first meeting. Ex. 58 at 101:5-102:4. |
| 16.     On January 1, 2015, AOP agreed to become the exclusive distributor for THE MILKMAN e- liquid. Villegas Decl. ¶ 17; Zhang Decl. ¶ 6 | Undisputed. |
| 17.     On January 5, 2015, AOP and Ms. Villegas entered into an Exclusive | Undisputed. |

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

- 15 -

CASE NO. 5:15-cv-01586 VAP(KKx)

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| Distribution Agreement.<br>Villegas Decl. ¶ 18; Zhang Decl. ¶ 7; Ex. 11 | |
| 18.  On January 5, 2015, AOP placed its first order of THE MILKMAN e-liquid for 20,000 bottles.<br>Villegas Decl. ¶ 19; Zhang Decl. ¶ 8; Ex. 12 | Undisputed. |
| 19.  This order of 20,000 bottles was the largest order Ms. Villegas had for a single flavor, compared to her typical 5,000 bottle orders.<br>Villegas Decl. ¶ 19 | Disputed.<br><br>This is misleading.  Ms. Villegas deposition testimony was that her best-selling Vaping Rabbit flavor – The Hatter, typically sold "maybe" 5,000 bottles per month.<br>Ex. 58 at 108:2-12. |
| 20.  On January 22, 2015, AOP placed an order for another approximately 18,000 bottles of THE MILKMAN e-liquid.<br>Zhang Decl. ¶ 10; Ex. 13 | Undisputed. |
| 21.  Between January 2015 and April 2015, AOP sold over ▮▮▮▮ bottles of THE MILKMAN e-liquid nationwide.<br>Zhang Decl. ¶ 13; Ex. 16 | Disputed.<br><br>Ex. 16 presents new evidence that was not produced by Plaintiff prior to the close of discovery in this case.  Mr. Zhang, in his deposition, testified that his company does not generate sales reports (Ex. 57 at 75:2-78:1), which Exhibit 16 appears to be based upon.  Thus, Defendants have not been given an opportunity to review this sales data.  Additionally, in light of Mr. Zhang's deposition testimony, it is unclear how he would be qualified to declare that Ex. 16 is a true and correct summary of what it purports to be when he testified he doesn't deal with such reports, particularly without providing more |

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| | detail as to where the data was obtained and prepared. As such, the data in Ex. 16 is inherently unreliable. |
| 22.    By May 1, 2015, AOP had sold its THE MILKMAN e-liquid into all 50 states.<br>Zhang Decl. ¶ 14; Ex. 16 | Disputed.<br><br>Ex. 16 presents new evidence that was not produced by Plaintiff prior to the close of discovery in this case.  Mr. Zhang, in his deposition, testified that his company does not generate sales reports (Ex. 57 at 75:2-78:1), which Exhibit 16 appears to be based upon. Thus, Defendants have not been given an opportunity to review this sales data. Additionally, in light of Mr. Zhang's deposition testimony, it is unclear how he would be qualified to declare that Ex. 16 is a true and correct summary of what it purports to be when he testified he doesn't deal with such reports, particularly without providing more detail as to where the data was obtained and prepared. As such, the data in Ex. 16 is inherently unreliable. |
| 23.    During the period between January 5, 2015, and May 1, 2015, AOP's sales were growing nationwide.<br>Zhang Decl. ¶ 14; Ex. 16 | Disputed.<br><br>Ex. 16 presents new evidence that was not produced by Plaintiff prior to the close of discovery in this case.  Mr. Zhang, in his deposition, testified that his company does not generate sales reports (Ex. 57 at 75:2-78:1), which Exhibit 16 appears to be based upon. Thus, Defendants have not been given an opportunity to review this sales data. Additionally, in light of Mr. Zhang's |

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

- 17 -

CASE NO. 5:15-cv-01586 VAP(KKx)

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| | deposition testimony, it is unclear how he would be qualified to declare that Ex. 16 is a true and correct summary of what it purports to be when he testified he doesn't deal with such reports, particularly without providing more detail as to where the data was obtained and prepared. As such, the data in Ex. 16 is inherently unreliable. |
| 24.      Many of the states in which AOP sold the least in terms of volume had more sales per capita than the states with the most sales volume.<br><br>Kamelgard Decl. ¶ 5; Request for Judicial Notice, Ex. C | Disputed.<br><br>Even though Mr. Kamelgard is listed as the source of this information, in fact it relies on the data from Ex. 16 which, as discussed above, presents new evidence that was not produced by Plaintiff prior to the close of discovery in this case.   Mr. Zhang, in his deposition, testified that his company does not generate sales reports (Ex. 57 at 75:2-78:1), which Exhibit 16 appears to be based upon.   Thus, Defendants have not been given an opportunity to review this sales data.  Additionally, in light of Mr. Zhang's deposition testimony, it is unclear how he would be qualified to declare that Ex. 16 is a true and correct summary of what it purports to be when he testified he doesn't deal with such reports, particularly without providing more detail as to where the data was obtained and prepared. As such, the data in Ex. 16 is inherently unreliable.<br><br>Defendants do not dispute the estimated state populations. |
| 25.      This popularity and success | Disputed. |

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

| | |
|---|---|
| was due in large part to AOP's Internet advertising.<br>Zhang Decl. ¶ 15 | This statement is unclear as to what popularity and success is being discussed.  If it is referring to sales success of AOP's THE MILKMAN e-liquid, then this statement is inconsistent with other testimony.  For example, Ms. Villegas markets her Vaping Rabbit lines extensively through social media outlets such as Instagram and Facebook (Ex. 58 at 52:11-20).<br><br>In fact, Ms. Villegas testified that even before purchasing the product, AOP believed that the packaging itself may be a big draw to drive sales (Ex. 58 at 101:23-102:2).  In fact, Ms. Villegas attributes most of the sales success to the packaging.  Ex. 58 at 112:10-13.  This would make more sense than attributing success to using the same social media outlets that thousands of other e-liquids use. |
| 26.    AOP's Internet advertising included email blasts and active social media accounts.<br>Zhang Decl. ¶ 15; Ex. 57 at 96:13-97:2 | Undisputed. |
| 27.    The vaping community, the customers of the parties' e-liquid, is very active and reputation can be spread quickly online and through word-of- mouth.<br>Villegas Decl. ¶ 14; Ex. 58 at 53:11-19; Ex. 51 at 45:3-4 ("the way it works in this industry, again everything is word of mouth") | Undisputed. |
| 28.    AOP's online viewership and customer base also grew during the period between January 5, 2015, and May 1, 2015. | Disputed.<br>Ex. 17 presents an analysis that was not produced prior to the close of discovery, |

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

| Zhang Decl. ¶ 16; Ex. 17; Ex. 18 | despite apparently being available. Similarly, Ex. 18 present information that was not produced prior to the close of discovery, despite apparently being available, and despite Defendants' discovery requests. |
|---|---|
| 29.     Between January 2015 and May 2015, new visitors to AOP's website grew at a consistent pace in every state. Zhang Decl. ¶ 16; Ex. 17; Ex. 18 | Disputed. Ex. 17 presents an analysis that was not produced prior to the close of discovery, despite apparently being available. Similarly, Ex. 18 present information that was not produced prior to the close of discovery, despite apparently being available, and despite Defendants' discovery requests. |
| 30.     As with AOP's sales volume, many of the states in which AOP had the least number of visitors to its website had more visitors per capita than the states with the most visitors. Kamelgard Decl. ¶ 6; Request for Judicial Notice, Ex. C | Disputed. Although this statement purports to rely on Mr. Kamelgard, in fact it also relies on data obtain from Ex. 17 & 18. Ex. 17 presents an analysis that was not produced prior to the close of discovery, despite apparently being available. Similarly, Ex. 18 present information that was not produced prior to the close of discovery, despite apparently being available, and despite Defendants' discovery requests. |
| 31.     AOP acquired a national reputation for its e-liquid before Defendants' MILK MAN e-liquid was sold to the general public in May 2015. Zhang Decl. ¶ 17 | Disputed. Mr. Zhang has not presented any evidence that he is an expert capable of competently opining whether any product has "a national reputation". Further, AOP does not appear to have performed any consumer survey or expert analysis.     Instead, this purported national |

KLEIN, O'NEILL & SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

DEFENDANTS' STATEMENT OF ISSUES OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| | reputation would have to be determined by a qualified finder of fact |
| 32.      As early as April 30, 2015, before Defendants began selling their MILK MAN e-liquid, in the comments of One Hit Wonder's Instagram posts about the MILK MAN, customers asked about AOP's rights to the mark. Zhang Decl. ¶ 26; Ex. 19; Ex. 38 | Disputed. Defendant Tellez sold his MILK MAN e-liquid in November 2014. Defendants do not dispute that a consumer asked about AOP's rights to the mark MILK MAN on April 30, 2015. |
| 33.      By the time Defendants sold their MILK MAN e-liquid, William Hackett, who was responsible for Defendants' social media, knew of THE MILKMAN e-liquid. Ex. 48 at 72:18-73:2 (William Hackett is responsible for social media), 132:8-25 ("Yeah, it's definitely safe to say that they knew that there was another brand in existence."); Ex. 38 | Disputed. This statement does not accurately depict Robb Hackett's testimony in Ex. 48 at 132:21-133:6. In fact Mr. Hackett testified that it was safe to say that William OR Chris and Jacob knew there was another brand in existence. |
| 34.      William Hackett is the younger brother of Robb Hackett, who is the Principle of Defendants Steam Distribution, LLC, One Hit Wonder, Inc., and HAVZ, LLC Dba Steam Wholesale. Ex. 48 at 30:30-31:3; Ex. 53 at 17:6-8, 89:5-7 | Partially disputed, as Robb Hackett is more accurately portrayed as one of the principals of Defendants.  Otherwise undisputed. |
| 35.      William Hackett testified that he did not tell Robb Hackett, about The Milkman, Vaping Rabbit, or the milk carton because he "assumed they'd already know. You know, Rob's way more on this industry that I am…" I figure he's the one who's working with all the brands and stuff." Ex. 53 at 219:18-220:13 | Undisputed. |

- 21 -

KLEIN, O'NEILL & SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| 36.      Given the early success of THE MILKMAN brand, on March 26, 2015, AOP acquired all right, title and interest in and to THE MILKMAN mark from Ms. Villegas. Villegas Decl. ¶ 20; Zhang Decl. ¶ 12; Ex. 15 | Disputed.<br><br>Defendants do not dispute AOP acquisition. However, there is no evidence to support the stated motivation. |
| 37.      During this time period, AOP decided to protect its brand by filing a federal trademark application for its THE MILKMAN mark with the United States Patent and Trademark Office ("USPTO"). Zhang Decl. ¶ 18 | Undisputed. |
| 38.      AOP's counsel did a brief clearance check of the USPTO online records, only to discover that Defendant Tellez had filed a trademark application for the mark MILK MAN for e-liquid. Zhang Decl. ¶¶ 19-20; Ex. 57 at 67:3-23, 68:4-6 | Undisputed. |
| 39.      Tellez filed the trademark application for MILK MAN in his own name on March 4, 2015. Ex. 25 ¶ 10; Ex. 31 | Undisputed. |
| 40.      Tellez's trademark application was assigned the serial number 86553215. Ex. 25 ¶ 10; Ex. 31 | Undisputed. |
| 41.      At the time Defendant Tellez filed the trademark application for the MILK MAN mark, he was employed as a warehouse worker for Defendants. Ex. 50 at 48:3-7, 68:2-10 | Undisputed. |
| 42.      Tellez did not perform any trademark availability searches before filing | Undisputed. |

DEFENDANTS' STATEMENT OF ISSUES OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| his trademark application for the MILK MAN mark.<br>Ex. 50 at 94:14-25 | |
| 43.     In his trademark application for MILK MAN, Tellez alleged a date of first use of November 1, 2014.<br>Ex. 31 | Undisputed. |
| 44.     The specimen of use Tellez filed with the USPTO for his MILK MAN trademark application consisted of a roll of labels.<br>Ex. 31 | Undisputed. |
| 45.     Defendants admitted these labels were not used until May 2015.<br>Ex. 48 at 96:5-12 (labels used before the current MILK MAN labels were the plain labels Tellez used); Exs. 34-37 (current MILK MAN bottles not sold until May 2015) | Disputed.<br>This statement is attributing statements to Defendants that were never made. |
| 46.     The earliest "sale" of MILK MAN e-liquid Defendants can prove was November 14, not November 1, 2014 (the date claimed in Tellez's trademark application for the MILK MAN mark).<br>Ex. 29, No. 13; Ex. 33 | Disputed.<br>AOP's use of the quotation marks about the term sale is misleading.   The November 14 2014 transaction was a sale, not a "sale", whatever "sale" means.  Notably, AOP's use of quotation marks is an admission on its part that there is a genuine factual dispute concerning the facts surrounding the November 2014 sales. |
| 47.     Tellez stated in his testimony that he did not know why his trademark application for MILK MAN claimed a first use date of November 1, 2014.<br>Ex. 50 at 107:17-20 | Disputed.<br>In fact, Mr. Tellez stated that he didn't "recall" why the application stated November 1st.<br>Ex. 50 at 107:17-20. |

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

KLEIN, O'NEILL & SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92806

| | |
|---|---|
| 48.    AOP researched the alleged "use" by Tellez and found no public evidence of any sales of MILK MAN e- liquid by Tellez.<br>Zhang Decl. ¶ 22 | Undisputed. |
| 49.    AOP's research confirmed that Tellez also filed a federal trademark application for ONE HIT WONDER E-LIQUID (Ser. No.  86553281) on March 4, 2014.<br>Zhang Decl. ¶ 21 | Undisputed. |
| 50.    AOP's research identified the Facebook social media page and website for www.onehitwondereliquid.com, which were associated with Defendant One Hit Wonder.<br>Zhang Decl. ¶ 21 | Undisputed. |
| 51.    As of April 28, 2015, One Hit Wonder's Facebook social media page did not mention MILK MAN e- liquid.<br>Ex. 19 (first social media post for MILK MAN e-liquid dated April 29, 2015) | Disputed.<br>Ex. 19 does not support this assertion. |
| 52.    As of April 28, 2015, One Hit Wonder's website, www.onehitwondereliquid.com, did not mention MILK MAN e-liquid.<br>Ex. 19 (first social media post for MILK MAN e-liquid dated April 29, 2015, states the product will be listed on the website after the official announcement) | Disputed.<br>Ex. 19 does not support this assertion. |
| 53.    In April 2015, when AOP's agents called One Hit Wonder to purchase MILK MAN e-liquid they were told the | Undisputed. |

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

| | |
|---|---|
| product was not available for sale, and would not be released until May 2015.<br><br>Zhang Decl. ¶ 22 | |
| 54.     Based on the foregoing, AOP believed that the sales claimed in Tellez's federal trademark application for MILK MAN had been fabricated and that the application was fraudulent.<br><br>Zhang Decl. ¶ 23 | Undisputed. |
| 55.     On May 4, 2015, AOP filed its trademark applications for THE MILKMAN (Ser. No. 86618735) in standard word format and THE MILKMAN (Ser. No. 86618769) in stylized form.<br><br>Zhang Decl. ¶ 24 | Undisputed. |
| 56.     In May 2015, Defendants One Hit Wonder, Steam Distribution, and Steam Wholesale, starting selling e- liquid under the mark MILK MAN.<br><br>Exs. 34-37 | Undisputed. |
| 57.     Defendants did not perform any trademark availability searches before beginning to sell their MILK MAN e-liquid.<br><br>Ex. 50 at 94:14-25 | Undisputed. |
| 58.     At that point, AOP was able to confirm actual sales in commerce by One Hit Wonder of e-liquid under the MILK MAN mark.<br><br>Zhang Decl. ¶ 25; Ex. 57 at 70:4-9 | Undisputed. |
| 59.     On June 24, 2015, AOP sent a letter to Defendants demanding that they cease all use of the MILK MAN mark. | Undisputed. |

- 25 -

| | |
|---|---|
| Gatien Decl. ¶ 18; Ex. 41 | |
| 60.     Defendants did not respond to AOP's June 24, 2015 letter.<br>Gatien Decl. ¶ 19 | Undisputed. |
| 61.     AOP sent a follow-up letter on July 8, 2015.<br>Gatien Decl. ¶ 20; Ex. 42 | Undisputed. |
| 62.     On July 17, Defendants' counsel finally replied, stating that he was "investigating the facts."<br>Gatien Decl. ¶ 21; Ex. 43 | Undisputed. |
| 63.     In his July 17 letter, Defendants' counsel did not make any claims alleging Defendants' priority of use.<br>Ex. 43 | Undisputed. |
| 64.     In his July 17 letter, Defendants' counsel did not make any claims of superior ownership rights to the name MILK MAN on behalf of Defendants.<br>Ex. 43 | Undisputed. |
| 65.     In his July 17 letter, Defendants' counsel did not make any claims against AOP for infringement of Defendants' MILK MAN mark.<br>Ex. 43 | Undisputed. |
| 66.     Instead, Defendants' counsel requested in his July 17 letter that AOP "provide us with the details of your investigation that led you to conclude that my client did not sell any e-liquid under the mark prior to an up to the January 5, 2015?"<br>Ex. 43 | Undisputed. |

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

- 26 -

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

| | |
|---|---|
| 67.    On July 24, 2015, AOP's counsel sent a letter to Defendants' counsel maintaining AOP's claims of infringement, demanding a response by July 31, 2015, or AOP would file the instant lawsuit to protect its rights by August 5, 2015.<br>Gatien Decl. ¶ 22; Ex. 44 | Undisputed. |
| 68.    Defendants did not respond to AOP's July 24, 2015, letter.<br>Gatien Decl. ¶ 23 | Undisputed. |
| 69.    On August 5, 2015, AOP filed this lawsuit.<br>Gatien Decl. ¶ 24 | Undisputed. |
| 70.    On August 11, 2015, AOP requested, and was granted, a 90-day extension of time to file a notice of opposition to Tellez's MILK MAN trademark application.<br>Gatien Decl. ¶ 25 | Undisputed. |
| 71.    Defendants did not assert any prior rights or make any claims against AOP for infringement of their MILK MAN mark until filing their Counterclaim in this Action, on August 27, 2015.<br>Ex. 30, No. 197 | Undisputed. |
| 72.    In March 2016, over six months after One Hit Wonder filed its Counterclaim, One Hit Wonder testified that it did not think AOP or AOP's use of THE MILKMAN mark was harming Defendants' business or Defendants' mark.<br>Ex. 48 at 155:3-17; 156:5-10, 160:6-15 | Disputed.<br>This is misleading, as although One Hit Wonder did testify as such, One Hit Wonder also testified that further analysis of One Hit Wonder's sales and AOP's sales could find that One Hit Wonder was, indeed, damaged.<br>Ex. 48 at 167:7-17. |

KLEIN, O'NEILL & SINGH, LLP<br>16755 VON KARMAN AVE., SUITE 275<br>IRVINE, CALIFORNIA 92606

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| 73.     In March 2016, One Hit Wonder testified that it had not conducted an analysis of harm before asserting its Counterclaim.<br>Ex. 48 at 167:7-17 | Undisputed. |
| 74.     In March 2016, One Hit Wonder testified that it could not say it had a basis for its Counterclaim.<br>Ex. 48 at 160:16-22 | Undisputed. |
| 75.     In March 2016, One Hit Wonder testified that no one on behalf of One Hit Wonder told its attorneys that it believed AOP's use of AOP's THE MILKMAN mark was damaging Defendants' business.<br>Ex. 48 at 160:23-161:4 | Undisputed. |
| 76.     On or about September 30, 2015, after the commencement of this action and during the 90-day extension given to AOP to oppose Tellez's federal trademark application, Defendant One Hit Wonder filed a California state trademark application for MILK MAN for e-liquid, the same goods identified in the federal MILK MAN application.<br>Gatien Decl. ¶ 26; Ex. 45 | Undisputed. |
| 77.     There is no opposition window for third parties to oppose a California trademark application.<br>Request for Judicial Notice ¶ 4 | Undisputed. |
| 78.     There is no public database for a third party to search which trademark applications have been filed in California | Undisputed. |

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

| | |
|---|---|
| without formally requesting information. Request for Judicial Notice ¶ 4 | |
| 79.    Defendants did not inform AOP of their California trademark application until January 5, 2016. Gatien Decl. ¶ 29, Ex. 47 | Undisputed. |
| 80.    One Hit Wonder's California MILK MAN mark matured to registration on October 21, 2015 (Cal. Reg. No. 120457). Gatien Decl. ¶ 27; Ex. 46 | Undisputed. |
| 81.    On October 26, 2015, five days *after* the California MILK MAN mark registered in the name of One Hit Wonder, Tellez claims to have assigned all right, title and interest in and to the MILK MAN mark to One Hit Wonder. Ex. 25 ¶ 11 | Disputed. This is misleading.  The document signed by Tellez on October 26, 2015 acknowledged that Tellez had already assigned all of his rights, title and interest in the mark.    More specifically, it states, "WHEREAS, Assignor [Tellez] previously assigned all of Assignor's rights, title and interest in and to the Marks to Assignee, and Assignor and Assignee wish to commemorate such assignment by this writing."  The document goes on to state, "Assignor confirms that it has assigned and does hereby assign to Assignee all of its rights, title and interest of every kind, nature or description in and to the Marks. |
| 82.    California is the largest source of e-liquid sales for AOP and Defendants. Ex. 16; Exs. 34-37 | Undisputed. |
| 83.    The majority of e-liquid brands are from Southern California. Ex. 48 at 144:12-24 | Disputed. Mr. Hackett's testimony was actually that he "believed" the majority of juice brands are in |

KLEIN, O'NEILL & SINGH, LLP
16755 VON KARMAN AVE.   SUITE 275
IRVINE, CALIFORNIA 92606

DEFENDANTS' STATEMENT OF ISSUES OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| | California.   Ex. 48 at 144:12-24. |
| 84.      On November 13, 2015, AOP opposed the federal trademark application for the MILK MAN mark before the Trademark Trial and Appeal Board.<br>Gatien Decl. ¶ 28 | Undisputed. |
| 85.      At that point, AOP was unaware that Defendants had applied for or registered the California trademark registration for MILK MAN.<br>Gatien Decl. ¶ 29 | Undisputed. |
| 86.      On January 5, 2016, Defendants informed AOP of One Hit Wonder's California trademark registration.<br>Gatien Decl. ¶ 29; Ex. 47 | Undisputed. |
| 87.      On January 5, 2016, Defendants told AOP that One Hit Wonder obtained the California trademark registration for MILK MAN, and, therefore, intended to amend Defendants' counterclaim to add a California statutory cause of action for infringement of the registered state trademark.<br>Ex. 47 | Undisputed. |
| 88.      Prior to May 2015, the only "sales" of MILK MAN e-liquid were by Tellez.<br>Ex. 29, No. 13; Ex. 26, No. 5; Exs. 32-33 | Disputed.<br>AOP's use of the quotation marks about the term sales is misleading.  The November 2014 transactions were sales, not "sales", whatever "sales" means.    Notably, AOP's use of quotation marks is an admission on its part that there is a genuine factual dispute concerning the facts surrounding the November 2014 sales. |

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| 89. Despite claiming a date of first use of November 1, 2014, in his trademark application for the MILK MAN mark, Tellez has no documentary evidence of any "sales" of MILK MAN e-liquid prior to November 14, 2014.<br><br>Ex. 29, No. 13; Ex. 26, No. 5; Exs. 32-33 | Disputed.<br><br>AOP's use of the quotation marks about the term sales is misleading. The November 2014 transactions were sales, not "sales", whatever "sales" means. Notably, AOP's use of quotation marks is an admission on its part that there is a genuine factual dispute concerning the facts surrounding the November 2014 sales. |
| 90. The November 14, 2014, "sale" of MILK MAN e-liquid to LA Vapor Works consisted of only 2 bottles.<br><br>Exs. 32 | Disputed.<br><br>AOP's use of the quotation marks about the term sale is misleading. The November 14 2014 transaction was a sale, not a "sale", whatever "sale" means. Notably, AOP's use of quotation marks is an admission on its part that there is a genuine factual dispute concerning the facts surrounding the November 2014 sales. |
| 91. The November 21, 2014, "sale" of MILK MAN e-liquid to Whittier Vapes consisted of only 6 bottles.<br><br>Exs. 33 | Disputed.<br><br>AOP's use of the quotation marks about the term sale is misleading. The November 21 2014 transaction was a sale, not a "sale", whatever "sale" means. Notably, AOP's use of quotation marks is an admission on its part that there is a genuine factual dispute concerning the facts surrounding the November 2014 sales. |
| 92. LA Vapor Works and Whittier Vapes were close to Tellez's residence in Whittier, California.<br><br>Ex. 49 at 152:18-19, 153:5-13; Request for Judicial Notice ¶¶ 6-7 | Disputed.<br><br>This statement is unclear as to what is meant by "close". |
| 93. On November 14, 2014, | Undisputed. |

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| Tellez claims to have sold 2 bottles of "Milkman" e-liquid to Berj Aliksanian, the owner of LA Vapor Works, for a total of $40. Ex. 32 | |
| 94.        Tellez chose Aliksanian because of their friendship and because Aliksanian would be an "easy one for helping [Tellez] out." Ex. 50 at 186:4-23; *see also* Ex. 50 at 180:23-25 (testifying that he met Aliksanian before 2012); Ex. 50 at 185:7-9 (calling Aliksanian a friend in November 2014) | Undisputed. However, for the sake of clarity, Tellez and Aliksanian are not close friends. For example, Aliksanian testified that they do not hang out socially outside of work. Ex. 51 at 53:7-9. |
| 95.        Aliksanian characterized the transaction as Tellez giving him samples and then offering to pay Tellez because Aliksanian "thought [Tellez] could probably use the money." Ex. 51 at 52:9-17 | Disputed. This characterization is incomplete. Aliksanian's purchasing decision was not simply based on thinking Tellez could use the money. For example, Aliksanian testified, regarding Tellez's MILK MAN e-liquid, "it was probably the best strawberry and cream we had. And I tried it, my business partner tried it, employee tried it, had a couple customers try it. And everybody seemed the [sic] like it, very basic flavor, he did it well. So we decided to purchase it." Ex. 51 at 54:12-16. Also, Aliksanian's helpful style wasn't just limited to Tellez. He further testified that it wasn't uncommon for him to pay for sample bottles. "If they ask me to pay for it and I really like it, I'll pay for it." Ex. 51 at 23:18-19. |
| 96.        Aliksanian admitted that he is "not a really good businessman" in that he | Disputed. It is a mischaracterization of Aliksanian's |

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| "tend[s] to overpay for things" and only paid for the bottles because Tellez "needed money." <br><br> Ex. 51 at 64:21-65:5 | testimony to say he <u>only</u> paid for the bottles because Tellez needed the money. <br><br> Aliksanian's purchasing decision was not simply based on thinking Tellez could use the money. For example, Aliksanian testified, regarding Tellez's MILK MAN e-liquid, "it was probably the best strawberry and cream we had. And I tried it, my business partner tried it, employee tried it, had a couple customers try it. And everybody seemed the [sic] like it, very basic flavor, he did it well. So we decided to purchase it." Ex. 51 at 54:12-16. <br><br> He further testified that it wasn't uncommon for him to pay for sample bottles. "If they ask me to pay for it and I really like it, I'll pay for it." Ex. 51 at 23:18-19. |
| 97.   According to Aliksanian, if Tellez had approached another purchaser, the purchaser would have said "No, just give me these for free. They don't have, you know, right labeling. I can't really sell it." <br> Ex. 51 at 65:6-9 | Undisputed. |
| 98.   According to Aliksanian, if Tellez "came with that label now, most shops would tell him, you know, 'Just go away. We're not even going to try that.'" <br> Ex. 51 at 25:24-26:6 | Undisputed. |
| 99.   Aliksanian testified that, in November 2014, his minimum order would normally have been at least ten bottles. <br> Ex. 51 at 49:19-22 | Disputed. <br><br> Aliksanian was flexible. He also testified that he's open to purchasing smaller amounts – "Sometimes I can only get my hands on five. |

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

| | |
|---|---|
| | I'm not going to say no to the five; right?"  Ex. 51 at 67:1-2. |
| 100.    Aliksanian testified in his deposition that the invoice for the November 14 "sale" was written on November 14, 2014. Ex. 51 at 57:14-18 | Disputed. AOP's use of the quotation marks about the term sale is misleading.   The November 14 2014 transaction was a sale, not a "sale", whatever "sale" means.  Notably, AOP's use of quotation marks is an admission on its part that there is a genuine factual dispute concerning the facts surrounding the November 2014 sales. Otherwise undisputed. |
| 101.    Aliksanian testified in his deposition that the invoice for the November 14 "sale" was signed on November 14, 2014. Ex. 51 at 57:19-20 | Disputed. AOP's use of the quotation marks about the term sale is misleading.   The November 14 2014 transaction was a sale, not a "sale", whatever "sale" means.  Notably, AOP's use of quotation marks is an admission on its part that there is a genuine factual dispute concerning the facts surrounding the November 2014 sales. Otherwise undisputed. |
| 102.    Aliksanian testified in his deposition that, on November 14, 2014, the signatures were written on the invoice as a memento for Tellez, then the invoice was scanned, and then the phone numbers were written on the invoice because Tellez wanted the invoice. Ex. 51 at 57:25-58:23 | Undisputed. |
| 103.    Tellez testified that he was "sure" the phone number was written at the | Disputed. Tellez testified that the "phone number was |

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| same time as the rest of the invoice, on November 14, 2014.<br>Ex. 50 at 192:11-15, 193:12-14 | written at the same time as all the rest of the information on this"  Ex. 50 at 192:11-15 and "at the same time as this was written" Ex. 50 at 193: 11-13. |
| 104.    Aliksanian testified that he did not change anything on the document before giving it to Tellez that day.<br>Ex. 51 at 90:7-9 | Undisputed. |
| 105.    Neither Tellez nor Aliksanian made any changes to their deposition transcripts within 30 days of the transcripts becoming available.<br>Gatien Decl. ¶ 39 | Undisputed. |
| 106.    In August 2016, Tellez "clarified," that he created the signature portion of the hand-written invoice dated November 14, 2014, in July 2015.<br>Ex. 62 | Undisputed. |
| 107.    The metadata of the scanned invoice, prior to the addition of the phone number, shows that the invoice was scanned on July 22, 2015.<br>Ex. 63 | Undisputed. |
| 108.    Aliksanian testified that Tellez mentioned one of AOP's June- July 2015 cease and desist letters when they spoke in July 2015.<br>Ex. 51 at 94:16-18 | Undisputed. |
| 109.    Tellez also claims to have sold 6 bottles of MILK MAN e-liquid to Nabil Iskander, the owner of Whittier Vapes, on November 21, 2014, for a total of $120. | Undisputed. |

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| Ex. 33 | |
|---|---|
| 110.    Whittier Vapes is in Whittier, California, where Tellez lives.<br>Ex. 50 40:8-9; Ex. 52 at 14:4-17 | Disputed.<br>Tellez no longer lives in Whittier. |
| 111.    Iskander considers Tellez to be "like a little brother."<br>Ex. 52 at 58:9-10 | Disputed.<br>This isn't complete, as when he was first asked if he considered Tony to be like almost a little brother he testified, "Yes and no." Ex. 52 at 58:1-4. |
| 112.    Tellez went to Iskander because Iskander was a friend who could do Tellez a favor.<br>Ex. 50 at 208:2-13, 208:25-209:21 | Disputed.<br>Tellez went to Iskander at the urging of his brother because his brother was friends with Iskander.<br>Ex. 50 at 208:2-5. |
| 113.    Iskander testified that the transaction was "done on consignment just as a favor to Tony."<br>Ex. 52 at 52:3-7 | Undisputed. |
| 114.    Iskander testified that the transaction "wasn't normal business practice" and "was more like a friends thing," which is why Tellez "just left" the e-liquid for Iskander to "try it out."<br>Ex. 52 at 20:10-20 | Disputed.<br>The characterization is misleading in that it left out an expectation that Iskander would put it up for sale. |
| 115.    Iskander testified that he was "just trying to help [Tellez] out."<br>Ex. 52 at 78:4-18 | Undisputed. |
| 116.    Iskander testified that he did not "think it's going anywhere."<br>Ex. 52 at 48:20-25 | Undisputed.<br>However, Iskander also noted that some people liked Tellez's e-juice and that, for example, one |

| | |
|---|---|
| | of Iskander's employees paid for a bottle. Ex. 52 at 49:1-11. |
| 117.    Tellez testified that the invoice dated November 21, 2014, "should have been created" on that day and that his best recollection and belief were that it was created on that day.<br>Ex. 50 at 202:22-203-24, 234:24-235:1 | Disputed.<br>When asked "to the best of your recollection, what date was this created?" Tellez replied "I'm guessing." |
| 118.    Iskander also testified that the invoice dated November 21, 2014, was created on or about that date.<br>Ex. 52 at 43:23-24 | Disputed.<br>Iskander's answer was not so cut and dry.  He first responded that "I ever paid attention." Ex. 52 at |
| 119.    Tellez testified that he left the original of the November 21 invoice with Iskander.<br>Ex. 50 at 204:2-14 | Disputed.<br>In fact, when asked whether Iskander kept the invoice, Tony answered, "Honestly, I don't recall."  Ex at 50; |
| 120.    Tellez testified that he picked up the original invoice in December 2014, when Whittier Vapes paid the amount of the invoice as a consignment.<br>Ex. 50 at 204:2-14 | Disputed.<br>In fact, Tellez says he "left it with them."<br>Ex. 50 at 2014:11-14. |
| 121.    Tellez testified that he had to show Robb Hackett a copy of the invoice to prove he got paid.<br>Ex. 50 at 205:18-206:1 | Undisputed. |
| 122.    Tellez testified that he showed Hackett the copy of the invoice.<br>Ex. 50 at 206:6-12 | Undisputed. |
| 123.    Hackett testified that he never saw the invoice. | Undisputed. |

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

| | |
|---|---|
| Ex. 49 at 152:13-17 ("How did he confirm it? Actually he didn't. He just told me that he made sales.") | |
| 124.    Messrs. Tellez, Aliksanian, and Hackett did not make any changes to their deposition transcripts within 30 days of the transcripts becoming available.<br>Gatien Decl. ¶ 39 | Undisputed. |
| 125.    In August 2016, Tellez "clarified" that the invoice that he previously asserted was created on November 21, 2014, was actually created in July 2015.<br>Ex. 62; Ex. 29, Nos. 15-16 | Disputed.<br>More accurately, In August 2016, Tellez clarified that the invoice dated November 21, 2014 was actually created in July 2015. Ex. 62. |
| 126.    Based on an impression left on the purported November 14 invoice, AOP's forensic expert confirmed that the purported November 21 invoice was written directly on top of the November 14 invoice, which means that it was written after July 22, 2015.<br>Ex. 61 | Disputed.<br>This statement is inconsistent with the forensic expert's report, which opines that the invoice dated November 21, 2014 was created "likely in March 2015". |
| 127.    Tellez did not "clarify" his testimony until after AOP's forensic expert's report was produced to Defendants.<br>Ex. 61; Ex. 62 | Undisputed. |
| 128.    Tellez stated that the November 2014 sales were made by him individually.<br>Ex. 50 at 85:22-86:2 | Undisputed. |
| 129.    Defendants have no documentary evidence of any sales of MILK MAN e-liquid by Tellez other than the claimed November 14 and 21, 2014, sales. | Undisputed. |

KLEIN, O'NEILL &<br>SINGH, LLP<br>16755 VON KARMAN AVE., SUITE 275<br>IRVINE, CALIFORNIA 92606

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

| Ex. 29, No. 13; Ex. 26, No. 5 | |
|---|---|
| 130.    Defendants allege that Tellez otherwise only gave samples to friends and family.<br>Ex. 28, No. 10 | Undisputed. |
| 131.    Defendants have a pattern of claiming first use dates for their trademarks based on the distribution of samples, as opposed to actual sales in commerce.<br>Ex. 56 at 114:1-14. *But see* Ex. 54 at 172:6-10, 183:3-20, 186:5-13 (stating that some of the trademarks that were applied for as use-based applications were never used or released); Ex. 55 at 127:19-130:18, 176:19-178:18 (same) | Disputed.<br>This statement appears to paint Mr. Hackett's testimony at Ex. 56 at 114:13-14 with an unfairly-broad brush.    While there were instances of problems with certain trademarks, calling it a "pattern" invites mischaracterizations. |
| 132.    Tellez stated that he hand-delivered the bottles.<br>Ex. 50 at 186:24-187:3 | Disputed.<br>This assertion is disputed because it is unclear to what bottles it refers. |
| 133.    Defendants have no pictures of what the MILK MAN bottles looked like when they were "sold" to Messrs. Aliksanian and Iskander on November 14 and 21, 2014.<br>Ex. 50 at 65:17-24 | Disputed.<br>AOP's use of the quotation marks about the term sold is misleading.  In the November 14 2014 transaction, bottles bearing the MILK MAN mark were sold, not "sold", whatever "sold" means.    Notably, AOP's use of quotation marks is an admission on its part that there is a genuine factual dispute concerning the facts surrounding the November 2014 sales.<br>Otherwise undisputed. |
| 134.    Defendants, and Mr. Aliksanian have testified that each of the bottles were 60 ml bottles. | Undisputed. |

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| Ex. 49 at 145:18-146:9; Ex. 50 at 64:11-66:11; Ex. 51 at 55:15, 75:2-4 | |
| 135.     Each bottle of MILK MAN e-liquid "sold" by Tellez was marked only with a plain white Avery label printed with only the batch number, nicotine level, and the name "milk man."<br>Ex. 49 at 145:18-146:9; Ex. 50 at 64:11-66:11; Ex. 51 at 54:3-7, 55:10; Ex. 52 at 41:15-42 | Disputed.<br>AOP's use of the quotation marks about the term sold is misleading.  In the November 14 2014 transaction, bottles bearing the MILK MAN mark were sold, not "sold", whatever "sold" means.     Notably, AOP's use of quotation marks is an admission on its part that there is a genuine factual dispute concerning the facts surrounding the November 2014 sales.  Otherwise undisputed. |
| 136.     Iskander testified that packaging was not professional.<br>Ex. 52 at 41:15-17 | Undisputed. |
| 137.     Aliksanian testified that the bottles looked like tester bottles.<br>Ex. 51 at 50:10-16 | Disputed.<br>This excerpt of Aliksanian's deposition transcript does not support the statement. |
| 138.     Aliksanian testified that he "knew [Tellez] wasn't going to sell [his e-liquid with packaging] like that."<br>Ex. 51 at 55:7-11 | Disputed.<br>This excerpt can be misleading, as, in fact, Aliksanian sold the bottles he purchased from Tellez to customers. |
| 139.     Each of the bottles Tellez used for his November 2014 "sales" looked the same.<br>Ex. 50 at 66:13-18 | Undisputed. |
| 140.     Tellez testified that the bottles were "for sampling."<br>Ex. 50 at 64:10 | Disputed.<br>This is not a fair characterization of this testimony.  Rather, the testimony surrounding 64:10 is discussing various people who were |

| | |
|---|---|
| | able to samples the e-liquids. |
| 141.    Tellez mixed the e-liquid used for his MILK MAN bottles during non-business hours.<br>Ex. 56 at 201:22-202:3, 203:16-24 | Disputed.<br><br>For sake of clarity, Mr. Hackett's testimony was "I would say it was mostly after [business hours]." |
| 142.    Tellez typically mixed the e-liquid used for his MILK MAN bottles at his home or Robb Hackett's home.<br>Ex. 56 at 201:22-202:3, 203:16-24 | Undisputed. |
| 143.    Tellez did not "mix" the e-liquid used for his MILK MAN bottles as part of his job responsibilities for Steam.<br>Ex. 56 at 201:22-202:3, 203:16-24 | Undisputed. |
| 144.    Tellez did not have his own inventory of bottles to use.<br>Ex. 50 at 100:25-101:2, 177:10-15 | Disputed.<br><br>This statement is inconsistent with the testimony in these passages.  In fact, the testimony is only that he used bottles from Steam's inventory. |
| 145.    The bottles did not have any markings indicating the source of origin of the e-liquid.<br>Ex. 50 at 65:9-13, 85:8-21 | Undisputed. |
| 146.    Neither Tellez's name, nor the name "One Hit Wonder" were used on any of bottles of MILK MAN e- liquid "sold" by Tellez.<br>Ex. 50 at 65:9-13, 85:8-21 | Disputed.<br><br>AOP's use of the quotation marks about the term sold is misleading.  In the November 14 2014 transaction, bottles bearing the MILK MAN mark were sold, not "sold", whatever "sold" means.  Notably, AOP's use of quotation marks is an admission on its part that there is a genuine factual dispute concerning |

KLEIN, O'NEILL &<br>SINGH, LLP<br>16755 VON KARMAN AVE., SUITE 275<br>IRVINE, CALIFORNIA 92606

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| | the facts surrounding the November 2014 sales. Otherwise undisputed. |
| 147.    The bottles of MILK MAN e-liquid "sold" by Tellez did not have a Proposition 65 warning.<br>Ex. 51 at 67:19-68:1 | Disputed.<br>AOP's use of the quotation marks about the term sold is misleading.  In November 2014, bottles of e-liquid bearing the MILK MAN mark were sold, not "sold", whatever "sold". Notably, AOP's use of quotation marks is an admission on its part that there is a genuine factual dispute concerning the facts surrounding the November 2014 sales. |
| 148.    California has recognized that e-liquid contains as many as ten ingredients on the Prop 65 list of chemicals.<br>Request for Judicial Notice, Ex. A at 1, Ex. B at 9. | Disputed.<br>First, Ex. A and B associated with the Request for Judicial Notice were not produced prior to the close of discovery, even though they were available before discovery closed.    Also, Plaintiff's have not provided evidence to establish whether Ex. A or B are sufficient to support recognition by the state of California. |
| 149.    Prop 65 warnings are required on e-liquid labels.<br>Request for Judicial Notice, Ex. A at 1, Ex. B at 9; Ex. 57 at 87:9-14; *see also* Ex. 50 at 225:24-226:14 (testifying that a label could not be final because it did not have a warning) | Disputed to the extent that the term "Prop 65 warnings" implies any specific language or format.  The statement is also unclear because it doesn't clarify the basis or authority for any such requirement. |
| 150.    Tellez never advertised his MILK MAN e-liquid.<br>Ex. 50 at 227:4-228:1; Ex. 26, No. 3 | Undisputed. |
| 151.    Tellez did not claim any of the | Disputed. |

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

| | |
|---|---|
| November 2014 "sales" of MILK MAN e-liquid as income in his 2014 tax return. Ex. 29, Nos. 1-2; Ex. 27, No. 25 | AOP's use of the quotation marks about the term sales is misleading. The November 2014 transactions were sales, not "sales", whatever "sales" means. Notably, AOP's use of quotation marks is an admission on its part that there is a genuine factual dispute concerning the facts surrounding the November 2014 sales. |
| 152. Tellez did not claim any income from the sale of any e-liquids in his 2014 tax return. Ex. 29, Nos. 1-2; Ex. 27, No. 25 | Undisputed. |
| 153. Defendants One Hit Wonder, Steam Distribution, and Steam Wholesale, starting selling MILK MAN e-liquid on May 1, 2015. Exs. 34-37 | Undisputed. |
| 154. Defendants claim to have sold over ▮▮▮▮ bottles of MILK MAN e-liquid in their first month, May 2015, for over $▮▮▮▮. Exs. 34-37; Ex. 60 | Undisputed. |
| 155. Defendants claim to have enjoyed continued significant sales averaging over $▮▮▮▮▮▮▮▮ ▮▮▮▮▮ Exs. 34-37; Ex. 60 | Undisputed. |
| 156. Immediately upon the announcement of the launch of Defendants' MILK MAN e-liquid in April 2015, on Defendants' social media pages and in customer service communications, customers began asking questions and making comments about Defendants' affiliation with AOP and | Disputed. This is a mischaracterization of the posts in Ex. 19. For example, to commenter on page AOP-001347 identified right away that One Hit Wonder was different than Vaping Rabbit, and did not appear to be confused in the least. |

KLEIN, O'NEILL & SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

KLEIN, O'NEILL & SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| AOP's THE MILKMAN e-liquid.<br>Zhang Decl. ¶ 26; Ex. 19 | The highlighted entry on page AOP-000426 appears to have been made some time after the launch of Defendants' MILK MAN e-liquid. Also, notably, the individual who made this entry misspelled the word idiot. This seems telling.<br><br>The entry on page AOP-001500 is from September and involves the mark MUFFIN MAN – not MILK MAN.<br><br>The email exchange from March 2016 involved an inquiry whether Drip Club carried ONE HIT WONDER's MILK MAN, among a list of other flavors. Such an inquiry as to whether Drip Club carries a particular flavor seems to have little to nothing to do with confusion. |
| 157.    Beginning in April 2015, before Defendants sold any MILK MAN e-liquid, there were instances of actual customer confusion between AOP's THE MILKMAN e-liquid and Defendants' MILK MAN e-liquid.<br>Ex. 19; Ex. 38 | Disputed.<br><br>Ex. 19 does not have any entries from April 2015 or before that even arguably resemble confusion.<br><br>Ex. 38 presents Instagram postings, but the date is unclear. Also, the highlighted comments in the Instagram postings in pages AOP-001436 - 001451 do not appear to show confusion as to source. Rather, some users inquire about the trademarks. These users appear to be completely aware that One Hit Wonder and Vaping Rabbit are unaffiliated, and that the MILK MAN e-liquid in the post is sourced from ONE HIT WONDER. |

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

| | |
|---|---|
| 158.    On several occasions, customers mistakenly contacted Defendants when they intended to contact AOP. Ex. 19; Ex. 38 | Disputed.<br><br>Ex. 19 and 38 do not support the contention the customers mistakenly contacted Defendants "on several occasions."    Instead, it appears mistaken contact was made maybe twice. |
| 159.    On several occasions, Defendants responded to customers' questions, comments, and mistaken contacts with incorrect factual and legal assertions. Ex. 19; Ex. 38 | Disputed.<br><br>Defendants understand this to refer to certain statements by Defendants' personnel that Defendants' had a trademark registration for MILK MAN.  There is no evidence that such mistaken statements would be made simply to mistaken contacts, and would only be made in response to inquiries by consumers. |
| 160.    Defendants have claimed to be the "sole owner" of all rights to the mark MILK MAN. Ex. 19; Ex. 38 | Undisputed. |
| 161.    Defendants falsely claimed to own a trademark registration for the mark MILK MAN before AOP starting selling its e-liquid, when Defendants still do not. Ex. 19; Ex. 38 | Disputed.<br><br>The term "falsely" appears to be misleading, as there is no evidence that Defendants' personnel had any intent to pass along incorrect information.    It seems more likely that Defendant's personnel simply has a mistaken understanding of the status of Defendant's trademark application. |
| 162.    On several occasions, Defendants responded to customers' questions, comments, and mistaken contacts by soliciting them to buy Defendants' e-liquid instead of AOP's e-liquid. | Disputed.<br><br>Defendants personnel encouraged customers to buy Defendants' e-liquid.  However, the cited documents do not appear to evidence any encouragement to NOT by AOP's liquid. |

**KLEIN, O'NEILL &**
**SINGH, LLP**
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

KLEIN, O'NEILL & SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| Ex. 19; Ex. 38 | |
|---|---|
| 163.     Defendants' factually and legally incorrect statements, and solicitations influenced those customers' buying behavior. Ex. 19; Ex. 38 (customer responding that it was a "good sales tactic"; Defendants telling a customer to "please let everyone know that [an alleged injury] was caused by MilkMan by Vaping Rabbit" and offering free samples of its MILK MAN e-liquid, both of which the customer accepts) | Disputed.<br><br>Defendants do not dispute that Defendants' representative was factually incorrect about the status of the application to register the mark MILK MAN. However, Defendants see no evidence tying such statements to an influence on any customer's buying behavior. It is unclear what Plaintiff's complaint is for the Defendants telling a customer to "please let everyone know that this was caused by MilkMan by Vaping Rabbit", as it was a response to a customer who was cut by a faulty bottle of THE MILKMAN by Vaping Rabbit. Thus, the statement was true. Also, Defendants' statement was a response to the consumers threat, "I'll be sure to let everyone know about this."<br><br>In fact, to the extent there may have been any confusion, Defendants acted to resolve it. |
| 164.     Customers continue to be confused between Defendants and their MILK MAN mark and e-liquid, and AOP and its THE MILKMAN mark and e-liquid. Ex. 57 at 56:17-25; Ex. 25 ¶ 34 | Disputed.<br><br>Mr. Zhang admitted in his deposition that the salespeople that allegedly report customers being confused to not report to him, and in fact he could not remember any specific instances. Ex. 57 at 57:6-18. Instead, Mr. Zhang is hearing about the alleged confusion second hand and likely does not have an accurate understanding of the situation. |
| 165.     Defendants admit that there is a likelihood of confusion between AOP's THE | Disputed. |

| | |
|---|---|
| MILKMAN mark and Defendants' MILK MAN mark.<br><br>Ex. 25 ¶ 19 | Defendants' contentions in Ex. 25 were made on information and belief. Further investigation is revealing that there is not a likelihood of confusion between Plaintiff's and Defendants marks when the totality of the mark is compared as the marks are actually used in commerce. |
| 166.    Defendants have repeatedly used the phrase "the Milk Man" to refer to their e-liquid in advertisements for their MILK MAN e-liquid.<br><br>Ex. 19; Ex. 39 | Undisputed. |
| 167.    Defendants have repeatedly used the phrase "The Milk Man" to refer to their e-liquid in advertisements for their MILK MAN e-liquid.<br><br>Ex. 19; Ex. 39 | Undisputed. |
| 168.    Defendants have used the phrase "the Milk Man" on the product packaging for their MILK MAN e- liquid.<br><br>Ex. 19; Ex. 39 | Disputed.<br><br>The instances in which the word "the" is used adjacent the phrase Milk Man in the product packaging depicted in Ex. 39 is simply as part of the prose of a sentence.  In fact, the sentences would read awkwardly and would not make much sense without the word "the".  In these cases "the" is simply part of the associated sentence and not part of a "phrase". |
| 169.    Defendants have used the phrase "The Milk Man" on the product packaging for their MILK MAN e- liquid.<br><br>Ex. 19; Ex. 39 | Disputed.<br><br>The instances in which the word "the" is used adjacent the phrase Milk Man in the product packaging depicted in Ex. 39 is simply as part of the prose of a sentence.  In fact, the sentences |

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| | would read awkwardly and would not make much sense without the word "the". In these cases "the" is simply part of the associated sentence and not part of a "phrase". |
| 170.    As of March 2016, the One Hit Wonder Website and packaging still used the term "the Milk Man." Ex. 48 at 116:5-117:12 | Undisputed. |
| 171.    As of March 2016, the One Hit Wonder Website and packaging still used the term "The Milk Man." Ex. 48 at 116:5-117:12 | Undisputed. |
| 172.    Tellez testified in his deposition that he thought such uses were mistakes. Ex. 50 at 167:1-175:4 | Undisputed. |
| 173.    Tellez also testified in his deposition that he thought it was confusing to refer to one product as "THE MILKMAN" and another as "MILK MAN." Ex. 50 at 176:5-8; *see also* Ex. 50 at 15:10-16, 117:23-24, 128:3-5 (clarifying whether the question is about MILK MAN or THE MILKMAN) | Disputed. The cited portions of Ex. 50 show that Mr. Tellez actually testified that it was confusing when Mr. Gatien used the wrong name when referring to a specific mark in the context of discussing and comparing the two marks. |
| 174.    The goods sold under AOP's THE MILKMAN mark and Defendants' MILK MAN mark are identical in kind and directly compete with one another. Ex. 29, No. 95; Ex. 25 ¶ 18 | Undisputed. |
| 175.    AOP's THE MILKMAN mark is inherently distinctive. Request for Judicial Notice ¶ 5 (approving the | Disputed. Plaintiff's characterization of MILK MAN as |

DEFENDANTS' STATEMENT OF ISSUES OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

| | |
|---|---|
| legally identical mark MILK MAN without a showing of secondary meaning) | "legally identical" to THE MILKMAN is simply attorney argument that would require analysis by a trier of fact before coming to such a conclusion. |
| 176.    The marketing channels for the products sold under AOP's THE MILKMAN mark and Defendants' MILK MAN mark are the same.<br>Ex. 29, No. 99; Exs. 34-37 | Undisputed. |
| 177.    AOP's and Defendants' e-liquids are sold in some of the same retail and online stores.<br>Ex. 16; Ex. 29, No. 99; Exs. 34-37 | Undisputed. |
| 178.    To avoid any doubt as to its nationwide priority, on June 10, 2016, AOP acquired by assignment all right, title and interest in and to the mark MILKMAN for e-liquid that were previously held by Deus Juice LLC.<br>Zhang Decl. ¶ 27; Ex. 20 | Disputed.<br>Defendants do not dispute AOP's acquisition. However, there is nothing in the record to corroborate AOP's stated reason for acquiring all right, title and interest in and to the mark MILKMAN that were previously held by Deus Juice. |
| 179.    Deus Juice LLC is based in Michigan, where it has a retail store.<br>Zhang Decl. ¶ 28 | Undisputed. |
| 180.    Deus Juice's first use of MILKMAN for e-liquid is at least as early as October 9, 2014.<br>Ex. 21; Ex. 22 | Undisputed. |
| 181.    Prior to Tellez's first "sale," Deus Juice sold ▮ bottles of MILKMAN e-liquid for a total of $▮.<br>Ex. 21; Ex. 22 | Disputed.<br>AOP's use of the quotation marks about the term sale is misleading.  The November 2014 transactions were sales, not "sales", whatever |

KLEIN, O'NEILL & SINGH, LLP<br>16755 VON KARMAN AVE., SUITE 275<br>IRVINE, CALIFORNIA 92606

KLEIN, O'NEILL &
SINGH, LLP
16755 Von Karman Ave., Suite 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| | "sales" means.   Notably, AOP's use of quotation marks is an admission on its part that there is a genuine factual dispute concerning the facts surrounding the November 2014 sales. |
| 182.   Deus Juice has sold and continues to sell its MILKMAN e-liquid to customers from several states through its online website and its retail storefront. Zhang Decl. ¶ 28 | Disputed. Deus Juice records indicate sales in only 5 states. Ex. 212-22. |
| 183.   On June 29, 2016, AOP informed Defendants that it had acquired the rights to Deus Juice's MILKMAN mark. Gatien Decl. ¶ 42; Ex. 59 | Undisputed. |
| 184.   Even after being informed of AOP's acquisition of MILKMAN from Deus Juice, and AOP's confirmation of senior sales by Deus Juice, Defendants have continued to sell their MILK MAN e-liquid. Gatien Decl. ¶ 43 | Disputed. Deus Juice appears to not have sold product in California, where Defendants remain the senior user of MILK MAN notwithstanding sales by Dues Juice. Ex. 21, 22 |
| 185.   In addition to its rights to THE MILKMAN mark, AOP owns the mark DRIP CLUB (Reg. No. 4618948) for use in connection with, *inter alia*, e- liquids and online retail store services featuring e-liquids. Zhang Decl. ¶ 29; Ex. 23 | Undisputed. |
| 186.   Defendants used AOP's DRIP CLUB Mark as a hashtag on social media posts for their products, including Defendants' MILK MAN e- liquid. Ex. 40 | Disputed. This statement needs to be clarified so as not to be misleading as to the scope.   Defendants inadvertently included #DRIPCLUB on 5 Instagram posts. |

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

|  |  |
|---|---|
|  | Ex. 57 at 180:25-184:23. |
| 187.    Using the hashtag "dripclub" allows viewers to sort through advertisements that use that hashtag.<br>Ex. 57 at 37:20-39-2 | Disputed.<br><br>Many, and perhaps most, postings that use a particular hashtag aren't advertisements. There is no indication that hashtags identify any difference between regular postings and postings that are advertisements.  Mr. Zhang's deposition testimony states "it's an easy way of sorting through all of the posts that have hash tag Drip Club."  Ex. 57 at 38:6-7. |
| 188.    Multiple hashtags may be used on a post to widen the potential audience for that particular post and make and association between that post and a brand.<br>Ex. 57 at 39:11-21 | Undisputed. |
| 189.    There is a quantifiable market benefit from using hashtags to draw viewers.<br>Ex. 57 at 42:11-43:6 | Disputed.<br><br>Although Mr. Zhang indeed testified that there was a quantifiable market benefit, when asked if there was any way to put a dollar number on the value of including a hash tag on 5 Instagram posts, he said that he would be "the wrong guy to put that value or assess that value", and thus was not, in fact, capable of quantifying a market benefit from using hashtags to draw viewers.<br><br>Ex. 57 at 1847-185:10. |
| 190.    About one week before the first depositions of Defendants in this case, in March 2016, Defendants deleted their main social media account, the Instagram account | Disputed.<br><br>The cited portion of Ex. 49 does not support this statement.  In fact, the deposition of Robert Hackett on behalf of Steam Distribution, LLC, |

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

| | |
|---|---|
| @steamdistribution.<br><br>Ex. 49 at 20:13-21:6 | page 20:13-21:6 discusses this issue.<br><br>The @steamdistribution Instagram account was, as discussed, deleted and repurposed. The deleted account was not, however, Defendants "main" social media account. Far from it. In fact, it was deleted and repurposed because it wasn't gaining enough traction from wholesale accounts, which was its purpose.<br><br>In fact, the deletion of this account was an inadvertent mistake in view of the outstanding litigation. |
| 191. William Hackett testified that he tracks the One Hit Wonder sales every day.<br>Ex. 53 at 320:17-19 | Undisputed. |
| 192. In May 2016, William Hackett testified that the sales for each product had remained steady and, if anything, were increasing.<br>Ex. 53 at 323:1-9 | Undisputed. |
| 193. William Hackett testified that the sales of MILK MAN e-liquid were following the same trajectory.<br>Ex. 53 at 324:1-4 | Disputed.<br><br>William Hackett's testimony was actually that MILK MAN followed the same trajectory as MUFFIN MAN. |
| 194. Despite William Hackett's testimony, Defendants maintain that beginning in March 2016 (the first month *after* the initial production of sales documents), ███████ ███████████████████████ | Defendants believe sales generally have decreased in recent months, perhaps due to implementation of certain new FDA rules. Defendants are investigating this issue in more detail, and thus cannot at this point determine whether or not to dispute this statement. |

KLEIN, O'NEILL &<br>SINGH, LLP<br>16755 Von Karman Ave., Suite 275<br>Irvine, California 92606

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

- 52 -

CASE NO. 5:15-cv-01586 VAP(KKx)

| | |
|---|---|
| ▇▇▇▇▇<br>Exs. 34-37; Ex. 60 | |
| 195.    Defendants testified that the sales documents produced in March 2016 were complete and accurate.<br>Ex. 54 at 216:1-21 | Disputed.<br>Julie Trinh testified that, to the best of her knowledge, the sales documents were accurate. Defendants are investigating the situation. |
| 196.    The sales documents produced in August 2016 reveal that between May 2015 and March 3, 2016 (the last day reported in the sales documents for Steam Wholesale) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇<br>Kamelgard Decl. ¶ 7; Ex. 64 | Defendants are investigating this issue in more detail, and thus cannot at this point determine whether or not to dispute this statement. |
| 197.    The August sales documents also show ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇<br>Kamelgard Decl. ¶ 8; Ex. 65 | Defendants are investigating this issue in more detail, and thus cannot at this point determine whether or not to dispute this statement. |
| 198.    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇<br>Kamelgard Decl. ¶¶ 9-10; Exs. 66-67 | Defendants are investigating this issue in more detail, and thus cannot at this point determine whether or not to dispute this statement. |
| 199.    AOP believes that Defendants have intentionally under- reported their sales<br>Kamelgard Decl. ¶¶ 7-11; Exs. 64-67 | Undisputed (as to AOP's belief). Defendants dispute that they have intentionally under-reported sales. |
| 200.    Defendants claim that their sales of MILK MAN e-liquid from May 2015 | Undisputed. |

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT

CASE NO. 5:15-cv-01586 VAP(KKx)

KLEIN, O'NEILL &
SINGH, LLP
16755 VON KARMAN AVE., SUITE 275
IRVINE, CALIFORNIA 92606

| | |
|---|---|
| through ███████████████<br>Exs. 34-37; Ex. 60 | |

DATED:  13 September 2016          **KLEIN, O'NEILL & SINGH LLP**


By   /s/ Glen L Nuttall
          Glen L Nuttall

Attorneys for Defendants and Counterclaimants One
Hit Wonder, Inc. and Anthony Tellez III and
Defendants Steam Distribution LLC and Havz, LLC

DEFENDANTS' STATEMENT OF ISSUES
OF MATERIAL FACT                                        CASE NO. 5:15-cv-01586 VAP(KKx)