Konrad K. Gatien (Bar No. 221770)
E-Mail: kgatien@stubbsalderton.com
Anthony M. Keats (Bar No. 123672)
E-Mail: akeats@stubbsalderton.com
Barak J. Kamelgard (Bar No. 298822)
Email: bkamelgard@stubbsalderton.com
STUBBS ALDERTON & MARKILES LLP
1453 3rd Street Promenade, Suite 300
Santa Monica, CA 90401
Telephone:  (310) 746-9800
Facsimile:   (310) 746-9820

Attorneys for Plaintiff
AOP VENTURES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION - RIVERSIDE

| | |
|---|---|
| AOP VENTURES, INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>STEAM DISTRIBUTION, LLC, a California limited liability company; ONE HIT WONDER, INC., a California corporation; HAVZ, LLC DBA STEAM WHOLESALE, a California limited liability company; ANTHONY TELLEZ III, an individual; and DOES 1-10,<br><br>                    Defendants.<br><br>ONE HIT WONDER, INC., a California corporation; and ANTHONY TELLEZ III, an individual,<br><br>                    Counterclaimants,<br>          v.<br><br>AOP VENTURES, INC., a Delaware corporation,<br><br>                    Counterdefendant. | **CASE NO. 5:15-CV-01586 VAP (KKx)**<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:    October 3, 2016<br>Time:    2:00 PM<br>Place:   Courtroom 780<br>         255 E. Temple St.<br>         Los Angeles, California 90012<br>Judge:   Hon. Virginia A. Phillips |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 1

    A. Summary Judgment Is Appropriate. ...................................................... 1

        1. AOP has established priority over all Defendants. ...................... 1

            i. Tellez's sales were unlawful. ............................................. 3

            ii. Tellez's sales were not bona fide sales. .............................. 4

            iii. Tellez's sales were *de minimis*. .......................................... 6

        2. Defendants Have Admitted a Likelihood of Confusion. ............... 8

    B. The Court Should Cancel OHW's California Trademark. ...................... 9

    C. Intentional Interference, and Infringement of the DRIP CLUB Mark. ................................................................................................... 10

    D. The Court Should Award Damages to AOP. ....................................... 10

    E. This Is an "Exceptional Case." ............................................................ 11

III. CONCLUSION ............................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*AFMS LLC v. United Parcel Serv. Co.*, 105 F. Supp. 3d 1061 (C.D. Cal. 2015) ........ 10

*Block v. City of L.A.*, 253 F.3d 410 (9th Cir. 2001) ......................................................... 9

*Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260 (5th Cir. 1975) ................................. 6

*Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223 (9th Cir. 2000) ... 9, 10

*CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626 (2007) ........................... 4

*Discovery Comm., Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282 (C.D. Cal. 2001) ............................................................................................................................... 12

*Dogloo, Inc. v. Doskocil Mfg. Co.*, 893 F. Supp. 911 (C.D. Cal. 1995) ..................... 6, 7

*F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168 (9th Cir. 1997) .................... 7, 11

*Guidroz-Brault v. Mo. Pac. R. Co.*, 254 F.3d 825 (9th Cir. 2001) ............................... 11

*In re Citric Acid Litig.*, 191 F.3d 1090 (9th Cir. 1999) .................................................... 9

*Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203 (1942) ...... 11

*Moreno Roofing Co., Inc. v. Nagle*, 99 F.3d 340 (9th Cir. 1996) .................................. 2

*Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930 (9th Cir. 2015) .............. 1, 9

*Potter Voice Techs., LLC v. Apple Inc.*, 24 F. Supp. 3d 882 (N.D. Cal. 2014) ............ 12

*S. A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co.*, 690 F.2d 1235 (9th Cir. 1982) ............................................................................. 5

*S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921 (2014) ...................................................... 4

*U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034 (9th Cir. 1986) ............................... 11

*United States v. Kitsap Physicians Serv.*, 314 F.3d 995 (9th Cir. 2002) ...................... 2

*Walton v. U.S. Marshals Serv.*, 492 F.3d 998 (9th Cir. 2007) ...................................... 11

*Wash. Mut. Inc. v. United States*, 636 F.3d 1207 (9th Cir. 2011) ......................... 2, 5, 7

**Statutes**

Cal. Bus. & Prof. Code § 14230(c) ............................................................................. 10

## I. INTRODUCTION

Throughout Defendants' Opposition to AOP's Motion, Defendants attempt to manufacture "genuine issues of material fact" to avoid summary judgment. Defendants do so by improperly labeling undisputed facts as "disputed facts" and by improperly re-characterizing questions of law as "disputed facts." Defendants even go so far as to contradict the allegations in their pleadings. Defendants cannot seriously ask the Court to adopt these fictions to find disputed facts that simply do not exist. Accordingly, the Court should grant AOP's Motion.

## II. ARGUMENT

### A. Summary Judgment Is Appropriate.

Defendants contend that the Court should not grant summary judgment because summary judgment is inappropriate in "fact-intensive cases such as trademark cases." (Opp., 4:8-11.) However, that principle does not hold true where, as here, no genuine issue of material fact exists. *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 935 (9th Cir. 2015) ("Although disfavored in trademark infringement cases, summary judgment may be entered when no genuine issue of material fact exists."). Because AOP has established that there is no genuine issue as to AOP's priority, a likelihood of confusion, and even damages, the Court should grant AOP's Motion in its entirety.

#### 1. AOP has established priority over all Defendants.

It is undisputed that AOP established its first use anywhere in commerce of the mark MILKMAN in connection with the sale of e-liquid through its acquisition of rights from its predecessor-in-interest, Deus Juice. (Mot., 6:16-23.) Deus Juice (and, therefore, AOP), thus has priority as of October 9, 2014, more than one month prior to any sales by Tellez (the corporate defendants' predecessor-in-interest). (Mot., 6:13-7:23.) Thus, AOP is entitled to a finding of priority based on first use as of that date.

In addition, it is undisputed that AOP established its first use of THE MILKMAN mark nationwide (in all 50 states), with the sole possible exception that

Tellez may be entitled to very limited common law rights associated with the two November 2014 transactions consisting of the sale of 8 bottles of MILK MAN e-liquid to 2 shops where he lived in Whittier, California. (Mot., 7:23-9:8.)

Defendants contend in their Opposition and Statement that there is a "dispute" as to whether these sales occurred because AOP placed "sales" in quotes in its Motion. This is inaccurate. AOP has never disputed that the transactions occurred.

AOP placed "sales" in quotes in its Motion to underscore AOP's argument that the transactions were not sufficient as a matter of law to constitute sales under the Lanham Act sufficient to confer any common law trademark rights on Tellez, because the sales were unlawful, not bona fide sales in the ordinary use of trade, and *de minimis*. (Mot., 9:23-25.) These are not questions of fact, but questions of law. Even if these were mixed questions of fact and law, the only potential dispute relates to the legal significance of undisputed facts and are, therefore, questions of law suitable for disposition on summary judgment. *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).

Tellingly, Defendants do not dispute AOP's October 9 priority date over Tellez, or that AOP sold nationwide before the corporate defendants sold any MILK MAN e-liquid. Accordingly, Defendants have conceded and waived the issue of priority as to all geographic areas nationwide with the possible sole exception of the two vape shops in Whittier. *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 999 (9th Cir. 2002); *Moreno Roofing Co., Inc. v. Nagle*, 99 F.3d 340, 343 (9th Cir. 1996) (passing remarks on an issue in opposition to summary judgment insufficient to avoid waiver).

In that regard, Defendants contend that Tellez "sold MILK MAN-branded e-liquid *in California*" before AOP sold e-liquid in California. (Opp., 9:5-11) (emphasis added.) This statement, which is unsupported by a citation to the evidence, is based exclusively on Tellez's sale of 8 bottles to 2 local vape shops for a total of $160 in November 2014. These small sales in the manner at issue here were insufficient to

establish any common law rights as a matter of law, and Defendants do not offer any case law to the contrary. As such, the Court should find that the sales were insufficient as a matter of law to confer any common law trademark rights on Tellez, because the sales were unlawful, not bona fide, and *de minimis*.

i.   Tellez's sales were unlawful.

Defendants attempt to mislead the Court by contending in their Opposition that Tellez's sales were lawful because Tellez included nicotine levels on his bottles. (Opp., 9:13-19.) Although there are no pictures of the bottles, (SUF ¶ 133), for the purpose of this Motion, AOP adopts that the labels were printed with "0 mg," "3 mg," or "6 mg." (Ex. 50 at 64:11-15 (Tellez only testified that the labels said "0 mg," "3 mg," or "6 mg").) However, Tellez never claimed that he used the word "nicotine" to indicate the meaning of the milligram level.

Even assuming that a consumer could guess at the meaning of the milligram indications, it is undisputed that Tellez did not include any warning of any kind on the bottles, under Prop 65 or in plain language, warning consumers the product contained nicotine. (Ex. 51 at 67:19-21 (the bottles did not have "any warning").)

To attempt to avoid or minimize this material labeling defect, Defendants contend that the California reports offered in AOP's Motion did not trigger an obligation on Tellez to place a warning on his bottles; or, in the alternative, if there was a violation, it was not material. (Opp., 10:4-17, 10:24-11:8.)

First, AOP offered the reports to establish the undisputed fact that California has recognized that e-liquid contains as many as ten ingredients that would require a Prop 65 warning. (RJN, Ex. A at 1.) Nicotine has been on the Prop 65 list since 1990. (RJN, Ex. B at 13.) Accordingly, any requirement to have a Prop 65 warning was in place at the time of Tellez's sales.

Second, Defendants contend that even though Tellez's labels had no warning, the "0 mg," "3 mg," or "6 mg" labeling provides the same notice as the explicit

-3-

nicotine warnings on AOP's and Deus Juice's bottles and packaging. (Opp., 10:1-3, 18-23.) They attempt to extend that misdirection to have the Court find that if Tellez's sales were unlawful, then so were AOP's and Deus Juice's sales. (*Id.*)

Defendants' contentions are without merit.

Deus Juice is based in Michigan and is not bound by Prop 65. (SUF ¶ 179.) Moreover, Defendants admit that all bottles sold by Deus Juice bore an explicit, plain language warning. (Opp., 10:18-19.) Similarly, all bottles sold by AOP bore a Prop 65 compliant warning, and all packaging sold for those bottles bore an explicit, plain language warning that the e-liquid contains nicotine. (Exs. 5 at 5, 9-11; 68.)

Finally, Defendants contend that even if there was a violation, it was not material. (Opp., 10:24-11:8 (citing *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921 (2014)).) However, as explained in AOP's Motion, the Ninth Circuit, in *CreAgri, Inc. v. USANA Health Sciences, Inc.*, held that "by any definition," a labeling defect "which existed as to *every* bottle . . . sold prior to the competing registrant's priority date-was material." 474 F.3d 626, 633 (2007) (emphasis in original); *see also Zaffina*, 762 F.3d at 931 (citing and applying *CreAgri*'s definition and explanation of materiality). Thus, the Court should follow the *CreAgri* decision and find that because *every* bottle sold by Tellez lacked a warning, the sales were unlawful.

Accordingly, the Court should find that Tellez's sale of e-liquid containing nicotine without any warning was a material labeling defect sufficient to find that the sales were unlawful under California law.

ii. Tellez's sales were not bona fide sales.

Next, Defendants argue that there are genuine issues of material fact as to: whether Tellez used the MILK MAN mark in connection with an existing business (Opp., 11:10-17); whether Tellez's sales were sufficient to establish goodwill, recognition, and association of the MILK MAN mark to Tellez (Opp., 11:18-23);

whether Tellez's November 14 sale constituted "putting the product on the market" (Opp., 12:5-10); and whether the sales were bona fide sales. (Opp., 12:15-21.)

These "genuine issues of material fact" are not factual issues at all; they are legal issues. In fact, they are all part of the same legal issue: Whether the November 2014 transactions are sufficient use in commerce to constitute bona fide sales as a matter of law to confer common law trademark rights on Tellez. Defendants "cannot manufacture a genuine issue of material fact merely by making assertions in [their] legal memoranda." *S. A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Indeed, even if these were mixed questions of fact and law, the only potential dispute relates to the legal significance of undisputed facts and are, therefore, questions of law suitable for disposition on summary judgment. *Wash. Mut. Inc.*, 636 F.3d at 1216.

To the extent that these arguments rely on the self-serving declarations of Defendants Tellez and Hackett, and do not pincite to evidence, the Court should disregard them, or, in the alternative, deem them unsupported and/or undisputed. (Standing Order at 5:16-6:14.) Moreover, to the extent that Defendants contend Tellez sold through Mr. Hackett's business, (Opp., 11:11-13), it is undisputed that Tellez made the November 2014 sales *individually*, as opposed to as OHW. (SUF ¶ 128.)

Defendants do not dispute the substance of the majority of the facts offered by AOP to support its position that the sales do not amount to bona fide use in commerce.

For example, Defendants do not dispute that Tellez did not advertise his MILK MAN e-liquid, did not use his own supplies or use commercial labels, and did not report any of the income from his sales. (SUF ¶¶ 135-36, 144, 150-52.) There is also no dispute that Tellez sold only 2 bottles of MILK MAN to Berj Aliksanian for $40 on November 14, 2014, and only 6 bottles to Nabil Iskander for $120 on November 21, 2014. (SUF ¶¶ 93, 109.) Finally, there is no dispute that Aliksanian and Iskander testified that they purchased the bottles to "help [Tellez] out," that another purchaser

would not have sold or even tried bottles with Tellez's labels, and that the transaction "wasn't normal business practice." (SUF ¶¶ 94, 97-98, 111-115.)

Even taking all of these facts in a light most favorable to Defendants, the ultimate determination of whether the manner and volume of sales is sufficient to constitute a bona fide sale in commerce is to be decided as a matter of law.

The only legal authority Defendants cite to support their position that the transactions were bona fide sales is a Fifth Circuit case which, according to Defendants, held that "'bona fide use in trade' requires that the mark 'be affixed to the merchandise actually intended to bear the mark in commercial transactions.'" (Opp., 12:15-17 (citing *Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1267 (5th Cir. 1975)).)

Defendants not only misquote this case ("Elementary tenets of trademark law require that labels or designs be affixed . . ."), but also the *Blue Bell* court held that the attachment of the label at issue was "a bad faith attempt to reserve a mark" and was not bona fide use. *Id.* ("We cannot countenance such activities as a valid use in trade. Blue Bell therefore did not acquire trademark rights by virtue of its July 5 shipment.")

It is, therefore, clear based on the case law and the undisputed facts of this case that the Court should find that Tellez's use did not rise to the level of bona fide use in commerce, and find for AOP on this issue.

### iii.  Tellez's sales were *de minimis*.

Defendants contend that Tellez's November 2014 sales were not so "small, sporadic, and inconsequential" so as to be *de minimis*. (Opp., 12:22-14:14.); *see Dogloo, Inc. v. Doskocil Mfg. Co.*, 893 F. Supp. 911, 921 (C.D. Cal. 1995).

To attempt to avoid summary judgment on this issue, Defendants contend that there are genuine issues whether Tellez "truly adopted the MILK MAN mark" and whether "the volume of sales was sufficient to grant trademark rights to Tellez." (Opp., 13:20-24.)

-6-

It is unclear what Defendants mean by "truly adopted" the mark, or why that is relevant to AOP's Motion. Although there are no pictures of the bottles, (SUF ¶ 133), for the purposes of this Motion, AOP adopts that the bottles Tellez sold to the two vape shops in Whitter bore the MILK MAN mark on the plain, white, handwritten Avery labels, as testified by Tellez. (SUF ¶ 135.)

Accordingly, all that remains to be decided by the Court is whether the sale of 8 bottles by Tellez in the manner that is undisputed was sufficient to grant trademark rights to Tellez. (SUF ¶¶ 90-93, 109, 128-30.) This is a legal determination between sales that are *de minimis* and sales that are not, *see Dogloo*, 893 F. Supp. at 921, which may be made as a matter of law. *Wash. Mut. Inc.*, 636 F.3d at 1216. It is not a fact that is in "dispute," sufficient for Defendants to avoid summary judgment on this issue.

Defendants attempt to tie these *de minimis* sales to the subsequent distribution of MILK MAN e-liquid by Steam and OHW; however, the only evidence offered in support of this position is Tellez's conclusory, self-serving affidavit, which lacks detailed facts and supporting evidence, and is, therefore, insufficient to create a genuine issue of material fact. *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). This also contradicts the undisputed fact that Tellez made the sales individually, as opposed to as OHW. (SUF ¶ 128.)

Astonishingly, Defendants contend that if Tellez's sales are *de minimis*, then so are the sales by Deus Juice. Defendants' argument is without merit.

As the Court will recall, Deus Juice sold over 100 bottles of MILKMAN e-liquid in Michigan and South Carolina between October 9, 2014 and November 14, 2014 (the date Tellez first sold 2 bottles to Berj Aliksanian) (SUF ¶ 181.) Moreover, Deus Juice advertised its MILKMAN e-liquid online and has sold MILKMAN e-liquid continuously in commerce since October 9, 2014. (SUF ¶ 182.)

On the other hand, Tellez only ever sold 8 bottles. (SUF ¶ 129.)

There is a significant difference between more than 100 bottles and 8 bottles. In addition, Deus Juice sold this amount in one month, whereas Tellez sold only 8 bottles in his entire sales history (which covers, at a minimum, the 6 months between his November 2014 sale and the sales of MILK MAN by the corporate defendants starting in May 2015). Finally, it is undisputed that California has a much larger populace than Michigan and South Carolina, therefore Tellez's 8 bottles were much smaller per capita than Deus Juice's sales. (SUF ¶¶ 82-83.)

Even assuming the Court adopts Defendants' position that both Tellez's and Deus Juice's sales are *de minimis*, such a finding would grant clear priority to AOP based on its nationwide sales, which began on January 5, 2015—well before any sales by the corporate defendants. (SUF ¶¶ 18, 21-22.)

Accordingly, if the Court determines that Deus Juice's sales are *de minimis*, then it must find that Tellez's sales were *de minimis*. Conversely, if the Court finds that Tellez's sales were not *de minimis*, then it must find that Deus Juice's sales were not *de minimis*. In either scenario, AOP retains clear priority over Defendants.

Based on the foregoing, it is clear that the Court may decide whether the nature and manner of Tellez's November sales, which are undisputed, were *de minimis* as a matter of law, and find for AOP on this issue.

In conclusion, AOP has clearly established that there are no genuine issues of material fact that remain to be decided by a jury concerning Tellez's November 2014 sales. Accordingly, the Court can, and should, decide that the sales were unlawful, not bona fide, and *de minimis* as a matter of law, and find for AOP on the issue of priority.

### 2. Defendants Have Admitted a Likelihood of Confusion.

Although Defendants now attempt to avoid summary judgment by contending in their Opposition that likelihood of confusion is a "fact" in "dispute," such contention runs contrary to the admission in Defendants' Amended Counterclaim that there is a likelihood of confusion between the same marks at issue. (Ex. 25 ¶ 19.) Not

only have Defendants not dismissed their Counterclaim, they make a plea in their Opposition to allow their Counterclaim to survive. (Opp., 19:5-8.)[1] In addition, Defendants ignore the well-settled line of trademark cases that provides for a finding of a likelihood of confusion at summary judgment as a matter of law when "no genuine issue of material fact exists." *Multi Time Mach.*, 804 F.3d at 935.

Accordingly, Defendants cannot avoid summary judgment on a likelihood of confusion, because it undisputed based on the allegations by both parties that a likelihood of confusion exists. *See Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1232 (9th Cir. 2000) (Parties "could not contradict their earlier allegations [contained in prior pleadings] in an effort to survive summary judgment."); *see also Block v. City of L.A.*, 253 F.3d 410, 419 n.2 (9th Cir. 2001) ("A party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the acts.").

B.     The Court Should Cancel OHW's California Trademark.

Notwithstanding Defendants' attempts to mislead the Court by citing "evidence" that is not of record, (Opp., 15:6-17 (discussing an August 5 document that was not introduced)), which the Court cannot consider, *In re Citric Acid Litig.*, 191 F.3d 1090, 1101–02 (9th Cir. 1999), Defendants cannot survive summary judgment on this issue. It is undisputed that OHW was not the owner of the MILK MAN mark at the time the California state trademark application was filed, so OHW did not have standing to file the mark. This fact is undisputed because Defendant admit in their Counterclaim that the assignment took place on October 26, 2015, five days *after* the registration issued. (Ex. 25 ¶ 11.) Defendants cannot manufacture a dispute by

---

[1] AOP expects that Defendants may realize this contradiction and eventually dismiss their Counterclaim to further attempt to avoid summary judgment. If Defendants do so, after maintaining such claims for over one year, AOP respectfully submits that this supports a finding of bad faith sufficient to make this an exceptional case meriting an award of attorneys' fees and costs to AOP on Defendants' claims.

contradicting their earlier allegations contained in prior pleadings. *See Cline*, 200 F.3d at 1232. Defendants have offered no evidence of any earlier assignment. Thus, the Court should cancel the registration. Cal. Bus. & Prof. Code § 14230(c).

### C. Intentional Interference, and Infringement of the DRIP CLUB Mark.

The underlying facts supporting these claims are not in dispute, so these claims may be decided as a matter of law. AOP's claims are supported by the overwhelming evidence of Defendants' wrongful communications to consumers, lack of cooperation in discovery, and willful suppression of evidence by deleting a key Instagram account (which prevented AOP from knowing the full extent of Defendants' conduct).

Similarly, it is undisputed that Defendants used AOP's registered DRIP CLUB mark as a hashtag associated with their MILK MAN advertisements in social media. (SUF ¶ 186.) The only issues are the extent of the use and damages. There is a clear benefit to using a mark as a hashtag. (SUF ¶ 189.) It is undisputed that Defendants deleted their Instagram account, which prevented AOP from discovering additional uses of its mark. (SUF ¶ 190.) If the Court should find damages to be too speculative based on Defendants' deletion of key evidence, at a minimum, the Court should enter an injunction prohibiting Defendants' use of AOP's registered DRIP CLUB mark.

### D. The Court Should Award Damages to AOP.

Defendants state that their expert report raises genuine issues of material fact. (Opp. 17:20-26.) It does not.

Defendants do not cite to any specific reasoning in their expert report to support that argument, which means the "dispute" is unsupported. (Standing Order at 5:16-6:14.) In addition, an unsworn expert report, like that of Defendants, cannot be used to oppose summary judgment. *AFMS LLC v. United Parcel Serv. Co.*, 105 F. Supp. 3d 1061, 1070 (C.D. Cal. 2015). Moreover, to be used for summary judgment, an unsworn expert report must be attached to an affidavit by the expert stating the factual basis for the opinion. *Guidroz-Brault v. Mo. Pac. R. Co.*, 254 F.3d 825, 831–32 (9th

1  Cir. 2001) ("[I]n the context of a motion for summary judgment, an expert must back
2  up his opinion with specific facts"). Accordingly, Defendants' expert report does not
3  raise a genuine issue of material fact.
4       Nonetheless, the only "facts" offered by Defendants in support of a "dispute"
5  concerning damages are the statements in the declaration of one of Defendants'
6  principles, Robert Hackett. (Opp. 17:27-18:10 (citing Hackett Decl. ¶ 25).)
7       These citations should be ignored. *F.T.C.*, 104 F.3d at 1171.
8       Mr. Hackett is not an expert, does not demonstrate that he is an expert, and does
9  not explain the factual basis for his opinion. *Walton v. U.S. Marshals Serv.*, 492 F.3d
10 998, 1008 (9th Cir. 2007) (a party can only use expert opinion to defeat summary
11 judgment "if it appears the affiant is competent to give an expert opinion and the
12 factual basis for the opinion is stated in the affidavit").
13      Conversely, AOP has met its burden of proving Defendants' minimum gross
14 profits through June 2016, which are undisputed, (SUF ¶ 200), and which all must be
15 presumed to result from the infringement. Defendants have failed to meet their burden
16 of showing which sales are not attributable to their infringing activity. Thus, the
17 profits properly belong to AOP. *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge*
18 *Co.*, 316 U.S. 203, 207 (1942) ("There may well be a windfall to the trade-mark
19 owner .... But to hold otherwise would give the windfall to the wrongdoer.")
20     E.   <u>This Is an "Exceptional Case."</u>
21      The only "evidence" Defendants offer to support their contention that this is not
22 an exceptional case under 15 U.S.C. § 1117 is the Hackett declaration, which should
23 be ignored for the reasons discussed above. *F.T.C.*, 104 F.3d at 1171.
24      Aside from the conclusory, self-serving statements in that declaration, there are
25 no facts in dispute. For example, it is undisputed that William Hackett, Robb
26 Hackett's brother and Defendants' employee in charge of social media, or William's
27 subordinates Chris and/or Jacob, knew of AOP's THE MILKMAN e-liquid in April
28

2014 *before* Defendants sold their MILK MAN e-liquid. (SUF ¶ 33-35.) Their knowledge is imputed to Defendants. *Potter Voice Techs., LLC v. Apple Inc.*, 24 F. Supp. 3d 882, 886 (N.D. Cal. 2014).

It is further undisputed that Defendants continued to sell their MILK MAN e-liquid after receiving AOP's June and July 2016 cease-and-desist letters. *Discovery Comm., Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1292 (C.D. Cal. 2001) (continued infringement after receiving a cease-and-desist letter was willful).

It is also undisputed that Defendants altered their November 14, 2014, invoice and created the November 21, 2014, invoice, after receiving AOP's cease-and-desist letters, in July 2015—despite their (and third party's) testimony that the invoices were created and finalized in November 2014. (SUF ¶¶ 100-08, 117-18, 121-25.) Finally, Defendants continued to sell their MILK MAN e-liquid after learning of AOP's undisputed priority based on the Deus Juice assignment. Defendants cannot contend in good faith that they have priority in any area of California outside of, perhaps, the 2 vape shops in Whittier, because AOP and Deus Juice have undisputed first sales in all other areas. Nonetheless, Defendants have continued to sell in all areas in which AOP has undisputed priority on a large scale since May 2015. (SUF ¶ 22.)

Thus, the Court should find this to be an "exceptional case" and award AOP enhanced damages and attorneys' fees.

## III. CONCLUSION

Based on the foregoing, the Court should enter judgment for AOP on all counts.

Dated: September 20, 2016         By: _____
                                  Konrad K. Gatien, Esq.
                                  STUBBS ALDERTON & MARKILES, LLP
                                  Attorneys for Plaintiff
                                  AOP Ventures, Inc.