1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3               WESTERN DIVISION

4                 – – – – –

5  THE HONORABLE WILLIAM D. KELLER, SENIOR DISTRICT JUDGE

6                   PRESIDING

7
   AOP VENTURES, INC.,          )
8                               )
          Plaintiff,            )
9                               )
     vs.                        )     No.  EDCV 15-01586-WDK
10                              )
                                )
11 STEAM DISTRIBUTION, LLC,     )
   et al.,                      )
12                              )
          Defendants.           )
13 _____ )

14

15

16       REPORTER'S TRANSCRIPT OF PROCEEDINGS

17          LOS ANGELES, CALIFORNIA

18          TUESDAY, MAY 11, 2017

19

20               **VOLUME II OF II**

21               **PAGES 1 – 74**

22 _____

23          DEBORAH K. GACKLE, CSR, RPR
              United States Courthouse
24          350 W. First Street, 4th Floor
            Los Angeles, California 90012
25               (213) 893-8913

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    **APPEARANCES OF COUNSEL:**

2

3

4       **For the Plaintiff:**

5

6            Michael L Cohen
             Michael Cohen APLC
7            1910 West Sunset Boulevard Suite 440
             Los Angeles, CA 90026
8            213-413-6400
             Fax: 213-403-6405
9            Email: cohen@mlcplclaw.com

10

11           Barak Kamelgard
             Stubbs Adlderton and Markiles LLP
12           1453 3rd Street Promenade, Suite 300
             Santa Monica, CA 90401
13           310-746-9800
             Fax: 310-746-9820
14           Email: bkamelgard@stubbsalderton.com

15

16           Anthony M Keats
             Konrad Karl Gatien
17           Keats Gatien LLP
             120 South El Camino Drive Suite 207
18           Beverly Hills, CA 90212
             424-302-0717
19           Email: kg@keatsgatien.com

20

21           ///

22           ///

23

24

25

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    **For the Defendants:**

2

3          Matthew K Wegner
           Brown Wegner LLP
4          2603 Main Street Suite 1050
           Irvine, CA 92614
5          949-705-0080
           Email: mwegner@bwmllp.com
6

7          William J Brown, Jr
           Brown Wegner LLP
8          2603 Main Street Suite 1050
           Irvine, CA 92614
9          949-705-0080
           Email: bill@bwmllp.com
10

11         Yuanjun Lily Li
           Brown Wegner LLP
12         2603 Main Street Suite 1050
           Irvine, CA 92614
13         949-705-0080
           Email: lli@bwmllp.com
14

15         Glen Nuttall
           Brown Wegner LLP
16         2603 Main Street Suite 1050
           Irvine, CA 92614
17         949-705-0080
           Email: gnuttall@bwmllp.com
18

19

20                          - - - - -

21

22

23

24

25

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1                        **I N D E X**

2

3    **COURT'S WITNESSES:**                              **EXAMINATION**

4

5     MARTIN, DARYL      BY THE COURT              58
                         BY MR. COHEN              65
6                        BY MR. WEGNER             125
                         BY MR. COHEN              132
7                        BY MR. WEGNER             147
                         BY MR. COHEN              151
8                        BY MR. WEGNER             158
                         BY MR. COHEN              160
9                        BY MR. WEGNER             160

10

11    ANSON, WESTON      BY THE COURT              79

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1        LOS ANGELES, CALIFORNIA; THURSDAY, MAY 11, 2017; 11:05 A.M.

2                              - - - - -

3

4              THE COURT:  Good morning, all.

5              Thank you for your patience.  I realize it's

6    somewhat, if not considerably, discommoding to have to come in,

7    but it goes with the turf so to speak.

8              I think we have some resolution -- I know we have

9    some resolutions for you, certainly in the motions in limine

10   and also on this issue of apportionment, and let me start with

11   apportionment.  We've been through it yesterday, and basically

12   it seems to me that there are two issues associated with the

13   apportionment.  First issue is the categories that have been

14   selected by the witness Martin, okay?  The second issue is the

15   percentages.  They are distinct, and I believe there was

16   agreement that they are distinct.  That agreement was manifest

17   yesterday.  In that regard, it's my conclusion, which was, I

18   believe, expressed yesterday but finalized today, that the jury

19   is simply not equipped to understand without assistance this

20   niche business that is the source of the litigation.

21             It is my further belief that -- and therefore

22   there's -- expert testimony is appropriate.  Now, then the

23   question is, well, what about -- is Martin expert?  I think

24   it's manifest that as regards the business and as regards his

25   description of what he has done over the years and over time
```

1    and in this case, that he is certainly qualified to make these

2    observations vis-a-vis apportionment -- excuse me -- vis-a-vis

3    categories.  It's clear to me.

4            Now, that does leave the question of, well, which of

5    these particular eight factors that you referred to come into

6    evidence and/or may be referred to, and whereas there is a

7    varying strength in the identification of the factors, in other

8    words, some factors are clearly more significant than others, I

9    nevertheless believe that all factors come in, and it's up to

10   the argumentation and the jury's deliberation as to what weight

11   to be given.

12           Now, that leads to the issue of percentages, and

13   that's a different ball game, and we went around and around and

14   around the so-called legal mulberry bush yesterday -- at least

15   I did -- as regards the issue of percentages.  As regards

16   percentages, it's my conclusion that -- well my view is

17   informed by -- my view is informed by several cases.  One is

18   the *City of Pomona v SQM North America Corporation*, 750 F.3d

19   1036 at 1044 Ninth Circuit 2014, wherein it is stated, in part,

20   "Opinion based on unsubstantiated and undocumented information

21   is the antithesis of scientific reliable expert opinion."

22           Next citation, *LaserDynamics*, L-a-s-e-r, no space,

23   cap D in the *Dynamics*, *Inc.*, *v Quanta* -- Q-u-a-n-t-a --

24   *Computer, Inc.*, 694 F.3d, 1551 at 69 Federal Circuit, 2012.  In

25   that case, the Federal Circuit affirmed a district court's

1    decision to exclude expert report under 702 stating that the

2    expert's, quote "One-third apportionment to bring the royalty

3    rate down from six" -- "from six percent ... to two percent per

4    laptop computer appears to be have been plucked out of thin air

5    based on vague qualitative notions of the relative importance

6    of the technology."

7              Furthermore, having in mind that -- look it, this

8    is -- I wouldn't have labored with you so long yesterday if I

9    didn't find it difficult to making a determination.  I just

10   would snap my fingers quite obviously and come with this kind

11   of ruling, but as earnest as Mr. Martin may be, when I quested

12   repeatedly for how do you get these percentages, he did not

13   give me kind of substance that is the stuff of the reliability

14   that you have to have in order to make this kind of argument,

15   percentages.  And I'll say that the attribution of ten percent

16   to the value of the name is remarkable, okay?  That in itself

17   got to tell you what's going on here?

18             But the *Daubert* factors, also I need to implicate

19   them because if you trundle into the court of appeals with all

20   this, they're going to say, Well, what were you thinking,

21   Judge?  Well, I'm telling you what I'm thinking.  I've told you

22   about these cases that inform my opinion, and certainly the

23   *Daubert* factors inform my opinion.

24             Four factors that I'm talking about are, quote,

25   "Whether the theory or technique employed by the expert is

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    generally accepted in the scientific community."  I don't have

2    any evidence to that affect.  Appears to be -- period.  Second

3    quote, "Whether it's been subjected to peer review and

4    publication."  I don't believe I have evidence to that affect

5    either.  Third, "Whether it can be and has been tested."  Can't

6    be tested.  Fourth, "Whether the known or potential rate of

7    error is acceptable."  Same analysis.  You can't -- so where

8    you end up is this:  You can use the factors, and you can argue

9    them to the jury, and I suppose at first blush the defense

10   attorney would say, Well, you give me half a loaf, you know.

11   What am I supposed to do with eight factors when you take away

12   my percentages?  Logical question.

13          And as you might expect, the same type of thought

14   occurred to me and the law clerks.  We're sitting in the

15   quietude of chambers, and outcomes this subject after we go

16   through this percentage analysis, and we look at it, and I

17   think, you know, when I do think of it, the defendant

18   absolutely -- and I underscore that word, absolutely -- and

19   I'll put it in letter caps -- absolutely still has an argument.

20   Are you telling me you still don't have an argument?  And I'm

21   going to give you what I think is a very good insight into why

22   you still have an argument.  Day in and day out negligence

23   cases are tried, particularly in the state court but also in

24   the federal court, and obviously we're using the California law

25   if the accident happened here, and law in California is

```
 1   comparative negligence.  What do you think when there's an auto

 2   accident is happening when the plaintiff's attorney argues, or

 3   the defense attorney?  They are taking it upon themselves in

 4   light of the facts to argue what it -- what contributes here

 5   and don't tell me they're not coming up with percentages in

 6   their argument to the jury, albeit I'm not there.  I know they

 7   are coming up and ascribing percentages, which means can you --

 8   can, for instance, the defense attorney in this case stand up

 9   in front of the jury and say, Come on.  Look at the very

10   argument that he made in support of the factors.  Look at these

11   factors.  This is a bundle.  This is a -- I'll give you a pie

12   chart.  Look at it any way you want.  The product of the

13   defendant that is -- that has been -- "product" being the

14   trademark; tradename has been infringed here, is only a part of

15   the pie or puzzle.

16          Now, how do you divide that up?  I'm not telling you,

17   ladies and gentlemen of the jury, it's easy, I'm just telling

18   you that it can be done and frankly has to be done.  Well, how

19   are you going to go about it?  Well, think -- I'm arguing to

20   you:  Here's the strength of these factors and ask yourself,

21   after you've looked at these various factors, what's the

22   importance of this trade name?  It's the tail wagging the dog.

23   On the other hand, Mr. Cohen comes up and says, tail?  That

24   tail is the dog, okay?

25          So go at it, but I'm telling you, and I'm telling the
```

1    court of appeals, that you still got an argument, and there you

2    are.  You see, what else, if anything, I wanted to raise in

3    this question.  There wasn't anything.  I don't need any

4    further input.  That's the ruling.  Can't use percentages --

5    excuse me -- cannot use expert percentages.  You may argue, as

6    I said is done with some consistency in other areas, the amount

7    of contribution allotted to various considerations going into

8    value, okay?  Simple as that.

9            Now --

10           MR. COHEN:  Your Honor, just so I understand the

11   ruling, may I ask a question?

12           THE COURT:  Yes.

13           MR. COHEN:  No expert percentages, I get that.  So

14   that Mr. Martin can't talk about any of his percentages.  Does

15   that also -- that includes the ten percent, correct?

16           THE COURT:  Yes.

17           MR. COHEN:  And it also, since the "sanity check"

18   was just compared with the ten percent, that's out as well --

19           THE COURT:  Yes.

20           MR. COHEN:  Okay.

21           THE COURT:  Okay.

22           MR. WEGNER:  Your Honor, may I ask a question then?

23           THE COURT:  Sure.

24           MR. WEGNER:  Certainly I assume that Mr. Martin is at

25   least allowed to opine on which factors are more important.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    THE COURT:  Certainly.  He can't give percentages,

2    but he can say, This is -- he can argue for you in a sense --

3    MR. WEGNER:  I understand you don't want to want to

4    hear more argument.  I just want to go on record by saying I

5    appreciate the hard work that went into your analysis here.  I

6    disagree with the other half of the loaf, the disallowance of

7    the percentages because I think that that does deprive the jury

8    of some very important benchmarks.  I understand the court's

9    ruling, but I just want to be clear that I disagree with that

10   part of it.

11   THE COURT:  Fine.  You aren't the first lawyer to

12   disagree with me, okay?  He's already done so.  And I take no

13   offense because it's part of the job.  Go ahead and disagree.

14   MR. KAMELGARD:  Your Honor, if I may for a second,

15   does the ruling saying that expert percentages are out but the

16   lawyers could discuss percentages mean that the lawyers can

17   then go and say based on these eight factors, I as a lawyer

18   believe it's that percentage that you ascribe and then use the

19   exact same numbers that the expert used?

20   THE COURT:  Sure.  The jury won't know the expert

21   used it.  All the expert can say is I think this is very

22   important because, and I don't think this is as important

23   because.  For instance, the tradename.  But they can't -- he

24   can't refer to the percentages he's heretofore ascribed.  For

25   instance, I think Mr. Anson made a very good point yesterday

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   vis-a-vis one particular factor:  The 12 and eight percent.  I
 2   mean, you want to see how infirm this analysis is and how that
 3   probably was -- I think about it -- should be noted for
 4   purposes of appeal, and certainly to educate you regarding the
 5   basis of my conclusion.  When you start talking in terms of,
 6   well, it's eight or 12 and you're talking a 50 percent
 7   increase, that is not the stuff -- you don't have to be exact,
 8   but you got to be a lot closer than that.  So that is the rule.
 9          Now, I will say to you and -- you know, imbued,
10   perhaps improperly, with my view, but -- but you say to me
11   Well, you think that's going on across the street day in and
12   day out in these negligence cases and that lawyers can say
13   Well, you're half liable because you weren't looking carefully
14   enough as a pedestrian, and you, the driver, were whatever --
15   liable -- negligent.  Liable is the wrong word.  You're
16   negligent to this degree because of -- pedestrian because of
17   what you did, and the auto driver is negligent.
18          If I am wrong and a defendant -- well, a medical
19   malpractice case.  The man is going to die anyway -- okay? --
20   and so -- any number of these comparative negligence cases.
21   Let's put it that way.  You know this has been tested.
22   Somebody, when this argument was the first raised, had to be
23   going to the courts of appeal and had winded its way to the
24   Supreme Court, and the issue being can a lawyer do what you
25   question about to argue percentages?  Well, the answer is it
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   has to be that he can; otherwise, how do you compare the

2   negligence?  You know, so you're right in the sense of you've

3   identified my ruling.  He can argue the percentages for the

4   reason or reasons I've stated, and if you can go -- I

5   welcome -- if you can go to -- I don't want some half-baked

6   trial court, including me -- I don't want some half-baked trial

7   court coming here and telling -- and what they said, you want

8   to go to a court of appeal or the Supreme Court in the

9   California.  Says you can't do that.  I'll -- and you know

10  what?  I don't think you'd lay a finger on what I'm saying as

11  being wrong, and at any rate, if you can find a case that says

12  something to that effect, let me see it.  But I'm going to --

13  you're going to dig a long time before you find that, I think.

14  I don't think it's there, okay?

15          MR. KAMELGARD:  Thank you, Your Honor.

16          MR. COHEN:  Just a follow up to Mr. Wegner's

17  question, just so we're clear.

18          In closing, Mr. Wegner, or whoever is closing, can

19  argue percentages and try and persuade the jury, but Mr. Martin

20  can -- can the lay witnesses --

21          THE COURT:  We'll get to Villegas; that's coming up.

22          MR. COHEN:  Well, I was thinking about their clients.

23  In other words, can their clients --

24          THE COURT:  That's on the horizon, okay?

25          MR. COHEN:  Got it.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1            THE COURT:  Motions in limine.  The first one that I
 2   have on my bench memo is the plaintiff's motion to exclude
 3   references, testimony, and evidence regarding the sales of --
 4   first letter cap -- Good Vapes, V-a-p-e-s, LLC, and that was
 5   the issue that was presented to Judge Phillips in days gone by;
 6   and that issue relates to trademark priority or the alleged
 7   trademark priority of Good Vapes.
 8            Now, this issue has been addressed effectively three
 9   times, twice by the judge that preceded me, Judge Phillips, and
10   now by me.  The first time before Judge Phillips was at a
11   hearing on the motion for summary judgment where the court
12   stated that it was untimely, and I'll say, parenthetically, the
13   timing is very, very suspect of the acquisition of the
14   trademark.
15            But aside from that, the issue was addressed a second
16   time in the order on a motion for reconsideration, and the
17   judge stated -- and I'm quoting -- "Even if the court had
18   accepted those exhibits as authentic -- parenthetically, mind
19   you, she already ruled untimely, but she said, Hey -- she
20   says -- which is a good way to handle things -- she says,
21   Alternatively, even if you've given it to me on time, even if
22   you didn't have a time problem -- so you got a -- three things
23   going on here:  One, really suspect, the Good Vapes conveyance,
24   okay?  Come on.  No. 2, your motion, Judge Phillips saying not
25   timely.  No. 3, you come back again for reconsideration, and
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   Judge Phillips says -- and I'll read anew, "Even if the court
 2   had accepted those exhibits as authentic and admissible for all
 3   the purposes of summary judgment, neither of them details
 4   specifics, sales of the product such that they could be used to
 5   establish any type of trademark priority."
 6           That is the law of the case, okay?  And, you know, if
 7   I thought that it were clearly incorrect, her latter view, the
 8   view she latterly expressed -- and, you know, is it appropriate
 9   for me to come back and say, Look it, I'm reopening this?  I
10   suppose so.  You could argue -- it depends on the judge.  Some
11   judge will do it; some won't.  I would, quite frankly.  I'm not
12   inviting relitigation.  I'm not going to relitigate it now, but
13   I'm not foreclosing you willie-nillie, I'm foreclosing you
14   because she did this on two bases, and she identified the
15   merits basis on her second ruling, and I'm not going to revisit
16   it because facially it appears to be correct, and it is the law
17   of the case.
18           So the -- furthermore, I believe 403 would preclude
19   it -- as there would be in the damage case, it would be
20   confusion of the jury, and you have now taken a case that has a
21   life of its own and given it yet one more life if you're going
22   to get into Good Vapes, and I'm not going to do that; it's not
23   going to happen.  So do not suggest this issue before the jury.
24   I say that nicely but firmly.  No wafting -- w-a-f-t -- no
25   wafting of this issue in front of the jury.  I'm granting the
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1 | plaintiff's motion in limine No. 2.  Plaintiff's motion in
2 | limine No. 3 excluded testimony of Barbara Villegas,
3 | V-i-l-l-e-g-a-s.  She was the lady who did business as
4 | Vaping -- letter cap -- first letter cap -- V-a-p-i-n-g --
5 | Rabbit -- just like it sounds -- which distributed The Milk Man
6 | and assigned the rights to the plaintiff.

7 | She wants to testify -- or the defendant wants her to
8 | testify that, among other things, what she believed motivated
9 | customers to try defendant's Milk Man eLiquid.  She wants to
10 | testify to the commercial appeal of The Milk Man packaging, and
11 | her opinion as to the reasons for the defendant's success.  She
12 | has personal knowledge of the factors that contribute to the
13 | sales of eLiquid besides the text of The Milk Man, such as
14 | packaging, pricing outreach, and a strong distribution network.

15 | She is going to be your other basis of argumentation
16 | because I'm going to permit her to testify, and you can tie
17 | her in to Mr. Martin.  And why do I say she can testify?  If
18 | I -- in the hierarchy of 701 experts, she's right in that.
19 | She's right in the Vanguard, okay?  Let's go back to 701, and
20 | I'm reading it in quotes and verbatim, "If a witness is not
21 | testifying as an expert -- parenthetically, she's not, close
22 | parenthetical -- testimony in a form of opinion is limited to
23 | one that is a rationally based on the witness's perception.
24 | Clearly present here to a fair-thee-well; B, helpful to clearly
25 | understand the witness's testimony or determining of a fact in

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    the issue."  Well, one of the facts in issue is these factors.

2    Absolutely she's qualified in that sense and not -- "and, C,

3    not based on scientific, technical, or other specialized

4    knowledge within the scope of Rule 702."

5         She fits in there, and I believe she can testify.

6    Defendant's motion is denied.

7         MR. KAMELGARD:  Your Honor --

8         THE REPORTER:  Please stand up so I know who's

9    speaking.

10        MR. KAMELGARD:  Sorry.  Barak Kamelgard.

11        In their motion they -- as you mentioned, defendants

12   say that they want to use her for packaging.  Mr. Martin never

13   mentioned packaging among his eight factors.  So does that

14   ruling mean defendants are allowed to go beyond the eight

15   factors?

16        THE COURT:  She is not -- it does mean that, that she

17   may.  She's testifying independent of him, and it coincides

18   with his view, and it's coming from a woman who is extremely

19   versed in this particular area and uniquely qualified.  One

20   would think we're beyond that now; one would think she could

21   have come up with value in this case and -- with the

22   negotiations that went into the purchase; but that's not before

23   me, and I'm looking at the law clerk, says, Wait a second.

24   Want to put value.  I'll give you value.  What's going on

25   between Villegas and -- I'm not going to go any further --

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    well, the answer to your question:  Yes, she can.

2           MR. KAMELGARD:  Your Honor, if defendants are allowed

3    to bring in factors, can plaintiffs bring in factors that

4    weren't discussed as well?

5           THE COURT:  Yes.

6           MR. KAMELGARD:  Thank you.

7           THE COURT:  Okay.

8           Now, defendant's motion in limine to exclude all

9    reference to Tellez -- T-e-l-l-e-z -- Tellez' November 2014

10   sales receipts.

11          I believe that the sales receipts are irrelevant to

12   the damages issue that are going to be before the jury under

13   401 and 402, and, furthermore, that they will confuse under

14   403, and that it's improper, arguably improper, character

15   evidence; but caveat:  It may be used for impeachment under

16   608 (b).

17          So you can't bring it up, but Tellez -- give me a

18   sidebar first, or give me a further analysis before the trial,

19   but I think that it can be -- it may be used to impeach under

20   604[sic](b).  The court may, on cross-examination, allow them,

21   that is, "criminal conviction or extrinsic evidence" to be

22   inquired into if they are probative of the character for

23   truthfulness or untruthfulness of the witness.

24          Conclusion:  The plaintiff cannot use back-dated

25   receipts in his case in chief, but plaintiff can use to impeach

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1  Tellez if he takes the stand.

2          She is telling me I didn't say what I thought I said.

3  She said I said, "608," and it's "604" -- I said "604," and

4  it's "608."  If I did say "604," I meant "608."

5          So that's the ruling on that.

6          And the next motion in limine is defendant's motion

7  in limine to exclude all reference to alter-ego theories and/or

8  the financial condition of nonparty persons or entities.

9          Now, I want to ask the plaintiff:  Are you proposing

10  to use some type of put in street talk -- in essence, you're

11  saying these defendants are playing a shell game over there --

12  okay? -- and you want to show something like that.  If that's

13  what you're trying to do, I don't believe that under 402, 401

14  is relevant; or 402 and 403, confusing the jury and making a

15  long case even longer.  I don't think you can -- I don't think

16  shells or alter egos are an issue here.

17          Did defendants anticipate you doing something that

18  you weren't intending to do?

19          MR. COHEN:  Yes, Your Honor, but -- and I'd like to

20  clarify what we intend to do because it matters.

21          THE COURT:  Let me suggest to you in the future, both

22  counsel, when you have something you want to give to the court,

23  have a copy for the law clerk, too.

24          MR. WEGNER:  I did.

25          THE COURT:  Ah, well, the clerk is going to be

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    defrocked right in front of the attorneys.

 2              (Laughter.)

 3              THE COURT:  She didn't give it to me so I didn't know

 4    that.

 5              MR. COHEN:  All right.  What you're looking at, Your

 6    Honor, is Exhibit 201 from the deposition of Patty Chan.  Patty

 7    Chan is the CFO for each of the defendants.

 8              THE COURT:  For whom?

 9              MR. COHEN:  The defendants.

10              What you have is a list of all the entities that the

11    owners, the individuals, Mr. Hackett, Mr. Voudouris, own, in

12    whole or in part, and the reasons this matters is because Patty

13    Chan testified that she does work for each of these, and that

14    there's an accounts payable clerk and accounts receivable clerk

15    that do work for each of these.  She also testified that

16    Mr. Voudouris and Mr. Hackett do work for each of these varying

17    amounts of work; and the reason that matters is in Mr. Martin's

18    analysis in deductions for expenses, he assumed that

19    Mr. Voudouris and Mr. Hackett, all they did was work for one of

20    the three defendants, and that all work done by the employees

21    was going to those three defendants.  And Mr. Martin conceded

22    during his deposition that to properly account for that, he

23    would have to back -- take away from his deductions -- in

24    other words, put back into the damage amount some fair amount

25    for the work that Ms. Chan and the accounts payable clerk and
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   the accounts receivable clerk and Mr. Hackett and Mr. Voudouris

2   and others have done for these entities; but he wasn't provided

3   that information.  He has not done the work to do it, and I

4   want to be able to talk about this because that affects the

5   accuracy of Mr. Martin's work.

6          THE COURT:  I hear you; I believe I understand you.

7          Did you, during the course of the deposition or in

8   some other form of discovery, did you unearth the professed --

9   "professed" I said -- reasons for the various entities?

10         MR. COHEN:  Well, what do you mean the reason for the

11  entities?

12         THE COURT:  Why do they exist?  Why do you have so

13  many of them?  What's going on here?

14         MR. COHEN:  No, I did not ask that -- I take it back.

15  I did ask what each of them did but not the why question, like

16  why did you create this, but I did ask what they did.

17         THE COURT:  What did they say?  Do you remember?  Was

18  there a real difference?

19         MR. COHEN:  Yeah, these companies do different

20  things.  We're not going to argue that these are all -- we're

21  not going to argue the shell game theory.  Now we're --

22         THE COURT:  You don't want to for purposes of damages

23  because if they are separate, obviously you can back -- you

24  could reduce their reduction.

25         MR. COHEN:  That's the point, what you just said,

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    it's because it's not accounted for -- and Mr. Martin conceded

2    rightly that they should be, and they have no records to do it;

3    there are no time records.  So no matter what, what that

4    component with regard to payroll, Mr. Martin's numbers are

5    high.

6          Now, we got --

7          THE COURT:  Wait a second.  I hear you, and what if

8    Mr. Martin adjusted his records to reflect these three -- these

9    multiple of entities?  Would this -- and basically self-reduce

10    the minus, if you will, the reductions, and then you don't have

11    to get into this alter ego type of thing.

12          MR. COHEN:  No, it's impossible.  According to Patty

13    Chan, they don't have records to do it.  In other words, they

14    don't have time cards or notes or things by which they can do

15    it.  So here's what is going to happen to me.  Ms. Chan is

16    going to say --

17          THE COURT:  Here's what else is going to happen to

18    you.

19          MR. COHEN:  Well, okay.  In this instance, what's

20    going to happen is Ms. Chan will say, "Oh, I spend five minutes

21    a year on this," and I have no way of checking any of this, and

22    it's all after the discovery; I can't cross-examine; I have no

23    records; I have nothing.  So, you know, the time to have done

24    this was when they were doing the work the first time.

25          THE COURT:  Well, I can't say that -- I can't

```
 1    critique Mr. Martin because he wasn't given the input.

 2              MR. COHEN:  I think that's right, absolutely, yeah.

 3    So he didn't know --

 4              THE COURT:  Okay.  Let's get Mr. Wegner's response.

 5              MR. WEGNER:  Well, Your Honor, I mean, a couple of

 6    things.  I think that there has to be a way to deal with this

 7    perceived issue that doesn't involve identifying all these

 8    different entities that admittedly -- I believe I hear

 9    Mr. Cohen to be saying don't have anything to do with the case

10    apart from an accounting issue, if there is one.  And do I

11    think there has to be a way that that can be dealt with because

12    there is certainly just manifest confusion in front of the jury

13    if all of this is trotted out and prejudiced to -- well, the

14    owners of my business.  I think that's -- well, the other

15    businesses is just not at issue in this case.

16              Although I haven't discussed it in particular with

17    Mr. Martin, I can say that we would be open to considering some

18    kind of stipulation or evaluating that one piece, if that's

19    really what this is about is payroll and an operating

20    sentence --

21              THE COURT:  That's not what it's really about in your

22    view.  He just wants to give it the shell patina.

23              MR. WEGNER:  Well, I certainly don't want the shell

24    patina.  I don't want --

25              THE COURT:  I understand.  You kind of brought it on
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    yourself, quite frankly.

2              You could say, I'll permit you to do this, but I

3    won't permit you to argue shell.  That might be a way to

4    resolve this.

5              Mr. Cohen?  Mr. Cohen?

6              MR. COHEN:  Just a second, Your Honor.  I'm going to

7    ask Mr. Kamelgard because he is one who's dug into those

8    numbers.  I want him to address it.

9              MR. KAMELGARD:  Your Honor, I just want to clarify

10   one thing:  It's not just payroll.  There are actually a few

11   categories where there are expenses incurred related to these

12   entities.  For example, they have loans to Exclusive; Mr. Good

13   Vape.  Both Mr. Hackett and Niko Voudouris took out their draws

14   to Damian International; Cresto Management, the loan-out

15   company for Patty Chan.  Their website developer, who they pay

16   commissions to, manages a bunch of these different companies,

17   social media; so payroll is one aspect, but there are a lot of

18   different expenses where these companies are somehow being

19   accounted for.

20             MR. COHEN:  And it's coming out of our client's

21   damages because he's backing out his expenses.

22             THE COURT:  I understand that.  You certainly are

23   able to, while you were talking with Mr -- "gard," is it?

24             MR. KAMELGARD:  Yes.

25             THE COURT:   -- while you were talking to

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   Mr. Kamelgard, I was saying to you there may be a way to have

2   your cake properly and address the defendants and the court's

3   concern, and that is you may cross-examination, but you can't

4   argue shells.

5           MR. COHEN:  As long as we can cross-examination them,

6   that's fine.

7           THE COURT:  Okay.  There you are.  There's the

8   ruling.  You may cross-examine them; you can't argue shells or

9   any type of related-type argument that would have -- egg up to

10  here with all these -- look at the kind of organization you're

11  dealing with.

12          MR. COHEN:  Oh, that I understand.  I'm not going --

13  in other words, I'm not going to say, this is all insidious and

14  look at all this horrible stuff; but do have to say, and I have

15  to be allowed to say, Here's Cresto Management.  Who owns it?

16  What does it do?  Because the jury is not going to understand

17  why I'm arguing unless I give it some context.

18          THE COURT:  I agree with you.

19          MR. COHEN:  Okay.

20          THE COURT:  What else is there related -- okay.  I

21  believe you actually identified -- they actually identified

22  alter ego.  You're not arguing that -- we've taken care of that

23  now.

24          MR. KAMELGARD:  That's correct, we will not --

25          MR. COHEN:  During the trial.  If there's a judgment,

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    that's later, but not --

 2            THE COURT:  That's a different ballgame.

 3            MR. COHEN:  Yeah.

 4            THE COURT:  And the other thing that was in issue is

 5    the financial condition of nonparties or entities.  Can't argue

 6    that, okay?  Got it?

 7            MR. COHEN:  Not the financial condition, would be all

 8    these expenses, deductions and things like that.

 9            MR. KAMELGARD:  With one clarification:  There was an

10    issue that came up during deposition that certain entities are

11    paying expenses -- even just within the three defendants --

12    certain entities are paying expenses for others because of

13    issues with cash flow and loans, whatever, and Mr. Martin

14    allocated each entities' expenses at a slightly different

15    percentage.

16            So I just want to make sure that when you say we're

17    allowed to cross-examination the financial condition of the

18    company does explain why certain expenses are in certain

19    places; so I just wanted to clarify where the line was, if you

20    meant these financial conditions of the --

21            THE COURT:  You can question regarding that.  That's

22    fine.

23            Just go to defendant's motion No. 3, motion in limine

24    to -- excuse me -- to exclude references to irrelevant

25    litigation matters.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              Is there anything else remaining in your motion in

 2    limine No. 2 or -- which is to say that the Nuttall

 3    N-u-t-t-a-l-l -- and allied issues, have they all been taken

 4    care of?  All that remains is the relevant litigation matters;

 5    is that right?

 6              MR. WEGNER:  I believe so, Your Honor.  I'm trying to

 7    recall which motion actually tied in the fact that they

 8    identified Mr. Nuttall on their witness list.

 9              MR. COHEN:  Your honor, I could clarify that.

10              Mr. Nuttall we wanted because he was the one who told

11    us about the issue with the invoices, but considering your

12    ruling on the invoice issue, that's not important anymore.

13              THE COURT:  So the motion in limine No. 2 is

14    withdrawn; it's not an issue.

15              MR. KAMELGARD:  No. 2 was their --

16              THE COURT:  Defendant's motion in limine No. 2 --

17    No. 3 -- excuse me No. 2, yes.

18              MR. WEGNER:  There is one other issue, actually, Your

19    Honor.  I understand what you're asking now in that motion.

20    That is the -- the issue of what I've called post-injunction

21    conduct.

22              THE COURT:  Post-injunction conduct's got nothing to

23    do with this case, okay?

24              MR. WEGNER:  I agree.

25              THE COURT:  I bet you agree.  That's another thing
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   that's a sure bet.  We got a couple things going on here:  The
 2   comparative negligence, and you agree on that, but the fact of
 3   the matter is any alleged -- and I don't know if it's real or
 4   unreal.  Unfortunately, I'm going to have to apparently address
 5   this in exceptional circumstances, but enough of my
 6   observations.
 7          As of now, the conduct, good or bad, but let's talk
 8   in terms of bad, the conduct -- the negative conduct of the
 9   defendant alleged by the plaintiff, whether true or not, is not
10   the subject of any type of evidence or argument.  That goes
11   without saying.
12          MR. COHEN:  Your Honor, I'd like to address one
13   specific bit of evidence because it is post-injunction, but
14   it's highly relevant, especially given the court's rulings on
15   the factors.
16          They're going to argue, Oh, it wasn't the name, it
17   was all this other stuff, and Ms. Villegas is going to say, Oh,
18   it's the packaging, or other stuff.  Okay.  I've got to live
19   with that.  But I want to be able to cross-examine their people
20   that after they were ordered to stop doing this, they -- not
21   only they kept using the name, also --
22          THE COURT:  Slower, slower.
23          MR. COHEN:  Sorry -- in their marketing, they said,
24   "Milk Man, formerly known as 'The Milk Man.'"  That was part of
25   how they sold the product for a period of time after they were
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    told to stop selling the product.

 2              If the name doesn't matter, why were they doing that?

 3    Now, the jury may reach whatever conclusion they're going to

 4    reach, and they can argue whatever -- and they can say whatever

 5    they want to say --

 6              THE COURT:  I understand your argument.

 7              What's your response?

 8              MR. WEGNER:  Your Honor, I think that those issues,

 9    frankly, were dealt with the context of the many briefs, and

10    I'll call them declarations that were filed in response by us

11    in the post-injunction proceedings.  I think if there's an

12    issue about whether an injunction has been violated, that's

13    between the court --

14              THE COURT:  Okay.  Here's the -- I've got your

15    response.  My response is that it's not offered for whether the

16    injunction is violated; all it's offered for is the purpose

17    of -- you say that Milk Man is a ten percenter, even now -- you

18    can't argue it, but you may argue it at the time of the final

19    argument without referencing Mr. Martin.  You may ascribe a

20    percentage, and you're going to come up with some minimal

21    percentage, and response is, by Mr. Cohen, I mean, that's just

22    totally inconsistent with what happened here because there's no

23    way in the world you would be referring, at least one more time

24    in your advertising, to Milk Man after an injunction was

25    issued.
```

1      And the -- obviously goes to the value that you place

2  on it, or you wouldn't be referring to it.  I mean, it's

3  axiomatic, okay?  The bottom line is it can't be argued for

4  violating an injunction, but it can be argued for the value of

5  the name.

6      MR. WEGNER:  Your Honor, I don't see how you can

7  argue it for the value of the name under Mr. Cohen's theory

8  without arguing that it's violating the injunction.  His

9  argument is it's so important is this name that we violated the

10  injunction to sell just a few more bottles, and apart from the

11  fact that I think the argument is ridiculous, and that I'm

12  going to have to argue against it, this is just manifestly

13  confusing to a jury.  If we have to unwind this whole thing in

14  front of a jury and argue, Look, we didn't actually intend to

15  violate any injunction.  As we explained to the court in

16  papers, jury, that you're not going to get to see, these were

17  accidental, and so we're basically going to relitigate that

18  issue in front of the jury just to unwind the stench -- to use

19  Mr. Cohen's, you know, analogy, the skunk in the jury box is

20  unleashed, if that is something the jury gets to hear about

21  because it is tainted with the fact that -- that it wraps up

22  this procedural matter, this injunction issue.

23      THE COURT:  The word "injunction" can't be used in

24  the -- what will be used is -- you have an order from the court

25  not to use the name.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1          MR. WEGNER:  That's fine.  I see them as one in the

 2   same, Your Honor --

 3          THE COURT:  Okay --

 4          MR. WEGNER:  -- but --

 5          THE COURT:  -- one in the same.  My ruling is it can

 6   be used -- okay? -- and don't go talking about an injunction.

 7   And there was an order of the court not to use the name, and

 8   despite it, you continue to use the name.  That's got to

 9   indicate very strongly that there's great value to the name, or

10   you wouldn't be doing that, period, bang, done.

11          MR. WEGNER:  I understand the argument.  I'd love to

12   argue against it in front of the jury, I guess.

13          THE COURT:  That's right.  All right.

14          MR. KAMELGARD:  Your Honor, just for a clarification.

15   Again, under the limitation that you can't say "injunction,"

16   "contempt" or any of those kind of things, is it -- are we also

17   allowed to use other examples, for instance, the Black Friday

18   email where they have a picture of Milk Man, or as long as we

19   don't say "injunction" --

20          THE COURT:  What was that --

21              (Discussion held off the record)

22          THE COURT:  I'm not aware of the Black Friday...

23          MR. KAMELGARD:  It is in the contempt papers, but

24   it's the ...

25              (Discussion held off the record)
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              THE COURT:  She is calling the name of the picture --
 2    I said that didn't look to me like they were trying to sell
 3    Milk Man, okay?  That's the picture you're talking about, isn't
 4    it?
 5              MR. KAMELGARD:  It is --
 6              THE COURT:  I remember it --
 7              MR. COHEN:  In which case the picture did its job.
 8              THE COURT:  I wouldn't buy anything based on that
 9    picture, I'll tell you.  Be that as it may, maybe it wouldn't
10    taste -- you want to use that picture for what purpose?
11              MR. COHEN:  To show the importance that they ascribed
12    to that name and everything.
13              MR. KAMELGARD:  And, Your Honor, just to be clear, it
14    was email for Black Friday, which is, as you probably know, one
15    of the largest sales events of the year.
16              THE COURT:  I do.
17              MR. KAMELGARD:  So even if the jury doesn't believe
18    it, we wanted to be able to argue to the jury that there were
19    certain sales that came about from the fact that there are
20    people who still thought it was Milk Man for whatever reason.
21              MR. COHEN:  They're going to argue we sold for all
22    these other reasons.  That's fine; they get to argue that.
23    Then we've got to have the right to challenge that, and this,
24    in part, is a challenge to that, both on their marketing when
25    they said, "Formerly known as Milk Man" and the --
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1              THE COURT:  She moved something, and I can't hear

2    you.  What --

3              MR. COHEN:  I'm sorry.

4              In part, that is also -- they're still selling Milk

5    Man afterwards.  It was that important; they kept doing it.

6              THE COURT:  Identified as such?

7              MR. COHEN:  Yes, correct.

8              THE COURT:  We've been through that issue, haven't

9    we?

10             MR. COHEN:  Okay.  That answers it.

11             THE COURT:  Okay.

12             So that takes care of your motions in limine, doesn't

13   it?

14             MR. COHEN:  It does, Your Honor.

15             I just -- before we leave, I need to preserve an

16   objection for my client.  That's all.

17             THE COURT:  You're not leaving yet.

18             MR. COHEN:  Okay.

19             THE COURT:  Not that we're looking for one another's

20   company at great length, but nevertheless we need to ...

21             MR. COHEN:  Okay.

22             MR. WEGNER:  Your Honor, may we have an opportunity

23   to speak on the Good Vapes motion?

24             THE COURT:  No, that would be a fourth time.  I've

25   been through that repeatedly, and as I indicated on the record,
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    I'm not going through that again.

 2            There is a dismaying consistency of both sides

 3    wanting to argue and re-argue things, and I'm telling you

 4    there's going to be a stop to that kind of thing.

 5            Now, let me -- what is the something that you wanted

 6    to put on the record to preserve whatever right, Mr. Cohen?

 7            MR. COHEN:  We can do it at the end.  I have an

 8    obligation to preserve something, and we can do everything

 9    else, and we can do it at the end.

10            THE COURT:  One thing that we haven't had a chance to

11    thoroughly evaluate is this royalty and license issue.  The

12    issue of -- and whether the -- more particularly, whether a

13    defendant can utilize the, as a deduction theory, a reduction

14    theory, whatever, a license theory; and whether the defendant

15    in this case can argue alternatively, namely, Look it, I want

16    to give you a couple of theories here, jury.  You may disagree

17    with one theory, and I want to give you another one.  Now, I

18    don't know the -- frankly, I don't know how the -- which favors

19    the defendant more:  The reduction theory or the royalty

20    license, the reduction theory being the apportionment analysis.

21    I don't know which favors them more, and it may be so clear

22    that you're not going to use the royalty theory as a damage

23    argument that we don't need to do anything because he's not

24    using the argument, are you?

25            MR. COHEN:  We're not.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              THE COURT:  Okay.  That's my point.

 2              So just argue using -- you see me start to grit my

 3    teeth?  That's starting to grit the teeth for the record; the

 4    court putting teeth together.  I want some closure here as much

 5    as possible.

 6              Are you using that theory, and do we need to go

 7    further?  If we do, if you want to use it, okay but I need to

 8    know.

 9              MR. WEGNER:  Your Honor, I think the cases that were

10    submitted today speak to this issue some, and I can explain why

11    the theory is a part of the case from our perspective.

12              THE COURT:  Still?

13              MR. WEGNER:  Yes.

14              THE COURT:  Okay.

15              One thing -- I think I want that ...

16              (Discussion held off the record)

17              THE COURT:  I do want that but, there's something I

18    want to mention to you that, in our preliminary review on this

19    whole issue of placing a damage reduction issue such as

20    royalty/license to reduce the amount of damages, one of the

21    parties gave us an unpublished opinion by the Ninth Circuit;

22    and I don't know what the law is on unpublished opinions and

23    whether a another court in this case, a district court, can

24    rely on it.  I've never been a big fan of unpublished opinions.

25    Frankly, I thought at some point in time the Ninth Circuit got
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1  away with -- got away with that approach and every opinion was

2  published.

3        But as described to me -- let's go back to what I

4  understand now -- as described to me by the law clerk -- and

5  she didn't get a lot of time to look at this.  She visited a

6  plethora -- I use that term advisedly -- a plethora of papers,

7  i.e., cases on this, but to the extent that she could review

8  it, there appears to be -- well, something that we had

9  identified some time ago and how it matches up, so to speak, or

10  compares with the Ninth Circuit.

11        The Ninth Circuit nonpublished opinion got right up

12  to the point of saying whether you could use this as a

13  reduction or not, this theory, and then bagged it and said it's

14  not ripe basically; but in the course of writing their opinion,

15  internal opinion, i.e., nonpublished opinion, they referred to

16  a Seventh Circuit case of -- got the quote?

17        (Discussion held off the record)

18        THE COURT:  Here's what I'm doing:  In the papers

19  that you filed this morning, you filed a case -- seemingly a

20  case of *M2 Software Inc. versus Viacom, Inc.*, and in that

21  regard -- that's the uncited, unpublished case -- in that case,

22  the circuit court said -- and this is what I'm referring to,

23  and I'm going to quote, "Therefore, we need not decide more

24  generally whether reasonable royalties can be a measure of

25  plaintiff's damages in a trademark case as other circuits have

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    found appropriate in this cases." They then cite, *See*, --

2    S-e-e -- *E.G. Sands*" -- letter cap -- first letter cap, *Taylor*

3    *and Wood Company v. Quaker Oats*, 978 F.2d 947. The interesting

4    thing is before we started our hearing yesterday, the law clerk

5    and I were looking to that very case, scratching our respective

6    heads, and that case says ...

7              (Discussion held off the record)

8              THE COURT: What seems to have given rise -- and,

9    again, you see me talking to the law clerk about this trying to

10   recover what happened in the "See" case is the circuit was

11   reviewing a district court opinion, and the district court

12   basically seems to have used an apportionment approach and

13   says, in part, "Many factors contributed to Gatorade's

14   success..." and then found a ten-percent contribution.

15             Goes to the court of appeals, and the court of

16   appeals was not -- thought that the award of $24 million was

17   quote, not equitable, and proceeded to reverse and send them

18   back but -- send the case back, but what the court did there,

19   which got our attention, is the court remanded with a

20   suggestion that the district court consider an award based on

21   reasonable royalty. Just what we're talking about here. And

22   there's a Texas Fifth Circuit case that does the same thing,

23   and the Ninth Circuit is aware of it. It goes to the threshold

24   of mentioning it and then backs off and says, But we're not

25   going to decide it, and one could cobble together an argument

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    well, if they're getting that close that they're mentioning it,

2    suggests to me that they're going for a royalty argument,

3    therefore Judge, district court, going for a royalty argument.

4    But, look it, I don't want to get into the royalty issue unless

5    it's going to be an issue, and now we have Mr. Wegner saying he

6    wants to make it an issue -- right -- Mr. Wegner?

7              MR. WEGNER:  Right, Your Honor.

8              THE COURT:  Why?

9              MR. WEGNER:  Because of the *Sands Taylor* case,

10   because the *Sands Taylor* case is an example where a circuit

11   court provided guidance to the district court and said, Look,

12   as a bench mark for deciding actual damages, go to the the

13   reasonable royalty and did that after the district court had

14   awarded profits.

15             THE COURT:  Well, when the circuit did that -- are

16   you saying that the circuit court said that the district court

17   could not use an apportionment approach?

18             MR. WEGNER:  No, I'm not saying that.  I think what

19   happened was the circuit court decided that it was inequitable

20   and that --

21             THE COURT:  The apportionment approach.

22             MR. WEGNER:  That it was too high and ironically it

23   was ten percent, which is what our expert was trying to proffer

24   here, and the court found that to be too high, sent it back to

25   the district court.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1           THE COURT:  So, you know, that theory didn't work as

2    far -- the apportionment theory didn't work as far as the

3    circuit court was concerned.  District court initially says, It

4    works.  Circuit says, No, it doesn't work.  Sends it back and

5    basically says, Don't -- you can't use the apportionment; you

6    have to use the royalty, albeit I don't think that language

7    says you have to use the royalty.  It suggests using that method.

8    It's an odd-ball deal I think.  But at any rate, go ahead.

9           MR. WEGNER:  The Seven Circuit said to use it as a

10   basis.

11          THE COURT:  Well, what does that mean to you?  Use

12   it.

13          MR. WEGNER:  It's a bench mark given, again, because

14   it -- it reflects the value of the mark, and it's a place to

15   start.

16          THE COURT:  Getting back to what Mr. Cohen was saying

17   yesterday, it's perversity of the worst order that you could

18   have somebody come in and violate your trademark and then say,

19   when called on, and say, Well, I'll pay you a royalty rate,

20   which is peanuts compared to what you claim your loss is.

21   That's -- I don't know what answer is.  I understand -- I

22   understand what the Seventh Circuit is saying, I understand

23   what, seemingly, Texas is saying, and I understand what the

24   other authority, Mr. Cohen, is saying; so I don't know what the

25   answer is.  You know, they're all over the map.

1          MR. KAMELGARD:  Your Honor, may I speak to this?  I

2    think I can clarify some of the issues.

3          THE COURT:  What?

4          MR. KAMELGARD:  I ask you -- I think I can clarify

5    some of the issues.

6          THE COURT:  How are you going to do that?

7          MR. KAMELGARD:  First of all, although the cases in

8    this area are unpublished, they are -- have been countless

9    unpublished cases across all the districts of California saying

10   the same thing, that there has to be a basis for the

11   calculation, which even the *M2* case you cited, actually said

12   they're not going to address that, they say the same thing.

13   There has to be a basis, and then all the district court cases

14   just say that basis has to be based on prior licensing

15   negotiation or willingness to do so, which they simply can't

16   prove here.

17          And defendants keep saying that, Oh, ten percent

18   there was -- was too high to ten percent here.  Well, it's

19   apples and oranges.  There the ten percent, the court

20   specifically said, had no reference, no connection to unjust

21   enrichment because it was a reverse-confusion case where one

22   side was -- one side was much bigger than the other.  The same

23   as in *Spin Master* that defendants continually cite whereas

24   900,000 units for the defendants and 2,000 units for the

25   plaintiff.  So they said, Well, you can't get all of the

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    900,000; that would be unfair.  Ten percent here when we -- is

 2    fine in terms of if they were right theoretically it could be

 3    fine.  It's crazy to me that they would --

 4              THE REPORTER:  I'm sorry.  Theoretically it could be

 5    what?

 6              MR. KAMELGARD:  What defendants have --

 7              THE COURT:  Slow it down, too, please, will you?  You

 8    sitting there.  Imagine you're sitting there.  You wouldn't

 9    like Mr. Kamelgard; you'd be really tired of him already, okay?

10              MR. KAMELGARD:  I understand.

11              THE COURT:  She's got to put up with me.  She

12    doesn't -- look it, bottom line.  What we need is -- it's very

13    hard.  Slow it down.

14              MR. KAMELGARD:  Okay.

15              Forget the ten percent thing.  Let me just get back

16    to the question at issue, which is yesterday the court gave

17    both sides assignments.  You told us:  Go find cases that show

18    that a royalty rate is inappropriate and go find cases that say

19    that someone cannot bring in a royalty rate when you're seeking

20    public damages.  Indeed, you gave the opposite assignment to

21    them:  Find that royal rates are appropriate and find that you

22    can bring it in.  We had, I think, about ten cases that we

23    found.

24              THE COURT:  Most of them were district court.

25              MR. KAMELGARD:  Most of them -- yeah.  Most of
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   them in this, whereas they found one case.  They couldn't find
 2   a single case, apparently, that they could bring in the royalty
 3   rate -- even if it is appropriate -- and the one case about it
 4   being appropriate is from a completely different circuit and
 5   has been repeatedly distinguished by every district in
 6   California; and because you want a cited or a published Ninth
 7   Circuit case, you can look at Playboy Enterprises, Inc. versus
 8   Baccarat Clothing Company, Inc., 692 F.2d 1272, 1982, where it
 9   says that the Meier Brewing standard is that you have to make
10   infringement unprofitable.
11           Defendant's counsel yesterday admitted that they want
12   to use the royalty because it would be lower than the ten
13   percent.  What they're trying to do is get way with paying
14   less, and Playboy specifically summarized the question this
15   way:  "The practical reality of the decision" -- and I'm
16   reading from page 1275 --
17           THE COURT:  Slower, slower, slower.
18           MR. KAMELGARD:  I'm sorry, Your Honor.
19           THE COURT:  You sound like one of these -- this day
20   and age, you can't say what you're thinking.  Certain radio
21   programs where somebody speaks so fast, if you speak that
22   language, there's no way in the world that you can follow what
23   they're saying if it's not your language; maybe you know what
24   I'm talking about, but that's what you're doing here.  I
25   mean -- and you can't help yourself.  Again, I acknowledge I
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    have a tendency that way; I hope it's not as bad as yours, all

 2    right.  But -- go ahead, slowly, please.

 3              MR. KAMELGARD:  Okay.  Quoting from page 1275 of that

 4    case, "The practical reality of the decision may be summarized

 5    in one question:  Would a profit-seeking business person, not

 6    unwilling to violate federal law, pay ten cents to make one

 7    dollar?  If the answer is yes, then the trial court's decision

 8    did not follow this court's clear mandate in Meier to make

 9    willful trademark infringement unprofitable."

10              THE COURT:  What case are you reading?

11              MR. KAMELGARD:  This is Playboy Enterprises, Inc.

12    versus Baccarat Clothing Company, Inc.  It's one of the cases

13    we cited, and that's exactly what defendants are trying to do.

14    They want to pay a royalty rate, which they admitted is even

15    lower than their expert's opinion of what profits are

16    attributable to the infringement, and they can't find any cases

17    anywhere in the Ninth Circuit, unpublished or not, saying

18    that's okay; and the reason that you need a royalty rate or

19    prior to -- prior negotiation or prior licensing for a royalty

20    rate, as the Ninth Circuit in M2 said, is so you can have a

21    basis, and if I may, I know it's unpublished, but I really

22    think that it sheds light on this, is the case Trovan Limited

23    versus Pfizer, Inc.  It's civil 98-0094.

24              (Discussion held off the record)

25              THE COURT:  Didn't your expert, Mr. Anson, say the
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    value of the trademark was about $6 million?

2              MR. KAMELGARD:  First of all, that was a valuation

3    done at this point almost a year ago.  It was also done in a

4    completely different context.  It was done to try to prove

5    future profits, and under the proxy theory of the case, it's

6    very clear that we don't have to reference our client's

7    profits; it's simply not required.

8              So the value of our trademark has no bearing as long

9    as the cases say it doesn't vastly outstrip -- their sales

10   don't vastly outstrip ours, and as we said yesterday, our sales

11   are essentially equal, not to mention that all of those cases

12   were reverse-confusion cases, whereas this is a typical,

13   regular confusion case.

14             THE COURT:  Okay.

15             MR. KAMELGARD:  And even some of the cases that I

16   cited were not among direct competitors, whereas we are direct

17   competitors.  In the -- the difference here is we have

18   identical sales.  There could have been a royalty calculation.

19   Neither side has found any case saying you can have royalties

20   when using the proxy method, period.  We only found them in

21   terms of if you're trying to -- for actual damages, which we

22   don't need to prove; but in that context, the cases say

23   specifically -- I'm again going to quote *Trovan Limited versus*

24   *Pfizer Inc.*, that if you impose a royalty without having prior

25   licensing or prior negotiation that, quote, "Rests on a legal

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1  fiction created in an effort to compensate when profits are not

2  frugal for the reasonable royalty device conjures a willing

3  licensor and licensee who, like ghosts of Christmas past, are

4  dimly seem as negotiating a license.  There's, of course, no

5  actual willingness on either side and no license to do

6  anything.  And that case, although it is unpublished, cites a

7  published -- Vista Public Circuit case from the Sixth Circuit,

8  *Panduit Corporation versus Stahlin Brothers Fibre Works, Inc.*,

9  575 F.2d 1152, at page 1159; and the *Trovan* case goes through a

10  lengthy discussion as to why the *Sands* case is inapplicable

11  under the law of the Ninth Circuit.

12         So what I would say is although the discussion I

13  think is too lengthy for us to go through here, I think it

14  bears on this case.  That's the exact case they want to use.

15  It's the only case they cite, and it's the case that is

16  repeatedly distinguished in our circuit, even if they are

17  unpublished cases.  That certainly has to have some probative

18  value.

19             (Discussion held off the record)

20         MS. LEE:  May I address Mr. Kamelgard's comments?

21         THE COURT:  Let's hear the defense, please.

22         MR. WEGNER:  Ms. Lee will be handling this argument,

23  Your Honor.

24         THE COURT:  Well, there's something I didn't know you

25  could do.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              MS. LEE:  So AOP has consistently stated that there's
 2    no basis for a reasonable royalty analysis because there's no
 3    evidence of licensing agreements or purchase agreements
 4    concerning The Milk Man mark, and this is evidently false.
 5    Both parties licensed The Milk Man.  AOP licensed The Milk Man
 6    mark from Deuce Juice for about $10,000, and defendants
 7    licensed The Milk Man mark from Good Vapes for about $200,000.
 8              And so if we take a look at the cases actually cited
 9    by AOP, one of them is Q.S. Wholesale, Inc. versus World
10    Marketing, Inc., and the other one is Qui, and then the third
11    one is Trovan.  I believe all of them say that it's true, you
12    don't get reasonable royalty if there's no basis for it;
13    however, you do get reasonable royalty if they're a comparable
14    licensing agreements, comparable purchase negotiations, between
15    the parties or between the parties and third parties in the
16    marketplace.  And here, we have that evidence.  Deuce Juice
17    licensed The Milk Man mark to AOP; Good Vapes licensed The Milk
18    Man mark to defendants.
19              The other argument that they continuously make here
20    is that, Hey, reasonable royalty does not act as an adequate
21    deterrent, and so everyone who wants to infringe on a
22    trademark, just take it, say it's a reasonable royalty, and
23    that's that.  The great thing is that this issue is actually
24    addressed in the Sands Taylor case.  There, the Sands Taylor
25    case said, Hey, let's look at the reasonable royalty in order
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    to determine what the value is of the trademark, and then if

2    the court in its sound discretion thinks that that is not

3    enough of a deterrence, that is what enhanced damages are for.

4             And the statute --

5             THE COURT:  That is what the damages are for?

6             MS. LEE:  That is what enhanced damages are for.

7             THE COURT:  Enhanced in the form of -- that's

8    attorney's fees only.

9             MS. LEE:  No, that is up to three times the damages.

10            THE COURT:  Got it.  Got it.

11            MS. LEE:  In fact, in *Sands Taylor*, the court of

12   appeals says that if the judge used the same considerations in

13   determining hypothetical royalty rate, i.e., deterrence and

14   then used that same consideration in awarding enhanced damages,

15   that's improper.

16            And so AOP's argument that, Hey, you can't use a

17   reasonable royalty rate because it doesn't act as an adequate

18   deterrence.  The case law provides an avenue for the court to

19   consider that issue after the fact.  Now, the last thing they

20   mention is that, Hey, we are looking at proxy damage as a

21   measure of actual damages and we are using defendant's profits,

22   and there's nothing in the case law which says that you can tie

23   in a reasonable royalty rate into that analysis.

24            And one of the cases they cite is again the Qui case.

25   The great thing with the Qui case.  The great thing about the

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    Qui case is that our expert, Mr. Martin, worked with another

2    expert on behalf of the plaintiff in the Qui case, and in that

3    case, they used the reasonable royalty rate just like Anson did

4    as a method for evaluating the value of the mark in order to

5    support their analysis of how much of the profits are

6    attributable to the mark.  So we have a situation here where

7    AOP has introduced Anson and his report, and since then 100

8    percent of the profits are attributable to the mark, and then

9    he goes through relief from royalty analysis in order to value

10   the mark to support the amount that he got in the profit

11   analysis.

12          And then to rebut Anson's report, Mr. Martin comes in

13   and says, Hey, that's not the right.  Not only is your 100

14   percent profits attributable to the mark improper, we will go

15   through the relief-from-royalty analysis and value the mark,

16   and our valuation of the mark is in the range of, I think, a

17   couple hundred thousand dollars, to half a million dollars, and

18   that does not support your profit analysis.  There's no way

19   that 100 percent of the profits are attributable to the mark

20   when we value the mark, just like Anson valued the mark.  We

21   are coming with a much smaller amount.

22          So for all those reasons, reasonable royalty does

23   factor into this analysis.  And the courts in California in

24   these unpublished cases that AOP cites says that reasonable

25   royalty is appropriate where there is evidence of licensing

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   negotiation with third parties, and we have that here.

 2             THE COURT:  Okay.

 3             MR. KAMELGARD:  Your Honor.  I apologize, very

 4   quickly to address a couple of things which she misstated a

 5   couple of things, both in the record and the law.

 6             First of all -- thank you -- first of all, it is true

 7   that both sides had licensing agreements of sorts with respect

 8   to entities, but those licensing rates, quote, unquote, don't

 9   factor in that both sides did the licensing to try to achieve a

10   win in this case, which, as you know, is over -- if you take

11   their numbers, $6 million in net profit.  So AOP tried getting

12   the licenses first so that AOP could get $6 million, and then

13   defendants went and got a license from Good Vapes so they can

14   try to win it back.

15             But those are not the percentage licensing rates that

16   you can use as a basis of a calculation to come up with a

17   royalty rate.

18             MR. GATIEN:  To be clear, Your Honor, Mr. Kamelgard's

19   commenting upon, and opposing counsel is commenting upon, an

20   assignment and license-back agreement, not a license agreement;

21   and the assignment has value.

22             MR. KAMELGARD:  Correct.

23             MR. GATIEN:  So there are apples and oranges.

24             MR. KAMELGARD:  Yes.  And speaking of apples and

25   oranges, I'm not -- I don't know.  I guess it's pronounced
```

1    Qui -- Q-u-i -- that case, and again, one of the cases we cite

2    to you because we're not hiding from it is readily

3    distinguishable.  It says specifically not direct competitors.

4    It's a case of reverse confusion where the plaintiff had 100 --

5    sorry -- one million subscribers to their service ever, and

6    we're suing a company that in one year alone, as the case said,

7    had over two billion -- with a "b" -- dollars in sales.  So

8    clearly that makes sense that you wouldn't be able to use a

9    proxy method and get those two billion in sales if you only

10   have a million customers.

11         MR. GATIEN:  Now, the thing that defendants

12   continually say -- in reading their papers -- there's, quote,

13   No way that all profits are attributable.

14         Putting aside the fact that ignores the very-well

15   established legal standard that 100 percent of the profits are

16   presumed to be a result of the infringement, the cases they

17   cite, the reason why in those cases it was, quote, clear like

18   in the *Cream Records* case in the copyright context, ten notes

19   out of a commercial or *Frank Music*, 1/8th of a play, whereas in

20   the trademark context, AOP's entire brand was knocked off.

21   Entire brand.  And it's not like defendants were using that

22   brand in a much larger piece of advertising or something else.

23   AOP's entire brand was contained in 100 percent of the

24   defendant's mark, period, and that's the exact context where,

25   when have you direct competitors with roughly equivalent sales,

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

 1   that the proxy method is there to solve.  If they don't want a

 2   proxy method where the sales are equal with direct competitors

 3   in the same industry with identical marks, what's the proxy

 4   method for?  What situation would it be used?

 5          And I think it's really telling that defendants keep

 6   trying to use law from the Seventh -- I believe -- *Sands* is a

 7   Seventh Circuit, where, as I said, *Playboy*, a Ninth Circuit

 8   published case, said exactly our argument:  You need to make

 9   infringement unprofitable, and if a royalty rate does not do

10   that, which, by their expert's own opinion it does not because

11   the royalty rate is lower than what he thinks the sales are

12   attributable, then it's not appropriate; and despite all of

13   their arguments about royal rates appropriateness, they still

14   have not said or cited to a single case where you'd use a

15   royalty rate in apportionment, a single case where you can

16   bring it in where the plaintiffs are seeking another remedy,

17   and a single case that supports that their position in facts

18   that are similar to here where there's no, like, real licensing

19   between a third party from whom you can get some sort of

20   calculation, which is what happened in those cases that they're

21   referring to, where it was a true licensing, where it was just

22   to use the mark -- I mean, a competitor is not going to give --

23   I think Mr. Martin said it was a 1.5 percent royalty to a

24   direct competitor; it just wouldn't happen.  That's exactly the

25   legal fiction that these cases warn against.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1          And that's why I make a point which was pervasive
 2   yesterday, and we didn't make the point, is AOP's mark was
 3   valued relative to AOP.  Defendants, as Mr. Martin admitted
 4   yesterday, they never valued their Milk Man mark; they never
 5   valued it, period.  They don't know how valuable their Milk Man
 6   mark was to theirs; they just try to impute what AOP's value to
 7   them and then take that and, quote, translate it into what it's
 8   worth to defendants.
 9          When you're talking about trying to get a calculation
10   under all those circumstances, how you could possibly use a
11   royalty rate, and I don't -- we don't need a decision now; we
12   would be more than happy to let you guys take it under
13   submission, look at all the cases more carefully.  We know that
14   we gave you a lot but that's because we have a lot in support
15   of our argument.
16          THE COURT:  Okay.  Let me -- give me a moment,
17   please.
18          (Discussion held off the record)
19          THE COURT:  Ms. Lee, I don't mean to -- I see you're
20   loaded for bear there -- I really don't need any more
21   argumentation at this time.  The question is do the parties
22   think it would be helpful to have -- I'm not looking for a law
23   review article -- a brief briefing -- give you a 15-page limit
24   or something like that -- and don't try to get around it with
25   foot notes -- okay? -- or appendices -- but do you think it
```

```
 1    would be helpful to brief this issue.
 2              MS. LEE:  I think it would be helpful, Your Honor.
 3    We only provided one case because we thought the court just
 4    wanted a few cases, but if we are going into argument --
 5              THE COURT:  Bushwa is the word that comes to mind
 6    again.
 7              Yes.
 8              MS. LEE:  Yes, a brief --
 9              THE COURT:  You had credibility until you said that.
10    Okay.  I'm kidding you.
11              Let's brief it, 15 pages.
12              MR. COHEN:  Your Honor, since it's their burden
13    they're advancing the theory, let them go first and then we
14    respond, please.
15              THE COURT:  I think that's fair.
16              How many days you want, Ms. Lee, one or two?
17              MR. WEGNER:  I missed the question.
18              THE COURT:  How many days do you want, Ms. Lee, one
19    or two?
20              How long do you need?
21              MS. LEE:  I have two more briefs due.  A week.
22              THE COURT:  Is that enough time?
23              MS. LEE:  I think a week.
24              MR. WEGNER:  I think we can do in a week, Your Honor.
25    We're going to try to keep this concise.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              THE COURT:  Prolixity is to be avoided.

 2              MR. WEGNER:  I agree wholeheartedly, most definitely.

 3              THE COURT:  How long do you need to respond, a week?

 4              MR. COHEN:  That will be fine.

 5              THE COURT:  Okay.  Fine.  Then stands submitted.  I

 6    don't want any more briefs without order of the court.

 7              Now, other things that we need to do to clean up is

 8    jury instructions -- I don't know if there are Ninth Circuit

 9    instructions that apply or other pattern instructions that may

10    have been suggested by various sources.  Sometimes there's a

11    general source, but I don't want argumentative instructions; I

12    do not want them.  I want you to agree upon the instructions as

13    much as possible, and I want to use pattern if they're

14    available, okay?  Due date, all I need them is just give them

15    to me before the trial.  That's fine.

16              The trial date and pretrial.  Pretrial before trial.

17    What do we need a pretrial for?  Look it, I haven't -- usually

18    when I take a case, it's just before trial.  I don't recall --

19    I don't know what the status of rules are now regarding

20    pretrial.  I don't need a pretrial conference.  You don't need

21    a pretrial conference.  What I need is a -- isn't there a

22    requirement of a pretrial -- the statement of fact or some --

23    and law?  How do they denominate it?  Has to be filed by the

24    parties?

25              MR. WEGNER:  A memo of fact and law?
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              MS. LEE:  We did it.

 2              THE COURT:  It's already done.  Anything else that

 3    needs normally to be filed attendant with a pretrial

 4    conference?

 5              (Discussion held off the record)

 6              THE COURT:  I think what I was looking to is a

 7    pretrial order.  I don't need that.  We don't need it.  Forget

 8    it.

 9              Now, trial date, I don't know what trial date is

10    going to be.  Let me take a look at these -- I'd rather not get

11    so far away from this that everybody's got to reinvent the

12    wheel every time; I want to give you a firm date.  Now we're at

13    a point where I will -- look it, there's got to be some control

14    over the time.  I don't want to set time limits, but you're not

15    going to go on and on and on here.  I want a presentation that

16    goes right to the point where the argument is.

17              So what is your trial estimate?

18              MR. COHEN:  Well, it would depend, Your Honor,

19    because if they are going -- if the court is going to allow the

20    defendants to advance the royalty theory to the jury, then what

21    we're going to do is bring in our expert to talk about unjust

22    enrichment, and then we take on the issue of willful.  Our

23    expert on his report said the value of the mark -- or the

24    unjust enrichment would be 6 million, or whatever the total

25    is -- say it's the same amount, but under the law, if we go --
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   we have unjust enrichment, then we have to prove willful.  Part
 2   of the reason we did the proxy theory throughout this was to
 3   simplify things.
 4             THE COURT:  Oh, simplify?
 5             MR. COHEN:  Your Honor, look, we -- their gross
 6   revenue figure is low, but we stipulated to it; their cost of
 7   goods is high, but we stipulated to it.  That -- both of those
 8   helped them, but we did it to simplify.
 9             Now, they used the wrong standard on the expenses,
10   but now we're going to try and work through those, too; and if
11   they use the right standard, which is the Winterland standard,
12   where they have to look at the expenses for the product as
13   opposed for the product line, which is what Martin did, we'll
14   be happy to revisit the expenses and stipulate if we can.
15             THE COURT:  Well, that's the way to do it right
16   there.  Go ahead.
17             MR. COHEN:  Right, the Winterland standard.  They
18   have not used that yet.
19             THE COURT:  I mean, we have an allied issue we've
20   already excused here.  It's the same thing.  It's got to relate
21   to the product, okay?
22             MR. COHEN:  Thank you, Your Honor.
23             THE COURT:  Don't give me this all over the map,
24   we've got this expense, but it really, in reality, relates to
25   any number of entities and not -- come on.
```

```
 1              MR. COHEN:  Fine.  Then we'll deal with that, but if

 2   the defendants want to be allowed to go to the jury and say,

 3   Oh, really, there's an alternative measure of damages here, and

 4   it's the royalty rate should be 200 or 400, or whatever the

 5   number is, okay.  If the court's going to allow them to do

 6   that, then we're going to advance an alternative theory, which

 7   is the unjust enrichment; and if we do so, then we have to

 8   prove willfulness.  That is our burden.  Then that changes the

 9   nature of the trial because obviously we've got to bring in

10   more witnesses, more evidence.  So I'm not trying to --

11              THE COURT:  How viable is your willfulness in your

12   view?

13              MR. COHEN:  Strong.  That's why I wanted to have that

14   hearing about exceptional circumstances before because I

15   thought that -- I feel strongly we can persuade the court of

16   that, and I thought between the ruling on Martin and a ruling

17   on the existence of exceptional circumstances, might be enough

18   to bring the parties close enough to settle.

19              Now, the court decided it wanted to deal with Martin,

20   fine, and it has done so and chose exceptional circumstances

21   after.  That's also okay.  I mean, you can order how long you

22   want; that's your decision; that's for the court to decide.

23   But if they get to advance -- if they essentially get to choose

24   damage remedy, even though they're the wrong-doers, then we

25   want to have the alternative theory.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1          Now, coming with that alternative theory, I have the

2    additional burden of persuading those jurors that they acted

3    willfully.  I acknowledge that.  I can meet that burden.

4          THE COURT:  That's what I was inquiring.  What is the

5    strength of your case?

6          MR. COHEN:  Strong.  That's why I wanted that

7    exceptional circumstances first; that's how strongly I felt

8    about it.  The Court wasn't persuaded as far as the order, so

9    be it, but that's why I wanted it first because I thought I

10   could persuade the court with regard to its decision on

11   attorney fee shifting and the possibility of enhancements, that

12   those factors exist.  I feel strongly we can get there.

13         But the law is that if I'm going to argue for unjust

14   enrichment on behalf of AOP, then I must prove that they acted

15   willfully.  So be it.  I'll take it on with the jury.  I'm

16   happy to do it.

17         MR. KAMELGARD:  Your Honor, if I may add, because I

18   know you're concerned about of the length of the trial, if we

19   were allowed to show the willfulness evidence at trial -- the

20   exceptional standard is lower -- it would pretty much obviate

21   the need for that second hearing.  So --

22         THE COURT:  If you proved it to the jury's

23   satisfaction.

24         MR. KAMELGARD:  No, even if -- because even if it's

25   not willfulness, the exceptional standard is lower.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              THE COURT:  And I hear it -- you don't need a hearing
 2   is what you're saying.
 3              MR. KAMELGARD:  Exactly.  Although it may make the
 4   trial longer, it doesn't necessarily affect the length overall.
 5              THE COURT:  I understand.
 6              Why don't you give me -- I'm trying to figure out how
 7   long it's going to -- I have Mr. Cohen's input.  Well, this is
 8   going to be driven in some measure about what happens with
 9   these -- this issue of whether the defendant can use this
10   alternative theory of damages.  Make a decision there, and now
11   we know -- and some measure how long it's going to be.
12              So let's wait until -- in order -- in setting the
13   trial date -- we'll try to give you a turn around -- relatively
14   brief turn around of week to two weeks, and then we'll know --
15   we'll have some -- a better ability to assess how long it's
16   going to take.
17              MR. COHEN:  Yes, we understand, Your Honor.
18              One point of clarification on this briefing.  They
19   have a week; we have another week after that to file the
20   response.  Do they get a reply or are we done?
21              THE COURT:  I already went through that.  No further
22   briefing without order of the court.
23              MR. COHEN:  Understood.
24              THE COURT:  So then we're going to give you -- after
25   we rule, attendant with that ruling, hopefully we'll remember
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   to say, Okay, in light of the ruling, I want to give you -- I

2   want you to give us your trial estimate, and we'll proceed.

3           Ask you what dates are going to work for you.  Summer

4   becomes a little more problematic.  You know, I'm in and out,

5   quite frankly, and we'll just have to wait and see.  Okay.

6               (Discussion held off the record)

7           THE COURT:  The next thing on my list that the law

8   clerk is thinking that perhaps I missed, and I haven't, is the

9   operational expenses.  Mr. Cohen has referred to the subject a

10  moment ago, and as much as possible, again, it's not just me,

11  it's the jury going through operational expenses.  Come on.

12  Just macro the dog-gone thing and get into -- it's enough money

13  to go around, if you will.  You know, looking at it from your

14  side, say, Wait a second, Judge.  It's not your money.  It's

15  easy for you to say this.  I understand that, okay?  I really

16  do.  On the other hand, I'm thinking of how you can basically

17  protect yourselves and yet get the -- move it with a little

18  more dispatch because if you really get into a fight on

19  operational expenses, that can take awhile, believe me.

20          MR. COHEN:  All right.

21          THE COURT:  I'm not looking for that.  I want you

22  to -- what I've done many times before is I'll just order you

23  meet in person.  I want to get this thing resolved on these

24  operational expenses.  Now, you want to do it in paper to start

25  with, fine, but if you haven't -- if you don't -- I want a

1    statement on the operational expenses:  We have agreed; here's

2    where we've disagreed.  So you're going to meet on operational

3    expenses.  How long do you want, a week?  And you're going to

4    file -- are you going to file with me a statement?  And I'm

5    telling you:  I'll bring you back in here, and you'll be here

6    forever on this.  I'm not taking all this jury's time on this

7    issue.

8         MR. COHEN:  That's fine, Your Honor.

9         THE COURT:  Because this can be resolved without a

10   great deal of impact to either side, and I told you, defendant,

11   don't overstate your operational expenses.  And for the record,

12   I'm pointing at you because I'm ticked.  I've seen some of the

13   things you've done here, and it appears that you have done

14   that.  Don't do it.  It's not going to fly.  Get what you're

15   entitled to and only that.  Don't try attributing things that

16   are not appropriate, and I heard that things have been

17   misappropriated.

18        MR. COHEN:  Your Honor, there's also one specific

19   point of clarification that we need with regard to the

20   operational expenses.

21        THE COURT:  What's that?  Never ending.

22        MR. COHEN:  What I handed the court is --

23        THE COURT:  A list of the operational expenses?

24        MR. COHEN:  What I've handed Your Honor is an excerpt

25   from Mr. Kamelgard's declaration in support of the reply to

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    AOP's motion in limine No. 1.  It's document No. 251-1.

2            And what you see in paragraph nine -- this is filed

3    with the court; I'm just excerpting it here so you can have it

4    in front of you -- paragraph nine, Mr. Kamelgard lists 33

5    categories of expenses by entity for which no details, no

6    back-up was provided to Mr. Martin or to us, no one, ever.  Now

7    we're saying this stuff -- there's simply insufficient basis.

8    This is off the table.  There are other expenses that are to be

9    discussed and argued.  So be it.  We'll go through those.  But

10   these were not producing any -- they didn't produce anything to

11   Mr. Martin; they didn't produce anything to us.  There's no

12   back-up for it.  There's simply an insufficient basis, and at

13   some point in time, this has got to stop where they get to keep

14   dodging between the rain drops and do stuff after the fact all

15   the time.

16           THE COURT:  Are you saying that your discovery in

17   various forms sought to elicit what expenses that they were

18   trying to back out?

19           MR. COHEN:  Yes.

20           THE COURT:  And they identified them, and now they're

21   coming up with yet more expenses which haven't heretofore been

22   identified?

23           MR. COHEN:  No, those are identified, but there's no

24   back-up for any of them.  No back-up was provided to

25   Mr. Martin --

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1          THE COURT:  But you requested it.

2          MR. COHEN:  Yes.  He said, Patty Chan just told me

3   these.  I'm relying on her.  But no back-up was provided either

4   to Mr. Martin or to us.

5          THE COURT:  Even though it was requested?

6          MR. COHEN:  Yes, repeatedly.

7          THE COURT:  Formally?

8          MR. COHEN:  Yes.

9          THE COURT:  What is your response --

10          MR. COHEN:  And even if we hadn't requested it, it

11  would be required under Rule 26 disclosure because they're

12  relying on it for what they're backing out for the damage

13  calculation.  So even if we hadn't formally requested it, which

14  we had, the defendants are obligated under Rule 26 to disclose

15  it.  Reading from the declaration of Mr. Martin, all right?

16  Okay.  I'm reading from page 245 of Mr. Martin's deposition,

17  which was taken on March 16, 2017.  I'm reading from page 245,

18  beginning at line four:

19          "Q   With regard to your supplemental report,

20          were there any categories for which you did not

21          cite transaction details?  In other words, did

22          you have transaction details for all of the

23          categories in your supplemental report?

24  To the best of my recollection, yes.  Well, as an example, in

25  Exhibit 209" -- and the question ends.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1        Here's the answer:

2          "A    Let me strike that response.  I can go

3          back and review all of the detailed spread

4          sheets that were provided, but I do recall

5          having discussions with Patty Chan regarding

6          certain expense categories that she did not

7          provide a general ledger file for, and we

8          discussed each of those categories that she did

9          not provide in Excel file that provided the

10         general ledger detail."

11        And what you have in front of you, that excerpt from

12   Mr. Kamelgard's declaration, is a list of the 33 categories

13   broken down by entity for which no underlying details were

14   provided to Mr. Martin or to us.

15        THE COURT:  Albeit she said she had it per

16   Mr. Martin's testimony.  Martin said, I asked her; she said she

17   had it, but she didn't provide it.

18        Isn't that what he just said in what you read?

19        MR. BROWN:  Can we read the rest of the testimony,

20   Your Honor?

21        THE COURT:  What -- you people are really quite

22   remarkable.  Jeez, I've seen a lot of cases, and this -- wow.

23        What if you go back --

24        MR. COHEN:  I have a hard copy, one for each of you.

25        THE COURT:  All I'm saying is I understood the

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    testimony you read.  Mr. Martin said, I went to Ms. Chen, and I

2    said, Look it, I went to Ms. Chen, and I said give me the

3    back-up for the various operational expenses.  She didn't give

4    me the back-up of certain categories, albeit when I talked to

5    her she did have back-up that she hasn't given me.  That's what

6    I think that said.  And now you're saying he takes a general

7    position we have these kind of expenses with no back-up,

8    although it's there.

9            I believe that's what was just said.

10           MR. KAMELGARD:  Well, Your Honor, just to clarify, I

11   think there's one small piece that is unclear:  These

12   categories are the ones that are specifically not listed in

13   Mr. Martin's order, i.e., they're not among the documents he

14   reviewed or relied upon in coming up with his expenses.

15           So even though those categories are listed in the

16   respective exhibits and some of them are, in fact, deducted, in

17   his report, none of them are cited as reliable, and the

18   testimony that Mr. Cohen was reading is that they were based

19   only on discussions because he didn't see the transaction

20   details.

21           MR. BROWN:  Your Honor, if I could read just a few

22   lines.  The next testimony where Mr. Cohen stopped, next

23   question he asks is:

24           "Q    And did you go ahead and include those

25                 expenses, or because you didn't see details, you

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1          *excluded them?*

2          *"A     It depends on -- it depends on the*

3          *discussion of what those expenses were.  Some*

4          *were excluded, some were not."*

5          And then they went off the record, and the deposition

6    ended.

7          So he said some he included, some he didn't.

8          THE COURT:  What's he complaining about, then, is the

9    plaintiff is saying as to those that you did not identify and

10   include, you can't use them under the rules.  Isn't that it?

11         MR. BROWN:  Yes, as him on cross-examination --

12         MR. WEGNER:  These are embodied in the profit and

13   loss statements, Your Honor, which have been provided; and we

14   also provided boxes and boxes and boxes of expenses.  Candidly,

15   this is kind of a last-minute motion in limine.  Like to look

16   at the issue and see what they're driving at.  I feel like

17   we're assaulting you at this -- at the last minute.

18         THE COURT:  "Assault" is an understatement.

19         Go ahead.

20         MR. WEGNER:  So, you know, the point being I think

21   that there's -- there's a danger of, you know, misunderstanding

22   on both sides here if we're trying to do this on the fly.  We

23   weren't prepared to talk about this today.  I'm not sure --

24         MR. COHEN:  It's the motion in limine.

25         MR. WEGNER:  Which motion in limine?

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1          MR. KAMELGARD:  I can direct Your Honor to the --
 2   it's supplement filed on March 24th in the section starting on
 3   page 13.
 4          MR. WEGNER:  I stand corrected.  I guess it is an
 5   excerpt from the motion in limine, but all the same.
 6                 (Discussion held off the record)
 7          THE COURT:  I tell you what we're going to do.  Quite
 8   frankly, I'm not just thinking of the reporter, although I
 9   should be, affirmative response -- the "I should be."
10          We're going to take a -- we're not going to take a
11   luncheon recess; we're going to conclude this, but we'll take a
12   brief recess of 15 minutes and hopefully in about a half-hour
13   or thereafter we can complete this.  We're pretty close, and
14   then you're gone, gone, okay?  So take 15 minutes, and we'll
15   see you at ten after.
16                          (Recess)
17          THE COURT:  Okay.  Yes, Mr. Cohen.
18          MR. COHEN:  Just waiting.
19          THE COURT:  Did the two of you talk about this
20   operational expense thing?
21          MR. WEGNER:  We did talk, some, Your Honor, and
22   there's a proposal -- I'm not sure if Mr. Cohen had a chance to
23   talk with his client about it yet.  The proposal is that we
24   have our experts and Ms. Chen get together in an attempt to
25   resolve that number.  Obviously I'm not saying mediation of the
```

1   entire case, I'm saying that number and talk it over.

2              THE COURT:  What number?

3              MR. WEGNER:  The operating expense number.

4              THE COURT:  In toto?

5              MR. WEGNER:  I'm talking about -- I should be

6   clear -- talking about the operating-expense factor that we

7   were just discussing where it is --

8              THE COURT:  You're talking about well, he is

9   complaining.  You didn't give him the data.

10             MR. WEGNER:  It's in that category, yes.  I'm

11  actually talking about in toto.  You're right, about all of the

12  operating expenses and having the experts and Ms. Chen make a

13  concerted effort to agree on something that we can stipulate to

14  is --

15             THE COURT:  I'm going to nicely mandate an in-person

16  meeting.  Now, the question is when do you want -- when and

17  where?  I'm just saying I don't care when and where you meet,

18  just within a week I want you meeting, and I want a joint

19  statement on the operational expenses; and I am telling you

20  nicely, firmly, I expect pretty close to complete agreement.

21             MR. COHEN:  Well, I understand what the court

22  expects; we'll do the best we can.  So far we've been --

23             THE COURT:  Doesn't do any good to complain again.  I

24  understand your position.  I don't know if it's well taken or

25  not.  If it's well taken, I don't like it one bit, okay?  If

1   it's not well taken, I don't like it that you brought it up.

2   So one way or another somebody is forensically going down the

3   wrong path, all right?  But very fundamental.

4         Work within the confines of the rules, okay?  And if

5   you haven't -- in the meeting you're going to talk about the

6   underlying data that you say is missing?

7         MR. COHEN:  That -- I would suspect that would be one

8   topic, yes.

9         THE COURT:  All right.  I want the data, and if you

10  don't have the data, I'm telling you you're not going to be

11  able to use the -- back out those operational expenses.  So

12  there.

13        Now, let's get back to where we are here.  I think

14  we've gone through everything.  You tell me what remains now.

15        MR. COHEN:  At this point, Your Honor, the only thing

16  that I'm aware of that remains is I've just got to make a

17  record.  May I suggest rather than taking up more of your time

18  or the court reporter's time, let us file an objection.  The

19  objection is going to be -- the court has ruled that Mr. Martin

20  may testify without numbers on those factors.

21        THE COURT:  Yes.

22        MR. COHEN:  And I have to preserve the objection for

23  my client because we don't think -- on that either, but I'm not

24  asking for a --

25        THE COURT:  Well, you made your record already.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    You've got enough to go to the court of appeals.  I don't need
 2    another pleading from you.  Why do you have to file something
 3    else?
 4              MR. COHEN:  Because I've got -- he said stuff
 5    yesterday in his examination that we think is relevant, but I
 6    don't want to take up this court's time or the court reporter's
 7    time --
 8              THE COURT:  Just take up our time with the paper
 9    filing; is that it?  Verbally I'm not going to do it to you,
10    I'm going to do it in writing, and I'm telling you I don't need
11    anymore input.
12              MR. COHEN:  I understand.  I'm not asking to --
13              THE COURT:  You've preserved your record for the
14    court of appeal if, indeed, it's appropriate, okay?  That's all
15    I'm saying, too.  So, basically I don't need any more
16    argumentation; it's done, and I don't want any pleadings in
17    that regard.
18              MR. COHEN:  How would you like me to preserve that,
19    Your Honor?
20              THE COURT:  You already preserved it; you made your
21    record, haven't you?
22              MR. COHEN:  We feel like there are things that were
23    said yesterday that aren't part of the -- that aren't part of
24    our filings, and all I want to do is preserve it so if this
25    some day goes to the court of appeals, I preserved it; that's
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   all.

2              THE COURT:  I understand that, and I want to help

3   you, assist you, and all I'm saying is, as you articulated

4   yesterday your objections, which were overruled today, as

5   regards part of the testimony, your objections are in the

6   record, and that's -- that is if you put a preserving record in

7   my view.

8              MR. COHEN:  I hear what the court says.  I

9   understand.

10             THE COURT:  I think the court's right this time.  So

11  there.

12             MR. COHEN:  Well, the advantage is you get to be

13  right all the time, Your Honor, because you wear the robe.

14  That's how it goes.

15             THE COURT:  I want to give you your opportunity.  I

16  just think you've already had it and made it, okay?  That's

17  what I'm saying.  Okay.

18             Anything else?

19             MR. WEGNER:  No, I have nothing else.

20             THE COURT:  Thank you for your attendance, and we'll

21  try to be of assistance to you when you give me your back-up

22  papers here, and if I can be of assistance at any time, tell

23  me, and I will attempt to help you okay.  Thank you.

24             MR. COHEN:  Thank you, Your Honor.

25             MR. WEGNER:  Thank you, Your Honor.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1          (Proceedings concluded at 1:19 p.m.)

2                    – – – – –

```
1                    C E R T I F I C A T E

2

3          I hereby certify that pursuant to Section 753,

4    Title 18, United States Code, the foregoing is a true and

5    correct transcript of the stenographically reported proceedings

6    held in the above-entitled matter and that the transcript page

7    format is in conformance with the regulations of the Judicial

8    Conference of the United States.

9

10    Date:  September 7, 2017

11

12                 /S/_____

13                      Deborah K. Gackle
                        CSR No. 7106
14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**MR. BROWN: [3]** 64/18 65/20 66/10
**MR. COHEN: [75]**
**MR. GATIEN: [3]** 49/17 49/22 50/10
**MR. KAMELGARD: [36]** 11/13 13/14 17/6 17/9 18/1 18/5 24/8 24/23 25/23 26/8 27/14 31/13 31/22 32/4 32/12 32/16 39/25 40/3 40/6 41/5 41/9 41/13 41/24 42/17 43/2 43/10 44/1 44/14 49/2 49/21 49/23 58/16 58/23 59/2 65/9 66/25
**MR. WEGNER: [38]** 10/21 10/23 11/2 19/23 23/4 23/22 27/5 27/17 27/23 29/7 30/5 30/25 31/3 31/10 33/21 35/8 35/12 38/6 38/8 38/17 38/21 39/8 39/12 45/21 53/16 53/23 54/1 54/24 66/11 66/19 66/24 67/3 67/20 68/2 68/4 68/9 71/18 71/24
**MS. LEE: [10]** 45/19 45/25 47/5 47/8 47/10 53/1 53/7 53/20 53/22 54/25
**THE COURT: [147]**
**THE REPORTER: [2]** 17/7 41/3

**$**
**$10,000 [1]** 46/6
**$200,000 [1]** 46/7
**$24 [1]** 37/16
**$6 [3]** 44/1 49/11 49/12

**'**
**'The [1]** 28/24

**/**
**/S [1]** 73/12

**0**
**0080 [4]** 3/5 3/9 3/13 3/17
**0094 [1]** 43/23
**0717 [1]** 2/18

**1**
**1.5 [1]** 51/23
**1/8th [1]** 50/19
**100 [6]** 48/7 48/13 48/19 50/4 50/15

50/23
**1036 [1]** 6/19
**1044 [1]** 6/19
**1050 [4]** 3/4 3/8 3/12 3/16
**11 [2]** 1/18 5/1
**1152 [1]** 45/9
**1159 [1]** 45/9
**11:05 [1]** 5/1
**12 [2]** 12/1 12/6
**120 [1]** 2/17
**125 [1]** 4/6
**1272 [1]** 42/8
**1275 [2]** 42/16 43/3
**13 [1]** 67/3
**132 [1]** 4/6
**1453 [1]** 2/12
**147 [1]** 4/7
**15 [3]** 53/11 67/12 67/14
**15-01586-WDK [1]** 1/9
**15-page [1]** 52/23
**151 [1]** 4/7
**1551 [1]** 6/24
**158 [1]** 4/8
**16 [1]** 63/17
**160 [2]** 4/8 4/9
**18 [1]** 73/4
**1910 [1]** 2/7
**1982 [1]** 42/8
**1:19 [1]** 72/1

**2**
**2,000 [1]** 40/24
**200 [1]** 57/4
**201 [1]** 20/6
**2012 [1]** 6/24
**2014 [2]** 6/19 18/9
**2017 [4]** 1/18 5/1 63/17 73/10
**207 [1]** 2/17
**209 [1]** 63/25
**213 [1]** 1/25
**213-403-6405 [1]** 2/8
**213-413-6400 [1]** 2/8
**245 [2]** 63/16 63/17
**24th [1]** 67/2
**26 [2]** 63/11 63/14
**2603 [2]** 3/4 3/8 3/12 3/16

**3**
**300 [1]** 2/12
**310-746-9800 [1]** 2/13
**310-746-9820 [1]** 2/13
**33 [2]** 62/4 64/12
**350 [1]** 1/24
**3rd [1]** 2/12

**4**
**400 [1]** 57/4
**401 [2]** 18/13 19/13

**402 [3]** 18/13 19/13 19/14
**403 [3]** 15/18 18/14 19/14
**424-302-0717 [1]** 2/18
**440 [1]** 2/7
**4th [1]** 1/24

**5**
**50 [1]** 12/6
**575 [1]** 45/9
**58 [1]** 4/5

**6**
**604 [4]** 18/20 19/3 19/3 19/4
**608 [4]** 18/16 19/3 19/4 19/4
**6400 [1]** 2/8
**6405 [1]** 2/8
**65 [1]** 4/5
**69 [1]** 6/24
**692 [1]** 42/8
**694 [1]** 6/24

**7**
**701 [2]** 16/18 16/19
**702 [2]** 7/1 17/4
**7106 [1]** 73/13
**74 [1]** 1/21
**750 [1]** 6/18
**753 [1]** 73/3
**79 [1]** 4/11

**8**
**8913 [1]** 1/25
**893-8913 [1]** 1/25
**8th [1]** 50/19

**9**
**900,000 [2]** 40/24 41/1
**90012 [1]** 1/24
**90026 [1]** 2/7
**90212 [1]** 2/18
**90401 [1]** 2/12
**92614 [4]** 3/4 3/8 3/12 3/16
**947 [1]** 37/3
**949-705-0080 [4]** 3/5 3/9 3/13 3/17
**978 [1]** 37/3
**98-0094 [1]** 43/23
**9800 [1]** 2/13
**9820 [1]** 2/13

**A**
**a firm [1]** 55/12
**A.M [1]** 5/1
**ability [1]** 59/15
**able [6]** 21/4 24/23 28/19 32/18 50/8 69/11

**above [1]** 73/6
**above-entitled [1]** 73/6
**absolutely [5]** 8/18 8/18 8/19 17/2 23/2
**acceptable [1]** 8/7
**accepted [3]** 8/1 14/18 15/2
**accident [2]** 8/25 9/2
**accidental [1]** 30/17
**According [2]** 22/12
**account [1]** 20/22
**accounted [2]** 22/1 24/19
**accounting [2]** 23/10
**accounts [4]** 20/14 20/14 20/25 21/1
**accuracy [1]** 21/5
**achieve [1]** 49/9
**acknowledge [2]** 42/25 58/3
**acquisition [1]** 14/13
**across [2]** 12/11 40/9
**act [2]** 46/20 47/17
**acted [2]** 58/2 58/14
**actual [4]** 38/12 44/21 45/5 47/21
**actually [10]** 24/10 25/21 25/21 27/7 27/18 30/14 40/11 46/8 46/23 68/11
**add [1]** 58/17
**additional [1]** 58/2
**address [7]** 24/8 25/2 28/4 28/12 40/12 45/20 49/4
**addressed [3]** 14/8 14/15 46/24
**adequate [2]** 46/20 47/17
**adjusted [1]** 22/8
**Adlerton [1]** 2/11
**admissible [1]** 15/2
**admitted [3]** 42/11 43/14 52/3
**admittedly [1]** 23/8
**advance [3]** 55/20 57/6 57/23
**advancing [1]** 53/13
**advantage [1]** 71/12
**advertising [2]** 29/24 50/22
**advisedly [1]** 36/6
**affect [3]** 8/2 8/4 59/4
**affects [1]** 21/4
**affirmative [1]** 67/9
**affirmed [1]** 6/25
**after [13]** 8/15 9/21 22/22 28/20 28/25 29/24 38/13 47/19 57/21 59/19 59/24 62/14 67/15

**afterwards [1]** 33/5
**again [12]** 14/25 31/15 34/1 37/9 39/13 42/25 44/23 47/24 50/1 53/6 60/10 68/23
**age [1]** 42/20
**ago [3]** 36/9 44/3 60/10
**agree [7]** 25/18 27/24 27/25 28/2 54/2 54/12 68/13
**agreed [1]** 61/1
**agreement [5]** 5/16 5/16 49/20 49/20 68/20
**agreements [4]** 46/3 46/3 46/14 49/7
**Ah [1]** 19/25
**ahead [6]** 11/13 39/8 43/2 56/16 65/24 66/19
**air [1]** 7/4
**al [1]** 1/11
**albeit [4]** 9/6 39/6 64/15 65/4
**all [60]** 5/4 6/9 7/19 11/21 15/2 18/8 19/7 20/5 20/10 20/19 20/20 21/20 22/22 23/7 23/13 25/10 25/13 25/14 26/7 27/3 27/4 28/17 29/16 39/25 40/7 40/9 40/13 40/25 43/1 44/2 44/11 46/11 48/22 49/6 49/6 50/13 51/12 52/10 60/20 61/6 62/14 63/15 63/22 64/3 64/25 67/5 68/11 69/3 69/9 70/14 70/24 71/1 71/3 71/13
**alleged [3]** 14/6 28/3 28/9
**allied [2]** 27/3 56/19
**allocated [1]** 26/14
**allotted [1]** 10/7
**allow [3]** 18/20 55/19 57/5
**allowed [8]** 10/25 17/14 18/2 25/15 26/17 31/17 57/2 58/19
**almost [1]** 44/3
**alone [1]** 50/6
**already [9]** 11/12 14/19 41/9 55/2 56/20 59/21 69/25 70/20 71/16

{PLAINTIFF} v.
{DEFENDANT}

{WITNESSNAME}
{DATE}

**A**

**also [13]** 5/10 7/18 8/23 10/15 10/17 20/15 28/21 31/16 33/4 44/3 57/21 61/18 66/14
**alter [4]** 19/7 19/16 22/11 25/22
**alter-ego [1]** 19/7
**alternative [5]** 57/3 57/6 57/25 58/1 59/10
**alternatively [2]** 14/21 34/15
**although [7]** 23/16 40/7 45/6 45/12 59/3 65/8 67/8
**am [3]** 8/11 12/18 68/19
**am wrong [1]** 12/18
**America [1]** 6/18
**among [4]** 16/8 17/13 44/16 65/13
**amount [7]** 10/6 20/24 20/24 35/20 48/10 48/21 55/25
**amounts [1]** 20/17
**analogy [1]** 30/19
**analysis [15]** 8/7 8/16 11/5 12/2 18/18 20/18 34/20 46/2 47/23 48/5 48/9 48/11 48/15 48/18 48/23
**anew [1]** 15/1
**ANGELES [4]** 1/17 1/24 2/7 5/1
**another's [1]** 33/19
**ANSON [6]** 4/11 11/25 43/25 48/3 48/7 48/20
**Anson's [1]** 48/12
**answer [6]** 12/25 18/1 39/21 39/25 43/7 64/1
**answers [1]** 33/10
**Anthony [1]** 2/16
**anticipate [1]** 19/17
**antithesis [1]** 6/21
**any [27]** 8/2 9/12 10/3 10/14 12/20 13/11 15/5 17/25 22/21 25/9 28/3 28/10 30/15 31/16 39/8 43/16 44/19 52/20 54/6 56/25 62/10 62/24 63/20 68/23 70/15 70/16 71/22
**anymore [2]** 27/12 70/11
**anything [11]** 10/2 10/3 23/9 27/1 32/8 34/23 45/6 55/2 62/10 62/11 71/18
**anyway [1]** 12/19

**anywhere [1]** 43/17
**AOP [11]** 1/7 46/1 46/5 46/9 46/17 48/7 48/24 49/11 49/12 52/3 58/14
**AOP's [6]** 47/16 50/20 50/23 52/2 52/6 62/1
**apart [2]** 23/10 30/10
**APLC [1]** 2/6
**apologize [1]** 49/3
**apparently [2]** 28/4 42/2
**appeal [5]** 12/4 12/23 13/8 16/10 70/14
**appeals [7]** 7/19 10/1 37/15 37/16 47/12 70/1 70/25
**APPEARANCES [1]** 2/1
**appears [5]** 7/4 8/2 15/16 36/8 61/13
**appendices [1]** 52/25
**apples [3]** 40/19 49/23 49/24
**apply [1]** 54/9
**apportionment [12]** 5/10 5/11 5/13 6/2 7/2 34/20 37/12 38/17 38/21 39/2 39/5 51/15
**appreciate [1]** 11/5
**approach [4]** 36/1 37/12 38/17 38/21
**appropriate [10]** 5/22 15/8 37/1 41/21 42/3 42/4 48/25 51/12 61/16 70/14
**appropriateness [1]** 51/13
**are [91]**
**area [2]** 17/19 40/8
**areas [1]** 10/6
**aren't [3]** 11/11 70/23 70/23
**arguably [1]** 18/14
**argue [30]** 8/8 9/4 10/5 11/2 12/25 13/3 13/19 15/10 21/20 21/21 24/3 25/4 25/8 26/5 28/16 29/4 29/18 29/18 30/7 30/12 30/14 31/12 32/18 32/21 32/22 34/3 34/3 34/15 35/2 58/13
**argued [3]** 30/3 30/4 62/9
**argues [1]** 9/2
**arguing [4]** 9/19 25/17 25/22 30/8
**argument [28]** 7/14 8/19 8/20 8/22 9/6 9/10 10/1 11/4 12/22 25/9 28/10 29/6 29/19

**30/9 30/11 31/11 34/23 34/24 37/25 38/2 38/3 45/22 46/19 47/16 51/8 52/15 53/4 55/16
**argumentation [4]** 6/10 16/15 52/21 70/16
**argumentative [1]** 54/11
**arguments [1]** 51/13
**around [7]** 6/13 6/13 6/14 52/24 59/13 59/14 60/13
**article [1]** 52/23
**articulated [1]** 71/3
**as [82]**
**ascribe [2]** 11/18 29/19
**ascribed [2]** 11/24 32/11
**ascribing [1]** 9/7
**aside [2]** 14/15 50/14
**ask [10]** 9/20 10/11 10/22 19/9 21/14 21/15 21/16 24/7 40/4 60/3
**asked [1]** 64/16
**asking [3]** 27/19 69/24 70/12
**asks [1]** 65/23
**aspect [1]** 24/17
**Assault [1]** 66/18
**assaulting [1]** 66/17
**assess [1]** 59/15
**assigned [1]** 16/6
**assignment [3]** 41/20 49/20 49/21
**assignments [1]** 41/17
**assist [1]** 71/3
**assistance [3]** 5/19 71/21 71/22
**associated [1]** 5/12
**assume [1]** 10/24
**assumed [1]** 20/18
**at [52]** 6/14 6/19 6/24 8/9 8/16 9/9 9/10 9/12 9/21 9/25 10/24 13/11 14/10 17/23 20/5 23/15 25/10 25/14 26/14 29/18 29/23 33/20 34/7 34/9 35/25 36/5 39/8 41/16 42/7 44/3 45/9 46/8 46/25 47/20 52/13 52/21 55/10 55/12 56/12 58/19 60/13 61/12 62/12 63/18 66/16 66/17 66/17 67/15 69/15 71/22 72/1

**attempt [2]** 67/24 71/23
**attendance [1]** 71/20
**attendant [2]** 55/3 59/25
**attention [1]** 37/19
**attorney [5]** 8/10 9/2 9/3 9/8 58/11
**attorney's [1]** 47/8
**attorneys [1]** 20/1
**attributable [7]** 43/16 48/6 48/8 48/14 48/19 50/13 51/12
**attributing [1]** 61/15
**attribution [1]** 7/15
**authentic [2]** 14/18 15/2
**authority [1]** 39/24
**auto [2]** 9/1 12/17
**available [1]** 54/14
**avenue [1]** 47/18
**avoided [1]** 54/1
**award [2]** 37/16 37/20
**awarded [1]** 38/14
**awarding [1]** 47/14
**aware [3]** 31/22 37/23 69/16
**away [5]** 8/11 20/23 36/1 36/1 55/11
**awhile [1]** 60/19
**axiomatic [1]** 30/3

**B**

**Baccarat [2]** 42/8 43/12
**back [33]** 14/25 15/9 16/19 18/24 20/23 20/24 21/14 21/23 36/3 37/18 37/18 38/24 39/4 39/16 41/15 49/14 49/20 61/5 62/6 62/12 62/18 62/24 62/24 63/3 64/3 64/23 65/3 65/4 65/5 65/7 69/11 69/13 71/21
**back-dated [1]** 18/24
**back-up [10]** 62/6 62/12 62/24 62/24 63/3 65/3 65/4 65/5 65/7 71/21
**backing [2]** 24/21 63/12
**backs [1]** 37/24
**bad [3]** 28/7 28/8 43/1
**bagged [1]** 36/13
**baked [2]** 13/5 13/6
**ball [2]** 6/13 39/8
**ballgame [1]** 26/2
**bang [1]** 31/10
**Barak [2]** 2/11 17/10
**Barbara [1]** 16/2

**based [9]** 6/20 7/5 11/17 16/23 17/3 32/8 37/20 40/14 65/18
**bases [1]** 15/14
**basically [8]** 5/11 22/9 30/17 36/14 37/12 39/5 60/16 70/15
**basis [13]** 12/5 15/15 16/15 39/10 40/10 40/13 40/14 43/21 46/2 46/12 49/16 62/7 62/12
**bear [1]** 52/20
**bearing [1]** 44/8
**bears [1]** 45/14
**because [54]** 7/19 11/7 11/13 11/22 11/23 12/13 12/16 12/16 15/14 15/16 16/16 19/20 20/12 21/4 21/23 22/1 23/1 23/11 24/7 24/21 25/16 26/12 27/10 28/13 29/22 30/21 34/23 38/9 38/10 39/13 40/21 42/6 42/12 46/2 47/17 50/2 51/10 52/14 53/3 55/19 57/9 57/14 58/9 58/17 58/24 60/18 61/9 61/12 63/11 65/19 65/25 69/23 70/4 71/13
**becomes [1]** 60/4
**beginning [1]** 63/18
**behalf [2]** 48/2 58/14
**belief [1]** 5/21
**believe [18]** 5/15 5/18 6/9 8/4 11/18 15/18 17/5 18/11 19/13 21/6 23/8 25/21 27/6 32/17 46/11 51/6 60/19 65/9
**believed [1]** 16/8
**bench [3]** 14/2 38/12 39/13
**benchmarks [1]** 11/8
**besides [1]** 16/13
**best [2]** 63/24 68/22
**bet [2]** 27/25 28/1
**better [1]** 59/15
**between [7]** 17/25 29/13 46/14 46/15 51/19 57/16 62/14
**Beverly [1]** 2/18
**beyond [2]** 17/14 17/20
**big [1]** 35/24
**bigger [1]** 40/22
**bill [1]** 3/9
**billion [2]** 50/7 50/9
**bit [2]** 28/13 68/25
**bkamelgard [1]** 2/14

{PLAINTIFF} v.
{DEFENDANT}

{WITNESSNAME}
{DATE}

**B**

**Black [3]** 31/17 31/22
32/14
**blush [1]** 8/9
**both [11]** 19/21 24/13
32/24 34/2 41/17 46/5
49/5 49/7 49/9 56/7
66/22
**bottles [1]** 30/10
**bottom [2]** 30/3 41/12
**Boulevard [1]** 2/7
**box [1]** 30/19
**boxes [3]** 66/14 66/14
66/14
**brand [4]** 50/20 50/21
50/22 50/23
**Brewing [1]** 42/9
**brief [6]** 52/23 53/1
53/8 53/11 59/14
67/12
**briefing [1]** 52/23
59/18 59/22
**briefs [3]** 29/9 53/21
54/6
**bring [12]** 7/2 18/3
18/3 18/17 41/19
41/22 42/2 51/16
55/21 57/9 57/18 61/5
**broken [1]** 64/13
**Brothers [1]** 45/8
**brought [2]** 23/25
69/1
**Brown [5]** 3/3 3/7 3/7
3/11 3/15
**bunch [1]** 24/16
**bundle [1]** 9/11
**burden [4]** 53/12 57/8
58/2 58/3
**bush [1]** 6/14
**Bushwa [1]** 53/5
**business [5]** 5/20
5/24 16/3 23/14 43/5
**businesses [1]** 23/15
**buy [1]** 32/8
**bwmllp.com [4]** 3/5
3/9 3/13 3/17

**C**

**CA [7]** 2/7 2/12 2/18
3/4 3/8 3/12 3/16
**cake [1]** 25/2
**calculation [6]** 40/11
44/18 49/16 51/20
52/9 63/13
**CALIFORNIA [10]** 1/2
1/17 1/24 5/1 8/24
8/25 13/9 40/9 42/6
48/23
**call [1]** 29/10
**called [3]** 6/14 27/20
39/19

**calling [1]** 32/1
**came [2]** 26/10 32/19
**Camino [1]** 2/17
**can [78]**
**can't [28]** 8/5 8/7 10/4
10/14 11/1 11/23
11/24 13/9 18/17
22/22 22/25 22/25
25/3 25/8 26/5 29/18
30/3 30/23 31/15 33/1
39/5 40/15 40/25
47/16 66/10
**Candidly [1]** 66/14
**cannot [3]** 10/5 18/24
41/19
**cap [6]** 6/23 14/4 16/4
16/4 37/2 37/2
**caps [1]** 8/19
**cards [1]** 22/14
**care [4]** 25/22 27/4
33/12 68/17
**carefully [2]** 12/13
52/13
**case [74]**
**cases [33]** 6/17 7/22
8/23 12/12 12/20 35/9
36/7 37/1 40/7 40/9
40/13 41/17 41/18
41/22 43/12 43/16
44/9 44/11 44/12
44/15 44/22 45/17
46/8 47/24 48/24 50/1
50/16 50/17 51/20
51/25 52/13 53/4
64/22
**cash [1]** 26/13
**categories [12]** 5/13
6/3 24/11 62/5 63/20
63/23 64/6 64/8 64/12
65/4 65/12 65/15
**category [1]** 68/10
**caveat [1]** 18/15
**CENTRAL [1]** 1/2
**cents [1]** 43/6
**certain [8]** 26/10
26/12 26/18 26/18
32/19 42/20 64/6 65/4
**certainly [10]** 5/9 6/1
7/22 10/24 11/1 12/4
23/12 23/23 24/22
45/17
**certify [1]** 73/3
**CFO [1]** 20/7
**challenge [2]** 32/23
32/24
**chambers [1]** 8/15
**Chan [10]** 20/6 20/7
20/13 20/25 22/13
22/15 22/20 24/15
63/2 64/5
**chance [2]** 34/10

**67/22**
**changes [1]** 57/8
**character [2]** 18/14
18/22
**chart [1]** 9/12
**check [1]** 10/17
**checking [1]** 22/21
**Chen [4]** 65/1 65/2
67/24 68/12
**chief [1]** 18/25
**choose [1]** 57/23
**chose [1]** 57/20
**Christmas [1]** 45/3
**circuit [31]** 6/19 6/24
6/25 35/21 35/25
36/10 36/11 36/16
36/22 37/10 37/22
37/23 38/10 38/15
38/16 38/19 39/3 39/4
39/9 39/22 42/4 42/7
43/17 43/20 45/7 45/7
45/11 45/16 51/7 51/7
54/8
**circuits [1]** 36/25
**circumstances [6]**
28/5 52/10 57/14
57/17 57/20 58/7
**citation [1]** 6/22
**cite [7]** 37/1 40/23
45/15 47/24 50/1
50/17 63/21
**cited [7]** 40/11 42/6
43/13 44/16 46/8
51/14 65/17
**cites [2]** 45/6 48/24
**City [1]** 6/18
**civil [1]** 43/23
**claim [1]** 39/20
**clarification [4]** 26/9
31/14 59/18 61/19
**clarify [7]** 19/20 24/9
26/19 27/9 40/2 40/4
65/10
**clean [1]** 54/7
**clear [10]** 6/3 11/9
13/17 32/13 34/21
43/8 44/6 49/18 50/17
68/6
**clearly [5]** 6/8 15/7
16/24 16/24 50/8
**clerk [11]** 17/23 19/23
19/25 20/14 20/14
20/25 21/1 36/4 37/4
37/9 60/8
**clerks [1]** 8/14
**client [3]** 33/16 67/23
69/23
**client's [2]** 24/20 44/6
**clients [2]** 13/22 13/23
**close [5]** 16/21 38/1
57/18 67/13 68/20
**closer [1]** 12/8

**closing [2]** 13/18
13/18
**closure [1]** 35/4
**Clothing [2]** 42/8
43/12
**cobble [1]** 37/25
**Code [1]** 73/4
**cohen [20]** 2/6 2/6 2/9
4/5 4/6 4/7 4/8 9/23
23/9 24/5 24/5 29/21
34/6 39/16 39/24 60/9
65/18 65/22 67/17
67/22
**Cohen's [3]** 30/7
30/19 59/7
**coincides [1]** 17/17
**come [14]** 5/6 6/5 6/9
7/10 9/9 14/24 14/25
15/9 17/21 29/20
39/18 49/16 56/25
60/11
**comes [3]** 9/23 48/12
53/5
**coming [10]** 9/5 9/7
13/7 13/21 17/18
24/20 48/21 58/1
62/21 65/14
**commenting [2]** 49/19
49/19
**comments [1]** 45/20
**commercial [2]** 16/10
50/19
**commissions [1]**
24/16
**community [1]** 8/1
**companies [3]** 21/19
24/16 24/18
**company [7]** 21/15
26/18 33/20 37/3 42/8
43/12 50/6
**comparable [2]** 46/13
46/14
**comparative [3]** 9/1
12/20 28/2
**compare [1]** 13/1
**compared [2]** 10/18
39/20
**compares [1]** 36/10
**compensate [1]** 45/1
**competitor [2]** 51/22
51/24
**competitors [5]** 44/16
44/17 50/3 50/25 51/2
**complain [1]** 68/23
**complaining [2]** 66/8
68/9
**complete [2]** 67/13
68/20
**completely [1]** 42/4
44/4
**component [1]** 22/4
**computer [2]** 6/24 7/4

**conceded [2]** 20/21
22/1
**concern [1]** 25/3
**concerned [2]** 39/3
58/18
**concerning [1]** 46/4
**concerted [1]** 68/13
**concise [1]** 53/25
**conclude [1]** 67/11
**concluded [1]** 72/1
**conclusion [5]** 5/17
6/16 12/5 18/24 29/3
**condition [4]** 19/8
26/5 26/7 26/17
**conditions [1]** 26/20
**conduct [4]** 27/21
28/7 28/8 28/8
**conduct's [1]** 27/22
**conference [4]** 54/20
54/21 55/4 73/8
**confines [1]** 69/4
**conformance [1]** 73/7
**confuse [1]** 18/13
**confusing [2]** 19/14
30/13
**confusion [6]** 15/20
23/12 40/21 44/12
44/13 50/4
**conjures [1]** 45/2
**connection [1]** 40/20
**consider [2]** 37/20
47/19
**considerably [1]** 5/6
**consideration [1]**
47/14
**considerations [2]**
10/7 47/12
**considering [2]** 23/17
27/11
**consistency [2]** 10/6
34/2
**consistently [1]** 46/1
**contained [1]** 50/23
**contempt [2]** 31/16
31/23
**context [7]** 25/17 29/9
44/4 44/22 50/18
50/20 50/24
**continually [2]** 40/23
50/12
**continue [1]** 31/8
**continuously [1]**
46/19
**contribute [1]** 16/12
**contributed [1]** 37/13
**contributes [1]** 9/4
**contribution [2]** 10/7
37/14
**control [1]** 55/13
**conveyance [1]** 14/23
**conviction [1]** 18/21
**copy [2]** 19/23 64/24

**C**

copyright [1] 50/18
Corporation [2] 6/18 45/8
correct [6] 10/15 15/16 25/24 33/7 49/22 73/5
corrected [1] 67/4
cost [1] 56/6
could [21] 11/16 15/4 15/10 17/20 21/24 24/2 27/9 36/7 36/12 37/25 38/17 39/17 41/2 41/4 42/2 44/18 45/25 49/12 52/10 58/10 65/21
couldn't [1] 42/1
counsel [4] 2/1 19/22 42/11 49/19
countless [1] 40/8
couple [6] 23/5 28/1 34/16 48/17 49/4 49/5
course [3] 21/7 36/14 45/4
court [69] 1/1 4/5 4/11 7/19 8/23 8/24 10/1 12/24 13/6 13/7 13/8 13/8 14/11 14/17 15/1 18/20 19/22 29/13 30/15 30/24 31/7 35/4 35/23 35/23 36/22 37/11 37/11 37/15 37/15 37/18 37/19 37/20 38/3 38/11 38/11 38/13 38/16 38/16 38/19 38/24 38/25 39/3 39/3 40/13 40/19 41/16 41/24 47/2 47/11 47/18 53/3 54/6 55/19 57/15 57/19 57/22 58/8 58/10 59/22 61/22 62/3 68/21 69/18 69/19 70/1 70/6 70/14 70/25 71/8
court's [10] 4/3 6/25 11/8 25/2 28/14 43/7 43/8 57/5 70/6 71/10
Courthouse [1] 1/23
courts [2] 12/23 48/23
crazy [1] 41/3
Cream [1] 50/18
create [1] 21/16
created [1] 45/1
credibility [1] 53/9
Cresto [2] 24/14 25/15
criminal [1] 18/21
critique [1] 23/1
cross [8] 18/20 22/22 25/3 25/5 25/8 26/17 28/19 66/11

cross-examination [5] 18/20 25/3 25/5 26/17 66/11
cross-examine [3] 22/22 25/8 28/19
CSR [2] 1/23 73/13
customers [2] 16/9 50/10

**D**

damage [7] 15/19 20/24 34/22 35/19 47/20 57/24 63/12
damages [16] 18/12 21/22 24/21 35/20 36/25 38/12 41/20 44/21 47/3 47/5 47/6 47/9 47/14 47/21 57/3 59/10
Damian [1] 24/14
danger [1] 66/21
DARYL [1] 4/5
data [4] 68/9 69/6 69/9 69/10
date [7] 54/14 54/16 55/9 55/9 55/12 59/13 73/10
dated [1] 18/24
dates [1] 60/3
Daubert [2] 7/18 7/23
day [6] 8/22 8/22 12/11 12/12 42/19 70/25
days [3] 14/5 53/16 53/18
deal [5] 23/6 39/8 57/1 57/19 61/10
dealing [1] 25/11
dealt [2] 23/11 29/9
DEBORAH [2] 1/23 73/13
decide [3] 36/23 37/25 57/22
decided [2] 38/19 57/19
deciding [1] 38/12
decision [8] 7/1 42/15 43/4 43/7 52/11 57/22 58/10 59/10
declaration [3] 61/25 63/15 64/12
declarations [1] 29/10
deducted [1] 65/16
deduction [1] 34/13
deductions [3] 20/18 20/23 26/8
defendants [29] 1/12 3/1 17/11 17/14 18/2 19/11 19/17 20/7 20/9 20/20 20/21 25/2 26/11 40/17 40/23 40/24 41/6 43/13 46/6

46/18 49/13 50/11 50/21 51/5 52/3 52/8 55/20 57/2 63/14
defense [4] 8/9 9/3 9/8 45/21
definitely [1] 54/2
defrocked [1] 20/1
degree [1] 12/16
deliberation [1] 6/10
denied [1] 17/6
denominate [1] 54/23
depend [1] 55/18
depends [3] 15/10 66/2 66/2
deposition [6] 20/6 20/22 21/7 26/10 63/16 66/5
deprive [1] 11/7
described [2] 36/3 36/4
description [1] 5/25
despite [2] 31/8 51/12
detail [1] 64/10
detailed [1] 64/3
details [7] 15/3 62/5 63/21 63/22 64/13 65/20 65/25
determination [1] 7/9
determine [1] 47/1
determining [2] 16/25 47/13
deterrence [3] 47/3 47/13 47/18
deterrent [1] 46/21
Deuce [2] 46/6 46/16
developer [1] 24/15
device [1] 45/2
did [38] 6/15 7/12 12/17 15/14 16/3 19/4 19/17 19/24 20/19 21/7 21/8 21/14 21/15 21/15 21/16 21/16 21/16 21/17 32/7 37/18 38/13 38/15 43/8 48/3 49/9 55/1 56/2 56/8 56/13 63/20 63/21 64/6 64/8 65/5 65/24 66/9 67/21
didn't [22] 7/9 14/22 19/2 20/3 20/3 23/3 30/14 32/2 36/5 39/1 39/2 43/25 45/24 52/2 62/10 62/11 64/17 65/3 65/19 65/25 66/7 68/9
die [1] 12/19
difference [2] 21/18 44/17
different [9] 6/13 21/19 23/8 24/16 24/18 26/2 26/14 42/4

44/4
difficult [1] 7/9
dig [1] 13/13
dimly [1] 45/4
direct [7] 44/16 44/16 50/3 50/25 51/2 51/24 67/1
disagree [5] 11/6 11/9 11/12 11/13 34/16
disagreed [1] 61/2
disallowance [1] 11/6
disclose [1] 63/14
disclosure [1] 63/11
discommoding [1] 5/6
discovery [3] 21/8 22/22 62/16
discretion [1] 47/2
discuss [1] 11/16
discussed [4] 18/4 23/16 62/9 64/8
discussing [1] 68/7
discussion [14] 31/21 31/25 35/16 36/17 37/7 43/24 45/10 45/12 45/19 52/18 55/5 60/6 66/3 67/6
discussions [2] 64/5 65/19
dismaying [1] 34/2
dispatch [1] 60/18
distinct [2] 5/15 5/16
distinguishable [1] 50/3
distinguished [2] 42/5 45/16
distributed [1] 16/5
distribution [2] 1/11 16/14
district [17] 1/1 1/2 1/5 6/25 35/23 37/11 37/11 37/20 38/3 38/11 38/13 38/16 38/25 39/3 40/13 41/24 42/5
districts [1] 40/9
divide [1] 9/16
DIVISION [1] 1/3
do [79]
document [1] 62/1
documents [1] 65/13
dodging [1] 62/14
doers [1] 57/24
does [17] 6/4 10/14 11/7 11/15 17/13 17/16 20/13 25/16 26/18 33/14 37/22 39/11 46/20 48/18 48/22 51/9 51/10
doesn't [10] 23/7 29/2 32/17 33/12 39/4 41/12 44/9 47/17 59/4

68/23
dog [3] 9/22 9/24 60/12
dog-gone [1] 60/12
doing [8] 19/17 22/24 28/20 29/2 31/10 33/5 36/18 42/24
dollar [1] 43/7
dollars [3] 48/17 48/17 50/7
don't [78]
done [20] 5/25 9/18 9/18 10/6 11/12 20/20 21/2 21/3 22/23 31/10 44/3 44/3 44/4 55/2 57/20 59/20 60/22 61/13 61/13 70/16
draws [1] 24/13
Drive [1] 2/17
driven [1] 59/8
driver [2] 12/14 12/17
driving [1] 66/16
drops [1] 62/14
due [2] 53/21 54/14
dug [1] 24/7
during [4] 20/22 21/7 25/25 26/10
Dynamics [1] 6/23

**E**

E.G [1] 37/2
each [8] 20/7 20/13 20/15 20/16 21/15 26/14 64/8 64/24
earnest [1] 7/11
easy [2] 9/17 60/15
EDCV [1] 1/9
educate [1] 12/4
effect [1] 13/12
effectively [1] 14/8
effort [2] 45/1 68/13
egg [1] 25/9
ego [3] 19/7 22/11 25/22
egos [1] 19/16
eight [7] 6/5 8/11 11/17 12/1 12/6 17/13 17/14
either [5] 8/5 45/5 61/10 63/3 69/23
El [1] 2/17
elicit [1] 62/17
eLiquid [6] 16/9 16/13
else [10] 10/2 22/17 25/20 27/1 34/9 50/22 55/2 70/3 71/18 71/19
email [2] 2/9 2/14 2/19 3/5 3/9 3/13 3/17 31/18 32/14
embodied [1] 66/12
employed [1] 7/25
employees [1] 20/20

**E**

**end [3]** 8/8 34/7 34/9
**ended [1]** 66/6
**ending [1]** 61/21
**ends [1]** 63/25
**enhanced [4]** 47/3 47/6 47/7 47/14
**enhancements [1]** 58/11
**enough [8]** 12/14 28/5 47/3 53/22 57/17 57/18 60/12 70/1
**enrichment [6]** 40/21 55/22 55/24 56/1 57/7 58/14
**Enterprises [2]** 42/7 43/11
**entire [4]** 50/20 50/21 50/23 68/1
**entities [13]** 19/8 20/10 21/2 21/9 21/11 22/9 23/8 24/12 26/5 26/10 26/12 49/8 56/25
**entities and [1]** 56/25
**entities' [1]** 26/14
**entitled [2]** 61/15 73/6
**entity [2]** 62/5 64/13
**equal [2]** 44/11 51/2
**equipped [1]** 5/19
**equitable [1]** 37/17
**equivalent [1]** 50/25
**error [1]** 8/7
**especially [1]** 28/14
**essence [1]** 19/10
**essentially [2]** 44/11 57/23
**establish [1]** 15/5
**established [1]** 50/15
**estimate [2]** 55/17 60/2
**et [1]** 1/11
**evaluate [1]** 34/11
**evaluating [2]** 23/18 48/4
**even [20]** 14/17 14/21 14/21 15/1 19/15 26/11 29/17 32/17 40/11 42/3 43/14 44/15 45/16 57/24 58/24 58/24 63/5 63/10 63/13 65/15
**events [1]** 32/15
**ever [2]** 50/5 62/6
**every [3]** 36/1 42/5 55/12
**everybody's [1]** 55/11
**everyone [1]** 46/21
**everything [3]** 32/12 34/8 69/14
**evidence [13]** 6/6 8/2

**evidently [1]** 46/4
**exact [4]** 11/19 12/7 45/14 50/24
**exactly [4]** 43/13 51/8 51/24 59/3
**examination [7]** 4/3 18/20 25/3 25/5 26/17 66/11 70/5
**examine [3]** 22/22 25/8 28/19
**example [4]** 24/12 38/10 63/24
**examples [1]** 31/17
**Excel [1]** 64/9
**exceptional [7]** 28/5 57/14 57/17 57/20 58/7 58/20 58/25
**excerpt [3]** 61/24 64/11 67/5
**excerpting [1]** 62/3
**exclude [5]** 7/1 14/2 18/8 19/7 26/24
**excluded [3]** 16/2 66/1 66/4
**Exclusive [1]** 24/12
**excuse [4]** 6/2 10/5 26/24 27/17
**excused [1]** 56/20
**Exhibit [2]** 20/6 63/25
**Exhibit 201 [1]** 20/6
**Exhibit 209 [1]** 63/25
**exhibits [3]** 14/18 15/2 65/16
**exist [2]** 21/12 58/12
**existence [1]** 57/17
**expect [2]** 8/13 68/20
**expects [1]** 68/22
**expense [5]** 56/24 64/6 67/20 68/3 68/6
**expenses [34]** 20/18 24/11 24/18 24/21 26/8 26/11 26/12 26/14 26/18 56/9 56/12 56/14 60/9 60/11 60/19 60/24 61/1 61/3 61/11 61/20 61/23 62/5 62/8 62/17 62/21 65/3 65/7 65/14 65/25 66/3 66/14 68/12 68/19 69/11
**expert [18]** 5/22 5/23 6/21 7/1 7/25 10/15 10/13 11/15 11/19 11/20 11/21 16/21 38/23 43/25 48/1 48/2 55/21 55/23
**expert's [3]** 7/2 43/15 51/10

**experts [3]** 16/18 67/24 68/12
**explain [2]** 26/18 35/10
**explained [1]** 30/15
**expressed [2]** 5/18 15/8
**extent [1]** 36/7
**extremely [1]** 17/18
**extrinsic [1]** 18/21

**F**

**F.2d [3]** 37/3 42/8 45/9
**F.3d [2]** 6/18 6/24
**facially [1]** 15/16
**fact [13]** 16/25 27/7 28/2 30/11 30/21 32/19 47/11 47/19 50/14 54/22 54/25 62/14 65/16
**factor [4]** 12/1 48/23 49/9 68/6
**factors [25]** 6/5 6/7 6/8 6/9 7/18 7/23 7/24 8/8 8/11 9/10 9/11 9/20 9/21 10/25 11/17 16/12 17/1 17/13 17/15 18/3 18/3 28/15 37/13 58/12 69/20
**facts [3]** 9/4 17/1 51/17
**fair [3]** 16/24 20/24 53/15
**fair-thee-well [1]** 16/24
**false [1]** 46/4
**fan [1]** 35/24
**far [5]** 39/2 39/2 55/11 58/8 68/22
**fast [1]** 42/21
**favors [2]** 34/18 34/21
**Fax [2]** 2/8 2/13
**federal [4]** 6/24 6/25 8/24 43/6
**fee [1]** 58/11
**feel [4]** 57/15 58/12 66/16 70/22
**fees [1]** 47/8
**felt [1]** 58/7
**few [4]** 24/10 30/10 53/4 65/21
**Fibre [1]** 45/8
**fiction [2]** 45/1 51/25
**Fifth [1]** 37/22
**fight [1]** 60/18
**figure [2]** 56/6 59/6
**file [7]** 59/19 61/4 61/4 64/7 64/9 69/18 70/2
**filed [7]** 29/10 36/19 36/19 54/23 55/3 62/2 67/2
**filing [1]** 70/9

**filings [1]** 70/24
**final [1]** 29/18
**finalized [1]** 5/18
**financial [5]** 19/8 26/5 26/7 26/17 26/20
**find [9]** 7/9 13/11 13/13 41/17 41/18 41/21 41/21 42/1 43/16
**fine [21]** 11/11 25/6 26/22 31/1 32/22 41/2 41/3 54/4 54/5 54/15 57/1 57/20 60/25 61/8 57/17 57/18 58/9
**finger [1]** 13/10
**fingers [1]** 7/10
**firm [1]** 55/12
**firmly [2]** 15/24 68/20
**first [20]** 1/24 5/13 8/9 11/11 12/22 14/1 14/4 14/10 16/4 18/18 22/24 37/2 40/7 44/2 49/6 49/6 49/12 53/13 58/7 58/9
**fits [1]** 17/5
**five [1]** 22/20
**Floor [1]** 1/24
**flow [1]** 26/13
**fly [2]** 61/14 66/22
**follow [3]** 13/16 42/22 43/8
**foot [1]** 52/25
**foreclosing [2]** 15/13 15/13
**foregoing [1]** 73/4
**forensically [1]** 69/2
**forever [1]** 61/6
**Forget [2]** 41/15 55/7
**form [3]** 16/22 21/8 47/7
**formally [2]** 63/7 63/13
**format [1]** 73/7
**formerly [2]** 28/24 32/25
**forms [1]** 62/17
**found [7]** 37/1 37/14 38/24 41/23 42/1 44/19 44/20
**four [2]** 7/24 63/18
**fourth [2]** 8/6 33/24
**Frank [1]** 50/19
**frankly [8]** 9/18 15/11 24/1 29/9 34/18 35/25 60/5 67/8
**Friday [3]** 31/17 31/22 32/15
**front [9]** 9/9 15/25 20/1 23/12 30/14 30/18 31/12 62/4 64/11
**frugal [1]** 45/2
**frugal for [1]** 45/2

**fundamental [1]** 69/3
**further [6]** 5/21 10/4 17/25 18/18 35/7 59/21
**furthermore [3]** 7/7 17/18 18/13
**future [2]** 19/21 44/5

**G**

**GACKLE [2]** 1/23 73/13
**game [3]** 6/13 19/11 21/21
**gard [1]** 24/23
**Gatien [2]** 2/16 2/17
**Gatorade's [1]** 37/13
**gave [4]** 35/21 41/16 41/20 52/14
**general [4]** 54/11 64/7 64/10 65/6
**generally [2]** 8/1 36/24
**gentlemen [1]** 9/17
**get [34]** 7/12 10/13 13/21 15/22 22/11 23/4 30/16 32/22 36/5 38/4 40/25 41/15 42/13 46/12 46/13 49/12 50/9 51/19 52/9 52/24 55/10 57/23 57/23 58/12 59/20 60/12 60/17 60/18 60/23 61/14 62/13 67/24 69/13 71/12
**gets [1]** 30/20
**getting [3]** 38/1 39/16 49/11
**ghosts [1]** 45/3
**give [30]** 7/13 8/10 8/21 9/11 11/1 17/24 18/17 18/18 19/22 20/3 23/22 25/17 34/16 34/17 51/22 52/16 52/23 54/14 55/12 56/23 59/6 59/13 59/24 60/1 60/2 65/2 65/3 68/9 71/15 71/21
**given [8]** 6/11 14/21 15/21 23/1 28/14 37/8 39/13 65/5
**Glen [1]** 3/15
**gnuttall [1]** 3/17
**gone [5]** 14/5 60/12 67/14 67/14 69/14
**good [15]** 5/4 8/21 11/25 14/4 14/7 14/20 14/23 15/22 24/12 28/7 33/23 46/7 46/17 49/13 68/23
**goods [1]** 56/7
**granting [1]** 15/25

Case 5:15-cv-01586-WDK-KK   Document 316   Filed 09/30/17   Page 79 of 87   Page ID
#:35565
{PLAINTIFF} v.
{DEFENDANT}
{WITNESSNAME}
{DATE}

**G**

great [6]  31/9 33/20 46/23 47/25 47/25 61/10
grit [2]  35/2 35/3
gross [1]  56/5
guess [3]  31/12 49/25 67/4
guidance [1]  38/11
guys [1]  52/12

**H**

Hackett [5]  20/11 20/16 20/19 21/1 24/13
had [18]  12/22 12/23 14/17 15/2 34/10 36/8 38/13 40/20 41/22 49/7 50/4 50/7 53/9 63/14 64/15 64/17 67/22 71/16
hadn't [2]  63/10 63/13
half [7]  8/10 11/6 12/13 13/5 13/6 48/17 67/12
half-baked [2]  13/5 13/6
half-hour [1]  67/12
hand [2]  9/23 60/16
handed [2]  61/22 61/24
handle [1]  14/20
handling [1]  45/22
happen [5]  15/23 22/15 22/17 22/20 51/24
happened [5]  8/25 29/22 37/10 38/19 51/20
happening [1]  9/2
happens [1]  59/8
happy [3]  52/12 56/14 58/16
hard [3]  11/5 41/13 64/24
has [30]  5/25 8/5 8/19 9/13 9/14 9/18 12/21 13/1 14/8 15/20 16/12 21/3 23/6 23/11 29/12 40/10 40/13 40/14 42/5 44/8 44/19 45/17 46/1 48/7 49/21 54/23 57/20 60/9 62/13 69/19
hasn't [1]  65/5
have [102]
haven't [9]  23/16 33/8 34/10 54/17 60/8 60/25 62/21 69/5 70/21
having [4]  7/7 44/24

**H** (continued)

heads [1]  37/6
hear [9]  11/4 21/6 22/7 23/8 30/20 33/1 45/21 59/1 71/8
heard [1]  61/16
hearing [5]  14/11 37/4 57/14 58/21 59/1
held [12]  31/21 31/25 35/16 36/17 37/7 43/24 45/19 52/18 55/5 60/6 67/6 73/6
help [3]  42/25 71/2 71/23
helped [1]  56/8
helpful [4]  16/24 52/22 53/1 53/2
her in [1]  16/17
here [38]  7/17 8/25 9/4 9/14 11/5 13/7 14/23 16/24 19/16 21/13 25/10 28/1 29/22 34/16 35/4 37/21 38/24 40/16 40/18 41/1 42/24 44/17 45/13 46/16 46/19 48/6 49/1 51/18 55/15 56/20 57/3 61/5 61/5 61/13 62/3 66/22 69/13 71/22
here's [8]  9/20 22/15 22/17 25/15 29/14 36/18 61/1 64/1
hereby [1]  73/3
heretofore [2]  11/24 62/21
Hey [6]  14/19 46/20 46/25 47/16 47/20 48/13
hiding [1]  50/2
hierarchy [1]  16/18
high [5]  22/5 38/22 38/24 40/18 56/7
highly [1]  28/14
Hills [1]  2/18
his [16]  5/24 10/14 17/13 17/18 18/25 20/22 20/23 22/8 24/21 30/8 48/7 55/23 65/14 65/17 67/23 70/5
honor [51]  10/10 10/22 11/14 13/15 17/7 18/2 19/19 20/6 23/5 24/6 24/9 27/6 27/9 27/19 28/12 29/8 30/6 31/2 31/14 32/13 33/14 33/22 35/9 38/7 40/1 42/18 45/23 49/3 49/18 53/2 53/12 53/24 55/18 56/5 56/22 58/17 59/17

**H** (continued 2)

61/8 61/18 61/24 64/20 65/10 65/21 66/13 67/1 67/21 69/15 70/19 71/13 71/24 71/25
HONORABLE [1]  1/5
hope [1]  43/1
hopefully [2]  59/25 67/12
horizon [1]  13/24
horrible [1]  25/14
hour [1]  67/12
how [29]  7/12 9/16 9/18 12/2 12/2 13/1 28/25 30/6 34/18 36/9 40/6 48/5 52/5 52/10 53/16 53/18 53/20 54/3 54/23 57/11 57/21 58/7 59/6 59/11 59/15 60/16 61/3 70/18 71/14
hundred [1]  48/17
hypothetical [1]  47/13

**I**

I'd [4]  19/19 28/12 31/11 55/10
I'll [14]  7/15 8/19 9/11 13/9 14/12 15/1 17/24 24/2 29/10 32/9 39/19 58/15 60/22 61/5
I'm [83]
I've [13]  7/21 13/4 27/20 28/18 29/14 33/24 35/24 60/22 61/12 61/24 64/22 69/16 70/4
i.e [4]  36/7 36/15 47/13 65/13
identical [2]  44/18 51/3
identification [1]  6/7
identified [10]  13/3 15/14 25/21 25/21 27/8 33/6 36/9 62/20 62/22 62/23
identify [1]  66/9
identifying [1]  23/7
if [96]
ignores [1]  50/14
II [2]  1/20 1/20
Imagine [1]  41/8
imbued [1]  12/9
impact [1]  61/10
impeach [2]  18/19 18/25
impeachment [1]  18/15
implicate [1]  7/18
importance [3]  7/5 9/22 32/11
important [7]  10/25

**I** (continued)

11/8 11/22 11/22 27/12 30/9 33/5
impose [1]  44/24
impossible [2]  22/12
improper [4]  18/14 18/14 47/15 48/14
improperly [1]  12/10
impute [1]  52/6
in [231]
in-person [1]  68/15
inapplicable [1]  45/10
inappropriate [1]  41/18
INC [14]  1/7 6/23 6/24 36/20 36/20 42/7 42/8 43/11 43/12 43/23 44/24 45/8 46/9 46/10 66/10
include [2]  65/24 66/10
included [1]  66/7
includes [1]  10/15
including [1]  13/6
inconsistent [1]  29/22
incorrect [1]  15/7
increase [1]  12/7
incurred [1]  24/11
indeed [2]  41/20 70/14
independent [1]  17/17
indicate [1]  31/9
indicated [1]  33/25
individuals [1]  20/11
industry [1]  51/3
inequitable [1]  38/19
infirm [1]  12/2
inform [2]  7/22 7/23
information [2]  6/20 21/3
informed [2]  6/17 6/17
infringe [1]  46/21
infringed [1]  9/14
infringement [5]  42/10 43/9 43/16 50/16 51/9
initially [1]  39/3
injunction [16]  27/20 27/22 28/13 29/11 29/12 29/16 29/24 30/4 30/8 30/10 30/15 30/22 30/23 31/6 31/15 31/19
input [4]  10/4 23/1 59/7 70/11
inquired [1]  18/22
inquiring [1]  58/4
insidious [1]  25/13
insight [1]  8/21
instance [5]  9/8 11/23 11/25 22/19 31/17
instructions [5]  54/8 54/9 54/9 54/11 54/12

**I** (continued 2)

insufficient [2]  62/7 62/12
intend [2]  19/20 30/14
intending [1]  19/18
interesting [1]  37/3
internal [1]  36/15
International [1]  24/14
into [18]  6/5 7/19 8/21 10/7 11/5 15/22 17/22 18/22 20/24 22/11 24/7 38/4 47/23 48/23 52/7 53/4 60/12 60/18
introduced [1]  48/7
inviting [1]  15/12
invoice [1]  27/12
invoices [1]  27/11
involve [1]  23/7
ironically [1]  38/22
irrelevant [2]  18/11 26/24
Irvine [4]  3/4 3/8 3/12 3/16
issue [47]  5/10 5/13 5/14 6/12 6/15 12/24 14/5 14/6 14/8 14/15 15/23 15/25 17/1 17/1 18/12 19/16 23/7 23/10 23/15 26/4 26/10 27/11 27/12 27/14 27/18 27/20 29/12 30/18 30/22 33/8 34/11 34/12 35/10 35/19 35/19 38/4 38/5 38/6 41/16 46/23 47/19 53/1 55/22 56/19 59/9 61/7 66/16
issued [1]  29/25
issues [6]  5/12 26/13 27/3 29/8 40/2 40/5
it [228]
it's [88]
its [5]  12/23 15/21 32/7 47/2 58/10
itself [1]  7/16

**J**

Jeez [1]  64/22
job [2]  11/13 32/7
joint [1]  68/18
Jr [1]  3/7
judge [14]  1/5 7/21 14/5 14/9 14/9 14/10 14/17 14/24 15/1 15/10 15/11 38/3 47/12 60/14
judgment [3]  14/11 15/3 25/25
Judicial [1]  73/7
Juice [2]  46/6 46/16
jurors [1]  58/2

**J**

**jury [31]** 5/18 8/9 9/6 9/9 9/17 11/7 11/20 13/19 15/20 15/23 15/25 18/12 19/14 23/12 25/16 29/3 30/13 30/14 30/16 30/18 30/19 30/20 31/12 32/17 32/18 34/16 54/8 55/20 57/2 58/15 60/11
**jury's [3]** 6/10 58/22 61/6
**just [58]** 7/9 9/17 10/10 10/18 11/4 11/9 13/16 13/17 16/5 21/25 23/12 23/15 23/22 24/6 24/9 24/10 26/11 26/16 26/19 26/23 29/21 30/10 30/12 30/18 31/14 32/13 33/15 35/2 37/21 40/14 41/15 46/22 48/3 48/20 51/21 51/24 52/6 53/3 54/14 54/18 60/5 60/10 60/12 60/22 62/3 63/2 64/18 65/9 65/10 65/21 67/8 67/18 68/7 68/17 68/18 69/16 70/8 71/16

**K**

**Kamelgard [6]** 2/11 17/10 24/7 25/1 41/9 62/4
**Kamelgard's [4]** 45/20 49/18 61/25 64/12
**Karl [1]** 2/16
**Keats [2]** 2/16 2/17
**keatsgatien.com [1]** 2/19
**keep [4]** 40/17 51/5 53/25 62/13
**KELLER [1]** 1/5
**kept [2]** 28/21 33/5
**kg [1]** 2/19
**kidding [1]** 53/10
**kind [10]** 7/10 7/13 7/14 23/18 23/25 25/10 31/16 34/4 65/7 66/15
**knocked [1]** 50/22
**know [45]** 5/8 8/10 8/17 9/6 11/20 12/9 12/21 13/2 13/9 15/6 15/8 17/8 20/3 22/23 23/3 28/3 30/19 32/14 34/18 34/18 34/21 35/8 35/22 39/1 39/21

39/24 39/25 42/23 43/21 45/24 49/10 49/25 52/5 52/13 54/8 54/19 55/9 58/18 59/11 59/14 60/4 60/13 66/20 66/21 68/24
**knowledge [2]** 16/12 17/4
**known [1]** 8/6 28/24 32/25
**Konrad [1]** 2/16

**L**

**L-a-s-e-r [1]** 6/22
**labored [1]** 7/8
**ladies [1]** 9/17
**lady [1]** 16/3
**language [3]** 39/6 42/22 42/23
**laptop [1]** 7/4
**larger [1]** 50/22
**largest [1]** 32/15
**LaserDynamics [1]** 6/22
**last [3]** 47/19 66/15 66/17
**last-minute [1]** 66/15
**later [1]** 26/1
**latter [1]** 15/7
**latterly [1]** 15/8
**Laughter [1]** 20/2
**law [23]** 8/14 8/24 8/25 15/6 15/16 17/23 19/23 35/22 36/4 37/4 37/9 43/6 45/11 47/18 47/22 49/5 51/6 52/22 54/23 54/25 55/25 58/13 60/7
**lawyer [3]** 11/11 11/17 12/24
**lawyers [3]** 11/16 11/16 12/12
**lay [2]** 13/10 13/20
**leads [1]** 6/12
**least [3]** 6/14 10/25 29/23
**leave [2]** 6/4 33/15
**leaving [1]** 33/17
**ledger [2]** 64/7 64/10
**Lee [4]** 45/22 52/19 53/16 53/18
**legal [4]** 6/14 44/25 50/15 51/25
**length [3]** 33/20 58/18 59/4
**lengthy [2]** 45/10 45/13
**less [1]** 42/14
**let [11]** 5/10 13/12 19/21 34/5 41/15 52/12 52/16 53/13

55/10 64/2 69/18
**let's [10]** 12/21 16/19 23/4 28/7 36/3 45/21 46/25 53/11 59/12 69/13
**letter [6]** 8/19 14/4 16/4 16/4 37/2 37/2
**Li [1]** 3/11
**liable [3]** 12/13 12/15 12/15
**license [9]** 34/11 34/14 34/20 35/20 45/4 45/5 49/13 49/20 49/20
**license-back [1]** 49/20
**licensed [5]** 46/5 46/5 46/7 46/17 46/17
**licensee [1]** 45/3
**licenses [1]** 49/12
**licensing [12]** 40/14 43/19 44/25 46/3 46/14 48/25 49/7 49/8 49/9 49/15 51/18 51/21
**licensor [1]** 45/3
**life [2]** 15/21 15/21
**light [3]** 9/4 43/22 60/1
**like [22]** 16/5 19/12 19/19 21/15 26/8 28/12 32/2 41/9 42/19 45/3 48/3 48/20 50/17 50/21 51/18 52/24 66/15 66/16 68/25 69/1 70/18 70/22
**Lily [1]** 3/11
**limine [17]** 5/9 14/1 16/1 16/2 18/8 19/6 19/7 26/23 27/2 27/13 27/16 33/12 62/1 66/15 66/24 66/25 67/5
**limit [1]** 52/23
**limitation [1]** 31/15
**limited [3]** 16/22 43/22 44/23
**limits [1]** 51/14
**line [5]** 26/19 30/3 41/12 56/13 63/18
**lines [1]** 65/22
**list [5]** 20/10 27/8 60/7 61/23 64/12
**listed [2]** 65/12 65/15
**lists [1]** 62/4
**litigation [3]** 5/20 26/25 27/4
**little [2]** 60/4 60/17
**live [1]** 28/18
**LLC [1]** 1/11 14/4
**lli [1]** 3/13
**LLP [6]** 2/11 2/17 3/3

3/7 3/11 3/15
**loaded [1]** 52/20
**loaf [2]** 8/10 11/6
**loan [1]** 24/14
**loan-out [1]** 24/14
**loans [2]** 24/12 26/13
**Logical [1]** 8/12
**long [13]** 7/8 13/13 19/15 25/5 31/18 44/8 53/20 54/3 57/21 59/7 59/11 59/15 61/3
**longer [2]** 19/15 59/4
**look [26]** 7/7 8/16 9/9 9/10 9/12 15/9 25/10 25/14 30/14 32/2 34/15 36/5 38/4 38/11 41/12 42/7 46/8 46/25 52/13 54/17 55/10 55/13 56/5 56/12 65/2 66/15
**looked [1]** 9/21
**looking [10]** 12/13 17/23 20/5 33/19 37/5 47/20 52/22 55/6 60/13 60/21
**LOS [4]** 1/17 1/24 2/7 5/1
**LOS ANGELES [1]** 5/1
**loss [2]** 39/20 66/13
**lot [6]** 12/8 24/17 36/5 52/14 52/14 64/22
**love [1]** 31/11
**low [1]** 56/6
**lower [5]** 42/12 43/15 51/11 58/20 58/25
**luncheon [1]** 67/11

**M**

**M2 [3]** 36/20 40/11 43/20
**macro [1]** 60/12
**made [5]** 9/10 11/25 69/25 70/20 71/16
**Main [4]** 3/4 3/8 3/12 3/16
**make [15]** 6/1 7/14 26/16 38/6 42/9 43/6 43/8 46/19 51/8 52/1 52/2 59/3 59/10 68/12 69/6
**makes [1]** 50/8
**making [1]** 7/9 19/14
**malpractice [1]** 12/19
**man [21]** 12/19 16/5 16/9 16/10 16/13 28/24 29/17 29/24 31/18 32/3 32/20 32/25 33/5 46/4 46/5 46/5 46/7 46/17 46/18 52/4 52/5
**Man.' [1]** 28/24

**Management [2]** 24/14 25/15
**manages [1]** 24/16
**mandate [2]** 43/8 68/15
**manifest [3]** 5/16 5/24 23/12
**manifestly [1]** 30/12
**many [6]** 21/13 29/9 37/13 53/16 53/18 60/22
**map [2]** 39/25 56/23
**March [2]** 63/17 67/2
**mark [24]** 38/12 39/13 39/14 46/4 46/6 46/7 46/17 46/18 48/4 48/6 48/8 48/10 48/14 48/15 48/16 48/19 48/20 48/20 50/24 51/22 52/2 52/4 52/6 55/23
**marketing [3]** 28/23 32/24 46/10
**marketplace [1]** 46/16
**Markiles [1]** 2/11
**marks [1]** 51/3
**MARTIN [32]** 4/5 5/14 5/23 7/11 10/14 10/24 13/19 16/17 17/12 20/21 22/1 22/8 23/1 23/17 26/13 29/19 48/1 48/12 51/23 52/3 56/13 57/16 57/19 62/6 62/11 62/25 63/4 63/15 64/14 64/16 65/1 69/19
**Martin did [1]** 56/13
**Martin's [6]** 20/17 21/5 22/4 63/16 64/16 65/13
**Master [1]** 40/23
**matches [1]** 36/9
**matter [5]** 22/3 28/3 29/2 30/22 73/6
**matters [5]** 19/20 20/12 20/17 26/25 27/4
**Matthew [1]** 3/3
**may [31]** 1/18 5/1 6/6 7/11 10/5 10/11 10/22 11/14 17/17 18/15 18/19 18/20 25/1 25/3 25/8 29/3 29/18 29/19 32/9 33/22 34/16 34/21 40/1 43/4 43/21 45/20 54/9 58/17 59/3 69/17 69/20
**maybe [2]** 32/9 42/23
**me [55]** 5/10 5/12 6/2 6/3 7/13 8/10 8/14 8/20 9/5 10/5 11/12 12/10 13/6 13/12 14/9

## M

**me... [40]** 14/10 14/21 15/9 17/23 18/17 18/18 19/2 19/21 20/3 22/15 26/24 27/17 32/2 34/5 35/2 36/3 36/4 37/9 38/2 41/3 41/11 41/15 52/16 52/16 54/15 55/10 56/23 59/6 60/10 60/19 61/4 63/2 64/2 65/2 65/4 65/5 69/14 70/18 71/21 71/23
**mean [14]** 11/16 12/2 17/14 17/16 21/10 23/5 29/21 30/2 39/11 42/25 51/22 52/19 56/19 57/21
**means [1]** 9/7
**meant [2]** 19/4 26/20
**measure [5]** 36/24 47/21 57/3 59/8 59/11
**media [1]** 24/17
**mediation [1]** 67/25
**medical [1]** 12/18
**meet [4]** 58/3 60/23 61/2 68/17
**meeting [3]** 68/16 68/18 69/5
**Meier [2]** 42/9 43/8
**memo [2]** 14/2 54/25
**mention [3]** 35/18 44/11 47/20
**mentioned [2]** 17/11 17/13
**mentioning [2]** 37/24 38/1
**merits [1]** 15/15
**method [7]** 39/7 44/20 48/4 50/9 51/1 51/2 51/4
**Michael [2]** 2/6 2/6
**might [3]** 8/13 24/3 57/17
**Milk [21]** 16/5 16/9 16/10 16/13 28/24 28/24 29/17 29/24 31/18 32/3 32/20 32/25 33/4 46/4 46/5 46/5 46/7 46/17 46/17 52/4 52/5
**million [8]** 37/16 44/1 48/17 49/11 49/12 50/5 50/10 55/24
**mind [1]** 7/7 14/18 53/5
**mind that [1]** 7/7
**minimal [1]** 29/20
**minus [1]** 22/10
**minute [2]** 66/15 66/17

**minutes [3]** 22/20 67/12 67/14
**misappropriated [1]** 61/17
**missed [2]** 53/17 60/8
**missing [1]** 69/6
**misstated [1]** 49/4
**misunderstanding [1]** 66/21
**mlcplclaw.com [1]** 2/9
**moment [2]** 52/16 60/10
**money [2]** 60/12 60/14
**Monica [1]** 2/12
**morning [2]** 5/4 36/19
**most [4]** 41/24 41/25 41/25 54/2
**motion [24]** 14/2 14/11 14/16 14/24 16/1 16/1 17/6 17/11 18/8 19/6 19/6 26/23 26/23 27/1 27/7 27/13 27/16 27/19 33/23 62/1 66/15 66/24 66/25 67/5
**motions [2]** 5/9 14/1 33/12
**motivated [1]** 16/8
**move [1]** 60/17
**moved [1]** 33/1
**MR [16]** 4/5 4/6 4/6 4/7 4/7 4/8 4/8 4/9 20/16 20/19 24/23 27/10 39/16 45/20 67/22 69/19
**Mr. [67]** 7/11 9/23 10/14 10/24 11/25 13/16 13/18 13/19 16/17 17/12 20/11 20/11 20/16 20/17 20/19 20/21 21/1 21/1 21/5 22/1 22/4 22/8 23/1 23/4 23/9 23/17 24/5 24/5 24/7 24/12 24/13 25/1 26/13 27/8 29/19 29/21 30/7 30/19 34/6 38/5 38/6 39/24 41/9 43/25 48/1 48/12 49/18 51/23 52/3 59/7 60/9 61/25 62/4 62/6 62/11 62/25 63/4 63/15 63/16 64/12 64/14 64/16 65/1 65/13 65/18 65/22 67/17
**Mr. Anson [2]** 11/25 43/25
**Mr. Cohen [11]** 9/23 23/9 24/5 24/5 29/21 34/6 39/24 60/9 65/18

**65/22 67/17**
**Mr. Cohen's [3]** 30/7 30/19 59/7
**Mr. Good [1]** 24/12
**Mr. Hackett [3]** 20/11 21/1 24/13
**Mr. Kamelgard [4]** 24/7 25/1 41/9 62/4
**Mr. Kamelgard's [3]** 49/18 61/25 64/12
**Mr. Martin [24]** 7/11 10/14 10/24 13/19 16/17 17/12 20/21 22/1 22/8 23/1 23/17 26/13 29/19 48/1 48/12 51/23 52/3 62/6 62/11 62/25 63/4 63/16 64/14 64/16 65/13
**Mr. Martin's [6]** 20/17 21/5 22/4 63/16 64/16 65/22
**Mr. Nuttall [1]** 27/8
**Mr. Voudouris [4]** 20/11 20/16 20/19 21/1
**Mr. Wegner [3]** 13/18 38/5 38/6
**Mr. Wegner's [2]** 13/16 23/4
**Ms [1]** 52/19
**Ms. [11]** 20/25 22/15 22/20 28/17 45/22 53/16 53/18 65/1 65/2 67/24 68/12
**Ms. Chan [3]** 20/25 22/15 22/20
**Ms. Chen [4]** 65/1 65/2 67/24 68/12
**Ms. Lee [3]** 45/22 53/16 53/18
**Ms. Villegas [1]** 28/17
**much [8]** 35/4 40/22 48/5 48/21 50/22 54/13 58/20 60/10
**mulberry [1]** 6/14
**multiple [1]** 22/9
**Music [1]** 50/19
**mwegner [1]** 3/5

## N

**N-u-t-t-a-l-l [1]** 27/3
**name [14]** 7/16 9/22 28/16 28/21 29/2 30/5 30/7 30/9 30/25 31/7 31/8 31/9 32/1 32/12
**namely [1]** 41/5
**nature [1]** 57/9
**necessarily [1]** 59/4
**need [3]** 7/18 10/3 33/15 33/20 34/23 35/6 35/7 36/23 41/12 43/18 44/22 51/8

**52/11 52/20 53/20 54/3 54/7 54/14 54/17 54/20 54/20 54/21 55/7 55/7 58/21 59/1 61/19 70/1 70/10 70/15**
**needs [1]** 55/3
**negative [1]** 28/8
**negligence [6]** 8/22 9/1 12/12 12/20 13/2 28/2
**negligent [3]** 12/15 12/16 12/17
**negotiating [1]** 45/4
**negotiation [4]** 40/15 43/19 44/25 49/1
**negotiations [2]** 17/22 46/14
**neither [2]** 15/3 44/19
**net [1]** 49/11
**network [1]** 16/14
**never [5]** 17/12 35/24 52/4 52/4 61/2
**nevertheless [2]** 6/9 33/20
**next [5]** 6/22 19/6 60/7 65/22 65/22
**nicely [3]** 15/24 68/15 68/20
**niche [1]** 5/20
**Niko [1]** 24/13
**nillie [1]** 15/13
**nine [2]** 62/2 62/4
**Ninth [12]** 6/19 35/21 35/25 36/10 36/11 37/23 42/6 43/17 43/20 45/11 51/7 54/8
**No. [13]** 14/24 14/25 16/1 16/2 26/23 27/2 27/13 27/15 27/16 27/17 27/17 62/1 62/1
**No. 1 [1]** 62/1
**No. 2 [7]** 14/24 16/1 27/2 27/13 27/15 27/16 27/17
**No. 251-1 [1]** 62/1
**No. 3 [4]** 14/25 16/2 26/23 27/17
**none [1]** 65/17
**nonparties [1]** 26/5
**nonparty [1]** 19/8
**nonpublished [2]** 36/11 36/15
**normally [1]** 55/3
**North [1]** 6/18
**not [121]**
**noted [1]** 12/3
**notes [3]** 22/14 50/18 52/25
**nothing [4]** 22/23 27/22 47/22 71/19
**notions [1]** 7/5

**November [1]** 18/9
**number [7]** 12/20 56/25 57/5 67/25 68/1 68/2 68/3
**numbers [5]** 11/19 22/4 24/8 49/11 69/20
**Nuttall [4]** 3/15 27/2 27/8 27/10

## O

**Oats [1]** 37/3
**objection [4]** 33/16 69/18 69/19 69/22
**objections [2]** 71/4 71/5
**obligated [1]** 63/14
**obligation [1]** 34/8
**observations [2]** 6/2 28/6
**obviate [1]** 58/20
**obviously [6]** 7/10 8/24 21/23 30/1 57/9 67/25
**occurred [1]** 8/14
**odd [1]** 39/8
**odd-ball [1]** 39/8
**off [15]** 31/21 31/25 35/16 36/17 37/7 37/24 43/24 45/19 50/20 52/18 55/5 60/6 62/8 66/5 67/6
**offense [1]** 11/13
**offered [2]** 29/15 29/16
**Oh [7]** 22/20 25/12 28/16 28/17 40/17 56/4 57/3
**okay [61]** 5/14 7/16 9/24 10/8 10/20 10/21 11/12 12/19 13/14 13/24 14/24 15/6 16/19 18/7 19/12 22/19 23/4 25/7 25/19 25/20 26/6 27/23 28/18 29/14 30/3 31/3 31/6 32/3 33/10 33/11 33/18 33/21 35/1 35/7 35/14 41/9 41/14 43/3 43/18 44/14 49/2 52/16 52/25 53/10 54/5 54/14 56/21 57/5 57/21 60/1 60/5 60/15 63/16 67/14 67/17 68/25 69/4 70/14 71/16 71/17 71/23
**one [57]** 6/17 7/2 12/1 14/1 14/23 15/21 16/23 17/1 17/19 17/20 20/19 23/10 23/18 24/7 24/10 24/17 26/9 27/10 27/18 28/12 29/23

**O**

one... **[36]** 31/1 31/5 32/14 33/19 34/10 34/17 34/17 35/15 35/20 37/25 40/21 40/22 42/1 42/3 42/19 43/5 43/6 43/12 46/9 46/10 46/11 47/24 50/1 50/5 50/6 53/3 53/16 53/18 59/18 61/18 62/6 64/24 65/11 68/25 69/2 69/7
**One-third [1]** 7/2
**ones [1]** 65/12
**only [11]** 9/14 28/21 44/20 45/15 47/8 48/13 50/9 53/3 61/15 65/19 69/15
**open [1]** 23/17
**operating [4]** 23/19 68/3 68/6 68/12
**operating-expense [1]** 68/6
**operational [13]** 60/9 60/11 60/19 60/24 61/1 61/2 61/11 61/20 61/23 65/3 67/20 68/19 69/11
**opine [1]** 10/25
**opinion [15]** 6/20 6/21 7/22 7/23 16/11 16/22 35/21 36/1 36/11 36/14 36/15 36/15 37/11 43/15 51/10
**opinions [2]** 35/22 35/24
**opportunity [2]** 33/22 71/15
**opposed [1]** 56/13
**opposing [1]** 49/19
**opposite [1]** 41/20
**oranges [3]** 40/19 49/23 49/25
**order [16]** 7/14 14/16 30/24 31/7 39/17 46/25 48/4 48/9 54/6 55/7 57/21 58/8 59/12 59/22 60/22 65/13
**ordered [1]** 28/20
**organization [1]** 25/10
**other [29]** 6/7 9/23 10/6 11/6 13/23 16/8 16/15 17/3 20/24 21/8 22/13 23/14 25/13 26/4 27/18 28/17 28/18 31/17 32/22 36/25 39/24 40/22 46/10 46/19 54/7 54/9 60/16 62/8 63/21
**others [3]** 6/8 21/2

26/12
**otherwise [1]** 13/1
**our [21]** 24/20 35/11 35/18 37/4 37/5 37/19 38/23 44/6 44/8 44/10 45/16 48/1 48/16 51/8 52/15 55/21 55/22 57/8 67/24 70/8 70/24
**ours [1]** 44/10
**out [16]** 7/4 8/22 10/18 11/15 12/12 23/13 24/13 24/14 24/20 24/21 50/19 59/6 60/4 62/18 63/12 69/11
**outcomes [1]** 8/15
**outreach [1]** 16/14
**outstrip [2]** 44/9 44/10
**over [9]** 5/25 5/25 19/11 39/25 49/10 50/7 55/14 56/23 68/1
**overall [1]** 59/4
**overruled [1]** 71/4
**overstate [1]** 61/11
**own [3]** 15/21 20/11 51/10
**owners [2]** 20/11 23/14
**owns [1]** 25/15

**P**

**p.m [1]** 72/1
**packaging [5]** 16/10 16/14 17/12 17/13 28/18
**page [8]** 42/16 43/3 45/9 52/23 63/16 63/17 67/3 73/6
**pages [2]** 1/21 53/11
**Panduit [1]** 45/8
**paper [2]** 60/24 70/8
**papers [6]** 30/16 31/23 36/6 36/18 50/12 71/22
**paragraph [2]** 62/2 62/4
**parenthetical [1]** 16/22
**parenthetically [3]** 14/12 14/18 16/21
**part [14]** 6/19 9/14 11/10 11/13 20/12 28/24 32/24 33/4 35/11 37/13 56/1 70/23 70/23 71/5
**particular [4]** 6/5 12/1 17/19 23/16
**particularly [2]** 8/23 34/12
**parties [9]** 35/21 46/5 46/15 46/15 46/15 49/1 52/21 54/24

57/18
**party [1]** 51/19
**past [1]** 45/3
**path [1]** 69/3
**patience [1]** 5/5
**patina [2]** 23/22 23/24
**pattern [2]** 54/9 54/13
**Patty [7]** 20/6 20/6 20/12 22/12 24/15 63/2 64/5
**pay [4]** 24/15 39/19 43/6 43/14
**payable [2]** 20/14 20/25
**paying [3]** 26/11 26/12 42/13
**payroll [4]** 22/4 23/19 24/10 24/17
**peanuts [1]** 39/20
**pedestrian [2]** 12/14 12/16
**peer [1]** 8/3
**people [3]** 28/19 32/20 64/21
**per [2]** 7/3 64/15
**perceived [1]** 23/7
**percent [21]** 7/3 7/3 7/15 10/15 10/18 12/1 12/6 37/14 38/23 40/17 40/18 40/19 41/1 41/15 42/13 48/8 48/14 48/19 50/15 50/23 51/23
**percentage [6]** 8/16 11/18 26/15 29/20 29/21 49/15
**percentages [21]** 5/15 6/12 6/15 6/16 7/12 7/15 8/12 9/5 9/7 10/4 10/5 10/13 10/14 11/1 11/7 11/15 11/16 11/24 12/25 13/3 13/19
**percenter [1]** 29/17
**perception [1]** 16/23
**perhaps [2]** 12/10 60/8
**period [6]** 8/2 28/25 31/10 44/20 50/24 52/5
**permit [3]** 16/16 24/2 24/3
**person [3]** 43/5 60/23 68/15
**personal [1]** 16/12
**persons [1]** 19/8
**perspective [1]** 35/11
**persuade [1]** 13/19 57/15 58/10
**persuaded [1]** 58/8
**persuading [1]** 58/2
**pervasive [1]** 52/1

**perversity [1]** 39/17
**Pfizer [2]** 43/23 44/24
**Phillips [5]** 14/5 14/9 14/10 14/24 15/1
**picture [6]** 31/18 32/1 32/3 32/7 32/9 32/10
**pie [2]** 9/11 9/15
**piece [3]** 23/18 50/22 65/11
**place [2]** 30/1 39/14
**places [1]** 26/19
**placing [1]** 35/19
**plaintiffs [2]** 18/3 51/16
**play [1]** 50/19
**Playboy [4]** 42/7 42/14 43/11 51/7
**playing [1]** 19/11
**pleading [1]** 70/2
**pleadings [1]** 70/16
**please [6]** 17/8 41/7 43/2 45/21 52/17 53/14
**plethora [2]** 36/6 36/6
**plucked [1]** 7/4
**point [15]** 11/25 21/25 35/1 35/25 36/12 44/3 52/1 52/2 55/13 55/16 59/18 61/19 62/13 66/20 69/15
**point where [1]** 55/13
**pointing [1]** 61/12
**Pomona [1]** 6/18
**position [3]** 51/17 65/7 68/24
**possibility [1]** 58/11
**possible [3]** 35/5 54/13 60/10
**possibly [1]** 52/10
**post [4]** 27/20 27/22 28/13 29/11
**post-injunction [4]** 27/20 27/22 28/13 29/11
**potential [1]** 8/6
**practical [2]** 42/15 43/4
**preceded [1]** 14/9
**preclude [1]** 15/18
**prejudiced [1]** 23/13
**preliminary [1]** 35/18
**prepared [1]** 66/23
**present [1]** 16/24
**presentation [1]** 55/15
**presented [1]** 14/5
**preserve [6]** 33/15 34/6 34/8 69/22 70/18 70/24
**preserved [3]** 70/13 70/20 70/25
**preserving [1]** 71/6

**PRESIDING [1]** 1/6
**presumed [1]** 50/16
**pretrial [9]** 54/16 54/16 54/17 54/20 54/20 54/21 54/22 55/3 55/7
**pretty [3]** 58/20 67/13 68/20
**pricing [1]** 16/14
**prior [6]** 40/14 43/19 43/19 43/19 44/24 44/25
**priority [3]** 14/6 14/7 15/5
**probably [2]** 12/3 32/14
**probative [2]** 18/22 45/17
**problem [1]** 14/22
**problematic [1]** 60/4
**procedural [1]** 30/22
**proceed [1]** 60/2
**proceeded [1]** 37/17
**proceedings [4]** 1/16 29/11 72/1 73/5
**produce [2]** 62/10 62/11
**producing [1]** 62/10
**product [8]** 9/12 9/13 15/4 28/25 29/1 56/12 56/13 56/21
**professed [2]** 21/8 21/9
**proffer [1]** 38/23
**profit [5]** 43/5 48/10 48/18 49/11 66/12
**profit-seeking [1]** 43/5
**profits [12]** 38/14 43/15 44/5 44/7 45/1 47/21 48/5 48/8 48/14 48/19 50/13 50/15
**programs [1]** 42/21
**Prolixity [1]** 54/1
**Promenade [1]** 2/12
**pronounced [1]** 49/25
**properly [2]** 20/22 25/2
**proposal [2]** 67/22 67/23
**proposing [1]** 19/9
**protect [1]** 60/17
**prove [6]** 40/16 44/4 44/22 56/1 57/8 58/14
**proved [1]** 58/22
**provide [2]** 64/7 64/9 64/17
**provided [11]** 21/2 38/11 53/3 62/6 62/24 63/3 64/4 64/9 64/14 66/13 66/14
**provides [1]** 47/18

**P**

**proxy [8]** 44/5 44/20 47/20 50/9 51/1 51/2 51/3 56/2
**public [2]** 41/20 45/7
**publication [1]** 8/4
**published [4]** 36/2 42/6 45/7 51/8
**purchase [3]** 17/22 46/3 46/14
**purpose [2]** 29/16 32/10
**purposes [3]** 12/4 15/3 21/22
**pursuant [1]** 73/3
**put [8]** 8/19 12/21 17/24 19/10 20/24 34/6 41/11 71/6
**putting [2]** 35/4 50/14
**puzzle [1]** 9/15

**Q**

**Q-u-a-n-t-a [1]** 6/23
**Q-u-i [1]** 50/1
**Q.S [1]** 46/9
**Quaker [1]** 37/3
**qualified [3]** 6/1 17/2 17/19
**qualitative [1]** 7/5
**Quanta [1]** 6/23
**quested [1]** 7/11
**question [19]** 5/23 6/4 8/12 10/3 10/11 10/22 12/25 13/17 18/1 21/15 26/21 41/16 42/14 43/5 52/21 53/17 63/25 65/23 68/16
**Qui [6]** 46/10 47/24 47/25 48/1 48/2 50/1
**quickly [1]** 49/4
**quietude [1]** 8/15
**quite [6]** 7/10 15/11 24/1 60/5 64/21 67/7
**quote [12]** 7/2 7/24 8/3 36/16 36/23 37/17 44/23 44/25 49/8 50/12 50/17 52/7
**quotes [1]** 16/20
**quoting [2]** 14/17 43/3

**R**

**Rabbit [1]** 16/5
**radio [1]** 42/20
**rain [1]** 62/14
**raise [1]** 10/2
**raised [1]** 12/22
**range [1]** 48/16
**rate [21]** 7/3 8/6 13/11 39/8 39/19 41/18 41/19 42/3 43/14

43/18 43/20 47/13 47/17 47/23 48/3 49/17 51/9 51/11 51/15 52/11 57/4
**rates [1]** 41/21 49/8 49/15 51/13
**rather [2]** 55/10 69/17
**rationally [1]** 16/23
**re [1]** 34/3
**re-argue [1]** 34/3
**reach [2]** 29/3 29/4
**read [5]** 15/1 64/18 64/19 65/1 65/21
**readily [1]** 50/2
**reading [8]** 16/20 42/16 43/10 50/12 63/15 63/16 63/17 65/18
**real [3]** 21/18 28/3 51/18
**reality [3]** 42/15 43/4 56/24
**realize [1]** 5/5
**really [12]** 14/23 23/19 23/21 41/9 43/21 51/5 52/20 56/24 57/3 60/15 60/18 64/21
**reason [7]** 13/4 20/17 21/10 32/20 43/18 50/17 56/2
**reasonable [15]** 36/24 37/21 38/13 45/2 46/2 46/12 46/13 46/20 46/22 46/25 47/17 47/23 48/3 48/22 48/24
**reasons [6]** 13/4 16/11 20/12 21/9 32/22 48/22
**rebut [1]** 48/12
**recall [3]** 27/7 54/18 64/4
**receipts [1]** 18/10 18/11 18/25
**receivable [2]** 20/14 21/1
**recess [3]** 67/11 67/12 67/16
**recollection [1]** 63/24
**reconsideration [2]** 14/16 14/25
**record [24]** 11/4 31/21 31/25 33/25 34/6 35/3 35/16 36/17 37/7 43/24 45/19 49/5 52/18 55/5 60/6 61/11 66/5 67/6 69/17 69/25 70/13 70/21 71/6 71/6
**records [6]** 22/2 22/3 22/8 22/13 22/23 50/18
**recover [1]** 37/10

**reduce [3]** 21/24 22/9 35/20
**reduction [6]** 21/24 34/13 34/19 34/20 35/19 36/13
**reductions [1]** 22/10
**refer [1]** 11/24
**reference [4]** 18/9 19/7 40/20 44/6
**references [2]** 14/3 26/24
**referencing [1]** 29/19
**referred [4]** 6/5 6/6 36/15 60/9
**referring [4]** 29/23 30/2 36/22 51/21
**reflect [1]** 22/8
**reflects [1]** 39/14
**regard [5]** 5/17 22/4 36/21 58/10 61/19 63/19 70/17
**regarding [5]** 12/4 14/3 26/21 54/19 64/5
**regards [5]** 5/24 5/24 6/15 6/15 71/5
**regular [1]** 44/13
**regulations [1]** 73/7
**reinvent [1]** 55/11
**relate [1]** 56/20
**related [3]** 24/11 25/9 25/20
**related-type [1]** 25/9
**relates [2]** 14/6 56/24
**relative [2]** 7/5 52/3
**relatively [1]** 59/13
**relevant [4]** 19/14 27/4 28/14 70/5
**reliability [1]** 7/13
**reliable [2]** 6/21 65/17
**relied [1]** 65/14
**relief [2]** 48/9 48/15
**relief-from-royalty [1]** 48/15
**relitigate [2]** 15/12 30/17
**relitigation [1]** 15/12
**rely [1]** 35/24
**relying [2]** 63/3 63/12
**remaining [1]** 27/1
**remains [3]** 27/4 69/14 69/16
**remanded [1]** 37/19
**remarkable [2]** 7/16 64/22
**remedy [2]** 51/16 57/24
**remember [3]** 21/17 32/6 59/25
**reopening [1]** 15/9
**repeatedly [5]** 7/12 33/25 42/5 45/16 63/6
**reply [2]** 59/20 61/25

**report [7]** 7/1 48/7 48/12 55/23 63/19 63/23 65/17
**reported [1]** 73/5
**reporter [1]** 67/8
**reporter's [1]** 1/16 69/18 70/6
**requested [4]** 63/1 63/5 63/10 63/13
**required [2]** 44/7 63/11
**requirement [1]** 54/22
**resolution [1]** 5/8
**resolutions [1]** 5/9
**resolve [2]** 24/4 67/25
**resolved [2]** 60/23 61/9
**respect [1]** 49/7
**respective [2]** 37/5 65/16
**respond [2]** 53/14 54/3
**response [10]** 23/4 29/7 29/10 29/15 29/15 29/21 59/20 63/9 64/2 67/9
**rest [1]** 64/19
**Rests [1]** 44/25
**result [1]** 50/16
**revenue [1]** 56/6
**reverse [4]** 37/17 40/21 44/12 50/4
**reverse-confusion [2]** 40/21 44/12
**review [5]** 8/3 35/18 36/7 52/23 64/3
**reviewed [1]** 65/14
**reviewing [1]** 37/11
**revisit [2]** 15/15 56/14
**ridiculous [1]** 30/11
**right [28]** 13/2 16/18 16/19 20/1 20/5 23/2 27/5 31/13 31/13 32/23 34/6 36/11 38/6 38/7 41/2 43/2 48/13 55/16 56/11 56/15 56/17 60/20 63/15 68/11 69/3 69/9 70/10 71/13
**rightly [1]** 22/2
**rights [1]** 16/6
**ripe [1]** 36/14
**rise [1]** 37/8
**robe [1]** 71/13
**roughly [1]** 50/25
**royal [2]** 41/21 51/13
**royalties [2]** 36/24 44/19
**royalty [45]** 7/2 34/11 34/19 34/22 35/20 37/21 38/2 38/3 38/4 38/13 39/6 39/7 39/19

41/18 41/19 42/2 42/12 43/14 43/18 44/24 45/2 46/2 46/12 46/13 46/20 46/22 46/25 47/13 47/17 47/23 48/3 48/9 48/15 48/22 49/2 49/17 51/9 51/11 51/15 51/23 52/11 55/20 57/4
**royalty/license [1]** 35/20
**RPR [1]** 1/23
**rule [5]** 12/8 17/4 59/25 63/11 63/14
**Rule 26 [2]** 63/11 63/14
**Rule 702 [1]** 17/4
**ruled [2]** 14/19 69/19
**rules [3]** 54/19 66/10 69/4
**ruling [16]** 7/11 10/4 10/11 11/9 11/15 13/3 15/15 17/14 19/5 25/8 27/12 31/5 57/16 57/16 59/25 60/1
**rulings [1]** 28/14

**S**

**S-e-e [1]** 37/2
**said [43]** 10/6 13/7 14/19 19/2 19/3 19/3 19/3 21/9 21/25 28/23 32/2 32/25 36/13 36/22 38/11 38/16 39/9 40/11 40/20 40/25 43/20 44/10 46/25 50/6 51/7 51/8 51/14 51/23 53/9 55/23 63/2 64/15 64/16 64/16 64/18 65/1 65/2 65/2 65/6 65/9 66/7 70/4 70/23
**sales [15]** 14/3 15/4 16/13 18/10 18/11 32/15 32/19 44/9 44/10 44/18 50/7 50/9 50/25 51/2 51/11
**same [15]** 8/7 8/13 11/19 31/2 31/5 37/22 40/10 40/12 40/22 47/12 47/14 51/3 55/25 56/20 67/5
**Sands [8]** 37/2 38/9 38/10 45/10 46/24 46/24 47/11 51/6
**sanity [1]** 10/17
**Santa [1]** 2/12
**satisfaction [1]** 58/23
**say [53]** 7/15 7/20 8/10 9/9 11/2 11/17 11/21 12/9 12/10

**S**

say... **[44]** 12/12 14/12 15/9 15/24 16/17 17/12 19/2 19/4 21/17 22/16 22/20 22/25 23/17 24/2 25/13 25/14 25/15 26/16 27/2 28/17 29/4 29/5 29/17 31/15 31/19 39/18 39/19 40/12 40/14 41/18 42/20 43/25 44/9 44/22 45/12 46/11 46/22 50/12 55/25 57/2 60/1 60/14 60/15 69/6
**saying [33]** 11/4 11/15 13/10 14/24 19/11 23/9 25/1 28/11 36/12 38/5 38/16 38/18 39/16 39/22 39/23 39/24 40/9 40/17 42/23 43/17 44/19 59/2 62/7 62/16 64/25 65/6 66/9 67/25 68/1 68/17 70/15 71/3 71/17
**says [21]** 9/23 13/9 13/11 14/20 14/20 15/1 17/23 37/6 37/13 37/24 39/3 39/4 39/5 39/7 42/9 47/12 47/22 48/13 48/24 50/3 71/8
**scientific [3]** 6/21 8/1 17/3
**scope [1]** 17/4
**scratching [1]** 37/5
**second [10]** 5/14 8/2 11/14 14/15 15/15 17/23 22/7 24/6 58/21 60/14
**section [2]** 67/2 73/3
**see [17]** 10/2 12/2 13/12 30/6 30/16 31/1 35/2 37/1 37/9 37/10 52/19 60/5 62/2 65/19 65/25 66/16 67/15
**seeking [3]** 41/19 43/5 51/16
**seem [1]** 45/4
**seemingly [2]** 36/19 39/23
**seems [3]** 5/12 37/8 37/12
**seen [2]** 61/12 64/22
**selected [1]** 5/14
**self [1]** 22/9
**self-reduce [1]** 22/9
**sell [2]** 30/10 32/2
**selling [2]** 29/1 33/4
**send [2]** 37/17 37/18
**Sends [1]** 39/4

**SENIOR [1]** 1/5
**sense [4]** 11/2 13/2 17/2 50/8
**sent [1]** 38/24
**sentence [1]** 23/20
**separate [1]** 21/23
**September [1]** 73/10
**service [1]** 50/5
**set [1]** 55/14
**setting [1]** 59/12
**settle [1]** 57/18
**Seven [1]** 39/9
**Seventh [4]** 36/16 39/22 51/6 51/7
**several [1]** 6/17
**sheds [1]** 43/22
**sheets [1]** 64/4
**shell [5]** 19/11 21/21 23/22 23/23 24/3
**shells [3]** 19/16 25/4 25/8
**shifting [1]** 58/11
**should [6]** 12/3 22/2 57/4 67/9 67/9 68/5
**show [4]** 19/12 32/11 41/17 58/19
**sic [1]** 18/20
**side [6]** 40/22 40/22 44/19 45/5 60/14 61/10
**sidebar [1]** 18/18
**sides [5]** 34/2 41/17 49/7 49/9 66/22
**significant [1]** 6/8
**similar [1]** 51/18
**Simple [1]** 10/8
**simplify [1]** 56/3 56/4 56/8
**simply [5]** 5/19 40/15 44/7 62/7 62/12
**since [3]** 10/17 48/7 53/12
**single [4]** 42/2 51/14 51/15 51/17
**sitting [3]** 8/14 41/8 41/8
**situation [2]** 48/6 51/4
**six [2]** 7/3 7/3
**Sixth [1]** 45/7
**skunk [1]** 30/19
**slightly [1]** 26/14
**Slow [2]** 41/7 41/13
**slower [5]** 28/22 28/22 42/17 42/17 42/17
**slowly [1]** 43/2
**small [1]** 65/11
**smaller [1]** 48/21
**snap [1]** 7/10
**so-called [1]** 6/14
**social [1]** 24/17
**Software [1]** 36/20

**sold [2]** 28/25 32/21
**solve [1]** 51/1
**some [38]** 5/8 5/9 6/8 10/6 11/8 13/5 13/6 15/10 15/11 19/10 20/24 21/8 23/17 25/17 29/20 35/4 35/10 35/25 36/9 40/2 40/5 44/15 45/17 51/19 54/22 55/13 59/8 59/11 59/15 61/12 62/13 65/16 66/3 66/4 66/7 66/7 67/21 70/25
**somebody [4]** 12/22 39/18 42/21 69/2
**somehow [1]** 24/18
**someone [1]** 41/19
**something [15]** 13/12 19/12 19/17 19/22 30/20 33/1 34/5 34/8 35/17 36/8 45/24 50/22 52/24 68/13 70/2
**Sometimes [1]** 54/10
**somewhat [1]** 71/3
**sorry [6]** 17/10 28/23 33/3 41/4 42/18 50/5
**sort [1]** 51/19
**sorts [1]** 49/7
**sought [1]** 62/17
**sound [2]** 42/19 47/2
**sounds [1]** 16/5
**source [2]** 5/20 54/11
**sources [1]** 54/10
**South [1]** 2/17
**space [1]** 6/22
**speak [6]** 5/7 33/23 35/10 36/9 40/1 42/21
**speaking [2]** 17/9 49/24
**speaks [1]** 42/21
**specialized [1]** 17/3
**specific [2]** 28/13 61/18
**specifically [5]** 40/20 42/14 44/23 50/3 65/12
**specifics [1]** 15/4
**spend [1]** 22/20
**Spin [1]** 40/23
**spread [1]** 64/3
**SQM [1]** 6/18
**Stahlin [1]** 45/8
**stand [4]** 9/8 17/8 19/1 67/4
**standard [8]** 42/9 50/15 56/9 56/11 56/11 56/17 58/20 58/25
**stands [1]** 54/5
**start [5]** 5/10 12/5

35/2 39/15 60/24
**started [1]** 37/4
**starting [2]** 35/3 67/2
**state [1]** 8/23
**stated [5]** 6/19 13/4 14/12 14/17 46/1
**statement [4]** 54/22 61/1 61/4 68/19
**statements [1]** 66/13
**STATES [4]** 1/1 1/23 73/4 73/8
**stating [1]** 7/1
**status [1]** 54/19
**statute [1]** 47/4
**STEAM [1]** 1/11
**stench [1]** 30/18
**stenographically [1]** 73/5
**still [8]** 8/19 8/20 8/22 10/1 32/20 33/4 35/12 51/13
**stipulate [2]** 56/14 68/13
**stipulated [2]** 56/6 56/7
**stipulation [1]** 23/18
**stop [4]** 28/20 29/1 34/4 62/13
**stopped [1]** 65/22
**street [8]** 1/24 2/12 3/4 3/8 3/12 3/16 12/11 19/10
**strength [3]** 6/7 9/20 58/5
**strike [1]** 64/2
**strong [3]** 16/14 57/13 58/6
**strongly [4]** 31/9 57/15 58/7 58/12
**Stubbs [1]** 2/11
**stubbsalderton.com [1]** 2/14
**stuff [8]** 7/13 12/7 25/14 28/17 28/18 62/7 62/14 70/4
**subject [3]** 8/15 28/10 60/9
**subjected [1]** 8/3
**submission [1]** 52/13
**submitted [2]** 35/10 54/5
**subscribers [1]** 50/5
**substance [1]** 7/13
**success [2]** 16/11 37/14
**such [4]** 15/4 16/13 33/6 35/19
**suggest [3]** 15/23 19/21 69/17
**suggested [1]** 54/10
**suggestion [1]** 37/20
**suggests [2]** 38/2

39/7
**suing [1]** 50/6
**Suite [7]** 2/7 2/12 2/17 3/4 3/8 3/12 3/16
**summarized [2]** 42/14 43/4
**summary [2]** 14/11 15/3
**Summer [1]** 60/3
**Sunset [1]** 2/7
**supplement [1]** 67/2
**supplemental [2]** 63/19 63/23
**support [6]** 9/10 48/5 48/10 48/18 52/14 61/25
**supports [1]** 51/17
**suppose [2]** 8/9 15/10
**supposed [1]** 8/11
**Supreme [2]** 12/24 13/8
**sure [6]** 10/23 11/20 26/16 28/1 66/23 67/22
**suspect [3]** 14/13 14/23 69/7

**T**

**T-e-l-l-e-z [1]** 18/9
**table [1]** 62/8
**tail [3]** 9/22 9/23 9/24
**tainted [1]** 30/21
**taken [7]** 15/20 25/22 27/3 63/17 68/24 68/25 69/1
**takes [3]** 19/1 33/12 65/6
**taking [3]** 9/3 61/6 69/17
**talk [11]** 10/14 19/10 21/4 28/7 55/21 66/23 67/19 67/21 67/23 68/1 69/5
**talked [1]** 65/4
**talking [15]** 7/24 12/5 12/6 24/23 24/25 31/6 32/3 37/9 37/21 42/24 52/9 68/5 68/6 68/8 68/11
**taste [1]** 32/10
**Taylor [6]** 37/2 38/9 38/10 46/24 46/24 47/11
**technical [1]** 17/3
**technique [1]** 7/25
**technology [1]** 7/6
**teeth [3]** 35/3 35/3 35/4
**tell [6]** 7/17 9/5 32/9 67/7 69/14 71/22
**Tellez [3]** 18/9 18/17 19/1

**T**

**Tellez'** [1] 18/9
**telling** [14] 7/21 8/20
9/16 9/17 9/25 9/25
13/7 19/2 34/3 51/5
61/5 68/19 69/10
70/10
**ten** [16] 7/15 10/15
10/18 29/17 37/14
38/23 40/17 40/18
40/19 41/1 41/15
41/22 42/12 43/6
50/18 67/15
**ten-percent** [1] 37/14
**tendency** [1] 43/1
**term** [1] 36/6
**terms** [4] 12/5 28/8
41/2 44/21
**tested** [3] 8/5 8/6
12/21
**testified** [2] 20/13
20/15
**testify** [7] 16/7 16/8
16/10 16/16 16/17
17/5 69/20
**testifying** [2] 16/21
17/17
**testimony** [11] 5/22
14/3 16/2 16/22 16/25
64/16 64/19 65/1
65/18 65/22 71/5
**testimony that** [1]
65/18
**Texas** [2] 37/22 39/23
**text** [1] 16/13
**thank** [9] 5/5 13/15
18/6 49/6 56/22 71/20
71/23 71/24 71/25
**that's** [65] 6/13 10/4
10/18 12/11 13/21
13/24 17/22 19/5
19/12 21/25 23/2
23/14 23/18 23/21
25/6 25/24 26/1 26/2
26/21 27/12 27/25
28/1 29/12 29/21 31/1
31/8 31/13 32/3 32/22
33/16 35/1 35/3 36/21
39/21 42/24 43/13
43/18 45/14 46/23
47/7 47/15 48/13
50/24 51/24 52/1
52/14 53/15 54/15
56/15 57/13 57/21
57/22 57/22 58/4 58/6
58/7 58/9 61/8 65/5
65/9 70/14 70/25 71/6
71/14 71/16
**thee** [1] 16/24
**their** [27] 9/6 13/22
13/23 17/11 21/24

24/13 24/15 27/8
27/15 28/19 28/23
32/24 36/14 43/15
44/9 48/5 49/11 50/5
50/12 51/10 51/13
51/17 52/4 52/5 53/12
56/5 56/6
**theirs** [1] 52/6
**them** [32] 7/19 8/9
15/3 18/20 21/13
21/15 25/5 25/8 29/10
31/1 34/21 37/17
41/21 41/24 41/25
42/1 44/20 46/9 46/11
52/7 53/13 54/12
54/14 54/14 56/8 57/5
62/20 62/24 65/16
65/17 66/1 66/10
**them in** [1] 42/1
**themselves** [1] 9/3
**theoretically** [2] 41/2
41/4
**theories** [2] 19/7
34/16
**theory** [23] 7/25 21/21
30/7 34/13 34/14
34/14 34/17 34/19
34/20 34/22 35/6
35/11 36/13 39/1 39/2
44/5 53/13 55/20 56/2
57/6 57/25 58/1 59/10
**thereafter** [1] 67/13
**therefore** [3] 5/21
36/23 38/3
**these** [40] 6/1 6/5 7/12
7/22 9/10 9/20 9/21
11/17 12/12 12/20
17/1 19/11 20/13
20/15 20/16 21/2
21/19 21/20 22/8 22/8
23/7 24/11 24/16
24/18 25/10 26/8
26/20 30/16 32/22
42/19 48/24 51/25
55/10 59/9 60/23
62/10 63/3 65/7 65/11
66/12
**thin** [1] 7/4
**thing** [24] 22/11 24/10
26/4 27/25 30/13 34/4
34/10 35/15 37/4
37/22 40/10 40/12
41/15 46/23 47/19
47/25 47/25 50/11
56/20 60/7 60/12
60/23 67/20 69/15
**things** [18] 14/20
14/22 16/8 21/20
22/14 23/6 26/8 28/1
31/16 34/3 49/4 49/5
54/7 56/3 61/13 61/15
61/16 70/22

**think** [57] 5/8 5/23
8/17 8/17 8/21 9/1
9/19 11/7 11/21 11/22
11/25 12/3 12/11
13/10 13/13 13/14
17/20 17/20 18/19
19/15 19/15 23/2 23/6
23/11 23/14 29/8
29/11 30/11 35/9
35/15 38/18 39/6 39/8
40/2 40/4 41/22 43/22
45/13 45/13 48/16
51/5 51/23 52/22
52/25 53/2 53/15
53/23 53/24 55/6 65/6
65/11 66/20 69/13
69/23 70/5 71/10
71/16
**thinking** [7] 7/20 7/21
13/22 42/20 60/8
60/16 67/8
**thinks** [2] 47/2 51/11
**third** [6] 7/2 8/5 46/10
46/15 49/1 51/19
**this** [118]
**thoroughly** [1] 34/11
**those** [27] 14/18 15/2
20/21 24/7 29/8 31/16
44/11 48/22 49/8
49/15 50/9 50/17
51/20 52/10 56/7
56/10 58/2 58/12 62/9
62/23 64/8 65/15
65/24 66/3 66/9 69/11
69/20
**though** [3] 57/24 63/5
65/15
**thought** [10] 8/13
15/7 19/2 32/20 35/25
37/16 53/3 57/15
57/16 58/9
**thousand** [1] 48/17
**three** [7] 14/8 14/22
20/20 20/21 22/8
26/11 47/9
**threshold** [1] 37/23
**through** [14] 5/11
8/16 33/8 33/25 34/1
45/9 45/13 48/9 48/15
56/10 59/21 60/11
62/9 69/14
**throughout** [1] 56/2
**THURSDAY** [1] 5/1
**ticked** [1] 61/12
**tie** [2] 16/16 47/22
**tied** [1] 27/7
**time** [33] 5/25 13/13
14/10 14/16 14/21
14/22 22/3 22/14
22/23 22/24 28/25
29/18 29/23 33/24
35/25 36/5 36/9 52/21

53/22 55/12 55/14
55/14 61/6 62/13
62/15 69/17 69/18
70/6 70/7 70/8 71/10
71/13 71/22
**timely** [1] 14/25
**times** [3] 14/9 47/9
60/22
**timing** [1] 14/13
**tired** [1] 41/9
**Title** [1] 73/4
**Title 18** [1] 73/4
**today** [4] 5/18 35/10
66/23 71/4
**together** [1] 35/4
37/25 67/24
**told** [6] 7/21 27/10
29/1 41/17 61/10 63/2
**too** [8] 19/23 38/22
38/24 40/18 41/7
45/13 56/10 70/15
**took** [1] 24/13
**topic** [1] 69/8
**total** [1] 55/24
**totally** [1] 29/22
**toto** [2] 68/4 68/11
**trade** [1] 9/22
**trademark** [13] 9/14
14/6 14/7 14/14 15/5
36/25 39/18 43/9 44/1
44/8 46/22 47/1 50/20
**tradename** [2] 9/14
11/23
**transaction** [3] 63/21
63/22 65/19
**transcript** [3] 1/16
73/5 73/6
**translate** [1] 52/7
**trial** [18] 13/6 13/6
18/18 25/25 43/7
54/15 54/16 54/16
54/18 55/9 55/9 55/17
57/9 58/18 58/19 59/4
59/13 60/2
**tried** [2] 8/23 49/11
**trotted** [1] 23/13
**Trovan** [4] 43/22
44/23 45/9 46/11
**trundle** [1] 7/19
**truthfulness** [1] 18/23
**try** [12] 13/19 16/9
44/4 49/9 49/14 52/6
52/24 53/25 56/10
59/13 61/15 71/21
**trying** [14] 19/13 27/6
32/2 37/9 38/23 42/13
43/13 44/21 51/6 52/9
57/10 59/6 62/18
66/22
**TUESDAY** [1] 1/18
**turf** [1] 5/7
**turn** [2] 59/13 59/14

**twice** [1] 14/9
**two** [10] 5/12 7/3
15/14 50/7 50/9 53/16
53/19 53/21 59/14
67/19
**type** [7] 8/13 15/5
19/10 22/11 25/9 25/9
28/10
**typical** [1] 44/12

**U**

**uncited** [1] 36/21
**unclear** [1] 65/11
**under** [16] 7/1 18/12
18/13 18/15 18/19
19/13 30/7 31/15 44/5
45/11 52/10 52/12
55/25 63/11 63/14
66/10
**underlying** [2] 64/13
69/6
**underscore** [1] 8/18
**understand** [27] 5/19
10/10 11/3 11/8 16/25
21/6 23/25 24/22
25/12 25/16 27/19
29/6 31/11 36/4 39/21
39/22 39/22 39/23
41/10 59/5 59/17
60/15 68/21 68/24
70/12 71/2 71/9
**understatement** [1]
66/18
**understood** [2] 59/23
64/25
**undocumented** [1]
6/20
**unearth** [1] 21/8
**unfair** [1] 41/1
**Unfortunately** [1] 28/4
**uniquely** [1] 17/19
**UNITED** [4] 1/1 1/23
73/4 73/8
**units** [2] 40/24 40/24
**unjust** [6] 40/20 55/21
55/24 56/1 57/7 58/13
**unleashed** [1] 30/20
**unless** [2] 25/17 38/4
**unprofitable** [3] 42/10
43/9 51/9
**unpublished** [11]
35/21 35/22 35/24
36/21 40/8 40/9 43/17
43/21 45/6 45/17
48/24
**unquote** [1] 49/8
**unreal** [1] 28/4
**unsubstantiated** [1]
6/20
**until** [2] 53/9 59/12
**untimely** [2] 14/12
14/19

**U**

untruthfulness [1] 18/23
unwilling [1] 43/6
unwind [2] 30/13 30/18
upon [5] 9/3 49/19 49/19 54/12 65/14
us [11] 27/11 29/10 35/21 41/17 45/13 60/2 62/6 62/11 63/4 64/14 69/18
use [39] 8/8 10/4 10/5 11/18 17/12 18/24 18/25 19/10 30/18 30/25 31/7 31/8 31/17 32/10 34/22 35/7 36/6 39/7 39/7 39/9 39/11 42/12 45/14 47/16 49/16 50/8 51/6 51/14 51/22 52/10 54/13 56/11 59/9 66/10 69/11
used [15] 11/19 11/21 15/4 18/15 18/19 30/23 30/24 31/6 37/12 47/12 47/14 48/3 51/4 56/9 56/18
using [8] 8/24 28/21 34/24 35/2 35/6 44/20 47/21 50/21
usually [1] 54/17
utilize [1] 34/13

**V**

V-a-p-e-s [1] 14/4
V-a-p-i-n-g [1] 16/4
V-i-l-l-e-g-a-s [1] 16/3
vague [1] 7/5
valuable [1] 52/5
valuation [2] 44/2 48/16
value [21] 7/16 10/8 17/21 17/24 17/24 30/1 30/4 30/7 31/9 39/14 44/1 44/8 45/18 47/1 48/4 48/9 48/15 48/20 49/21 52/6 55/23
valued [4] 48/20 52/3 52/4 52/5
Vanguard [1] 16/19
Vape [1] 24/13
Vapes [8] 14/4 14/7 14/23 15/22 33/23 46/7 46/17 49/13
Vaping [1] 16/4
various [6] 9/21 10/7 21/9 54/10 62/17 65/3
varying [2] 6/7 20/16

vastly [2] 44/9 44/10
VENTURES [1] 1/7
Verbally [1] 70/9
verbatim [1] 16/20
versed [1] 17/19
versus [7] 36/20 42/7 43/12 43/23 44/23 45/8 46/9
very [14] 8/21 9/9 11/8 11/21 11/25 14/13 14/13 31/9 37/5 41/12 44/6 49/3 50/14 69/3
very-well [1] 50/14
viable [1] 57/11
Viacom [1] 36/20
view [9] 6/16 6/17 12/10 15/7 15/8 17/18 23/22 57/12 71/7
Villegas [4] 13/21 16/2 17/25 28/17
violate [3] 30/15 39/18 43/6
violated [1] 29/12 29/16 30/9
violating [2] 30/4 30/8
vis [6] 6/2 6/2 6/2 6/2 12/1 12/1
vis-a-vis [3] 6/2 6/2 12/1
visited [1] 36/5
Vista [1] 45/7
VOLUME [1] 1/20
Voudouris [5] 20/11 20/16 20/19 21/1 24/13

**W**

w-a-f-t [1] 15/24
wafting [2] 15/24 15/25
wagging [1] 9/22
wait [5] 17/23 22/7 59/12 60/5 60/14
waiting [1] 67/18
want [66] 9/12 11/3 11/3 11/4 11/9 12/2 13/5 13/6 13/7 17/12 17/24 19/9 19/12 19/22 21/4 21/22 23/23 23/24 24/8 24/9 26/16 28/19 29/5 32/10 34/15 34/17 35/4 35/7 35/15 35/17 35/18 38/4 42/6 42/11 43/14 45/14 51/1 53/16 53/18 54/6 54/11 54/12 54/12 54/13 55/12 55/14 55/15 57/2 57/22 57/25 60/1 60/2 60/21 60/23 60/24 60/25 61/3 68/16 68/18

68/18 69/9 70/6 70/16 70/24 71/2 71/15
wanted [10] 10/2 26/19 27/10 32/18 34/5 53/4 57/13 57/19 58/6 58/9
wanting [1] 34/3
wants [6] 16/7 16/7 16/9 23/22 38/6 46/21
warn [1] 51/25
was [70] 5/15 5/16 5/17 10/18 12/3 12/22 12/23 14/4 14/5 14/10 14/12 14/15 16/3 20/19 20/21 21/17 22/24 25/1 26/4 26/9 26/19 27/10 27/15 28/17 28/24 29/24 31/7 31/20 32/14 32/20 33/5 36/1 37/10 37/16 37/16 38/19 38/19 38/22 38/23 38/23 39/3 39/16 40/18 40/18 40/21 40/22 40/22 44/1 44/2 44/3 44/4 50/17 50/20 50/23 51/21 51/21 51/22 52/1 52/2 52/6 55/6 56/2 58/4 62/6 62/24 63/3 63/5 63/17 65/9 65/18
was just [1] 10/18
way [18] 9/12 12/21 12/23 14/20 22/21 23/6 23/11 24/3 25/1 29/23 42/13 42/15 42/22 43/1 48/18 50/13 56/15 69/2
WDK [1] 1/9
we [113]
we'll [14] 13/21 56/13 57/1 59/13 59/14 59/15 59/25 60/2 60/5 62/9 67/11 67/14 68/22 71/20
we're [29] 8/14 8/24 13/17 17/20 21/20 21/20 21/21 26/16 30/17 33/19 34/25 37/21 37/24 50/2 50/6 53/25 55/12 55/21 56/10 57/6 59/24 62/7 66/17 66/22 67/7 67/10 67/10 67/11 67/13
we've [10] 5/11 25/22 32/23 33/8 56/19 56/24 57/9 61/2 68/22 69/14
wear [1] 71/13
website [1] 24/15
week [9] 53/21 53/23

53/24 54/3 59/14 59/19 59/19 61/3 68/18
weeks [1] 59/14
Wegner [12] 3/3 3/3 3/7 3/11 3/15 4/6 4/7 4/8 4/9 13/18 38/5 38/6
Wegner's [2] 13/16 23/4
weight [1] 6/10
welcome [1] 13/5
well [48] 5/23 6/4 6/16 7/20 7/21 8/10 9/18 9/19 10/18 12/6 12/11 12/13 12/18 12/25 13/22 16/24 17/1 18/1 18/4 19/25 21/10 22/19 22/25 23/5 23/13 23/14 23/23 36/8 38/1 38/15 39/11 39/19 40/18 40/25 45/24 50/14 55/18 56/15 59/7 63/24 65/10 68/8 68/21 68/24 68/25 69/1 69/25 71/12
went [8] 6/13 11/5 11/5 17/22 49/13 59/21 65/1 65/2 66/5
weren't [4] 12/13 18/4 19/18 66/23
West [1] 2/7
WESTERN [1] 1/3
WESTON [1] 4/11
what [120]
what's [9] 7/17 9/21 17/24 21/13 22/19 29/7 51/3 61/21 66/8
wheel [1] 55/12
when we [1] 41/1
where [32] 8/7 14/11 24/11 24/18 26/19 31/18 38/10 40/21 42/8 42/21 48/6 48/25 50/4 50/24 51/2 51/7 51/14 51/15 51/16 51/18 51/21 51/21 55/13 55/16 56/12 61/2 62/13 65/22 68/7 68/17 68/19 67/13
whereas [6] 6/6 40/23 42/1 44/12 44/16 50/19
wherein [1] 6/19
whether [14] 7/25 8/3 8/5 8/6 28/9 29/12 29/15 34/12 34/12 34/14 35/23 36/12 36/24 59/9
which [39] 5/17 6/4 9/7 10/25 14/20 16/5

22/14 27/2 27/7 32/7 32/14 34/18 34/21 37/19 38/23 39/20 40/11 40/15 41/16 43/14 44/21 47/22 49/4 49/10 51/10 51/20 52/1 56/11 56/13 57/6 62/5 62/21 63/13 63/17 63/20 64/13 66/13 66/25 71/4
while [2] 24/23 24/25
who [8] 16/3 17/18 24/15 25/15 27/10 32/20 45/3 46/21
who's [2] 17/8 24/7
whoever [1] 13/18
whole [3] 20/12 30/13 35/19
wholeheartedly [1] 54/2
Wholesale [1] 46/9
whom [2] 20/8 51/19
why [19] 8/21 16/17 21/12 21/12 21/15 21/16 25/17 26/18 29/2 35/10 38/8 45/10 50/17 52/1 57/13 58/6 58/9 59/6 70/2
willful [3] 43/9 55/22 56/1
willfully [2] 58/3 58/15
willfulness [4] 57/8 57/11 58/19 58/25
WILLIAM [2] 1/5 3/7
willie [1] 15/13
willie-nillie [1] 15/13
willing [1] 45/2
willingness [2] 40/15 45/5
win [2] 49/10 49/14
winded [1] 12/23
Winterland [2] 56/11 56/17
withdrawn [1] 27/14
within [4] 17/4 26/11 68/18 69/4
without [9] 5/19 28/11 29/19 30/8 44/24 54/6 59/22 61/9 69/20
witness [4] 5/14 16/20 18/23 27/8
witness's [2] 16/23 16/25
witnesses [3] 4/3 13/20 57/10
woman [1] 17/18
won't [3] 11/20 15/11 24/3
Wood [1] 37/3
word [4] 8/18 12/15 30/23 53/5

**W**

**words [6]**  6/8 13/23 20/24 22/13 25/13 63/21
**work [17]**  11/5 20/13 20/15 20/16 20/17 20/19 20/20 20/25 21/3 21/5 22/24 39/1 39/2 39/4 56/10 60/3 69/4
**work as [1]**  39/1
**worked [1]**  48/1
**works [2]**  39/4 45/8
**world [3]**  29/23 42/22 46/9
**worst [1]**  39/17
**worth [1]**  52/8
**would [32]**  7/10 8/10 15/11 15/18 15/19 15/19 17/20 17/20 20/23 22/9 23/17 25/9 26/7 29/23 33/24 41/1 41/3 42/12 43/5 45/12 51/4 52/12 52/22 53/1 53/2 55/18 55/24 58/20 63/11 69/7 69/7 70/18
**would have [1]**  25/9
**wouldn't [8]**  7/8 30/2 31/10 32/8 32/9 41/8 50/8 51/24
**wow [1]**  64/22
**wraps [1]**  30/21
**writing [2]**  36/14 70/10
**wrong [6]**  12/15 12/18 13/11 56/9 57/24 69/3
**wrong-doers [1]**  57/24

**Y**

**yeah [4]**  21/19 23/2 26/3 41/25
**year [4]**  22/21 32/15 44/3 50/6
**years [1]**  5/25
**yesterday [16]**  5/11 5/17 5/18 6/14 7/8 11/25 37/4 39/17 41/16 42/11 44/10 52/2 52/4 70/5 70/23 71/4
**yet [6]**  15/21 33/17 56/18 60/17 62/21 67/23
**you'd [3]**  13/10 41/9 51/14
**you'll [1]**  61/5
**you've [7]**  9/21 13/2 14/21 61/13 70/1 70/13 71/16

**yourself [3]**  9/20 24/1 42/25
**yourselves [1]**  60/17
**Yuanjun [1]**  3/11