1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                     ---

4      HONORABLE WILLIAM D. KELLER, JUDGE PRESIDING

5                     ---

6

7

8    AOP VENTURES,                      )
                                        )
9                                       )
                                        )
10                   Plaintiffs,        )
                                        )No. 15-1586WDK
11          VS                          )
                                        )
12   STEAM DISTRIBUTION, LLC,           )
                                        )
13                                      )
                     Defendant.         )
14   _____)

15

16          Reporter's Transcript of Proceedings
                    **MOTION HEARING**
17      MORNING AND FIRST AFTERNOON SESSIONS
                 Los Angeles, California
18          **THURSDAY, JANUARY 11, 2018**
                     **1:00 P.M.**
19

20

21

22
            ANNE KIELWASSER, CRR, RPR, CSR
23          Federal Official Court Reporter
            350 WEST 1ST Street, Room 4455
24          Los Angeles, California 90012
             Telephone: (213) 894-2969
25           anne.kielwasser@gmail.com
                 AKtranscripts.com

```
1                        A P P E A R A N C E S

2

3    ON BEHALF OF THE PLAINTIFF:

4    Michael L Cohen
     Michael Cohen APLC
5    1910 West Sunset Boulevard Suite 440
     Los Angeles, CA 90026
6    213-413-6400
     Fax:  213-403-6405
7    E-mail:  Cohen@mlcplclaw.com

8    Konrad Karl Gatien
     Keats Gatien LLP
9    120 South El Camino Drive Suite 207
     Beverly Hills, CA 90212
10   424-302-0717
     E-mail:  Kg@keatsgatien.com

11

12

13   ON BEHALF OF THE DEFENDANT:

14
     William J Brown, Jr.
15   Matthew K Wegner
     Brown Wegner LLP
16   2603 Main Street Suite 1050
     Irvine, CA 92614
17   949-705-0080
     E-mail:  Bill@brownwegner.com
18   E-mail:  Mwegner@brownwegner.com
     E-mail:  Lli@brownwegner.com
19

20

21

22

23

24

25
```

```
 1    Thursday, January 11, 2018                    1:00 p.m.

 2                          ~ ~ ~

 3                     P R O C E E D I N G S

 4                          ~ ~ ~

 5         THE COURT:  Good afternoon.

 6              The attorneys -- I certainly recognize you.

 7    Good afternoon.

 8              State your appearances, please.

 9         MR. COHEN:  Good afternoon, Your Honor.  Michael

10    Cohen for the plaintiff --

11         THE COURT:  I can't hear you.

12         MR. COHEN:  Good afternoon.  Michael Cohen for the

13    plaintiff, AOP Ventures.

14         MR. GATIEN:  And Konrad Gatien for the plaintiff,

15    AOP Ventures.

16         MR. WEGNER:  Good afternoon, Your Honor.  Matt

17    Wegner for defendants.

18         MR. BROWN:  William Brown on behalf of defendants.

19         THE COURT:  Okay.  Good afternoon to each of you.

20              Bear with me.  I have a little allergy, and

21    it's been a little distressing.  So I'll try to work with

22    you.

23              Where did -- where did Darren go?  She jumped

24    ship:

25         LAW CLERK:  Right here at my computer, Judge.
```

4

1          **THE COURT:**  Why don't you come up here, because

2     you might have to pull up some of this, please.

3          **LAW CLERK:**  Okay.

4          **THE COURT:**  Let me make a point here.  This is

5     not -- and I don't think you'd be here if it were -- an easy

6     construction of how do you fit, in an exceptional

7     circumstance forum, this attorney-client privilege into

8     place?  And in that regard, there are several cases you've

9     looked to and we've looked to regarding the issue.

10          And before I do get to that, though, I think

11     the easy part is what was the advice that was received at the

12     various stages --

13          Well, let me put it this way -- let me go

14     back again.

15          Before there was use by the defendant, there

16     was advice sought; or when they were put on notice, there was

17     advice sought.  That kind of thing obviously is discoverable,

18     okay?  And that's the easier part of the analysis, to say the

19     least.

20          The mushy, slash, touchy-feely, slash,

21     indefinite, what's the extent of the waiver at other stages,

22     that -- that's where your dispute is.  And principally, I

23     think if we keep in mind a couple of quotes from cases or

24     analysis by the ever-present Weinstein, we can come up with

25     some kind of closure for you.

1          Weinstein -- this is Weinstein right here?

2          **LAW CLERK:**  Yes.

3          (Discussion off the record.)

4          **THE COURT:**  Okay.  Here we are.  This is

5     Weinstein's Federal Evidence § 502.02.A, and Weinstein says

6     in part --

7          (Discussion off the record.)

8          **THE COURT:**  The Weinstein, in a footnote No. 4 --

9     Weinstein, in footnote No. 4 seeks to announce -- analyze the

10    fairness determination.

11              Now, the fairness determination is a product

12    of the case law that's repeatedly identified in this context,

13    what's fair --

14              Where's that statement?

15          (Discussion off the record.)

16          **THE COURT:**  I'm sorry, gentlemen.  We're pausing

17    and giving a citation.

18              But Weinstein, in footnote 4, refers to

19    American Hardware Manufacturers Association vs. Reed,

20    Elsevier, Inc. -- E-L-S-E-V-I-E-R, Inc. -- and that's a

21    district court case out of Illinois.  And I think it's pretty

22    well generally agreed, and he -- this case says -- I'm sorry,

23    I can't --

24          (Discussion off the record.)

25          **THE COURT:**  Okay.  I'm told by the clerk that the

1    cite that we can give you is 2011 US Dist. LEXIS 4419, 9.

2                    This case says, "A knowing disclosure of

3    privileged information requires disclosure of other

4    privileged information," quote, "only" -- and I stress that

5    word "only" -- "only if the disclosed and withheld materials

6    concern the same subject matter and ought, in fairness, to be

7    considered together," end quote.

8                    Now, it's this fairness issue that is so --

9    kind of murky.  However, the Supreme Court and the Ninth

10   Circuit quoted the Supreme Court and have spoken to this

11   issue.

12                   (Discussion off the record.)

13        **THE COURT:**  Well, as I understand it, you -- you

14   agree, the parties, on the law relating to the scope of the

15   waiver of attorney-client privilege.  And reading from the

16   notice of motion made by the defendants at page --

17                   Where's the page?

18                   (Discussion off the record.)

19        **THE COURT:**  Page 6 of 11, line 20, a quote from a

20   case -- I think it's out of Sacramento.

21                   Is this the case out of Sacramento?

22                   (Discussion off the record.)

23        **THE COURT:**  Yeah, Sacramento, Eastern District,

24   California.  It says, "The party asserting the defense waives

25   attorney-client privilege and work-product immunity to the

1    broadest extent consonant with direct relevance to the advice

2    of counsel itself."

3              Continuing:  "By asserting the *advice of*

4    *counsel* defense to a charge of willful infringement, the

5    accused infringer and his or her attorney do not give their

6    opponent unfettered discretion to rummage through all of

7    their files and pillage all their litigation strategies."

8              And then it continues, "The widely applied

9    standard for determining the scope of waiver is that the

10   waiver applies to all other communications relating to the

11   same subject matter."  Excerpting and continuing, "A waiver

12   does not extend that matters that are strenuous to the advice

13   of counsel."

14             So, that law informs the determination here.

15   And if you segment this case chronologically, call it "the

16   inception," there are various facets in the inception.  There

17   is the facet of the initial advice given by Nuttall, or

18   whoever else was advising them, regarding the propriety of

19   using the name.  That's obviously discoverable, and you

20   agreed.

21             Now, you -- you segue, though, once you get

22   past inception, you get into the various hearings that were

23   held and what we've done in preparation and what input did

24   defense attorney gave to the defendant, et cetera.

25             I think the bottom line is, in fairness, and

```
 1    what can be discovered.  And that is the Supreme Court case.
 2                   Ninth Circuit case, right?
 3                   (Discussion off the record.)
 4            THE COURT:  We're --
 5                   If you --
 6                   I would like to compartmentalize where your
 7    disagreement is and give you a ruling.  I can tell you this,
 8    Mr. Cohen, that most assuredly, your -- your -- you're
 9    entitled to discovery in an exceptional case, and that
10    discovery is the discovery I was alluding to a moment ago,
11    and as identified by the Supreme Court and referred to by the
12    Ninth Circuit in Sun Earth Inc., v. Sun Earth Solar Power
13    Company.
14                   And at page --
15                   (Discussion off the record.)
16            THE COURT:  11 --
17                   (Discussion off the record.)
18            THE COURT:  At page 1181 -- no, 1180, the Supreme
19    Court said -- 1180 of 839 F.3rd 1179.  At 1180, the Ninth
20    Circuit sought to analyze what's meant by totality of the
21    circumstances.  And -- and in that regard, they quote the
22    Supreme Court, explaining that an exceptional case.  And
23    that's the juncture at which we are now.
24                   It's simply one that stands out from others
25    with respect to the substantive strength of the parties'
```

1    litigating position considering both the governing law and

2    the facts of the case.

3              Specifically, the Court cited a nonexclusive

4    list of factors, including "frivolousness; motivation;

5    objective unreasonableness, both in factual and legal

6    components of the case; and the need to, in particular

7    circumstances, to advance considerations of compensation and

8    deterrence," end quote.

9              So where we are is at the various points

10   after the inception of the case and the acquisition of the

11   property from Good Vapes, we get into the various hearings.

12   And you get into the advice that was given by counsel, both

13   before and after the hearings.

14             I'm inclined to think that those -- those

15   communications are -- umm -- not directly enough related to

16   be discoverable.

17             The difficulty is that -- and I think you

18   address it, Mr. Cohen, in your papers.  I think you ask for a

19   -- what do you call --

20             (Discussion off the record.)

21        **THE COURT:**  Privilege log.  Without a privilege

22   log, I don't know what the heck he's withholding.  And you --

23   and -- and your point has got to be:  "Well, trust me" is not

24   good enough.  So, I've got -- you've got a myriad of

25   different issues that can come up here.

 1                    And then the question becomes, he -- he files

 2     his log.  I guess their log is reviewed in chambers.  I don't

 3     know how you -- I don't know the procedure; I suppose I'm

 4     right on that.  And -- and then the Court makes a ruling.

 5                    But if you -- if you just say to me:  This

 6     is -- I said "mushy."  I'm not critical.  This is not a

 7     concise type of thing.  I can't say A plus B equals C.

 8     That's not -- that's not the case either.  But make it 1 plus

 9     2 equals 3.

10                    Okay.  This isn't that kind of case, when

11     you're trying to say what are -- these are exceptional

12     circumstances.  What are exceptional circumstances?  Supreme

13     Court says, Well, here's a list.  But, you know, it's kind of

14     a touchy-feely thing.  What are you doing?  And who's giving

15     you this advice?  And what was the advice she gave you that

16     caused you to believe you could take --

17                    It's one thing to say, I could do it to start

18     with -- and I don't even know if you can -- but it's another

19     thing to say, I can do it later on.  And -- after these

20     hearings, and after...

21                    And you run into -- you run into -- you run

22     into this issue of a -- of work product.  And there --

23     there -- there are limitations.  The subject matter -- I read

24     the quote to begin with -- the quotes say that -- that -- you

25     know, the -- it's got to be -- there has to be some focus.

1    You just don't get everything you want.

2                     Now, how can you -- how can you -- excuse

3    me -- how can you identify the focus?  How can you identify

4    what -- what's permitted?

5                     Well, I can't really.  It's very hard.  I

6    don't have anything to do it with.

7              **MR. COHEN:**  Your Honor, may I address that?

8              **THE COURT:**  Yes.

9              **MR. COHEN:**  As an initial matter, the defendants

10   have the burden because they're the ones resisting discovery.

11   So as the starting matter for the burden of proof, the burden

12   is theirs.  First step.

13                     Second, you're correct, what you just said a

14   moment ago.  We don't know either a specific document that

15   they're withholding that we can identify and say, We want

16   that document or that group of documents.  Nor have the

17   defendants said:  Here are the categories, the specific

18   categories that we're withholding so we could file at least a

19   categorical level.

20                     As far as we're concerned, that's sufficient

21   for the Court to deny the defendant's motion, because they

22   haven't even attempted to meet their burden of proof, and

23   they have not provided the Court or us with the means to have

24   a proper challenge for what they're withholding.

25                     I agree in principle -- we agree with the

1     Court with the principles you articulated.  We don't get

2     everything.  We agree.  There may be things that they're

3     fairly withholding.  But we don't know what those are.

4                    But the way the defendants have approached

5     this is, said:  There are four topics that we agreed we

6     waived on, and we're going to produce those.  And we're not

7     going to produce anything else, and you're not entitled to

8     anything else.

9                    What that does is unfairly shifts the burden

10    of proof to us --

11          THE COURT:  I agree.

12          MR. COHEN:  -- without giving us the means to

13    begin to challenge it.  We have no privilege log for any of

14    these attorneys.  I think we may -- one was delivered today

15    or last night or something.

16          MR. GATIEN:  I believe late last night we

17    exchanged a privilege log as to Mr. Nuttall's documents, and

18    there have been privilege logs produced for Attorney Gail and

19    attorney Shields (phonetically spelled).

20          MR. COHEN:  But they were after we had to respond

21    to their motion.  So we don't -- we didn't have the means to

22    provide the Court with a more focused argument because we

23    didn't have the information.

24                    And in this particular --

25          THE COURT:  But, again, you don't know -- you know

1   this -- you know the nature of the alleged area of privilege

2   that's being claimed, but you don't know the specifics.

3           **MR. COHEN:**  Correct.

4           **THE COURT:**  And that's where the log has to

5   identify it.  And what authority do you have for this log

6   approach?  I mean, I have seen it, but -- infrequently.

7           And it does make some sense, quite obviously,

8   because you can't -- you can't leave one party with "trust

9   me" response, especially when the party is saying, "I don't

10  trust you."

11          **MR. COHEN:**  Right.

12          **THE COURT:**  So, what -- what -- tell me -- give me

13  some of this *privilege* law, because it may be that where

14  you're going to have to come out here is -- for me to make a

15  plenary ruling and say:  Well, anything that was said

16  after -- prior to the hearing before me is discoverable.

17          Well, it may well not be discoverable.  I

18  mean, there are different areas that he's talking about.

19  They're talking about strategy of -- let's say a defense

20  strategy.  Well, you're not entitled to defense strategy.

21  And that is part of the attorney-client that he's claiming.

22          But I don't know what it is.

23          **MR. COHEN:**  Your Honor said something important,

24  and I want to come back to it.  You said you can't make a

25  plenary ruling.  And I think in this instance you can, just

 1    as a practical matter, because, again, the burden was theirs.

 2    They don't even try --

 3              THE COURT:  Speak in the microphone.  Speak into

 4    the microphone.

 5              MR. COHEN:  Sure.

 6              THE COURT:  I've got one bad ear, and the other

 7    one is just fair, okay?

 8              MR. COHEN:  Okay.  I'm now addressing the fair

 9    ear.

10              THE COURT:  There you go.

11              MR. COHEN:  The defendants had a burden of proof,

12    and they don't even try to meet it.  And they tried to shift

13    the burden onto us.  So just as a basic matter of civil

14    procedure, they had a burden, they failed to meet it.  The

15    Court can then deny the motion, and it would be within its

16    discretion to do so and go no further.

17              THE COURT:  But what if I did that?

18              MR. COHEN:  Yes.

19              THE COURT:  Then, Katie, bar the door, you can get

20    anything you want.  You've got to answer everything that was

21    exchanged.

22              MR. COHEN:  All the -- they would have to respond

23    to all our requests, yes.  That's correct.  Because they --

24    they failed to meet their burden of proof.

25                   And this is a unique -- a situation where the

defendants are uniquely in a position to evaluate the

production, right?  Because only they know what exists.

They've looked at it.  We can't know.  And because of the

approach they took -- which was to say, We're only going to

produce on these four topics -- we don't know -- we know that

they're not producing anything else, but we don't know what

that "anything else" is.

They could have put that evidence before the

Court.  They chose not.

**THE COURT:**  In this log?

**MR. COHEN:**  Yes.  And they chose not to.  That's

their -- you know, and they've had time.  The initial

production order from this Court was -- I believe it was for

the Wednesday of trial, so that would have been the 15th of

November.  There was an order on Tuesday the 14th to produce

documents the next day.  And then, when we broke up, there

were further documents that were to be produced from

Mr. Nuttall by the end of that week, which would have been

the 17th.  And here we are nearly two months later, and we

have been getting production in dribs and drabs.

Now, they've produced stuff, and they've put

it on a Dropbox; we can get it electronically.  I'm not -- I

don't want to contend they haven't produced anything.  That's

not my point.

But what they've done is put us, the

1  plaintiff, in a position where we can't possibly challenge

2  their interpretation of the rule --

3          **THE COURT:**  Okay.  So what do you suggest?

4          **MR. COHEN:**  Deny the motion.  That's it.  It's

5  that simple.  It's within the Court's discretion.  They'll

6  produce, and we'll go from there.

7          **THE COURT:**  No.  That's too Draconian, I think;

8  albeit there's this dismaying consistency.  The -- I think

9  you're going to have to have the logs.  And how would you

10  propose the logs be handled?

11          **MR. COHEN:**  Well, if --

12          **THE COURT:**  You're going to vacate the date, and

13  the whole thing is --

14          **MR. COHEN:**  Well, and that's part of my

15  frustration here, Your Honor, is --

16          **THE COURT:**  And I understand you haven't been in

17  front of the magistrate, the Wizard of Oz.

18          **MR. COHEN:**  We -- we had a date for January 18

19  that then Judge Gandhi asked us to move to February 1st.  So,

20  yes, the parties are participating in a settlement

21  conference --

22          **THE COURT:**  How thorough is he being briefed on

23  this?  Is this the first --

24          **MR. COHEN:**  He will be --

25          **THE COURT:**  -- he'll be seeing this?

1          **MR. COHEN:**  It will be the first time.  He will be

2    thoroughly briefed.  I know we will, and I'm sure and

3    confident the defendants will be similarly thorough.

4               And in my experience, I think Judge Gandhi is

5    exceptionally skilled.

6               So, you know, we can -- hope springs eternal

7    in that regard.

8               In addition, at some point today we need to

9    bring up the possibility of -- about the dates for the trial,

10   because the Court has set a start date of February 13th, and

11   we're prepared to --

12          **THE COURT:**  That's because you gave me that.

13          **MR. COHEN:**  No, no, no.  We're not complaining

14   about the date.  Last night we received an e-mail from

15   Mr. Brown, one of the lead counsel for the defendants --

16          **MR. BROWN:**  And a phone call.

17          **MR. COHEN:**  Oh.  Sorry.  And a phone call, asking

18   if AOP would be willing to ask the Court to continue the

19   trial date, like three or four weeks so that --

20               Right now, we have six depositions scheduled

21   between now and the beginning of February, the first week of

22   February, of the various lawyers and of the owners of Good

23   Vapes.

24          **THE COURT:**  Well, here's the thing.  You get into

25   the lawyer deposition and you get an objection, and --

```
 1              You know, I've been there.  Okay?
 2    Personally.
 3              MR. COHEN:  Right.  Well, and we're trying to --
 4              THE COURT:  And what do you do?  I mean, the one
 5    thing you can do -- you could have somebody there ruling.
 6    I'm not going to do it.
 7              MR. COHEN:  Sure.  Yes, that is a possibility.
 8    I'd like to avoid that expense and that headache for some
 9    other person.  These are things that we -- we, the plaintiff,
10    cannot control.  We don't control the documents.  We don't
11    know what we're being asked to fight about.  We're doing this
12    in the dark.
13              So we have -- we're trying -- on behalf of
14    AOP, we're trying to square the circle.  And by that I mean
15    we've got a trial date, we've got people to depose, we don't
16    know how the Court's going to rule, when the Court's going to
17    rule.  That's not a complaint; it's just the reality of all
18    the moving parts.
19              So I still think the Court could just deny
20    the motion.  But if the Court is going to do what it is
21    talking about, which is the privilege log, the -- here's the
22    --
23              The privilege log can also be used to hide
24    documents.  And here's what I mean.  The privilege log lists
25    documents that are responsive, but that they're withholding
```

1   on the basis --

2           THE COURT:  Well, it's not just documents; you

3   have -- you have -- you have conversations.

4           MR. COHEN:  Yes.  And could be testimony as well.

5   But if -- given the defendant's approach, they could,

6   consistent with their approach, leave documents that are

7   off -- leave them off the privilege log by saying, It's not

8   one of the four categories.

9           In other words, there might be a document to

10  which we would be fairly entitled --

11          THE COURT:  No.  The -- the privilege log will

12  include anything you're withholding.  Period.

13          MR. COHEN:  Well, and so -- and here is the

14  problem --

15          THE COURT:  Then you're depending on them to,

16  indeed, do that.  But, I mean, they're officers of the court,

17  so I assume they do it.

18          But that's the -- that's not -- it's -- you

19  know, this isn't a four-category deal.

20          Hey, look, you want to withhold something,

21  you may well be able to; but you're not withholding anything

22  until you've identified everything, okay?

23          MR. COHEN:  Thank you, Your Honor.  If I --

24          Good.  Then I'd like to return to the

25  original question that you just posed and suggest a solution.

1          We have made our request.  You know, we

2     issued subpoenas with topics.  Let them put on -- make the

3     privilege log complete.

4          In other words, if they're withholding

5     documents that are responsive to any of our requests, they

6     put it on the privilege log, then at least we know what we're

7     fighting about.  And we aren't fighting about the four

8     categories, nor will we -- does -- it's the best solution I

9     can think of to avoid the problem I just articulated, which

10    is them -- the defendants not listing on the privilege log a

11    document that they say is outside the four categories, the

12    four topics; and, therefore, they're not withholding --

13         **THE COURT:**  That's not their prerogative.

14         **MR. COHEN:**  My point exactly, Your Honor.  I

15    agree.

16         And so my suggested solution, if the Court is

17    unwilling to deny the defendant's motion in its entirety now,

18    based on what we consider to be procedural defects by failing

19    to meet the burden of proof, then the next best solution we

20    see is for the defendants to do a complete privilege log.

21    They have to respond to all our requests.

22         And -- and by "responding" I mean, if they

23    are refusing to produce responsive documents to any of the

24    requests, they have to list the document or documents they're

25    withholding and the basis for the privilege.

```
 1                 And the log should say, you know, who created
 2    the document, who it was addressed to, the date, the
 3    subject -- you know, subject matter like a privilege log, so
 4    that the Court can make an informed decision.
 5                 And an important distinction between federal
 6    law on this and California state law is, in federal court,
 7    the Court may not just look at the privilege log but may also
 8    look at the documents in camera.
 9                 In other words, you have --
10         THE COURT:  One of you --
11                 Did you give us a cite to that effect?
12         MR. COHEN:  Well --
13         THE COURT:  Did you, is what I said.
14         MR. GATIEN:  This citation for an in camera
15    review, which was the Handgards case, Your Honor,
16    H-A-N-D-G-A-R-D-S, Inc., v. Johnson & Johnson.  And it's
17    413 F.Supp. 926.
18         THE COURT:  Can't do any better than F.Supp?
19         MR. GATIEN:  That's just the one I have in front
20    of me, Your Honor.  But that does, you know, substantiate a
21    request for in camera review of documents that the
22    defendants --
23         THE COURT:  Who would you propose, Mr. Gatien,
24    would review all of these documents?
25         MR. GATIEN:  Unfortunately, Your Honor, it would
```

```
 1    probably fall to either Your Honor or the magistrate judge in

 2    this case.

 3              THE COURT:  Well, do we have a magistrate judge in

 4    the case?

 5              MR. GATIEN:  We --

 6              MR. COHEN:  There is a magistrate judge, yes.

 7              THE COURT:  But it's not the magistrate in Orange

 8    County?

 9              MR. COHEN:  No.  Judge -- Magistrate Judge Gandhi

10    is only for the settlement conference, that's correct.

11              THE COURT:  Who's up here?

12              COURT CLERK:  Kato.

13              THE COURT:  Kato?  What's the name of the -- is

14    that magistrate?

15              COURT CLERK:  Kenly Kato.

16              MR. COHEN:  If Your Honor wants to start with the

17    magistrate judge, then that's how we'll do it.  It's however

18    the Court wants to handle that part of the procedure.

19                   But, again, just so we're -- I'm clear on

20    behalf of AOP, they have -- I would ask the Court to insist

21    and to order the defendants to respond to all the topics; and

22    if they're withholding documents, identify them in the

23    privilege log.

24                   So then -- and then we'll look at the log,

25    we'll see about what we want to fight about.  And then either
```

```
 1   Your Honor or the magistrate judge can look at the underlying

 2   documents and see if it's responsive.  Or, excuse me --

 3            THE COURT:  Here's the thing --

 4            MR. COHEN:  -- falls within the --

 5            THE COURT:  Here's the thing, practically

 6   speaking --

 7            MR. COHEN:  Yes, Your Honor.

 8            THE COURT:  In the process, if I do it or the

 9   clerk does it and then I review it with her, and it's a bench

10   trial, and there are some things in there that properly are

11   excluded, but they're -- now that I've read because it falls

12   within this order you're seeking, does this poison the well?

13   You see?

14            MR. COHEN:  I understand that, Your Honor,

15   although that's no different than any other bench trial where

16   a party introduces evidence, opposing party objects, and the

17   Court rules; and the Court can rule to admit the evidence, or

18   the Court can rule to exclude the evidence and sustain the

19   objection.  And that's no different than any other aspect of

20   a bench trial.

21                 I understand the Court's concern.  If the

22   Court wants the magistrate judge to be the one to do it, then

23   sobeit.  But, to me, I understand the concern, but it's no

24   different than any other evidentiary ruling that you have in

25   a bench trial when the -- when the Court is --
```

1          **THE COURT:**  Well, there's some -- some reason to

2     think you're correct.

3               Okay.  Who wants to speak for the defendant?

4          **MR. WEGNER:**  Your Honor, there is some reason to

5     think that that's not correct, and that's when we're talking

6     about, the disclosure of privileged information.

7          **THE COURT:**  Let me see something.

8          **MR. WEGNER:**  It's --

9               The analogy to a bench trial is not exactly

10    apt.  But that's actually a -- kind of a side point.

11              The bigger point that I want to make is that

12    in the typical motion to quash scenario, you don't also have

13    a concurrent production of just heaps of documents that have

14    been produced already, with more promise to come and

15    privilege logs upfront.

16              You know, we've asked for the scope that was

17    defined by us and then waived by our client, the scope of

18    that waiver to be decided.  They took this as an opportunity

19    to ask 20 some-odd requests of each of these witnesses in

20    these subpoenas to try and crack open the entire privilege --

21         **THE COURT:**  Listen, Mr. Wegner -- I'm sorry -- but

22    just as a for-instance, the scope of the waiver -- let's --

23    let's --

24              I'm not saying it happened, but let's just

25    say hypothetically that you're a -- one of your attorneys

1    counseled the plaintiff -- or the defendant -- after one of

2    these hearings -- or before one of them, for that matter --

3    don't do it.  It's the wrong thing to do.  And it doesn't

4    fall within these four corners that you want to invoke.

5              And you're telling me in an exceptional

6    circumstance case that wouldn't be discoverable?  Of course

7    it would.  And that's the problem.  You're dealing -- you're

8    dealing with a very expansive -- when you -- in this

9    exceptional circumstance case.  You're dealing with a very

10   expansive, ephemeral type of thing.

11             It's kind of like Potter Stewart was asked

12   years ago, "Define pornography."  And his answer is, "I'll

13   know it when I see it," okay?

14             Well, it's the same thing going on here.

15   I'll know it when I see it.  If -- if this is the type of

16   thing that bears upon the exceptional circumstances and the

17   wide range that's included in these circumstances by the

18   Supreme Court's statement.

19             It's a very wide range.  They don't limit it.

20             I read it.  You've heard it.  You've seen it

21   before, no doubt.

22             And so it's wide open.  And if something's in

23   there that is -- is a -- is particular damning, it doesn't --

24   it doesn't fall within a particular category, so what?

25   That's the type of thing that if it happened -- and, again, I

1    don't presume to say it did.  But if it did, then it bears

2    upon the exceptional circumstance case, and it's

3    discoverable.

4                    So I don't know how in the world he's --

5                    How do you get to this.  It leaves way too

6    much discretion on -- on the defendant's part, particularly

7    given the complaints leveled against the defendant by the --

8    by the plaintiff and particularly given the -- the eleventh

9    hour generous characterization of your -- the defenses at

10   issue here.

11                   You know, I could have blown your defense out

12   of the water with a ruling.  I didn't.  But I could have.

13   You come out of nowhere, is the argument.  But it was

14   nowhere, but it was your -- your --  your left-field

15   material, I tell you.

16                   And so -- and -- frankly, you --

17                   If I had been the plaintiff, I would have

18   felt aggrieved.  And they may well have, but they --

19                   But I'm doing what I thought was appropriate

20   under the circumstances.

21                   But having -- having made that decision, I'm

22   not going to constrain them like you want to constrain them.

23   I'm not going to do it.

24                   So I think you're going to have to go with a

25   full -- all -- the complete disclosure log as regards the

```
1    attorneys, vis-à-vis this litigation.  Period.
2                    And then who's going to review it?  I don't
3    know who's going to review it.  It's going to be -- we'll
4    have to figure it out.  It's going to be the magistrate or
5    me.  And the magistrate had --
6                    Did the magistrate work on a settlement
7    conference here where they're starting with some background,
8    or is it brand-new?
9              COURT CLERK:  Brand new.
10             THE COURT:  Brand-new?  Kato?
11             MR. GATIEN:  Yep.
12             MR. COHEN:  Brand-new, Your Honor.
13             THE COURT:  See, now you're starting all over
14   again, so --
15             MR. BROWN:  Your Honor, can I address their point,
16   just --
17             THE COURT:  Yes.
18             MR. BROWN:  -- just a minute.  I think there are
19   two points that are worth making, Your Honor.  One is, you're
20   looking at the -- under the Sun Earth and Octane Fitness
21   standard, you have this totality of this circumstances.  And
22   it seems like it's a very expansive thing.
23                    What we did is, we took the other side's
24   brief, and they made about nine points in there, where they
25   said what our client did justifies exceptional circumstances.
```

```
 1    And we looked at those and said:  How are we going to respond
 2    and rely on advice of counsel?  And that's how we came up
 3    with our four topics and said:  Here's what we're going to
 4    respond with.
 5                   And the stuff that we're giving -- because
 6    I've seen a lot of it, Your Honor, and I saw it in person, a
 7    lot of it.  For instance, the vast majority of any
 8    communication Mr. Nuttall had, from the start of this
 9    litigation all the way up until the summary judgment and --
10    when -- when Judge Phillips ruled, all of the communications
11    with the client, except for a few items, we've given all
12    those.
13                   So anything that Mr. Nuttall communicated
14    with the client on, those things are being turned over.
15    There's a couple of things like communications about damages.
16    That doesn't have anything to do with it.
17         THE COURT:  Of course it doesn't, but that's
18    pretty easily determined.
19         MR. BROWN:  Exactly, Your Honor.  And we've done
20    that.  This hearing was not supposed to be about whether
21    we're giving privilege logs or not; we just needed definition
22    on what the end of -- of what --
23         THE COURT:  You can't define it.  "I know it when
24    I see it," is what I'm telling you.
25         MR. BROWN:  No, I don't think that's so, Your
```

```
 1    Honor.  I think that if you see what the subject matter is --
 2    and we'll talk with opposing counsel -- that they act like
 3    we've sandbagged them on something here, and that's not the
 4    case.  We've had --
 5            THE COURT:  They sandbagged you.
 6            MR. BROWN:  Well, no.  We've had extensive
 7    meet-and-confer on this stuff before the holidays, and we
 8    talked over these issues.  And if there's something that they
 9    don't have --
10            We just want a clear demarcation of what the
11    subject matter is.
12            THE COURT:  I've just given it to you:  Anything.
13            MR. BROWN:  Well, Your Honor, what does "anything"
14    mean?  So we -- so anything that's waived?  Or anything has
15    to go on the log --
16            THE COURT:  I didn't say it's waived.  Anything
17    is -- is -- is the subject of the log, then having in mind
18    the dictates of the Supreme Court as identified at this
19    hearing -- the court -- whether it be the magistrate or the
20    district court -- is going to have --
21            MR. BROWN:  Well --
22            THE COURT:  Just a second, Mr. Brown.
23            -- is going to have to identify whether it is
24    waived as to the exceptional circumstance case.  And the
25    exceptional circumstance case, the -- the -- the -- penumbra,
```

```
 1    the breadth of what could be considered in an exceptional

 2    circumstance case is very broad, okay?  Very broad.  There's

 3    no doubt about that.

 4            MR. BROWN:  The issues on which we waived --

 5            THE COURT:  Look it, I'm not looking for this

 6    case.  You're the one who wants to do it.

 7                 Now, look it, Mr. Brown, you've made your

 8    argument.  I'm telling you that you're on the doorstep of

 9    what I've just said.

10                 Do you have anything new, new to argue?

11            MR. WEGNER:  If I could just put one thing on the

12    record, Your Honor.  I feel like we're conflating relevance

13    for the totality of circumstances analysis in an exceptional

14    case, with the scope of an informed waiver.  And I --

15            THE COURT:  I can't -- I can't, under the

16    circumstances of this case and the nooks and crannies in

17    which you have been at -- you, the defendant, have been at

18    one time or another, I can't just say:  We're going to

19    categorize this thing, the production; and if you determine

20    that it doesn't fit within that category -- categorization,

21    you don't have to identify it.  That's not going to work.

22    That's not going to fly.

23            MR. BROWN:  Your Honor, we don't have a problem

24    with identifying it, Your Honor.  We don't have --

25            THE COURT:  What do you think the -- what do you
```

1   think the log's all about?

2          **MR. BROWN:**  No, but --

3          **MR. WEGNER:**  We've done --

4          **MR. BROWN:**  It's like hundreds and hundreds of

5   items that we've -- it's stuff that has to do with our trial

6   strategy, with motions in limine, with issues like that.  For

7   instance, the four issues that have to do with that -- I

8   wasn't counsel on the case at that time.  Do I have to log

9   every communication that I have with my client when I have

10  nothing to do with that phase of the case, Your Honor.

11         **THE COURT:**  With what phase of the case?

12         **MR. BROWN:**  With the phase of the case -- with the

13  phase of the case that we had trial on.  We had damages --

14         **THE COURT:**  Exceptional circumstances?  What --

15  the case itself?  Are you -- what are you talking about?

16         **MR. BROWN:**  Your Honor, what I'm talking about is,

17  you're -- you're addressing the question of what has to be

18  put on a privilege log.  There's a question of what has to be

19  put on the privilege log.  And the other question is:  What

20  is the scope of the waiver of the privilege?

21         **THE COURT:**  We have been through that.  And, you

22  know, I'm not going to let the fox decide what is going to be

23  the scope of the privilege.  That's not going to happen,

24  okay?  And --

25               There's too much that's gone on in this case.

```
 1    Even -- even I -- even were the case not so rife with
 2    problems, discovery problems, I still wouldn't let the -- a
 3    party be the judge and jury as regards to what needs to be
 4    discovered.
 5              You've got to -- you've got to --
 6              The Court has to be able to basically assess
 7    the propriety of your disclosure.
 8              Mr. Brown, I have no doubt that in going
 9    about putting together a log here with the various attorneys
10    that it's going to be voluminous.
11              You think I want to look at your log?  I'll
12    give you an answer.  I don't.  You know, I'm tired of you
13    people mucking around with -- with fighting at every turn.
14              But my distress is not determinative.  What's
15    determinative is, my function at this point is, finding out
16    if there are exceptional circumstances.  I don't know.  And I
17    can't let you be the person determining what's exceptional
18    and what's not.  It's not personal to you.  Whoever the
19    attorney was, I can't let you do that.
20              And a lot of this stuff could be a one-liner.
21    You know, Called them and said "Your bill's is too high."
22    Come on.  Yeah, I understand.
23         MR. BROWN:  And that's the type of stuff that's on
24    the log.
25         THE COURT:  Okay.  I understand.  That's going to
```

```
 1    be easy.  But there is going to be some substantive things in

 2    there.  There's certainly a potential there's some

 3    substantive things where reasonable minds may differ as to

 4    the relevance for purposes of an exceptional circumstances

 5    case, of that which you're withholding.  And you can't make

 6    the determination.  You just can't do it.  That's just --

 7                    And, again, when I say "you," it isn't you,

 8    personally, it's the defendant can't do that.

 9                    And so as distressing as it is to you and the

10    Court and the plaintiff -- because they've got to go through

11    this, too -- I don't see any way around it other than

12    granting this motion.  Where he -- what is a motion to

13    hear -- your motion is --

14            MR. COHEN:  It's not our motion; it's their

15    motion.  Their --

16                    They call it an omnibus motion to modify all

17    the subpoenas.  But a more mundane term for that would be a

18    Protective Order.

19            THE COURT:  Now --

20            MR. COHEN:  And it's their motion, it's their

21    burden.  We contend they didn't meet their burden.  You have

22    denied our right --

23            THE COURT:  I know, but --

24            MR. COHEN:  -- but you're not going to, I get

25    that.
```

```
 1                     But I would make one more request on the log,
 2        Your Honor.  I would like to -- and maybe it's there and I
 3        didn't see it.  I'd like to tie the document to a specific
 4        document request.
 5                     In other words, if they're withholding a
 6        document and they do all this, then I want to know which
 7        topic, which of the categories that we've identified they're
 8        saying that's responsive to, but they're withholding.  That
 9        way we can see -- have some sense of the investigation of
10        what's going on.
11                THE COURT:  Okay.
12                MR. COHEN:  Because my concern --
13                THE COURT:  Okay, okay.  You've given me -- okay.
14        We weren't limiting the category, remember that?
15                MR. COHEN:  No, no, no.  What I'm saying is, a
16        request number.  In other words, this document that we are
17        withholding is responsive to Category 2 or Topic 2 in the
18        subpoena to Glen Nuttall.
19                     In other words, we --
20                THE COURT:  I see.  Well, you can do --
21                     That will be -- that will be the preface --
22                MR. COHEN:  Yeah.
23                THE COURT:  Is this is responsive to this.
24                MR. COHEN:  And we're withholding it, and here's
25        the information.
```

1          **THE COURT:**  All right.  Fair enough.

2          **MR. WEGNER:**  Your Honor, if I may.  That's a

3    tremendous amount of makework.

4                   We're going to give a description of what the

5    document's about.  We shouldn't be required to then say:  And

6    by the way, it's responsive to you, know, Numbers 3, 17 and

7    25 of your, you know, 27 requests.  It just isn't -- there

8    are hundreds of entries already.

9          **THE COURT:**  Just a second, please, Mr. --

10   Mr. Wegner.

11            (Discussion off the record.)

12         **THE COURT:**  One thing I tell you, Mr. Wegner and

13   Mr. Brown, I was concerned -- and I am concerned about

14   receiving information -- reviewing information that is

15   negative as regards your client, albeit not exceptional,

16   okay?  But the reality is whether I --

17                   I mean, there is some truth to what Mr. Cohen

18   observed.  But the reality is even if I didn't do it and it

19   was handled anew, anew, by a magistrate judge, think of that,

20   starting all over again and becoming familiar enough to be

21   able to make an informed ruling.

22                   I mean -- I mean, that man is failed quick

23   right on the -- right on the court steps.  Tell you.

24                   But aside from my observation as to their --

25   the magistrate's state of mind, I've got to review whether

1    the magistrate's correct or not.  So I'll get it --

2                    One way or another I'm going to be privy to

3    this.  I can't help it.  I'm not looking for it, but I can't

4    help it.  So it has to be --

5                    I think in -- in -- you -- you just -- I

6    can't quash it.  I -- I think that they are entitled to a

7    privilege log.  I believe that there has to be -- the preface

8    is to -- that this relates to whatever category it is.  And

9    I'm not looking for an argument contained in there, just a

10   statement.  And if you have to attach a document that's

11   appropriate, I suppose attaching a document.

12                   Now, I think what's going to happen here, is

13   that you're going to have to -- obviously, you're going to

14   have to -- and this is laborious at best.  And look it,

15   Mr. Brown, I know it, all right?  I've done this kind of

16   thing.

17                   Fortunately I've been involved as a lawyer --

18   and I don't know that I've ever been involved as a judge --

19   in -- but certainly not as a lawyer, in putting together a

20   privilege log, but -- especially when there'd been as much

21   litigation as you people have had.

22                   But the fact of the matter is that it can't

23   be avoided.  It is inherent in this case.  And the -- and a

24   waiver is so critical to the determination of exceptional

25   circumstances and the good faith that -- that exists or does

1     not exist --

2                    Look it, if it -- if it's -- if it's so good

3     faith-y, to coin a word, you don't have any problem showing

4     it.  It's only --

5                    One of the --

6                    The only problem you have is whether there's

7     something in there, you say:  Wait a second, it's our

8     strategy.  Now, that's another issue.

9                    Now, let's say that we -- we -- we have --

10                    And you're definitely going to have some kind

11    of conversations with the client regarding strategy, okay?

12    Well, of course you did.  Anybody would.  I understand that.

13                    Now, are they entitled to strategy?  Without

14    more?  No.  There's no way they're entitled to strategy.  But

15    you're going to have to --

16                    I'm just thinking...

17         **MR. BROWN:**  We've actually done all that, Your

18    Honor, in terms of -- we have a description of what the

19    subject matter is of the document --

20         THE REPORTER:  Wait.  I can't hear you when he's

21    coughing.

22         **THE COURT:**  I'm sorry.

23         **MR. BROWN:**  For instance, Your Honor, if it's

24    discussions about invoices, there's a lot of stuff in the log

25    about people talking about getting paid and when they're

1    going to get paid and odds and ends that have nothing to do

2    with anything that has been waived.

3              There's stuff about damages, but the vast

4    majority of the stuff that they care about we have produced,

5    or we will produce, and we produced it right away.

6              And so I think we're really talking about

7    very marginal stuff, if at all.  And I don't think that there

8    is even anything -- I'd be surprised if there is anything

9    that they would care about and present to you that will be a

10   subject of dispute, Your Honor.  I'd be very surprised.

11             **THE COURT:**  Okay.  Just a second.

12             (Discussion off the record.)

13             **THE COURT:**  One thing you might be able to do

14   is -- is -- is modify what I've been talking about, and say

15   that you have to produce anything that arguably could be --

16   could be related to a determination of the exceptional

17   circumstances.  That would cut away a lot of extraneous

18   material.  I think that would -- I think that would

19   absolutely -- actually make sense.

20             What's your response, Mr. Cohen?  I said

21   arguably.  That's expanse --

22             Arguably, paren, (expansive,) closed paren.

23             **MR. COHEN:**  I understand what you're saying, Your

24   Honor.  I'm -- we -- that will be fine.  In other words, with

25   that as the benchmark, that's fine.

```
 1                   And just one clarification so that my point
 2       was clear.  I just used "category."  Wrong word.  I just want
 3       it to be tied to a specific request number; in other words,
 4       the subpoena --
 5               THE COURT:  We've already --
 6               MR. GATIEN:  I just want to make sure that that
 7       part's clear.
 8               THE COURT:  Mr. Brown, doesn't that address a lot
 9       of what you were just talking about?  "Yes" or "no"?
10               MR. BROWN:  No.
11               THE COURT:  Okay.  That's my ruling.  The -- that
12       you must identify --
13                   What's the preface that -- the lead-in that
14       you wanted, Mr. Cohen?
15               MR. COHEN:  The topic number from the subpoena.
16               THE COURT:  To identify the topic number from the
17       subpoena, and you have to identify anything that
18       reasonably/arguably relates to the issue of exceptional
19       circumstances as defined by the Supreme Court.  And I add
20       that's very broad.  So if I were you, I'd get a copy of that,
21       Mr. Cohen.
22                   But that's what -- that's what your marching
23       orders are, nicely.  And I think you're going to have to
24       vacate -- unless you think you can keep the trial date, I
25       think we have to vacate the trial date.
```

```
 1                   What's your joint response?

 2              MR. COHEN:  Your Honor, on behalf of AOP, we're

 3   okay with that.  We'd like it to be as short a continuance as

 4   possible.

 5              THE COURT:  You're going to have to --

 6                   What we're going to have to do is you're

 7   going to have to complete your discovery and then rejoin,

 8   okay?

 9              MR. COHEN:  Got it.

10              MR. BROWN:  Can we just give you a status report,

11   Your Honor, after we get the depositions and that stuff done

12   and give you a status report?  Maybe --

13              THE COURT:  I don't know why you'd take

14   depositions until you have this -- until you have this order

15   thing worked out.

16              MR. COHEN:  Well, we didn't --

17              THE COURT:  I wouldn't touch a deposition at this

18   point.

19              MR. COHEN:  Right.  We didn't want to, but we were

20   faced with a trial setting.

21              THE COURT:  Okay.  So --

22                   Well, you're going to have to work with

23   yourselves, because if something comes up that may impact a

24   particular witness, you don't want to have already deposed

25   of -- in Texas or something.
```

1          So the answer is, I would suggest that you

2    reschedule your depositions at the conclusion of the order.

3          Now, how long is it going to take you,

4    Mr. Brown, with this modified order that I'm making?  How

5    long is it going to take you to put through -- give me your

6    best estimate -- put together this log?

7          What I want to do is, I'm going to give you

8    the time, reasonably requested, then I'm going to give him

9    reasonable time for discovery.

10         So where are we?

11    **MR. BROWN:**  I believe that my estimate is 140

12    hours' worth of work based on the number of requests and the

13    number of entries that have to be adjusted and modified.

14         So I would say, you know, two people, it

15    would take a couple weeks.

16    **THE COURT:**  Give you what, 30 days?

17    **MR. BROWN:**  That would work, Your Honor.

18    **THE COURT:**  Then you have 30 days.

19         Then I've got to be able to review.  And

20    having reviewed, if there is material that needs to be

21    disclosed, then Mr. Cohen needs to be advised, before you get

22    to your follow-up discovery, to include depositions.  So I

23    can't tell you how quickly I'm going to be able to review

24    this.

25         I think that we have circumscribed the

1    discovery to be produced by the defendant considerably.

2    We've eliminated all the extraneous -- arguably extraneous.

3    You're right down to --

4              I think it can be --

5              It may take time to go through and -- what

6    has been exchanged at one time or another internally with the

7    attorneys; but it -- the actual rendition in a discovery log

8    I don't think is going to be that extensive.

9              I mean, it's not going to be brief, but it's

10   not going to be like anything like we're talking about.

11             So I think the month -- get the month --

12   we'll try to -- try to get through it with some alacrity.

13   And to then, if appropriate, we'll have a hearing or an order

14   of disclosure, perhaps before ordering any disclosure, it

15   would be the better part of wisdom to have a hearing to hear

16   the defendant further.  I don't know.  But we'll get that --

17   we'll get the disclosure as a matter of record, and then you

18   can be off and running with your discovery, and we'll set a

19   time -- time on that.

20             So, we've got a time issue, time scheduled

21   for plaintiff -- defendant, 30 days.  We've got no time

22   issued for the Court, but I'm going to try to get you within

23   30 days.

24             And then you're going to -- you're going to

25   have whatever it appears that -- is needed to complete your

```
 1    discovery, Mr. Cohen.

 2              MR. COHEN:  Yes, Your Honor.  May I make two

 3    suggestions, if I may?

 4              THE COURT:  Yes.

 5              MR. COHEN:  One is, they asked for two weeks; you

 6    gave them 30 days.  Could we do three weeks?  I just -- this

 7    thing has been dragging on.  So I'd like to sort of move it

 8    up if we can.

 9                   They said they needed two weeks.  Can we give

10    them three instead of 30 days.

11              THE COURT:  What do you say, Mr. Brown?

12              MR. BROWN:  The amount of work that's been added

13    on here -- you know, I only have so many people in the

14    office --

15              MR. COHEN:  Fine, fine, 30 days.  My --

16                   Forgive me, 30 days is fine.

17                   And the --

18              MR. BROWN:  Let me just finish talking.

19              THE COURT:  Go ahead.

20              MR. BROWN:  We just -- we've got work to do, Your

21    Honor, in other cases.

22              THE COURT:  You got the 30 days.

23              MR. COHEN:  The other is, in terms of the

24    sequence, we'll take a look at the privilege logs and the

25    production.
```

1                 And Mr. Brown may be right; there may be a

2     lot of documents that they disclosed that they're withholding

3     that we don't want.  And so rather than have you look at

4     everything, let us look at the logs and the documents and

5     we'll isolate --

6                 **THE COURT:**  What a good idea.  What a good idea.

7                 **MR. COHEN:**  -- we want to fight about this

8     document or these documents or not --

9                 **THE COURT:**  Why don't you do that?  Then you would

10    have how long to respond to what documents you want to -- us

11    to review?

12                 (Discussion off the record.)

13                 **MR. COHEN:**  Okay.  My co-counsel says we'd like up

14    to 30 days; but, by golly, I'm going to try to do it faster

15    than that.

16                 **THE COURT:**  Okay.  We'll give you 30 days to

17    respond, to basically identify that which is not objected to

18    or expected.

19                 **MR. COHEN:**  Right.  And in terms of the form, I

20    understand what their privilege log will look like.  Do you

21    want us to file a brief, or do we just submit a letter to the

22    Court and say:  We're fighting about the following documents?

23                 **THE COURT:**  A letter is fine.

24                 **MR. COHEN:**  Fine.  That seems like -- the less

25    paper, the better.

1          **THE COURT:**  Thank you, gentlemen.

2          **MR. COHEN:**  Oh.  Sorry, one --

3          (Discussion off the record.)

4          **MR. COHEN:**  I think that's good, Your Honor.

5              If we have questions, we'll --

6              One thing I'll particularly appreciate, Your

7    Honor, the Court has been really communicative through

8    Ms. Wynn, to -- you know, when there are technical issues or

9    procedural or logistical issues, and it's a real help.

10   That's just a long way of saying thank you.

11             You know, the Court has been really good at

12   working with us on ironing out stuff so that we can at least

13   minimize some of the friction.

14         **MR. WEGNER:**  Finally something we can agree on,

15   Your Honor.

16         (Discussion off the record.)

17         **THE COURT:**  Why don't you --

18         **COURT CLERK:**  We don't usually put letters on the

19   docket.

20         **MR. COHEN:**  Then we'll call it request for ruling

21   on documents or something.  We'll give it a name, and we'll

22   file it.

23         **THE COURT:**  Request for ruling on --

24         **MR. COHEN:**  Fine.  We'll do that.

25         **THE COURT:**  And it won't be a joint request; it

```
1    will just be your request.

2              MR. COHEN:  Right.  Right.  A ruling on the

3    following documents, and we'll attach the privilege log.

4              THE COURT:  This is what we want you to look at.

5              MR. COHEN:  Yeah.

6              THE COURT:  Okay.  Okay.  Thank you very much.

7              MR. BROWN:  Thank you, Your Honor.

8              MR. COHEN:  Thank you, Your Honor.

9              MR. WEGNER:  Thank you, Your Honor.

10             COURT CLERK:  Court is in recess.

11             (Proceedings concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                        C E R T I F I C A T E

2      I hereby certify that the foregoing is a true and correct

3      transcript of the stenographically recorded proceedings in

4      the above matter.

5      Fees charged for this transcript, less any circuit fee

6      reduction and/or deposit, are in conformance with the

7      regulations of the judicial conference of the United States.

8

9

10     /S/Anne Kielwasser                    3/23/2018

11     _____              _____
       Anne Kielwasser, CRR, RPR, CSR        Date
12     Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

**/**

/S/Anne [1] - 47:10

**1**

1 [1] - 10:8
1050 [1] - 2:16
11 [4] - 1:18, 3:1, 6:19, 8:16
1179 [1] - 8:19
1180 [3] - 8:18, 8:19
1181 [1] - 8:18
120 [1] - 2:9
13th [1] - 17:10
140 [1] - 41:11
14th [1] - 15:15
15-1586WDK [1] - 1:10
15th [1] - 15:14
17 [1] - 35:6
17th [1] - 15:19
18 [1] - 16:18
1910 [1] - 2:5
1:00 [2] - 1:18, 3:1
1st [1] - 16:19
1ST [1] - 1:23

**2**

2 [3] - 10:9, 34:17
20 [2] - 6:19, 24:19
2011 [1] - 6:1
2018 [2] - 1:18, 3:1
207 [1] - 2:9
213 [1] - 1:24
213-403-6405 [1] - 2:6
213-413-6400 [1] - 2:6
25 [1] - 35:7
2603 [1] - 2:16
27 [1] - 35:7

**3**

3 [2] - 10:9, 35:6
3/23/2018 [1] - 47:10
30 [11] - 41:16, 41:18, 42:21, 42:23, 43:6, 43:10, 43:15, 43:16, 43:22, 44:14, 44:16
350 [1] - 1:23

**4**

4 [3] - 5:8, 5:9, 5:18
413 [1] - 21:17

**424-302-0717** [1] - 2:10
440 [1] - 2:5
4419 [1] - 6:1
4455 [1] - 1:23

**5**

502.02.A [1] - 5:5

**6**

6 [1] - 6:19

**8**

839 [1] - 8:19
894-2969 [1] - 1:24

**9**

9 [1] - 6:1
90012 [1] - 1:24
90026 [1] - 2:5
90212 [1] - 2:9
926 [1] - 21:17
92614 [1] - 2:16
949-705-0080 [1] - 2:17

**A**

able [6] - 19:21, 32:6, 35:21, 38:13, 41:19, 41:23
absolutely [1] - 38:19
accused [1] - 7:5
acquisition [1] - 9:10
act [1] - 29:2
actual [1] - 42:7
add [1] - 39:19
added [1] - 43:12
addition [1] - 17:8
address [4] - 9:18, 11:7, 27:15, 39:8
addressed [1] - 21:2
addressing [2] - 14:8, 31:17
adjusted [1] - 41:13
admit [1] - 23:17
advance [1] - 9:7
advice [11] - 4:11, 4:16, 4:17, 7:1, 7:3, 7:12, 7:17, 9:12, 10:15, 28:2
advised [1] - 41:21

advising [1] - 7:18
after.. [1] - 10:20
afternoon [6] - 3:5, 3:7, 3:9, 3:12, 3:16, 3:19
AFTERNOON [1] - 1:17
aggrieved [1] - 26:18
ago [8] - 8:10, 11:14, 25:12
agree [7] - 6:14, 11:25, 12:2, 12:11, 20:15, 45:14
agreed [2] - 5:22, 7:20, 12:5
ahead [1] - 43:19
aKtranscripts.com [1] - 1:25
alacrity [1] - 42:12
albeit [2] - 16:8, 35:15
alleged [1] - 13:1
allergy [1] - 3:20
alluding [1] - 8:10
American [1] - 5:19
amount [2] - 35:3, 43:12
analogy [1] - 24:9
analysis [3] - 4:18, 4:24, 30:13
analyze [2] - 5:9, 8:20
AND [1] - 1:17
anew [2] - 35:19
Angeles [3] - 1:17, 1:24, 2:5
Anne [1] - 47:11
ANNE [1] - 1:22
anne.kielwasser@ gmail.com [1] - 1:25
announce [1] - 5:9
answer [4] - 14:20, 25:12, 32:12, 41:1
AOP [7] - 1:8, 3:13, 3:15, 17:18, 18:14, 22:20, 40:2
APLC [1] - 2:4
appearances [1] - 3:8
applied [1] - 7:8
applies [1] - 7:10
appreciate [1] - 45:6
approach [4] - 13:6, 15:4, 19:5, 19:6
approached [1] - 12:4
appropriate [3] - 26:19, 36:11, 42:13
apt [1] - 24:10
area [1] - 13:1
areas [1] - 13:18
arguably [4] - 38:15, 38:21, 38:22, 42:2

argue [1] - 30:10
argument [4] - 12:22, 26:13, 30:8, 36:9
articulated [2] - 12:1, 20:9
aside [1] - 35:24
aspect [1] - 23:19
asserting [2] - 6:24, 7:3
assess [1] - 32:6
Association [1] - 5:19
assume [1] - 19:17
assuredly [1] - 8:8
attach [2] - 36:10, 46:3
attaching [1] - 36:11
attempted [1] - 11:22
attorney [8] - 4:7, 6:15, 6:25, 7:5, 7:24, 12:19, 13:21, 32:19
Attorney [1] - 12:18
attorney-client [4] - 4:7, 6:15, 6:25, 13:21
attorneys [6] - 3:6, 12:14, 24:25, 27:1, 32:9, 42:7
authority [1] - 13:5
avoid [2] - 18:8, 20:9
avoided [1] - 36:23

**B**

background [1] - 27:7
bad [1] - 14:6
bar [1] - 14:19
based [2] - 20:18, 41:12
basic [1] - 14:13
basis [2] - 19:1, 20:25
bear [1] - 3:20
bears [2] - 25:16, 26:1
becomes [1] - 10:1
becoming [1] - 35:20
begin [2] - 10:24, 12:13
beginning [1] - 17:21
behalf [4] - 3:18, 18:13, 22:20, 40:2
BEHALF [2] - 2:3, 2:13
bench [5] - 23:9, 23:15, 23:20, 23:25, 24:9
benchmark [1] - 38:25
best [4] - 20:8, 20:19, 36:14, 41:6
better [3] - 21:18, 42:15, 44:25
between [2] - 17:21,

21:5
Beverly [1] - 2:9
bigger [1] - 24:11
bill's [1] - 32:21
bill@brownwegner. com [1] - 2:17
blown [1] - 26:11
bottom [1] - 7:25
Boulevard [1] - 2:5
brand [4] - 27:8, 27:9, 27:10, 27:12
brand-new [3] - 27:8, 27:10, 27:12
breadth [1] - 30:1
brief [3] - 27:24, 42:9, 44:21
briefed [2] - 16:22, 17:2
bring [1] - 17:9
broad [3] - 30:2, 39:20
broadest [1] - 7:1
broke [1] - 15:16
brown [9] - 17:15, 29:22, 30:7, 32:8, 35:13, 36:15, 39:8, 41:4, 44:1
BROWN [26] - 3:18, 17:16, 27:15, 27:18, 28:19, 28:25, 29:6, 29:13, 29:21, 30:4, 30:23, 31:2, 31:4, 31:12, 31:16, 32:23, 37:17, 37:23, 39:10, 40:10, 41:11, 41:17, 43:12, 43:18, 43:20, 46:7
Brown [4] - 2:14, 2:15, 3:18, 43:11
burden [13] - 11:10, 11:11, 11:22, 12:9, 14:1, 14:11, 14:13, 14:14, 14:24, 20:19, 33:21

**C**

CA [3] - 2:5, 2:9, 2:16
CALIFORNIA [1] - 1:2
California [4] - 1:17, 1:24, 6:24, 21:6
camera [3] - 21:8, 21:14, 21:21
Camino [1] - 2:9
cannot [1] - 18:10
care [2] - 38:4, 38:9
case [39] - 5:12, 5:21, 5:22, 6:2, 6:20, 6:21, 7:15, 8:1, 8:2, 8:9, 8:22, 9:2, 9:6, 9:10,

10:8, 10:10, 21:15, 22:2, 22:4, 25:6, 25:9, 26:2, 29:4, 29:24, 29:25, 30:2, 30:6, 30:14, 30:16, 31:8, 31:10, 31:11, 31:12, 31:13, 31:15, 31:25, 32:1, 33:5, 36:23
**cases** [3] - 4:8, 4:23, 43:21
**categorical** [1] - 11:19
**categories** [6] - 11:17, 11:18, 19:8, 20:8, 20:11, 34:7
**categorization** [1] - 30:20
**categorize** [1] - 30:19
**category** [6] - 19:19, 25:24, 30:20, 34:14, 36:8, 39:2
**Category** [1] - 34:17
**caused** [1] - 10:16
**CENTRAL** [1] - 1:2
**certainly** [3] - 3:6, 33:2, 36:19
**certify** [1] - 47:2
**cetera** [1] - 7:24
**challenge** [3] - 11:24, 12:13, 16:1
**chambers** [1] - 10:2
**characterization** [1] - 26:9
**charge** [1] - 7:4
**charged** [1] - 47:5
**chose** [2] - 15:9, 15:11
**chronologically** [1] - 7:15
**circle** [1] - 18:14
**Circuit** [4] - 6:10, 8:2, 8:12, 8:20
**circuit** [1] - 47:5
**circumscribed** [1] - 41:25
**circumstance** [7] - 4:7, 25:6, 25:9, 26:2, 29:24, 29:25, 30:2
**circumstances** [17] - 8:21, 9:7, 10:12, 25:16, 25:17, 26:20, 27:21, 27:25, 30:13, 30:16, 31:14, 32:16, 33:4, 36:25, 38:17, 39:19
**citation** [2] - 5:17, 21:14
**cite** [2] - 6:1, 21:11
**cited** [1] - 9:3
**civil** [1] - 14:13
**claimed** [1] - 13:2

**claiming** [1] - 13:21
**clarification** [1] - 39:1
**clear** [4] - 22:19, 29:10, 39:2, 39:7
**CLERK** [8] - 3:25, 4:3, 5:2, 22:12, 22:15, 27:9, 45:18, 46:10
**clerk** [2] - 5:25, 23:9
**client** [11] - 4:7, 6:15, 6:25, 13:21, 24:17, 27:25, 28:11, 28:14, 31:9, 35:15, 37:11
**closed** [1] - 38:22
**closure** [1] - 4:25
**co** [1] - 44:13
**co-counsel** [1] - 44:13
**Cohen** [12] - 2:4, 2:4, 3:10, 3:12, 8:8, 9:18, 35:17, 38:20, 39:14, 39:21, 41:21, 43:1
**COHEN** [65] - 3:9, 3:12, 11:7, 11:9, 12:12, 12:20, 13:3, 13:11, 13:23, 14:5, 14:8, 14:11, 14:18, 14:22, 15:11, 16:4, 16:11, 16:14, 16:18, 16:24, 17:1, 17:13, 17:17, 18:3, 18:7, 19:4, 19:13, 19:23, 20:14, 21:12, 22:6, 22:9, 22:16, 23:4, 23:7, 23:14, 27:12, 33:14, 33:20, 33:24, 34:12, 34:15, 34:22, 34:24, 38:23, 39:15, 40:2, 40:9, 40:16, 40:19, 43:2, 43:5, 43:15, 43:23, 44:7, 44:13, 44:19, 44:24, 45:2, 45:4, 45:20, 45:24, 46:2, 46:5, 46:8
**cohen@mlcplclaw. com** [1] - 2:7
**coin** [1] - 37:3
**communicated** [1] - 28:13
**communication** [2] - 28:8, 31:9
**communications** [4] - 7:10, 9:15, 28:10, 28:15
**communicative** [1] - 45:7
**Company** [1] - 8:13
**compartmentalize** [1] - 8:6
**compensation** [1] - 9:7

**complaining** [1] - 17:13
**complaint** [1] - 18:17
**complaints** [1] - 26:7
**complete** [5] - 20:3, 20:20, 26:25, 40:7, 42:25
**components** [1] - 9:6
**computer** [1] - 3:25
**concern** [4] - 6:6, 23:21, 23:23, 34:12
**concerned** [3] - 11:20, 35:13
**concise** [1] - 10:7
**concluded** [1] - 46:11
**conclusion** [1] - 41:2
**concurrent** [1] - 24:13
**confer** [1] - 29:7
**conference** [4] - 16:21, 22:10, 27:7, 47:7
**confident** [1] - 17:3
**conflating** [1] - 30:12
**conformance** [1] - 47:6
**consider** [1] - 20:18
**considerably** [1] - 42:1
**considerations** [1] - 9:7
**considered** [2] - 6:7, 30:1
**considering** [1] - 9:1
**consistency** [1] - 16:8
**consistent** [1] - 19:6
**consonant** [1] - 7:1
**constrain** [1] - 26:22
**construction** [1] - 4:6
**contained** [1] - 36:9
**contend** [2] - 15:23, 33:21
**context** [1] - 5:12
**continuance** [1] - 40:3
**continue** [1] - 17:18
**continues** [1] - 7:8
**continuing** [1] - 7:3, 7:11
**control** [2] - 18:10
**conversations** [2] - 19:3, 37:11
**copy** [1] - 39:20
**corners** [1] - 25:4
**correct** [8] - 11:13, 13:3, 14:23, 22:10, 24:2, 24:5, 36:1, 47:2
**coughing** [1] - 37:21
**counsel** [9] - 7:2, 7:4, 7:13, 9:12, 17:15,

28:2, 29:2, 31:8, 44:13
**counseled** [1] - 25:1
**County** [1] - 22:8
**couple** [3] - 4:23, 28:15, 41:15
**course** [3] - 25:6, 28:17, 37:12
**court** [7] - 5:21, 19:16, 21:6, 29:19, 29:20, 35:23, 46:10
**COURT** [112] - 1:1, 3:5, 3:11, 3:19, 4:1, 4:4, 5:4, 5:8, 5:16, 5:25, 6:13, 6:19, 6:23, 8:4, 8:16, 8:18, 9:21, 11:8, 12:11, 12:25, 13:4, 13:12, 14:3, 14:6, 14:10, 14:17, 14:19, 15:10, 16:3, 16:7, 16:12, 16:16, 16:22, 16:25, 17:12, 17:24, 18:4, 19:2, 19:11, 19:15, 20:13, 21:10, 21:13, 21:18, 21:23, 22:3, 22:7, 22:11, 22:12, 22:13, 22:15, 23:3, 23:5, 23:8, 24:1, 24:7, 24:21, 27:9, 27:10, 27:13, 27:17, 28:17, 28:23, 29:5, 29:12, 29:16, 29:22, 30:5, 30:15, 30:25, 31:11, 31:14, 31:21, 32:25, 33:19, 33:23, 34:11, 34:13, 34:20, 34:23, 35:1, 35:9, 35:12, 37:22, 38:11, 38:13, 39:5, 39:8, 39:11, 39:16, 40:5, 40:13, 40:17, 40:21, 41:16, 41:18, 43:4, 43:11, 43:19, 43:22, 44:6, 44:9, 44:16, 44:23, 45:1, 45:17, 45:18, 45:23, 45:25, 46:4, 46:6, 46:10
**Court** [40] - 1:23, 6:9, 6:10, 8:1, 8:11, 8:19, 8:22, 9:3, 10:4, 10:13, 11:21, 11:23, 12:1, 12:22, 14:15, 15:9, 15:13, 17:10, 17:18, 18:19, 18:20, 20:16, 21:4, 21:7, 22:18, 22:20, 23:17, 23:18, 23:22, 23:25, 29:18, 32:6, 33:10, 39:19, 42:22, 44:22,

45:7, 45:11, 47:11
**Court's** [5] - 16:5, 18:16, 23:21, 25:18
**crack** [1] - 24:20
**crannies** [1] - 30:16
**created** [1] - 21:1
**critical** [2] - 10:6, 36:24
**CRR** [1] - 1:22, 47:11
**CSR** [2] - 1:22, 47:11
**cut** [1] - 38:17

### D

**damages** [3] - 28:15, 31:13, 38:3
**damning** [1] - 25:23
**dark** [1] - 18:12
**Darren** [1] - 3:23
**date** [9] - 16:12, 16:18, 17:10, 17:14, 17:19, 18:15, 21:2, 39:24, 39:25
**Date** [1] - 47:11
**dates** [1] - 17:9
**days** [11] - 41:16, 41:18, 42:21, 42:23, 43:6, 43:10, 43:15, 43:16, 43:22, 44:14, 44:16
**deal** [1] - 19:19
**dealing** [3] - 25:7, 25:8, 25:9
**decide** [1] - 31:22
**decided** [1] - 24:18
**decision** [2] - 21:4, 26:21
**defects** [1] - 20:18
**defendant** [11] - 1:13, 4:15, 7:24, 24:3, 25:1, 26:7, 30:17, 33:8, 42:1, 42:16, 42:21
**DEFENDANT** [1] - 2:13
**defendant's** [4] - 11:21, 19:5, 20:17, 26:6
**defendants** [14] - 3:17, 3:18, 6:16, 11:9, 11:17, 12:4, 14:11, 15:1, 17:3, 17:15, 20:10, 20:20, 21:22, 22:21
**defense** [6] - 6:24, 7:4, 7:24, 13:19, 13:20, 26:11
**defenses** [1] - 26:9
**define** [1] - 28:23

**Define** [1] - 25:12
**defined** [2] - 24:17, 39:19
**definitely** [1] - 37:10
**definition** [1] - 28:21
**delivered** [1] - 12:14
**demarcation** [1] - 29:10
**denied** [1] - 33:22
**deny** [5] - 11:21, 14:15, 16:4, 18:19, 20:17
**depose** [1] - 18:15
**deposed** [1] - 40:24
**deposit** [1] - 47:6
**deposition** [2] - 17:25, 40:17
**depositions** [5] - 17:20, 40:11, 40:14, 41:2, 41:22
**description** [2] - 35:4, 37:18
**determination** [6] - 5:10, 5:11, 7:14, 33:6, 36:24, 38:16
**determinative** [2] - 32:14, 32:15
**determine** [1] - 30:19
**determined** [1] - 28:18
**determining** [2] - 7:9, 32:17
**deterrence** [1] - 9:8
**dictates** [1] - 29:18
**differ** [1] - 33:3
**different** [5] - 9:25, 13:18, 23:15, 23:19, 23:24
**difficulty** [1] - 9:17
**direct** [1] - 7:1
**directly** [1] - 9:15
**disagreement** [1] - 8:7
**disclosed** [3] - 6:5, 41:21, 44:2
**disclosure** [8] - 6:2, 6:3, 24:6, 26:25, 32:7, 42:14, 42:17
**discoverable** [7] - 4:17, 7:19, 9:16, 13:16, 13:17, 25:6, 26:3
**discovered** [2] - 8:1, 32:4
**discovery** [12] - 8:9, 8:10, 11:10, 32:2, 40:7, 41:9, 41:22, 42:1, 42:7, 42:18, 43:1
**discretion** [4] - 7:6, 14:16, 16:5, 26:6
**Discussion** [16] - 5:3,

5:7, 5:15, 5:24, 6:12, 6:18, 6:22, 8:3, 8:15, 8:17, 9:20, 35:11, 38:12, 44:12, 45:3, 45:16
**discussions** [1] - 37:24
**dismaying** [1] - 16:8
**dispute** [2] - 4:22, 38:10
**Dist** [1] - 6:1
**distinction** [1] - 21:5
**distress** [1] - 32:14
**distressing** [3] - 3:21, 33:9
**DISTRIBUTION** [1] - 1:12
**district** [2] - 5:21, 29:20
**DISTRICT** [2] - 1:1, 1:2
**District** [1] - 6:23
**docket** [1] - 45:19
**document** [14] - 11:14, 11:16, 19:9, 20:11, 20:24, 21:2, 34:3, 34:4, 34:6, 34:16, 36:10, 36:11, 37:19, 44:8
**document's** [1] - 35:5
**documents** [25] - 11:16, 12:17, 15:16, 15:17, 18:10, 18:24, 18:25, 19:2, 19:6, 20:5, 20:23, 20:24, 21:8, 21:21, 21:24, 22:22, 23:2, 24:13, 44:2, 44:4, 44:8, 44:10, 44:22, 45:21, 46:3
**done** [7] - 7:23, 15:25, 28:19, 31:3, 36:15, 37:17, 40:11
**door** [1] - 14:19
**doorstep** [1] - 30:8
**doubt** [3] - 25:21, 30:3, 32:8
**down** [1] - 42:3
**drabs** [1] - 15:20
**Draconian** [1] - 16:7
**dragging** [1] - 43:7
**dribs** [1] - 15:20
**Drive** [1] - 2:9
**Dropbox** [1] - 15:22

**E**

**e-mail** [6] - 2:7, 2:10, 2:17, 2:18, 2:18, 17:14

**ear** [2] - 14:6, 14:9
**Earth** [3] - 8:12, 27:20
**easier** [1] - 4:18
**easily** [1] - 28:18
**Eastern** [1] - 6:23
**easy** [3] - 4:5, 4:11, 33:1
**effect** [1] - 21:11
**either** [4] - 10:8, 11:14, 22:1, 22:25
**El** [1] - 2:9
**electronically** [1] - 15:22
**eleventh** [1] - 26:8
**eliminated** [1] - 42:2
**Elsevier** [1] - 5:20
**ELSEVIER** [1] - 5:20
**end** [4] - 6:7, 9:8, 15:18, 28:22
**ends** [1] - 38:1
**entire** [1] - 24:20
**entirety** [1] - 20:17
**entitled** [7] - 8:9, 12:7, 13:20, 19:10, 36:6, 37:13, 37:14
**entries** [2] - 35:8, 41:13
**ephemeral** [1] - 25:10
**equals** [2] - 10:7, 10:9
**especially** [2] - 13:9, 36:20
**estimate** [2] - 41:6, 41:11
**et** [1] - 7:24
**eternal** [1] - 17:6
**evaluate** [1] - 15:1
**ever-present** [1] - 4:24
**evidence** [4] - 15:8, 23:16, 23:17, 23:18
**Evidence** [1] - 5:5
**evidentiary** [1] - 23:24
**exactly** [3] - 20:14, 24:9, 28:19
**except** [1] - 28:11
**exceptional** [22] - 4:6, 8:9, 8:22, 10:11, 10:12, 25:5, 25:9, 25:16, 26:2, 27:25, 29:24, 29:25, 30:1, 30:13, 31:14, 32:16, 32:17, 33:4, 35:15, 36:24, 38:16, 39:18
**exceptionally** [1] - 17:5
**excerpting** [1] - 7:11
**exchanged** [3] - 12:17, 14:21, 42:6
**exclude** [1] - 23:18
**excluded** [1] - 23:11
**excuse** [2] - 11:2, 23:2

**exist** [1] - 37:1
**exists** [2] - 15:2, 36:25
**expanse** [1] - 38:21
**expansive** [4] - 25:8, 25:10, 27:22, 38:22
**expected** [1] - 44:18
**expense** [1] - 18:8
**experience** [1] - 17:4
**explaining** [1] - 8:22
**extend** [1] - 7:12
**extensive** [2] - 29:6, 42:8
**extent** [2] - 4:21, 7:1
**extraneous** [3] - 38:17, 42:2

**F**

**F.3rd** [1] - 8:19
**F.Supp** [2] - 21:17, 21:18
**faced** [1] - 40:20
**facet** [1] - 7:17
**facets** [1] - 7:16
**fact** [1] - 36:22
**factors** [1] - 9:4
**facts** [1] - 9:2
**factual** [1] - 9:5
**failed** [3] - 14:14, 14:24, 35:22
**failing** [1] - 20:18
**fair** [4] - 5:13, 14:7, 14:8, 35:1
**fairly** [2] - 12:3, 9:10
**fairness** [5] - 5:10, 5:11, 6:6, 6:8, 7:25
**faith** [2] - 36:25, 37:3
**faith-y** [1] - 37:3
**fall** [3] - 22:1, 25:4, 25:24
**falls** [2] - 23:4, 23:11
**familiar** [1] - 35:20
**far** [1] - 11:20
**faster** [1] - 44:14
**Fax** [1] - 2:6
**February** [4] - 16:19, 17:10, 17:11, 17:22
**federal** [2] - 21:5, 21:6
**Federal** [2] - 1:23, 5:5
**fee** [1] - 47:5
**feely** [2] - 4:20, 10:14
**fees** [1] - 47:5
**felt** [1] - 26:18
**few** [1] - 28:11
**field** [1] - 26:14
**fight** [3] - 18:11, 22:25, 44:7
**fighting** [4] - 20:7, 32:13, 44:22

**figure** [1] - 27:4
**file** [3] - 11:18, 44:21, 45:22
**files** [2] - 7:7, 10:1
**finally** [1] - 45:14
**fine** [8] - 38:24, 38:25, 43:15, 43:16, 44:23, 44:24, 45:24
**finish** [1] - 43:18
**FIRST** [1] - 1:17
**first** [4] - 11:12, 16:23, 17:1, 17:21
**fit** [2] - 4:6, 30:20
**Fitness** [1] - 27:20
**fly** [1] - 30:22
**focus** [2] - 10:25, 11:3
**focused** [1] - 12:22
**follow** [1] - 41:22
**follow-up** [1] - 41:22
**following** [2] - 44:22, 46:3
**footnote** [3] - 5:8, 5:9, 5:18
**for-instance** [1] - 24:22
**foregoing** [1] - 47:2
**forgive** [1] - 43:16
**form** [1] - 44:19
**fortunately** [1] - 36:17
**forum** [1] - 4:7
**four** [11] - 12:5, 15:5, 17:19, 19:8, 19:19, 20:7, 20:11, 20:12, 25:4, 28:3, 31:7
**four-category** [1] - 19:19
**fox** [1] - 31:22
**frankly** [1] - 26:16
**friction** [1] - 45:13
**frivolousness** [1] - 9:4
**front** [2] - 16:17, 21:19
**frustration** [1] - 16:15
**full** [1] - 26:25
**function** [1] - 32:15

**G**

**Gail** [1] - 12:18
**Gandhi** [3] - 16:19, 17:4, 22:9
**Gatien** [4] - 2:8, 2:8, 3:14, 21:23
**GATIEN** [8] - 3:14, 12:16, 21:14, 21:19, 21:25, 22:5, 27:11, 39:6
**generally** [1] - 5:22
**generous** [1] - 26:9
**gentlemen** [2] - 5:16,

45:1
**given** [8] - 7:17, 9:12,
19:5, 26:7, 26:8,
28:11, 29:12, 34:13
**Glen** [1] - 34:18
**golly** [1] - 44:14
**governing** [1] - 9:1
**granting** [1] - 33:12
**group** [1] - 11:16
**guess** [1] - 10:2

## H

**Handgards** [1] - 21:15
**HANDGARDS** [1] -
21:16
**handle** [1] - 22:18
**handled** [2] - 16:10,
35:19
**hard** [1] - 11:5
**Hardware** [1] - 5:19
**headache** [1] - 18:8
**heaps** [1] - 24:13
**hear** [4] - 3:11, 33:13,
37:20, 42:15
**heard** [1] - 25:20
**hearing** [5] - 13:16,
28:20, 29:19, 42:13,
42:15
**HEARING** [1] - 1:16
**hearings** [5] - 7:22,
9:11, 9:13, 10:20,
25:2
**heck** [1] - 9:22
**held** [1] - 7:23
**help** [3] - 36:3, 36:4,
45:9
**hereby** [1] - 47:2
**hide** [1] - 18:23
**high** [1] - 32:21
**Hills** [1] - 2:9
**holidays** [1] - 29:7
**Honor** [45] - 3:9, 3:16,
11:7, 13:23, 16:15,
19:23, 20:14, 21:15,
21:20, 21:25, 22:1,
22:16, 23:1, 23:7,
23:14, 24:4, 27:12,
27:15, 27:19, 28:6,
28:19, 29:1, 29:13,
30:12, 30:23, 30:24,
31:10, 31:16, 34:2,
35:2, 37:18, 37:23,
38:10, 38:24, 40:2,
40:11, 41:17, 43:2,
43:21, 45:4, 45:7,
45:15, 46:7, 46:8,
46:9
**HONORABLE** [1] - 1:4

**hope** [1] - 17:6
**hour** [1] - 26:9
**hours'** [1] - 41:12
**hundreds** [3] - 31:4,
35:8
**hypothetically** [1] -
24:25

## I

**idea** [2] - 44:6
**identified** [5] - 5:12,
8:11, 19:22, 29:18,
34:7
**identify** [11] - 11:3,
11:15, 13:5, 22:22,
29:23, 30:21, 39:12,
39:16, 39:17, 44:17
**identifying** [1] - 30:24
**Illinois** [1] - 5:21
**immunity** [1] - 6:25
**impact** [1] - 40:23
**important** [2] - 13:23,
21:16
**Inc** [4] - 5:20, 8:12,
21:16
**inception** [4] - 7:16,
7:22, 9:10
**inclined** [1] - 9:14
**include** [2] - 19:12,
41:22
**included** [1] - 25:17
**including** [1] - 9:4
**indeed** [1] - 19:16
**indefinite** [1] - 4:21
**information** [7] - 6:3,
6:4, 12:23, 24:6,
34:25, 35:14
**informed** [2] - 21:4,
30:14, 35:21
**informs** [1] - 7:14
**infrequently** [1] - 13:6
**infringement** [1] - 7:4
**infringer** [1] - 7:5
**inherent** [1] - 36:23
**initial** [3] - 7:17, 11:9,
15:12
**input** [1] - 7:23
**insist** [1] - 22:20
**instance** [5] - 13:25,
24:22, 28:7, 31:7,
37:23
**instead** [1] - 43:10
**internally** [1] - 42:6
**interpretation** [1] -
16:2
**introduces** [1] - 23:16
**investigation** [1] -
34:9

**invoices** [1] - 37:24
**invoke** [1] - 25:4
**involved** [2] - 36:17,
36:18
**ironing** [1] - 45:12
**Irvine** [1] - 2:16
**isolate** [1] - 44:5
**issue** [8] - 4:9, 6:8,
6:11, 10:22, 26:10,
37:8, 39:18, 42:20
**issued** [2] - 20:2,
42:22
**issues** [7] - 9:25, 29:8,
30:4, 31:6, 31:7,
45:8, 45:9
**items** [2] - 28:11, 31:5
**itself** [2] - 7:2, 31:15

## J

**JANUARY** [1] - 1:18
**January** [2] - 3:1,
16:18
**Johnson** [2] - 21:16
**joint** [2] - 40:1, 45:25
**Jr** [1] - 2:14
**JUDGE** [1] - 1:4
**Judge** [5] - 3:25,
16:19, 17:4, 22:9,
28:10
**judge** [10] - 22:1, 22:3,
22:6, 22:9, 22:17,
23:1, 23:22, 32:3,
35:19, 36:18
**judgment** [1] - 28:9
**judicial** [1] - 47:7
**jumped** [1] - 3:23
**juncture** [1] - 8:23
**jury** [1] - 32:3
**justifies** [1] - 27:25

## K

**Karl** [1] - 2:8
**Katie** [1] - 14:19
**Kato** [4] - 22:12,
22:13, 22:15, 27:10
**Keats** [1] - 2:8
**keep** [2] - 4:23, 39:24
**KELLER** [1] - 1:4
**Kenly** [1] - 22:15
**kg@keatsgatien.
com** [1] - 2:10
**KIELWASSER** [1] -
1:22
**Kielwasser** [2] -
47:10, 47:11
**kind** [9] - 4:17, 4:25,

6:9, 10:10, 10:13,
24:10, 25:11, 36:15,
37:10
**knowing** [1] - 6:2
**Konrad** [2] - 2:8, 3:14

## L

**laborious** [1] - 36:14
**last** [3] - 12:15, 12:16,
17:14
**late** [1] - 12:16
**LAW** [3] - 3:25, 4:3,
5:2
**law** [7] - 5:12, 6:14,
7:14, 9:1, 13:13,
21:6
**lawyer** [3] - 17:25,
36:17, 36:19
**lawyers** [1] - 17:22
**lead** [2] - 17:15, 39:13
**lead-in** [1] - 39:13
**least** [4] - 4:19, 11:18,
20:6, 45:12
**leave** [3] - 13:8, 19:6,
19:7
**leaves** [1] - 26:5
**left** [1] - 26:14
**left-field** [1] - 26:14
**legal** [1] - 9:5
**less** [2] - 44:24, 47:5
**letter** [2] - 44:21,
44:23
**letters** [1] - 45:18
**level** [1] - 11:19
**leveled** [1] - 26:7
**LEXIS** [1] - 6:1
**limine** [1] - 31:6
**limit** [1] - 25:19
**limitations** [1] - 10:23
**limiting** [1] - 34:14
**line** [2] - 6:19, 7:25
**liner** [1] - 33:20
**list** [3] - 9:4, 10:13,
20:24
**listen** [1] - 24:21
**listing** [1] - 20:10
**lists** [1] - 18:24
**litigating** [1] - 9:1
**litigation** [4] - 7:7,
27:1, 28:9, 36:21
**LLC** [1] - 1:12
**lli@brownwegner.
com** [1] - 2:18
**LLP** [2] - 2:8, 2:15
**log** [40] - 9:21, 9:22,
10:2, 12:13, 12:17,
13:4, 13:5, 15:10,
18:21, 18:23, 18:24,

19:7, 19:11, 20:3,
20:6, 20:10, 20:20,
21:1, 21:3, 21:7,
22:23, 22:24, 26:25,
29:15, 29:17, 31:8,
31:18, 31:19, 32:9,
32:11, 32:24, 34:1,
36:7, 36:20, 37:24,
41:6, 42:7, 44:20,
46:3
**log's** [1] - 31:1
**logistical** [1] - 45:9
**logs** [7] - 12:18, 16:9,
16:10, 24:15, 28:21,
43:24, 44:4
**look** [15] - 19:20, 21:7,
21:8, 22:24, 23:1,
30:5, 30:7, 32:11,
36:14, 37:2, 43:24,
44:3, 44:4, 44:20,
46:4
**looked** [4] - 4:9, 15:3,
28:1
**looking** [4] - 27:20,
30:5, 36:3, 36:9
**Los** [3] - 1:17, 1:24,
2:5

## M

**magistrate** [14] -
16:17, 22:1, 22:3,
22:6, 22:7, 22:14,
22:17, 23:1, 23:22,
27:4, 27:5, 27:6,
29:19, 35:19
**Magistrate** [1] - 22:9
**magistrate's** [2] -
35:25, 36:1
**mail** [6] - 2:7, 2:10,
2:17, 2:18, 2:18,
17:14
**Main** [1] - 2:16
**majority** [2] - 28:7,
38:4
**makework** [1] - 35:3
**man** [1] - 35:22
**Manufacturers** [1] -
5:19
**marching** [1] - 39:22
**marginal** [1] - 38:7
**material** [3] - 26:15,
38:18, 41:20
**materials** [1] - 6:5
**Matt** [1] - 3:16
**matter** [15] - 6:6, 7:11,
10:23, 11:9, 11:11,
14:1, 14:13, 21:3,
25:2, 29:1, 29:11,

36:22, 37:19, 42:17, 47:4
**matters** [1] - 7:12
**Matthew** [1] - 2:15
**mean** [12] - 13:6, 13:18, 18:4, 18:14, 18:24, 19:16, 20:22, 29:14, 35:17, 35:22, 42:9
**means** [3] - 11:23, 12:12, 12:21
**meant** [1] - 8:20
**meet** [7] - 11:22, 14:12, 14:14, 14:24, 20:19, 29:7, 33:21
**meet-and-confer** [1] - 29:7
**Michael** [4] - 2:4, 2:4, 3:9, 3:12
**microphone** [2] - 14:3, 14:4
**might** [3] - 4:2, 19:9, 38:13
**mind** [3] - 4:23, 29:17, 35:25
**minds** [1] - 33:3
**minimize** [1] - 45:13
**minute** [1] - 27:18
**modified** [2] - 41:4, 41:13
**modify** [2] - 33:16, 38:14
**moment** [2] - 8:10, 11:14
**month** [2] - 42:11
**months** [1] - 15:19
**MORNING** [1] - 1:17
**most** [1] - 8:8
**motion** [15] - 6:16, 11:21, 12:21, 14:15, 16:4, 18:20, 20:17, 24:12, 33:12, 33:13, 33:14, 33:15, 33:16, 33:20
**MOTION** [1] - 1:16
**motions** [1] - 31:6
**motivation** [1] - 9:4
**move** [2] - 16:19, 43:7
**moving** [1] - 18:18
**MR** [107] - 3:9, 3:12, 3:14, 3:16, 3:18, 11:7, 11:9, 12:12, 12:16, 12:20, 13:3, 13:11, 13:23, 14:5, 14:8, 14:11, 14:18, 14:22, 15:11, 16:4, 16:11, 16:14, 16:18, 16:24, 17:1, 17:13, 17:16, 17:17, 18:3, 18:7, 19:4, 19:13,

19:23, 20:14, 21:12, 21:14, 21:19, 21:25, 22:5, 22:6, 22:9, 22:16, 23:4, 23:7, 23:14, 24:4, 24:8, 27:11, 27:12, 27:15, 27:18, 28:19, 28:25, 29:6, 29:13, 29:21, 30:4, 30:11, 30:23, 31:2, 31:3, 31:4, 31:12, 31:16, 32:23, 33:14, 33:20, 33:24, 34:12, 34:15, 34:22, 34:24, 35:2, 37:17, 37:23, 38:23, 39:6, 39:10, 39:15, 40:2, 40:9, 40:10, 40:16, 40:19, 41:11, 41:17, 43:2, 43:5, 43:12, 43:15, 43:18, 43:20, 43:23, 44:7, 44:13, 44:19, 44:24, 45:2, 45:4, 45:14, 45:20, 45:24, 46:2, 46:5, 46:7, 46:8, 46:9
**mucking** [1] - 32:13
**mundane** [1] - 33:17
**murky** [1] - 6:9
**mushy** [2] - 4:20, 10:6
**must** [1] - 39:12
**mwegner@ brownwegner.com** [1] - 2:18
**myriad** [1] - 9:24

## N

**name** [3] - 7:19, 22:13, 45:21
**nature** [1] - 13:1
**nearly** [1] - 15:19
**need** [2] - 9:6, 17:8
**needed** [3] - 28:21, 42:25, 43:9
**needs** [2] - 32:3, 41:20, 41:21
**negative** [1] - 35:15
**new** [6] - 27:8, 27:9, 27:10, 27:12, 30:10
**next** [2] - 15:16, 20:19
**nicely** [1] - 39:23
**night** [3] - 12:15, 12:16, 17:14
**nine** [1] - 27:24
**Ninth** [4] - 6:9, 8:2, 8:12, 8:19
**nonexclusive** [1] - 9:3
**nooks** [1] - 30:16
**nothing** [2] - 31:10,

38:1
**notice** [2] - 4:16, 6:16
**November** [1] - 15:15
**nowhere** [2] - 26:13, 26:14
**number** [6] - 34:16, 39:3, 39:15, 39:16, 41:12, 41:13
**Numbers** [1] - 35:6
**Nuttall** [5] - 7:17, 15:18, 28:8, 28:13, 34:18
**Nuttall's** [1] - 12:17

## O

**objected** [1] - 44:17
**objection** [2] - 17:25, 23:19
**objective** [1] - 9:5
**objects** [1] - 23:16
**observation** [1] - 35:24
**observed** [1] - 35:18
**obviously** [4] - 4:17, 7:19, 13:7, 36:13
**Octane** [1] - 27:20
**odd** [1] - 24:19
**odds** [1] - 38:1
**OF** [3] - 1:2, 2:3, 2:13
**office** [1] - 43:14
**officers** [1] - 19:16
**official** [1] - 47:11
**Official** [1] - 1:23
**omnibus** [1] - 33:16
**ON** [2] - 2:3, 2:13
**once** [1] - 7:21
**one** [30] - 8:24, 10:17, 12:14, 13:8, 14:6, 14:7, 17:15, 18:4, 19:8, 21:10, 21:19, 23:22, 24:25, 25:1, 25:2, 27:19, 30:6, 30:11, 30:18, 32:20, 34:1, 35:12, 36:2, 37:5, 38:13, 39:1, 42:6, 43:5, 45:2, 45:6
**one-liner** [1] - 32:20
**ones** [1] - 11:10
**open** [2] - 24:20, 25:22
**opponent** [1] - 7:6
**opportunity** [1] - 24:18
**opposing** [2] - 23:16, 29:2
**Orange** [1] - 22:7
**order** [8] - 15:13,

15:15, 22:21, 23:12, 40:14, 41:2, 41:4, 42:13
**Order** [1] - 33:18
**ordering** [1] - 42:14
**orders** [1] - 39:23
**original** [1] - 19:25
**ought** [1] - 6:6
**outside** [1] - 20:11
**owners** [1] - 17:22
**Oz** [1] - 16:17

## P

**p.m** [1] - 3:1
**P.M** [1] - 1:18
**page** [5] - 6:16, 6:17, 6:19, 8:14, 8:18
**paid** [2] - 37:25, 38:1
**paper** [1] - 44:25
**papers** [1] - 9:18
**paren** [2] - 38:22
**part** [8] - 4:11, 4:18, 5:6, 13:21, 16:14, 22:18, 26:6, 42:15
**part's** [1] - 39:7
**participating** [1] - 16:20
**particular** [5] - 9:6, 12:24, 25:23, 25:24, 40:24
**particularly** [3] - 26:6, 26:8, 45:6
**parties** [2] - 6:14, 16:20
**parties'** [1] - 8:25
**parts** [1] - 18:18
**party** [6] - 6:24, 13:8, 13:9, 23:16, 32:3
**past** [1] - 7:22
**pausing** [1] - 5:16
**penumbra** [1] - 29:25
**people** [6] - 18:15, 32:13, 36:21, 37:25, 41:14, 43:13
**perhaps** [2] - 42:14
**period** [2] - 19:12, 27:1
**permitted** [1] - 11:4
**person** [2] - 18:9, 28:6, 32:17
**personal** [1] - 32:18
**personally** [2] - 18:2, 33:8
**phase** [4] - 31:10, 31:11, 31:12, 31:13
**Phillips** [1] - 28:10
**phone** [2] - 17:16, 17:17

**phonetically** [1] - 12:19
**pillage** [1] - 7:7
**place** [1] - 4:8
**PLAINTIFF** [1] - 2:3
**plaintiff** [10] - 3:10, 3:13, 3:14, 16:1, 18:9, 25:1, 26:8, 26:17, 33:10, 42:21
**plaintiffs** [1] - 1:10
**plenary** [2] - 13:15, 13:25
**plus** [2] - 10:7, 10:8
**point** [11] - 4:4, 9:23, 15:24, 17:8, 20:14, 24:10, 24:11, 27:15, 32:15, 39:1, 40:18
**points** [3] - 9:9, 27:19, 27:24
**poison** [1] - 23:12
**pornography** [1] - 25:12
**posed** [1] - 19:25
**position** [3] - 9:1, 15:1, 16:1
**possibility** [2] - 17:9, 18:7
**possible** [1] - 40:4
**possibly** [1] - 16:1
**potential** [1] - 33:2
**Potter** [1] - 25:11
**Power** [1] - 8:12
**practical** [1] - 14:1
**practically** [1] - 23:5
**preface** [3] - 34:21, 36:7, 39:13
**preparation** [1] - 7:23
**prepared** [1] - 17:11
**prerogative** [1] - 20:13
**present** [2] - 4:24, 38:9
**PRESIDING** [1] - 1:4
**presume** [1] - 26:1
**pretty** [2] - 5:21, 28:18
**principally** [1] - 4:22
**principle** [1] - 11:25
**principles** [1] - 12:1
**privilege** [35] - 4:7, 6:15, 6:25, 9:21, 12:13, 12:17, 12:18, 13:1, 13:13, 18:21, 18:23, 18:24, 19:7, 19:11, 20:3, 20:6, 20:10, 20:20, 20:25, 21:3, 21:7, 22:23, 24:15, 24:20, 28:21, 31:18, 31:19, 31:20, 31:23, 36:7, 36:20, 43:24, 44:20, 46:3
**privileged** [3] - 6:3,

6:4, 24:6
**privy** [1] - 36:2
**problem** [6] - 19:14, 20:9, 25:7, 30:23, 37:3, 37:6
**problems** [2] - 32:2
**procedural** [2] - 20:18, 48:9
**procedure** [3] - 10:3, 14:14, 22:18
**Proceedings** [2] - 1:16, 46:11
**proceedings** [1] - 47:3
**process** [1] - 23:8
**produce** [8] - 12:6, 12:7, 15:5, 15:15, 16:6, 20:23, 38:5, 38:15
**produced** [8] - 12:18, 15:17, 15:21, 15:23, 24:14, 38:4, 38:5, 42:1
**producing** [1] - 15:6
**product** [3] - 5:11, 6:25, 10:22
**production** [6] - 15:2, 15:13, 15:20, 24:13, 30:19, 43:25
**promise** [1] - 24:14
**proof** [6] - 11:11, 11:22, 12:10, 14:11, 14:24, 20:19
**proper** [1] - 11:24
**properly** [1] - 23:10
**property** [1] - 9:11
**propose** [2] - 16:10, 21:23
**propriety** [2] - 7:18, 32:7
**Protective** [1] - 33:18
**provide** [1] - 12:22
**provided** [1] - 11:23
**pull** [1] - 4:2
**purposes** [1] - 33:4
**put** [13] - 4:13, 4:16, 15:8, 15:21, 15:25, 20:2, 20:6, 30:11, 31:18, 31:19, 41:5, 41:6, 45:18
**putting** [2] - 32:9, 36:19

## Q

**quash** [2] - 24:12, 36:6
**questions** [1] - 45:5
**quick** [1] - 35:22
**quickly** [1] - 41:23

**quite** [1] - 13:7
**quote** [6] - 6:4, 6:7, 6:19, 8:21, 9:8, 10:24
**quoted** [1] - 6:10
**quotes** [2] - 4:23, 10:24

## R

**range** [2] - 25:17, 25:19
**rather** [1] - 44:3
**read** [3] - 10:23, 23:11, 25:20
**reading** [1] - 6:15
**real** [1] - 45:9
**reality** [3] - 18:17, 35:16, 35:18
**really** [4] - 11:5, 38:6, 45:7, 45:11
**reason** [2] - 24:1, 24:4
**reasonable** [2] - 33:3, 41:9
**reasonably** [1] - 41:8
**reasonably/arguably** [1] - 39:18
**received** [2] - 4:11, 17:14
**receiving** [1] - 35:14
**recess** [1] - 46:10
**recognize** [1] - 3:6
**record** [18] - 5:3, 5:7, 5:15, 5:24, 6:12, 6:18, 6:22, 8:3, 8:15, 8:17, 9:20, 30:12, 35:11, 38:12, 42:17, 44:12, 45:3, 45:16
**recorded** [1] - 47:3
**reduction** [1] - 47:6
**reed** [1] - 5:19
**referred** [1] - 8:11
**refers** [1] - 5:18
**refusing** [1] - 20:23
**regard** [3] - 4:8, 8:21, 17:7
**regarding** [3] - 4:9, 7:18, 37:11
**regards** [3] - 26:25, 32:3, 35:15
**regulations** [1] - 47:7
**rejoin** [1] - 40:7
**related** [2] - 9:15, 38:16
**relates** [2] - 36:8, 39:18
**relating** [2] - 6:14, 7:10
**relevance** [3] - 7:1,

30:12, 33:4
**rely** [1] - 28:2
**remember** [1] - 34:14
**rendition** [1] - 42:7
**repeatedly** [1] - 5:12
**report** [2] - 40:10, 40:12
**Reporter** [2] - 1:23, 47:11
**REPORTER** [1] - 37:20
**Reporter's** [1] - 1:16
**request** [10] - 20:1, 21:21, 34:1, 34:4, 34:16, 39:3, 45:20, 45:23, 45:25, 46:1
**requested** [1] - 41:8
**requests** [7] - 14:23, 20:5, 20:21, 20:24, 24:19, 35:7, 41:12
**required** [1] - 35:5
**requires** [1] - 6:3
**reschedule** [1] - 41:2
**resisting** [1] - 11:10
**respect** [1] - 8:25
**respond** [8] - 12:20, 14:22, 20:21, 22:21, 28:1, 28:4, 44:10, 44:17
**responding** [1] - 20:22
**response** [3] - 13:9, 38:20, 40:1
**responsive** [8] - 18:25, 20:5, 20:23, 23:2, 34:8, 34:17, 34:23, 35:6
**return** [1] - 19:24
**review** [10] - 21:15, 21:21, 21:24, 23:9, 27:2, 27:3, 35:25, 41:19, 41:23, 44:11
**reviewed** [2] - 10:2, 41:20
**reviewing** [1] - 35:14
**rife** [1] - 32:1
**Room** [1] - 1:23
**RPR** [2] - 1:22, 47:11
**rule** [5] - 16:2, 18:16, 18:17, 23:17, 23:18
**ruled** [1] - 28:10
**rules** [1] - 23:17
**ruling** [12] - 8:7, 10:4, 13:15, 13:25, 18:5, 23:24, 26:12, 35:21, 39:11, 45:20, 45:23, 46:2
**rummage** [1] - 7:6
**run** [1] - 10:21
**running** [1] - 42:18

## S

**Sacramento** [3] - 6:20, 6:21, 6:23
**sandbagged** [2] - 29:3, 29:5
**saw** [1] - 28:6
**scenario** [1] - 24:12
**scheduled** [2] - 17:20, 42:20
**scope** [8] - 6:14, 7:9, 24:16, 24:17, 24:22, 30:14, 31:20, 31:23
**second** [5] - 11:13, 29:22, 35:9, 37:7, 38:11
**see** [14] - 20:20, 22:25, 23:2, 23:13, 24:7, 25:13, 25:15, 27:13, 28:24, 29:1, 33:11, 34:3, 34:9, 34:20
**seeing** [1] - 16:25
**seeking** [1] - 23:12
**seeks** [1] - 5:9
**segment** [1] - 7:15
**segue** [1] - 7:21
**sense** [3] - 13:7, 34:9, 38:19
**sequence** [1] - 43:24
**SESSIONS** [1] - 1:17
**set** [2] - 17:10, 42:18
**setting** [1] - 40:20
**settlement** [3] - 16:20, 22:10, 27:6
**several** [1] - 4:8
**Shields** [1] - 12:19
**shift** [1] - 14:12
**shifts** [1] - 12:9
**ship** [1] - 3:24
**short** [1] - 40:3
**showing** [1] - 37:3
**side** [1] - 24:10
**side's** [1] - 27:23
**similarly** [1] - 17:3
**simple** [1] - 16:5
**simply** [1] - 8:24
**situation** [1] - 14:25
**six** [1] - 17:20
**skilled** [1] - 17:5
**slash** [1] - 4:20
**sobeit** [1] - 23:23
**Solar** [1] - 8:12
**solution** [4] - 19:25, 20:8, 20:16, 20:19
**some-odd** [1] - 24:19
**something's** [1] - 25:22
**sorry** [6] - 5:16, 5:22, 17:17, 24:21, 37:22,

45:2
**sort** [1] - 43:7
**sought** [3] - 4:16, 4:17, 8:20
**South** [1] - 2:9
**speaking** [1] - 23:6
**specific** [4] - 11:14, 11:17, 34:3, 39:3
**specifically** [1] - 9:3
**specifics** [1] - 13:2
**spelled** [1] - 12:19
**spoken** [1] - 6:10
**springs** [1] - 17:6
**square** [1] - 18:14
**stages** [2] - 4:12, 4:21
**standard** [2] - 7:9, 27:21
**stands** [1] - 8:24
**start** [4] - 10:17, 17:10, 22:16, 28:8
**starting** [4] - 11:11, 27:7, 27:13, 35:20
**state** [3] - 3:8, 21:6, 35:25
**statement** [3] - 5:14, 25:18, 36:10
**States** [1] - 47:7
**STATES** [1] - 1:1
**status** [2] - 40:10, 40:12
**STEAM** [1] - 1:12
**stenographically** [1] - 47:3
**step** [1] - 11:12
**steps** [1] - 35:23
**Stewart** [1] - 25:11
**still** [2] - 18:19, 32:2
**strategies** [1] - 7:7
**strategy** [8] - 13:19, 13:20, 31:6, 37:8, 37:11, 37:13, 37:14
**Street** [2] - 1:23, 2:16
**strength** [1] - 8:25
**strenuous** [1] - 7:12
**stress** [1] - 6:4
**stuff** [12] - 15:21, 28:5, 29:7, 31:5, 32:20, 32:23, 37:24, 38:3, 38:4, 38:7, 40:11, 45:12
**subject** [10] - 6:6, 7:11, 10:23, 21:3, 29:1, 29:11, 29:17, 37:19, 38:10
**submit** [1] - 44:21
**subpoena** [4] - 34:18, 39:4, 39:15, 39:17
**subpoenas** [3] - 20:2, 24:20, 33:17
**substantiate** [1] -

21:20
**substantive** [3] - 8:25, 33:1, 33:3
**sufficient** [1] - 11:20
**suggest** [3] - 16:3, 19:25, 41:1
**suggested** [1] - 20:16
**suggestions** [1] - 43:3
**Suite** [3] - 2:5, 2:9, 2:16
**summary** [1] - 28:9
**Sun** [2] - 8:12, 27:20
**sun** [1] - 8:12
**Sunset** [1] - 2:5
**suppose** [2] - 10:3, 36:11
**supposed** [1] - 28:20
**Supreme** [10] - 6:9, 6:10, 8:1, 8:11, 8:18, 8:22, 10:12, 25:18, 29:18, 39:19
**surprised** [2] - 38:8, 38:10
**sustain** [1] - 23:18

---

### T

**technical** [1] - 45:8
**telephone** [1] - 1:24
**term** [1] - 33:17
**terms** [3] - 37:18, 43:23, 44:19
**testimony** [1] - 19:4
**Texas** [1] - 40:25
**THE** [109] - 2:3, 2:13, 3:5, 3:11, 3:19, 4:1, 4:4, 5:4, 5:8, 5:16, 5:25, 6:13, 6:19, 6:23, 8:4, 8:16, 8:18, 9:21, 11:8, 12:11, 12:25, 13:4, 13:12, 14:3, 14:6, 14:10, 14:17, 14:19, 15:10, 16:3, 16:7, 16:12, 16:16, 16:22, 16:25, 17:12, 17:24, 18:4, 19:2, 19:11, 19:15, 20:13, 21:10, 21:13, 21:18, 21:23, 22:3, 22:7, 22:11, 22:13, 23:3, 23:5, 23:8, 24:1, 24:7, 24:21, 27:10, 27:13, 27:17, 28:17, 28:23, 29:5, 29:12, 29:16, 29:22, 30:5, 30:15, 30:25, 31:11, 31:14, 31:21, 32:25, 33:19, 33:23, 34:11, 34:13, 34:20,

---

34:23, 35:1, 35:9, 35:12, 37:20, 37:22, 38:11, 38:13, 39:5, 39:8, 39:11, 39:16, 40:5, 40:13, 40:17, 40:21, 41:16, 41:18, 43:4, 43:11, 43:19, 43:22, 44:6, 44:9, 44:16, 44:23, 45:1, 45:17, 45:23, 45:25, 46:4, 46:6
**theirs** [2] - 11:12, 14:1
**there'd** [1] - 36:20
**therefore** [1] - 20:12
**they've** [6] - 15:3, 15:12, 15:21, 15:25, 33:10
**thinking..** [1] - 37:16
**thorough** [2] - 16:22, 17:3
**thoroughly** [1] - 17:2
**three** [3] - 17:19, 43:6, 43:10
**Thursday** [1] - 3:1
**THURSDAY** [1] - 1:18
**tie** [1] - 34:3
**tied** [1] - 39:3
**tired** [1] - 32:12
**today** [2] - 12:14, 17:8
**together** [4] - 6:7, 32:9, 36:19, 41:6
**took** [3] - 15:4, 24:18, 27:23
**topic** [3] - 34:7, 39:15, 39:16
**Topic** [1] - 34:17
**topics** [6] - 12:5, 15:5, 20:2, 20:12, 22:21, 28:3
**totality** [3] - 8:20, 27:21, 30:13
**touch** [1] - 40:17
**touchy** [2] - 4:20, 10:14
**touchy-feely** [2] - 4:20, 10:14
**Transcript** [1] - 1:16
**transcript** [2] - 47:3, 47:5
**tremendous** [1] - 35:3
**trial** [14] - 15:14, 17:9, 17:19, 18:15, 23:10, 23:15, 23:20, 23:25, 24:9, 31:5, 31:13, 39:24, 39:25, 40:20
**tried** [1] - 14:12
**true** [1] - 47:2
**trust** [3] - 9:23, 13:8, 13:10
**truth** [1] - 35:17

---

**try** [8] - 3:21, 14:2, 14:12, 24:20, 42:12, 42:22, 44:14
**trying** [4] - 10:11, 18:3, 18:13, 18:14
**Tuesday** [1] - 15:15
**turn** [1] - 32:13
**turned** [1] - 28:14
**two** [6] - 15:19, 27:19, 41:14, 43:2, 43:5, 43:9
**type** [5] - 10:7, 25:10, 25:15, 25:25, 32:23
**typical** [1] - 24:12

---

### U

**umm** [1] - 9:15
**under** [3] - 26:20, 27:20, 30:15
**underlying** [1] - 23:1
**unfairly** [1] - 12:9
**unfettered** [1] - 7:6
**unfortunately** [1] - 21:25
**unique** [1] - 14:25
**uniquely** [1] - 15:1
**United** [1] - 47:7
**UNITED** [1] - 1:1
**unless** [1] - 39:24
**unreasonableness** [1] - 9:5
**unwilling** [1] - 20:17
**up** [13] - 4:1, 4:2, 4:24, 9:25, 15:16, 17:9, 22:11, 28:2, 28:9, 40:23, 41:22, 43:8, 44:13
**upfront** [1] - 24:15
**US** [1] - 6:1

---

### V

**vacate** [3] - 16:12, 39:24, 39:25
**Vapes** [2] - 9:11, 17:23
**various** [7] - 4:12, 7:16, 7:22, 9:9, 9:11, 17:22, 32:9
**vast** [2] - 28:7, 38:3
**Ventures** [2] - 3:13, 3:15
**VENTURES** [1] - 1:8
**vis-à-vis** [1] - 27:1
**voluminous** [1] - 32:10
**vs** [2] - 1:11, 5:19

---

### W

**wait** [2] - 37:7, 37:20
**waived** [7] - 12:6, 24:17, 29:14, 29:16, 29:24, 30:4, 38:2
**waiver** [10] - 4:21, 6:15, 7:9, 7:10, 7:11, 24:18, 24:22, 30:14, 31:20, 36:24
**waives** [1] - 6:24
**wants** [5] - 22:16, 22:18, 23:22, 24:3, 30:6
**water** [1] - 26:12
**Wednesday** [1] - 15:14
**week** [2] - 15:18, 17:21
**weeks** [5] - 17:19, 41:15, 43:5, 43:6, 43:9
**WEGNER** [8] - 3:16, 24:4, 24:8, 30:11, 31:3, 35:2, 45:14, 46:9
**Wegner** [6] - 2:15, 2:15, 3:17, 24:21, 35:10, 35:12
**Weinstein** [7] - 4:24, 5:1, 5:5, 5:8, 5:9, 5:18
**Weinstein's** [1] - 5:5
**WEST** [1] - 1:23
**West** [1] - 2:5
**whole** [1] - 16:13
**wide** [3] - 25:17, 25:19, 25:22
**widely** [1] - 7:8
**willful** [1] - 7:4
**William** [2] - 2:14, 3:18
**WILLIAM** [1] - 1:4
**willing** [1] - 17:18
**wisdom** [1] - 42:15
**withheld** [1] - 6:5
**withhold** [1] - 19:20
**withholding** [18] - 9:22, 11:15, 11:18, 11:24, 12:3, 18:25, 19:12, 19:21, 20:4, 20:12, 20:25, 22:22, 33:5, 34:5, 34:8, 34:17, 34:24, 44:2
**witness** [1] - 40:24
**witnesses** [1] - 24:19
**Wizard** [1] - 16:17
**word** [3] - 6:5, 37:3, 39:2

---

**words** [8] - 19:9, 20:4, 21:9, 34:5, 34:16, 34:19, 38:24, 39:3
**work-product** [1] - 6:25
**world** [1] - 26:4
**worth** [2] - 27:19, 41:12
**Wynn** [1] - 45:8

---

### Y

**years** [1] - 25:12
**yourselves** [1] - 40:23

---

### §

**§** [1] - 5:5

---